# Exhibit 0013

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1 U.S. Government Plaintiff

❏ 2 U.S. Government Defendant

❏ 3 Federal Question *(U.S. Government Not a Party)*

❏ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury<br>❏ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❏ 365 Personal Injury - Product Liability<br>❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark | ❏ 375 False Claims Act<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/ Exchange<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information Act<br>❏ 896 Arbitration |
| **REAL PROPERTY**<br>❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | **CIVIL RIGHTS**<br>❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>❏ 710 Fair Labor Standards Act<br>❏ 720 Labor/Management Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❏ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

❏ 1 Original Proceeding
❏ 2 Removed from State Court
❏ 3 Remanded from Appellate Court
❏ 4 Reinstated or Reopened
❏ 5 Transferred from Another District *(specify)*
❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ❏ Yes ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Marcus R. Mumford (12737)
MUMFORD PC
405 South Main Street, Suite 975
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
Email: mrm@mumfordpc.com
*Attorney for Plaintiff Utah Republican Party*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH REPUBLICAN PARTY,<br><br>        Plaintiff,<br><br>v.<br><br>GARY R. HERBERT, in his Official Capacity as Governor of Utah, and SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. 2:14-cv-00876 |

Plaintiff Utah Republican Party ("Party") hereby complains and alleges as follows:

1.      The First and Fourteenth Amendments to the United States Constitution guarantee to the Party and its members the right to associate in a political party, the right to act and govern themselves as a political party, the right to vote as a party in Utah elections, the right to define who belongs to the Party, the right to determine for itself the Party's platform and message, the right to allocate its name, title, emblems, and endorsements to those candidates it believes will best represent the Party's political platform, the right to determine for itself the candidate selection process that will produce the nominee who best represents the Party's political platform, and to not be deprived of those rights without due process of law. These are core

Constitutional freedoms held individually and collectively by the members of the Utah Republican Party, and by the Party itself.

2.      While Utah election law may govern the time, place, and manner of elections, it must accommodate and respect the rights of political parties operating within its boundaries, especially the Party's rights to determine for itself how its nominee standard bearers are selected.

3.      The Supreme Court of the United States has stated:

In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views.

…

Unsurprisingly, our cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party "select[s] a standard bearer who best represents the party's ideologies and preferences." The moment of choosing the party's nominee, we have said, is "the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community."[1]

4.      Earlier this year, the Utah Legislature enacted, and Governor Gary R. Herbert (collectively, with the Utah Legislature, the "State") signed into law, Senate Bill 54 ("SB54"), which amended the Utah election code.

5.      With SB54, the State has now imposed on the Party a byzantine regimen of rules and internal processes that is different than the rules and processes the Party has chosen for itself to ensure that its nominees represent its political platform.

---

[1] *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (quoting *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 216 (1986), and *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224 (1989)).

6.     Those responsible for SB54 have admitted that the intent of the law was not viewpoint neutral, as it was enacted to produce Party nominees for elected office who will represent different "priorities" and "views" than the political views of Party and its members and to make the Party's winning candidates less responsive and accountable to the Party and its Platform.[2]

7.     SB54 threatens to deprive the Party of the rights it should enjoy as a political party, and did enjoy prior to SB54, and Party should not be forced to go along with the stated purpose of SB54 to impose changes on the Party's message and the "priorities" expressed by the Party in its chosen candidate selection process, and the level of responsiveness and accountability to its Platform that the Party requests of its candidates who win elections.[3]

8.     SB54 unconstitutionally burdens the rights of the Party by, among other things, (1) misappropriating the Party's right to control its endorsement of candidates for elected office, and to select and endorse nominees on the general election ballot who will best represent the Party's political platform, (2) supplanting the Party's judgment with the judgment of the State as to the Party's chosen candidate selection process according to what is most likely to produce nominees who best represent the Party's political platform, (3) imposing a candidate selection process on the Party that dilutes the primacy of its political platform and messaging in its chosen candidate selection process, (4) mandating that the Party agree to an open or direct primary election to select its candidates where the State allocates to itself the power to designate who will

---

[2] *See* Count My Vote, Why Change Utah's Election System?, available at http://www.countmyvoteutah.org/facts (as accessed October 16, 2014) (hereinafter "Count My Vote").

[3] *Compare* Count My Vote, *with* Utah Republican Party Bylaws (hereinafter "Bylaws") § 8.0.A (v. 2013 Official).

appear on the general election ballot as the Party's nominees for elected office, without commensurate consideration in how it has not ensured that the Party's candidates are actually selected by its members, or that the nominees are members of the Party, and (5) threatening to deprive the Party of its right to endorse candidates on the general election ballot if it does not comply with the State's mandated candidate selection process.

9.      SB54 violates the Party's constitutional right to free association and infringes on its rights to free speech and due process, its ability to control its own brand and message, and its authority over its endorsement, name, and emblems.

10.     By this action, the Party seeks a Court order striking down SB54 as an unconstitutional infringement on the rights of the Party and its members.

## PARTIES AND JURISDICTION

11.     Plaintiff Utah Republican Party is an unincorporated association established under Title 20A of the Utah Code, with its principal place of business in Salt Lake County, Utah.

12.     Defendant Gary R. Herbert is the Governor of Utah and, in that capacity, supervises the official conduct of all executive and ministerial officers, including those responsible for the enforcement of SB54.[4]

13.     Defendant Spencer J. Cox is the Lieutenant Governor of Utah and, in that capacity, also the chief election officer of Utah pursuant to Utah Code § 67-1a-2(2)(a), and responsible for the enforcement of SB54.

14.     Defendants are responsible for the administration of Utah's election process, including overseeing all voter registration activities, and coordinating "with local, state, and

---

[4] Utah Code Ann. § 67-1-1(1).

4

federal officials to ensure compliance with state and federal election laws," including SB54.[5]

15.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, in that it presents a federal question involving constitutionally protected rights. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

17.    This case is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, for declaratory and injunctive relief, for the purpose of protecting and preserving the important associational rights, free speech and due process rights, and trademark rights of the Party and its members in how the Party selects and endorses its nominees for elected office.

## GENERAL ALLEGATIONS

### Current Utah Election Law

18.    The people of Utah currently choose persons to serve as their federal, state, and local government representatives by way of a biennial general election held throughout the state on the first Tuesday after the first Monday in November of each even-numbered year.[6]

19.    Recognizing the rights of its like-minded citizens to organize in political parties to select and endorse candidates for office who best represent the ideologies and preferences of those parties' members, Utah's election code currently provides for like-minded voters to organize as "registered political parties" in order, *inter alia*, to "place names of candidates representing that organization upon the primary and regular election ballots under the common

---

[5] *Id*. § 20A-2-300.6(2)(b)
[6] *Id*. § 20A-1-201.

organization name."[7]

20.     Utah code requires that the paper ballots, electronic ballots, and ballot sheets used in the State's general elections shall designate, where appropriate, the endorsements of political parties nominating candidates, including by way of a political party's name, title and emblem.[8]

21.     To communicate these party endorsements to general election voters, Utah code mandates that the State "ensure that … each person nominated by any political party … is placed on the ballot under the party name and emblem" and "listed by party" on a paper ballot, or that "the party designation of each candidate is printed [or displayed] immediately adjacent to the candidate's name" on a ballot sheet or electronic ballot.[9]

22.     Utah code also mandates that the State ensure that the paper or electronic general election ballots or ballot sheets be designed to allow for voting by a straight party ticket, where appropriate.[10]

23.     Currently, Utah election code requires that registered political parties establish by their constitution or bylaws "a procedure for selecting party candidates at the federal, state, and county levels that allows active participation by party members,"[11] but it otherwise leaves it to political parties to determine for themselves how to select candidates who best represent their party's ideologies and preferences and respects the rights of those parties to certify to the State the names of their preferred candidates for elective office to be voted on in the general election.[12]

24.     Under Utah law, an organization of voters can qualify as a registered political

---

[7] *Id.* § 20A-8-102(2).

[8] *Id.* § 20A-6-301.

[9] *Id.* §§ 20A-6-301(1)(d)-(g) & -301(2)(a), -302(1)(a), -303(1)(g), & -304(1)(g).

[10] *Id.* § 20A-6-305(4)(d).

[11] *Id.* §§ 20A-8-106, 20A-8-401(2)(c).

[12] *Id.* § 20A-9-701(1).

party in a number of ways, including, in the case of the Party, by having participated in the last general election and, in at least one of the last two regular elections, polled a total vote for any of its candidates for any office equal to 2% or more of the total votes cast for all candidates for the United States House of Representatives in the same regular election.[13]

25.    A candidate for elected office in Utah may qualify for the general election ballot by filing a declaration of candidacy, and, depending on whether the candidate wants to appear with the endorsement of a political party or unaffiliated, by either:

  a.  Having the person's political party certify to the State that the person is the party's endorsed and selected nominee;[14] or

  b.  Complying with the election code's requirements for appearing as an unaffiliated or write-in candidate."[15]

26.    To comply with the requirement that a registered political party have "a procedure for selecting party candidates at the federal, state, and county levels that allows active participation by party members," Utah code currently allows, but does not require, that a registered political party may "choose[]" to use the State's primary election process "to nominate some or all of its candidates."[16]

27.    The Utah election code currently recognizes, as it must, that the State's procedures for a primary election cannot "govern or regulate the internal procedures of a registered political party."[17]

---

[13] *Id*. § 20A-8-101.
[14] *Id*. § 20A-9-701.
[15] *Id*. §§ 20A-9-501(1), -601(1).
[16] *Id*. §§ 20A-8-401(2)(c) & -9-403(1)(b).
[17] *Id*. § 20A-9-401(2).

28.     Otherwise, Utah's current election code largely leaves it up to the registered political party to determine for itself the process by which it "select[s] a standard bearer who best represents the party's ideologies and preferences."[18]

29.     Critically, under the pre-SB54 version of the election code, the Party retained to itself the right to certify to the Utah Lieutenant Governor and other elected officials the names of those standard bearer nominees who prevail in its chosen candidate selection process.[19]

**The Utah Republican Party's Candidate Nomination Process**

30.     For purposes of participating in Utah elections, voters have organized as the Utah Republican Party to "nominate and support the election of Republican candidates in partisan races for public office, promote the principles set forth in the State Party Platform, and perform Party functions set forth in the election laws of the State of Utah and the Constitution and Bylaws of the Party."[20]

31.     The Utah Republican Party's roots in Utah reach back to before it became a state on January 4, 1896.

32.     The Party is a registered political party, as that term is used in the current version of the Utah election code, and is the most dominant party in the State, in terms of the number of its members and in the success it has had electing its nominees to office at the federal, state, and local levels.

33.     The Party has adopted a constitution and bylaws and received certification from

---

[18] *Jones*, 530 U.S. at 575; *see also New York Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008) (citing *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981), and *Jones*, 530 U.S. at 574-75).
[19] *Id*. §§ 20A-9-202(4) & -9-701.
[20] Utah Republican Party Constitution (hereinafter "Party Const."), Art. I.B (v. 2013 Official).

the State that it is recognized as a registered political party under the Utah election code.

34.    The Party has adopted a platform to express its common message on the timely political issues of the day.

35.    The Party has determined the candidate selection process that will in its view produce the nominee who best represents its political platform.

36.    That process involves a combination of a caucus/ convention and primary election, where the members of the Party, organized by precincts, hold neighborhood caucus meetings at a designated time and, among other things, elect a member or members of their neighborhood to serve as delegates to the Party's county and state nominating conventions where those delegates nominate the Party's candidates for partisan federal, state and local government elected offices, the names of those Party nominees to be certified by the Party to the respective Utah county clerks or Utah lieutenant governor immediately thereafter.[21]

37.    The Party's Constitution and Bylaws establish the procedures for its neighborhood caucus meetings.

a.    The Party's Constitution and Bylaws provide that while the caucus meetings are open to the public, only registered Republican Party members may participate, and any officer, delegate, candidate or registered affiliated voter of a rival political party in the state is not allowed to participate.[22]

b.    The Party's Bylaws mandate that participants start all caucus meetings with, among other things, a prayer, the recitation of the pledge of allegiance, and a reading of the Party's platform, and only after those agenda items do the members select delegates

---

[21] *Id.* Art. XII.1.A-.B & .2.A-.J.
[22] *Id.* Art. XII.1.A; Bylaws § 9.A.3.

to the county and state nominating conventions.[23]

38.    The Party's Constitution and Bylaws establish the rules and procedures for its county and state nominating conventions.

    a.    Similar to the neighborhood caucus meetings, the county and state nominating conventions are open to the public, but participation is limited to those delegates selected at the Party's neighborhood caucus meetings to nominate candidates for partisan elective office and adopt the Party platform.[24]

    b.    The Party's Bylaws provide that only Republican candidates who have properly filed for elected public office as required by Utah election law *and who also meet the requirements of the Utah Republican Party* will be considered by the convention.[25]

    c.    The Party's Bylaws require that any candidate wishing to run for the Party's nomination to elected office must sign a disclosure statement regarding the Party Platform, and submit it to the Party's headquarters at least 30 days prior to the convention, which the Party makes available to all delegates attending the convention, so that the Party's delegates may consider in advance a candidate's support for and acceptance of the Platform as the standard by which that candidate will be evaluated as the holder of public office.[26]

    d.    In the Party Platform disclosure statement, the candidate running for the Party's nomination and endorsement must certify that he or she is "not a candidate, officer, delegate nor position holder in any party other than the Republican party" and either:

---

[23] Bylaws § 9.0.B.
[24] Party Const. Art. XII.3.A.
[25] Bylaws § 7.5.I.1.
[26] *Id.* § 8.0.A.

      i.   that the candidate has "read the Utah Republican Party Platform" and "support[s] … and accept[s] it as the standard by which my performance as a candidate and as an officeholder should be evaluated"; or

      ii.   that the candidate has "read the Utah Republican Party Platform" and, with exception of provisions from the Platform specifically noted by the candidate, "support[s] … and accept[s] it as the standard by which my performance as a candidate and as an officeholder should be evaluated."[27]

e.   In the event that any candidate fails to submit a disclosure statement as required, the Party Chairman must announce this failure to the delegates prior to balloting for that candidate's office, so that the Party's delegates may consider the candidate's failure in that respect in their selection of a nominee.[28]

f.   Except for those situations where a candidate is running unopposed, the Party Constitution requires that delegates cast votes at the convention to select the Party's nominee for elected office only after substantive nominating and acceptance speeches are made to the delegates by the individual candidates or on behalf of the individual candidates running for the Party's nomination.[29]

39.     In the event a field of candidates is more than two, for a single elected office, the Party's constitution provides for the use of multiple ballots until the field is winnowed to the top two candidates, or until a candidate receives 60% or more of the delegate vote cast for the office (the "Convention Threshold"), in which case, that candidate is certified by the Party to the

---

[27] *Id*. § 8.0.A.
[28] *Id*. § 8.0.B.
[29] Party Const. Art. XII.2.F.

State's election officer to appear on the general election ballot as the Party's endorsed nominee.[30]

40.     If no candidate receives 60% or more of the delegates' vote at convention as to a single elected office, the Party nominates both candidates to run in a primary election conducted in accordance with Utah election code.[31]

41.     Pre-54 Utah code allows the Party to "choose[] to use the primary election process to nominate some or all of its candidates."[32]

42.     Pre-54 Utah code provides that "each registered political party that wishes to participate in the primary election," may decide for itself whether its primary is going to be closed or open to members of other political parties or unaffiliated persons.[33]

43.     The Republican Party's Constitution mandates that only voters who are registered Republicans may vote in a Republican primary election.[34]

44.     Because the Party's convention system only chooses to use Utah's primary election process to nominate as between the top two candidates where neither received more than 60% at convention, the current version of Utah's primary election process guarantees that the nominee winning that primary election will have received a majority of votes cast.[35]

45.     The purpose of these rules and procedures is to "promote the principles set forth in the State Party Platform" in the nomination of Republican candidates for elected office by, among other things, (1) limiting participation at the Party's caucuses and county and state nominating conventions to Party members, (2) mandating neighborhood caucuses begin with a

---

[30] *Id*. Art. XII.2.H-.J.
[31] *Id*. Art. XII.2.I & .5.A.
[32] Utah Code Ann. § 20A-9-403(1)(b).
[33] *Id*. § 20A-9-403(2)(a).
[34] Party Const. Art. XII.5.B.
[35] Utah Code Ann. § 20A-9-403(5)(a).

prayer, a pledge, and a review of the Party's platform, (3) requiring that all candidates seeking the Party's nomination make disclosure statements regarding the Party's platform and substantive speeches to delegates before the delegates vote, and (4) setting the designated vote thresholds to require either a supermajority of delegates at convention or a majority of Party members voting where the Party rules call for the use of Utah's primary election process.[36]

46.     After the convention and primary, the current Utah election code respects the Party's right to certify to Utah's lieutenant governor the names of the Party's candidates and nominees for elected office and places those candidates and nominees on the ballot with the Party's endorsement, name and emblem to be voted upon at the regular general election.[37]

47.     The endorsement, name and emblem that the Party uses on its certifications and for use on the general election ballot includes the following mark ("Party Mark"):

---

[36] Party Const. Art. I.B.
[37] Utah Code Ann. §§ 20A-6-301(1)(d)-(g), -6-301(2)(a), -6-302(1)(a), -6-303(1)(g), -6-304(1)(g) & 20A-9-701(1)(a).



48.     As described above, the Party's candidate selection process, which the Party and its members have determined and established for themselves, and which currently and essentially only utilizes Utah's primary election process to allow Party members to elect by majority vote as between two candidates for elected office where neither received more than 60% of the delegate vote at convention, is a constitutionally protected activity.

### The SB54 Movement

49.     As set forth above, prior to SB54, Utah law mostly left the manner in which a

political party selected its nominees to the party's choice of internal process. For example, registered political parties could choose to use a primary election process to nominate some or all of its candidates, but were not required to use that process.[38]

50.    Beginning in approximately the spring of 2013, a handful of well-known, influential, and self-described bipartisans began an effort to change the Utah election code for the purpose of affecting the message and "priorities" expressed by the Utah Republican Party in its chosen candidate selection process, and decreasing the level of responsiveness that Party nominees who won election showed to the Party and its Party Platform.[39]

51.    They made, at the time, demands to Party leadership and its State Central Committee that the Party change the rules and procedures governing its candidate selection process. As set forth in the Party Constitution, its State Central Committee has the authority to act as the Party's governing and policy-making body.[40]

52.    On or about April 12, 2013, these individuals sent Republican Party leaders, and the State Central Committee, a letter to state that their group, which became known as Count My Vote, registered as Utah Political Issues Committee Alliance for Good Government (collectively, "Count My Vote"), would move forward with a ballot initiative to change Utah's election code in a way that would affect the Party's power and influence, unless the Party's State Central Committee voted, among other things, to: (1) change the Party's internal rules and procedures for voting at its nominating conventions to eliminate multiple ballots and raise the Convention Threshold to between 70-80%; (2) open caucus participation and allow absentee balloting; and

---

[38] *Id*. § 20A-9-403(1).
[39] *See, e.g.*, Count My Vote, Why Change Utah's Election System?, available at http://www.countmyvoteutah.org/facts (as accessed October 16, 2014).
[40] Party Const. Art. IV.A.

(3) agree to implement other "long-term internal or statutory solutions to provide stability and predictability."

53.    In response to these efforts, the Party's State Central Committee voted multiple times to reject Count My Vote's demands that the Party change its rules under threat of a ballot initiative that would impose change on the Party through the Utah election code.

    a.    On or about March 23, 2013, a special session of the State Central Committee met to discuss the Count My Vote demands that the Party change its internal rules and policies in the candidate selection process, and rejected most of them.

    b.    On or about April 13, 2013, the Party's State Central Committee rejected a proposal to increase the Convention Threshold as Count My Vote had demanded.

    c.    On or about May 18, 2013, the Party's State Central Committee rejected a similar proposal made to increase the Convention Threshold from 60% to 2/3rds or 66% of delegates, as Count My Vote had demanded.

54.    After the State Central Committee rejected Count My Vote's demands, on or about May 18, 2013, the Party's delegates to the state convention also rejected a proposal to increase the Convention Threshold from 60% to 2/3rds or 66% of delegates, and voted to table indefinitely a proposal to increase the Convention Threshold from 60% to 70%.

55.    After the Party refused these proposals originating from outside groups to affect the Party's priorities and messaging through the internal rules and procedures governing its candidate selection process, some of the same influential Utahns making the demands, it what was described as a bipartisan group of unaffiliated, Democratic Party members, and dissatisfied Republicans, moved forward as a Utah Political Issues Committee called Alliance For Good

Government, or Count My Vote, with efforts to organize and fund a ballot initiative to impose reforms on the Party through the Utah election code that the Party, its governing body, and its delegates had rejected.

56.    Count My Vote proceeded to raise large sums of money from a few, wealthy donors who shared its views and desire to change, from the outside, the Party's priorities and messaging by enacting reforms in the Utah election code that would force the Party to change the internal rules and procedures governing its candidate selection process.

57.    Count My Vote registered its initiative and began its effort to obtain the signatures required by law to have an initiative submitted to a vote of the people of Utah.

58.    Significantly, Count My Vote, and its supporters, admitted and touted the initiative as a "bipartisan effort," intent on affecting the priorities and messaging of the Party, as the dominant political party in Utah, through reforms in the Utah election code that would force the Party to change the internal rules and procedures governing its candidate selection process, promising thereby to take away the "power" of the Party and its members, reallocate the Party's nominations to candidates with less "extreme views," and cause those Party nominees who won election to be less responsive to the Party and its Party Platform in how they governed as federal, state and local representatives.[41]

59.    During the 2014 legislative session, Count My Vote organizers began working with various Utah lawmakers to enact their initiative by statute, with its intended effects.

60.    From these efforts, the Party understands that organizers of Count My Vote and Utah lawmakers struck what was characterized as a "Grand Compromise" to enact the Count My

---

[41] *See, e.g.*, Count My Vote, Why Change Utah's Election System?, available at http://www.countmyvoteutah.org/facts (as accessed October 16, 2014).

Vote ballot initiative into law, with other reforms, in what came to be known as SB54, amending the Utah election code.

61.     The Party understands that SB54 incorporated almost the entire language, verbatim, of Count My Vote's ballot initiative, with additional reform provisions imposed by the State regarding the manner in which a political party chooses its nominees, and it is therefore reasonable to impute to SB54 the intent of Count My Vote to change the Utah election code for the purpose of affecting the influence of the Party, diluting and changing the message and "priorities" expressed by the Party in its chosen candidate selection process, and decreasing the level of responsiveness that Party nominees who win election commit to the Party and its Platform. That the State was also involved in this effort to impose these changes on the Party through the enactment of SB54 does not make the constitutional infringements it represents any more acceptable. SB54 is scheduled to go into effect as of January 1, 2015.

### The SB54 Amendments

Misappropriating A Party's Right To Certify And Endorse Its Nominees

62.     The amendments to the Utah election code enacted as SB54 begin with the State misappropriating control from registered political parties in how their endorsements, names and emblems are allocated to candidates for elective office and indicated on the general election ballot.

63.     First, SB54 limits a political party's right to communicate its endorsement on the ballot by prohibiting any "endorsements," "symbols, markings, or other descriptions of a political party," or any "indication that a candidate for elective office has been nominated by, or has been endorsed by, or is in any way affiliated with a political party," except where the

candidate is nominated by a political party in the manner approved and now mandated by the State under Utah Code Ann. § 20A-9-202(4) for presidential and vice-presidential candidates (the "Presidential Process"), or under Utah Code Ann. § 20A-9-403(5) for all other federal, state or local candidates for elected office (the "CMV Process").[42]

64.    Where a registered political party complies with SB54 and selects its nominees in accordance with the State's Presidential and CMV Processes, the State "shall ensure" that "no other person is placed on the ballot" under that party's name, title or emblem.[43]

65.    But where a registered political party does not comply with SB54 and refuses to nominate its candidates in accordance with the Presidential and CMV Processes, SB54 relegates that party's nominees on the general election ballots to a column with the other "unaffiliated" candidates "without a party circle."[44]

66.    Finally, SB54 amended provisions of the Utah election code that govern the placement and appearance of a political party's nominees on the general election ballots, ballot sheets, and electronic ballots so that only those candidates who were nominated by a political party in accordance with the Presidential and CMV Processes may be endorsed.[45]

67.    In summary, where the Utah election code once respected the rights of political parties to establish their own "procedure[s] for selecting party candidates at the federal, state, and county levels" as long as they "allow[] active participation by party members,"[46] and to

---

[42] Utah Code Ann. § 20A-6-301(1)(a), as amended by Chapter 17, 2014 General Session (hereinafter "as amended").
[43] *Id*. § 20A-6-301(2)(a)(i) & (ii), as amended.
[44] *Id*. § 20A-6-301(1)(g), as amended.
[45] *Id*. §§ 20A-6-301(1)(d)-(g), -301(2)(a), -302(1)(a), -303(1)(g), & -304(1)(g), as amended.
[46] *Id*. §§ 20A-8-106, 20A-8-401(2)(c).

place the names of those candidates under the parties' name and emblem,[47] the State is now

conditioning and limiting its prior respect for the rights of political parties to now only those

parties that select their nominees in accordance with the State's mandated Presidential and CMV

Processes.[48]

Separating A Party From Its Candidates And Its Chosen Candidate Selection Process

68.     Other amendments to the Utah election code enacted as SB54 have the effect of

weakening the role a registered political party now has in how its nominees and candidates for

elective office are selected.

69.     SB54 amended the term "candidates for elective office," once defined as the

person "selected by a registered political party as party candidate[] to run in a regular general

election," to eliminate any reference to the political party, now defined as a person "who file[s] a

declaration of candidacy under Section 20A-9-202 to run in a regular general election for a

federal office, constitutional office, multicounty office, or county office."[49]

70.     This is significant because SB54 also amended the form for a declaration of

candidacy. Prior to SB54, the person filing a declaration of candidacy would declare his or her

"intention of becoming a candidate for the office of _____, as a candidate for the _____ party,"[50]

and would only be displayed on the ballot if that political party certified the candidate as its

nominee to the Utah lieutenant governor and county clerks, who were then obligated to ensure

that the party's endorsement appeared on the ballot, as the party's nominee to be voted upon at

---

[47] *Id*. § 20A-6-301(2)(a).

[48] *Id.* § 20A-6-301(2)(a).

[49] *Compare id*. § 20A-9-101(1)(a), *with id.* § 20A-9-101(1)(a), as amended.

[50] *Id.* § 20A-9-201(4)(a).

the regular general election.[51] But under the SB54 amendments, the person filing a declaration under the amended election code now only states that he or she is "seeking the nomination of the _____ party, which is my preferred political party affiliation," and need not await the certification or approval of any political party as long as the person was nominated under the State's Presidential or CMV Processes, which no longer give the political party any role in the certification of its nominees to the State, and the election code authorizes Utah's lieutenant governor to display the candidate's name on the ballot as in the candidate's declaration of candidacy without any certification from the party and provides that "[n]o other names may appear on the ballot as affiliated with, endorsed by, or nominated by any other registered political party, political party, or other political group."[52]

71.    Under SB54, the State's CMV Process for selecting a party's nominees does not require any statement from the individual candidate seeking a party's nomination as to the party's platform or message, or even confirmation that the candidate seeking a party's nomination is a **member** of that party, having **actual** affiliation with the political party as opposed to just a statement of **preferred** affiliation.

72.    SB54 amended the election code to mandate that all candidates wishing to receive the nomination of a registered political party (i.e., appear with a party's endorsement) on the general election ballot "shall be nominated in a regular primary election" pursuant to the CMV Process.[53]

73.    While the SB54 amendments left intact some prior language suggesting the

---

[51] *Id.* §§ 20A-6-301(2)(a), -9-701(1).
[52] *Id.* §§ 20A-9-201(1)(c), -9-201(4)(a) & -9-701, as amended.
[53] *Id.* § 20A-9-403(1)(a), as amended.

choices a political party has regarding its participation in the State's primary election process, the nature of the choice is very different as a result of those SB54 amendments.

74.     Before SB54, a registered political party could "choose[] to use the primary election process to nominate some or all of its candidates,"[54] but after SB54, the choice was more fundamentally whether that party "*chooses to have the names of its candidates for elective office featured with party affiliation on the ballot* at a regular general election": no more leaving matters to the self-determination of a registered political party, if that party wishes to realize the very purpose in organizing as a party in the first place, it "shall comply with the requirements of this section and shall nominate its candidates for elective office in the manner prescribed."[55]

75.     In case that was too subtle, SB54 prohibited the use or production of any general election ballot that "denotes affiliation between a registered political party … and a candidate for elective office who was not nominated in the manner prescribed" in the State's now-mandatory Presidential and CMV Processes.[56]

76.     Finally, SB54 amended the election code to require that registered political parties in Utah declare their intent almost a year in advance of the regular general election to either "participate in the next regular primary election," or forego having their candidates for elective office "featured on the ballot at the next general election."[57]

<u>Diluting A Party's Message By Restricting Access To The General Election Ballot</u>

77.     There is a reason supporters of SB54 were trying to herd political parties in Utah into its proposed mandatory primary election process.

---

[54] *Id*. § 20A-9-403(1)(b).

[55] *Id*. § 20A-9-403(1)(b), as amended.

[56] *Id*. § 20A-9-403(1)(c), as amended.

[57] *Id*. § 20A-9-403(2)(a)(i), as amended.

78.    SB54 eliminated the role and ability of a registered political party to choose its preferred candidate selection process and certify its nominees to the State for offices to be voted upon a the next general election,[58] mandating instead that the State's "lieutenant governor shall certify … the names of each candidate nominated under" the Presidential or CMV Processes "for offices to be voted upon at the regular general election," display those names on the ballot, and, except as the State certifies, "[n]o other names may appear on the ballot as affiliated with, endorsed by, or nominated by any other registered political party, political party, or other political group."[59]

79.    SB54 limits access to "regular primary ballot of the registered political party listed on the declaration of candidacy" to only those candidates who can marshal resources to obtain and submit "a set of nomination petitions that was (i) circulated and completed in accordance with Section 20A-9-405; and signed by at least two percent of the registered political party's members who reside in the political division of the office that the person seeks."[60]

80.    And what is the purpose of these nominating petitions? SB54 creates a new section of the election code devoted to the form and content of a nominating petition for the gathering of signatures, including a "Warning" that it is misdemeanor for anyone to sign with a false name or without the intent to become a registered voter by the time his or her signature is certified, providing similar penalties for any malfeasance in the gathering of signatures.[61] But the description of nominating petitions is most notable for what it do not include: no place for a meeting agenda of party members that involves a prayer, pledge and review of the party

---

[58] *Id.* § 20A-9-403(1)(b) & -9-701(1).
[59] *Id.* § 20A-9-701, as amended.
[60] *Id.* § 20A-9-403(3)(a), as amended.
[61] *Id.* § 20A-9-405, as enacted by Chapter 17, 2014 General Session (hereinafter "as enacted").

platform; no place where a candidate is compelled to communicate his or her support for the party's platform; no place for a meeting or gathering where party members would be informed before making their selection whether the candidate has accepted the party's platform as the standard by which his or her performance as a candidate and as an officeholder should be evaluated; no requirement that the nominating petition even indicate what, if any, the person's signature represents as it concerns the candidate.[62]

81.    SB54 seeks by its onerous signature-gathering requirements and mandatory primary election process to force candidates seeking the nomination of a political party to divert their time and energy in seeking the nomination away from communications to the political party and its members that might compel a candidate to feel the need to be responsive to the political party and its members, and to dilute the poignancy of the party's message and its power to demand accountability of the candidates it nominates.[63]

82.    The number of signatures that SB54 requires for a candidate to qualify for a party's primary ballot presents additional issues in this regard: petitions must be "signed by at least two percent of the registered political party's members who reside in the political division of the office that the person seeks."[64] A party that is more dominant in a particular political division will suffer disproportionately from the effect and burdens of the State's CMV Process.

83.    SB54 devotes significant attention to the process of verifying those signatures on a nomination petition.[65] On the one hand SB54 suggests that a candidate seeking the nomination

---

[62] *Compare id., with* Bylaws § 8.0.A.
[63] *See, e.g.*, Count My Vote, Why Change Utah's Election System?, available at http://www.countmyvoteutah.org/facts (as accessed October 16, 2014.
[64] Utah Code Ann. § 20A-9-403(3)(a)(ii), as amended.
[65] *Id*. § 20A-9-403(3)(b)-(g), as amended.

of a political party may only count the signatures of that party's "members," but elsewhere allows the collection of signatures from non-party members, so long as those members later register, avoiding the issue of how that requirement would be enforced.[66]

84.    The additional regulatory overhead that a candidate must manage as a result of SB54 will affect the strategy and considerations that candidate will make in contemplating a race for elected office as a party's nominee away from the political party and its platform and toward considerations of meeting the State's regulatory scheme.

85.    SB54 reallocated from registered political parties to the State the power to certify for the county clerks the names of party candidates listed on the primary ballot, for purposes of giving notice of the primary to voters.[67] As a result, SB54 also takes away from Utah registered political parties the right to determine for themselves how to resolve any of the membership disputes that may arise with respect to the verification of nominating petitions.

86.    And SB54 amended the election code to provide for the CMV Process where the State now certifies that "[c]andidates … receiving the highest number of votes cast for each office at the regular primary election are nominated by their registered political party for that office," pursuant to the candidate's "preferred party affiliation" as displayed on the declaration of candidacy, without the approval of that "preferred party's" organization.[68]

87.    SB54 did not limit the number of candidates who may run in the primary election and certifies as a party's nominee only the candidate "receiving the highest number of votes," such that, under SB54, the State dictates and certifies a party's nominee without any guarantee

---

[66] *Id*. § 20A-9-403(3)(a)(ii) & -9-403(d)(iv), as amended.
[67] *Compare id*. § 20A-9-403(4)(c), *with id*. § 20A-9-403(4)(c), as amended.
[68] *Id*. § 20A-9-403(5)(a), as amended.

that nominee will have ever received a majority vote from party members.[69]

88.    Because there is no restriction in the primary election procedures imposed by SB54 that would limit the field to two candidates for offices where there can be only one office holder elected, and because the CMV Process does not mandate election by a majority vote in the regular primary election, it threatens to impose on a party a nominee who does not have support from the majority of party members and may not even be a party member having only designated the "preferred party" on his or her declaration for candidacy.[70]

Diluting A Party's Message By Forcing It To Open Its Primary To Unaffiliated Voters

89.    Finally, SB54 created a new class of registered political party, called "qualified political party," or "QPP," which appears to be a Trojan horse mechanism to force an open primary, where unaffiliated voters can vote on a party's nominees, on any political party who may want to resist the other mandates of SB54.[71]

90.    To become a QPP, a registered political party may still use its convention system but only as an alternative path for candidates to qualify for the primary election that SB54 mandates, and in order to qualify as a QPP, a party must agree (1) to open its primary elections to unaffiliated voters; (2) either to allow remote voting at its conventions or a way to designate alternates when a delegate cannot be present at the party's convention; (3) to not hold the convention until after April 1; and (4) to certify that it will only permit its members to seek the party's nomination either by way of the process in Utah Code Ann. § 20A-9-407 ("QPP

---

[69] *Id*.
[70] *Id*. §§ 20A-9-201(1)(c), -9-201(4)(a) & -9-701, as amended.
[71] *Id*. § 20A-9-406, as enacted.

Convention System"), or the process in Utah Code Ann. § 20A-9-408 ("QPP Petition System").[72]

91. Through the QPP designation, the rights that SB54 takes away from political parties to endorse its nominees with the party name and emblem on the general election ballot is now reserved for parties that either comply with the Presidential and CMV Processes, which dilute the party's message as set forth above, or become QPPs, where candidates nominated through the QPP Convention or Petition Systems can only become the party's nominee subject to a primary election where persons unaffiliated with the party can vote.[73]

92. Because SB54 mandates that unaffiliated voters be allowed to participate in QPP primary elections, it gives the State the authority to dictate and certify the nominees of QPPs emerging from a primary election without any guarantee that those nominees actually receive a majority vote from party members.[74]

93. SB54 requires that a QPP "shall participate" in a primary election where either one or more candidates qualify as candidates under the QPP Convention System or two or more candidates qualify as candidates under the QPP Petition System.[75]

94. Because SB54 does not limit the number of candidates who may emerge from the QPP Convention or Petition Systems, but mandates a primary election where there are multiple candidates, under SB54, the State will dictate and certify the nominees of QPP emerging from any primary election on the basis of the "highest number of votes" received and without any guarantee that the nominee certified by the State received a majority vote from party members.[76]

---

[72] *Id*. § 20A-9-101(12), as amended, & -9-406(2)-(8), as enacted.
[73] *Id*. § 20A-9-101(12)(a), as amended, & -9-409, as enacted.
[74] *Id*.
[75] *Id*. § 20A-9-409(4)-(5), as enacted.
[76] *Id*. § 20A-9-409(4)-(5), as enacted, & -9-403(5)(a), as amended.

## SB54 Burdens The Party's Rights

95.     SB54 takes effect January 1, 2015, and it burdens rights held individually and collectively by the Party, and its members, in a number of ways, including the following:

96.     First, it takes away, and misappropriates to the State, the Party's right to certify and endorse its nominees for elected office.

   a.   Where the election code previously respected the rights of the Party to "certif[y] … [its] nominees for offices to be voted upon at the regular general election" to the lieutenant governor, who in turn would provide the names of those candidates to the individual county clerks,[77]

   b.   as amended by SB54, the election code now mandates that Utah's Lieutenant Governor certify himself the Party's nominees, without awaiting certification from the Party, and prohibits the Party from being able to communicate its endorsement of any other nominee on the ballot.[78]

97.     Second, it takes away, and misappropriates to the State, the Party's right to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot.

   a.   Where the election code previously respected the rights of the Party to establish its own "procedure for selecting party candidates at the federal, state, and county levels" as long as it "allows active participation by party members,"[79] and to place the names of its candidates under the Party's name and emblem, including with

---

[77] *Id*. § 20A-9-701(1).
[78] *Id.* § 20A-9-701(1)-(2), as amended.
[79] *Id.* §§ 20A-8-106, 20A-8-401(2)(c).

the Party Mark,[80]

b.  as amended by SB54, the election code now

    i.  prohibits the Party from indicating any "nominat[ion]," "affiliat[ion]," "endorsement[]," or "symbols, markings, or other descriptions," on the ballot unless it nominates its candidates pursuant to the Presidential or CMV Processes, and

    ii.  strips the Party of its right to place the names of its nominees on the ballot under its name, title or emblem, and

    iii.  if the Party refuses to comply, relegates the Party's nominees on the general election ballots to a column with the other "unaffiliated" candidates "without a party circle."[81]

98.  Third, it takes away, and misappropriates to the State, the Party's right to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform.

a.  Where the election code previously allowed the Party to determine for itself the candidate selection process to produce a nominee who would best represent the Party's political platform, and allowed the Party to "choose[] to use the primary election process to nominate some or all of its candidates,"[82]

b.  as amended by SB54, the election code now dictates that the Party "shall comply with the requirements of this section and shall nominate its candidates for elective

---

[80] *Id*. § 20A-6-301(2)(a).
[81] *Id*. §§ 20A-6-301(1)(d)-(g), -301(2)(a), -302(1)(a), -303(1)(g), & -304(1)(g), as amended.
[82] *See id*. §§ 20A-8-106, 20A-8-401(2)(c) & 20A-9-403(1)(b).

office in the manner prescribed," if it desires to has its candidates appear on the general election ballots featured with the Party's affiliation, prohibiting any affiliation with the Party from appearing on the ballot if the Party does not comply with the mandates of SB54 in nominating its preferred candidates for elected office.[83]

99.    Fourth, it burdens the Party's associational rights by mandating changes to the Party's internal rules and procedures, at the threat of depriving the Party of its rights if it refuses to comply, that disadvantage the Party, and that the Party has rejected and that conflict with the rules the Party has determined for itself, as set forth in its Constitution and Bylaws, will produce a nominee who best represents the Party's political platform.

   a.    Where the election code previously allowed the Party to determine for itself the candidate selection process to produce a nominee who would best represent the Party's political platform, and allowed the Party to "choose[] to use the primary election process to nominate some or all of its candidates," respecting that it may not "govern or regulate the internal procedures of a registered political party,"[84]

   b.    as amended by SB54, the election code now dictates that, if the Party wishes to have its candidates for elective office "featured on the ballot," it "shall comply with the requirements of this section and shall nominate its candidates for elective office in the manner prescribed,"[85] requiring a petition process that is more onerous for candidates seeking the Party's nomination than candidates seeking the nomination of other parties, and conflicting with the Party's Constitution and Bylaws that set the timing of

---

[83] *Id*. §§ 20A-9-403(1)(a)-(c) & -403(2)(a), as amended.
[84] *See id*. §§ 20A-8-106, -8-401(2)(c), -9-401(2), & -9-403(1)(b).
[85] *Id*. §§ 20A-9-403(1)(a)-(c) & -403(2)(a), as amended.

the nomination process to allow meaning time to vet candidates[86] and require, among

other things:

i.  that its nominees be selected at state and county conventions by delegates who
    are members of the Party and selected by other members at neighborhood
    meetings that start with a prayer, the pledge and a review of the Party's
    platform;[87]

ii. that its nominees themselves be registered members of the Party and otherwise
    meet the Party's requirements to qualify for the Party's nomination;[88]

iii. that its nominees make disclosures to the Party that they are "not a candidate,
    officer, delegate nor position holder in any party other than the Republican
    party" and that they have "read the Utah Republican Party Platform" and either
    "support … and accept" that Platform "as the standard by which my
    performance as a candidate and as an officeholder should be evaluated" or, with
    exception of Platform provisions specifically noted by the candidate,
    "support[s] … and accept[s] it as the standard by which my performance as a
    candidate and as an officeholder should be evaluated";[89]

iv. that its nominees be selected only after the Party confirms that the candidates
    running have made these disclosures regarding the Party's Platform;[90]

v.  that its nominees be selected at conventions only after making substantive

---

[86] *See, e.g.*, Bylaws § 7.0.A (mandating a letter of intent to be received by the Party at least 30 days before convention).
[87] Party Const. Art. XII.1.A-.B, Art. XII.2.A-.J & Bylaws §§ 9.0.A.3, 9.0.B.
[88] Bylaws §§ 7.5.I.1 & 8.0.A.
[89] *Id*. § 8.0.A.
[90] *Id*. § 8.0.B.

nominating and acceptance speeches to the delegates voting;[91] and

    vi.  that its nominees be selected by a supermajority of delegates at state and county nominating conventions or a majority of Party members voting in primary elections.[92]

100.    Fifth, it burdens the Party's associational rights, and the rights of disassociation, by imposing upon the Party a nominee who may not necessarily be a Party member and without guaranteeing that nominee has been selected by a majority of Party members participating in the primary election.

    a.  Where the election code previously allowed the Party to determine for itself the candidate selection process to produce a nominee who would best represent the Party's political platform, and allowed the Party to "choose[] to use the primary election process to nominate some or all of its candidates," which as set forth above, ensured that its nominees were Party members and that any nominee selected in a primary election would be by a majority vote,[93]

    b.  as amended by SB54, the election code now dictates that the Party "shall nominate its candidates for elective office in the manner prescribed," by the Presidential and SMV Processes, which require only that a candidate for the Party's nomination express his or her "preferred" party affiliation and has no requirement that a nominee receive a majority vote in the primary election.[94]

---

[91] Party Const. Art. XII.2.F.
[92] *Id*. Art. XII.2.H-.J & Art. XII.5.A-B; Utah Code Ann. § 20A-9-403(5)(a).
[93] *See* Utah Code Ann. §§ 20A-8-106, 20A-8-401(2)(c) & 20A-9-403(1)(b); Party Const. Art. XII.1.A-.B, Art. XII.2.A-.J & Bylaws §§ 7.5.I.1 & 8.0.A.
[94] Utah Code Ann. §§ 20A-9-403(1)(a)-(c), -403(2)(a) & -403(5)(a), as amended.

101.    Sixth, it takes away the Party's right to have its nominees commit themselves to the Party Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," and replaces it with a process that requires only that candidates gather signatures.

    a.    Where the election code previously allowed the Party to determine for itself the candidate selection process to produce a nominee who would best represent the Party's political platform, and the Party required that candidates for its nominations make a certified disclosure to the Party that they have "read the Utah Republican Party Platform" and "support … and accept" that Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," with any exceptions noted,[95]

    b.    as amended by SB54, the election code now dictates that the candidates for the Party's nomination need only complete and file nomination petitions to qualify for the primary ballot, and that only the candidate who receives the highest number of votes in the primary may appear on the ballot with the Party's endorsement.[96]

102.    Seventh, it burdens the Party's associational rights, and the rights of disassociation, by taking away the Party's convention system as its preferred way of selecting nominees and allowing a party to designate candidates in the primary election by convention only if it agrees to open that primary election, that the State now mandates, to persons unaffiliated with the Party.

---

[95] *See id*. §§ 20A-8-106, 20A-8-401(2)(c) & 20A-9-403(1)(b); Party Const. Art. XII.1.A-.B, Art. XII.2.A-.J & Bylaws §§ 7.5.I.1 & 8.0.A.
[96] Utah Code Ann. §§ 20A-9-403(3)(a) & -403(5)(a), as amended.

a.  Where the election code previously allowed the Party to determine for itself the candidate selection process to produce a nominee who would best represent the Party's political platform, and allowed the Party to "choose[] to use the primary election process to nominate some or all of its candidates," which as set forth above, the Party utilized only where a candidate was unable to get more than 60% at the nominating convention,[97]

b.  as amended by SB54, the election code only allows the Party to utilize a convention for the purpose of designating candidates for the primary election ballot, and only if the Party adopts a new classification, where it changes its rules and procedures to:

    i.  allow unaffiliated voters to participate in the Party's primary election;

    ii.  allow delegates the right to vote remotely in the Party's convention or a procedure for designating alternate delegate;

    iii.  delay its convention until after April; and

    iv.  allow candidates to circumvent the convention and qualify for the Party's primary election ballot also through a petition process.[98]

c.  In other words, the election code as amended by SB54 would only allow the Party to retain its convention system if it agreed to open itself up to a process that allows unaffiliated persons to vote in the Party's primary and does not require that the winning candidate be selected by a majority of those participating in the Party's

---

[97] *See* Utah Code Ann. §§ 20A-8-106, 20A-8-401(2)(c) & 20A-9-403(1)(b); Party Const. Art. XII.1.A-.B, Art. XII.2.A-.J & Bylaws §§ 7.5.I.1 & 8.0.A.
[98] Utah Code Ann. § 20A-9-101(12), as amended, & -9-409, as enacted.

primary.[99]

103.    Eighth, SB54 burdens the Party's rights of association, free speech and due process by, among other things, opening the Party up to unknown means of manipulating the process by which its nominee is selected, as compared to the proven candidate selection process it selected for itself; not providing adequate measures to ensure that its candidate selection process is not diluted or manipulated by persons not affiliated with the Party; imposing restrictions beyond those chosen by the Party in how it is defined or governed; undermining the secrecy of the ballot in how persons signing nominating petitions must disclose their name and addresses and cannot remove that information; having as its intent discrimination based on viewpoint; requiring that candidates for the Party's nomination modify their message as a result of the law; discriminating against the Party in the threshold it requires; setting a time earlier than the Party designated for itself to start the candidate selection process.

104.    In summary, SB54 violates the Party's constitutional right to free association and infringes on its rights to free speech and due process, its ability to control its own brand and message, and its authority over its endorsement, name, and emblem, by substituting its judgment for the judgment of the Party in how it selects nominees who best represents its political platform, by threatening to deprive the Party of its rights and recognition as a registered political party in the state unless it complies with the State's mandates, which limit those rights.

105.    If the State is permitted to enforce SB54, contrary to the rights of the Party, the conduct of primary and general elections in the State will be unconstitutional, result in legal challenges, creating substantial risk that the results would be invalidated, and requiring that the

---

[99] *Id.*

State would be forced to conduct additional primary elections and general elections at great expense. The costs, delays, and uncertainties in the political process engendered by the enforcement of SB54 events will irreparably injury the Party, its members and all other voters in the State.

106.    Voiding SB54 by court order is the only means to fairly and adequately protect the Party's and its members' constitutional rights.

## FIRST CAUSE OF ACTION

### For Declaratory Relief Establishing The Unconstitutionality of SB54 For Violating The Party's Rights

107.    Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

108.    This claim for relief arises under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983.

109.    An actual controversy exists between the Party and the State of Utah with regard to the exercise of constitutionally protected First Amendment associational rights.

110.    The Party is entitled to a declaratory judgment establishing the unconstitutionality of the SB54 as applied to the manner in which

 a. the State has taken away and misappropriated the Party's right to certify and endorse its nominees for elected office;

 b. the State has taken away and misappropriated the Party's right to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;

 c. the State has taken away and misappropriated the Party's right to determine for itself

the candidate selection process that will produce a nominee who best represents the Party's political platform;

d.  burdened the Party's associational rights by mandating changes to the Party's internal rules and procedures, at the threat of depriving the Party of its rights if it refuses to comply, that disadvantage the Party, and that the Party has rejected and that conflict with the rules the Party has determined for itself, as set forth in its Constitution and Bylaws, will produce a nominee who best represents the Party's political platform;

e.  burdened the Party's associational rights, and the rights of disassociation, by imposing upon the Party a nominee who may not necessarily be a Party member and without guaranteeing that nominee has been selected by a majority of Party members participating in the primary election;

f.  burdened the Party's associational rights and rights to free speech, by taking away the Party's right to have its nominees commit themselves to the Party Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," and replacing it with a process that requires only that candidates gather signatures; and

g.  burdened the Party's associational rights, and the rights of disassociation, by taking away the Party's convention system as its preferred way of selecting nominees and allowing a party to designate candidates in the primary election by convention only if it agrees to open that primary election, that the State now mandates, to persons unaffiliated with the Party; and

h.  otherwise burdening the Party's rights of association, or depriving it of its rights of

disassociation, free speech and due process as set forth above.

111.    SB54 authorizes and directs Defendants and other election officials to infringe on the Party's rights as set forth above without a compelling state interest.

112.    Pursuant to 42 U.S.C. § 1983 *et. seq.*, the Party is entitled to a declaratory judgment declaring these rights, and to an award of reasonable attorneys' fees and costs in this action.

## SECOND CAUSE OF ACTION

### For Injunctive Relief To Prevent The Deprivation Of Plaintiff's Constitutional Rights

113.    Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

114.    Enforcement of SB54 constitutes an imminent and ongoing threat by the State of Utah, acting by and through Defendants, to deprive the Party and its members of their civil rights and constitutionally protected rights.

115.    The Party will suffer irreparable injury if its nominees are selected in the manner now dictated by the election code, as amended by SB54, where the Party and its members are deprived of the right

   a.   to certify and endorse its nominees for elected office;

   b.   to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;

   c.   to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform;

   d.   to determine the internal rules and procedures that govern that designated candidate

selection process, free of the State's threat to deprive the Party of its rights if it refuses to comply with rules that disadvantage the Party and that conflict with the Party's chosen rules;

e. to require that Party's nominee is a member selected by either a supermajority of Party delegates or a majority of Party members participating in the primary election;

f. to require that its nominees commit themselves to the Party Platform "as the standard by which [their] performance as a candidate and as an officeholder should be evaluated";

g. to require that, in order to keep aspects of the Party's convention system, the Party open up its primary election, that the State now mandates, to persons unaffiliated with the Party; and

h. to exercise its rights of association, free speech, and disassociation as set forth above.

116.    SB54 deprives the Party, and its members and supporters, of the right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution, without a compelling state interest.

117.    Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment stating that SB54 violates the Party's rights and 42 U.S.C. § 1983, and should enter a permanent injunction enjoining enforcement or application of SB54 to the Party.

## THIRD CAUSE OF ACTION

### Trademark Infringement

118.    Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

119.    Under 15 U.S.C. § 1125(a), a state or its employees acting in their official capacity, who in connection with any goods or services, uses any word, term, name, symbol, or any combination thereof, of any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged but such act.

120.    Under 15 U.S.C. § 1116, a party may obtain from this court an injunction to prevent the violation of 15 U.S.C. § 1125(a), and under 15 U.S.C. § 1117, the prevailing party may obtain damages, costs and reasonable attorney fees.

121.    As demonstrated above, the State through SB54 has sought to misallocate the name, title, emblems, and endorsements of the Party, including the Party Mark, and use them in a way in its administration of the primary and general elections in Utah, and in the actions that it seeks to prohibit by SB54, that falsely designates the Party's endorsement of nominees, and which is likely to cause confusion, mistake and deceive Utahns concerning the affiliation, connection, sponsorship or association with the Party of the person receiving the Party's nomination under SB54, or contribute to the false designation of the Party's endorsement, in a way that harms the Party and dilutes its message.

122.    Pursuant to 15 U.S.C. §§ 1116, 1117 & 1125(a), the Party is entitled to a declaratory judgment, injunction, damages, costs and attorneys' fees to remedy the infringement of SB54 on the Party's rights and enjoin the enforcement or application of SB54.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for an entry of judgment in its favor and against Defendants as follows:

1.    A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring SB54 violates the Party's rights under the First and Fourteenth Amendments to the United States Constitution;

2.    A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring SB54 violates the Party's rights to control and direct the use of its name, title, emblems, and endorsements, and prevent the unlawful use of its name, title, emblems, and endorsements in a way that is likely to cause confusion, mistake and deceive Utahns concerning the affiliation, connection, sponsorship or association with the Party of the person receiving the Party's nomination under SB54, or contribute to the false designation of the Party's endorsement under SB54, in a way that harms the Party and dilutes its message;

3.    A permanent injunction enjoining enforcement and implementation of SB54;

4.    A judgment awarding Plaintiff its damages and costs of suit, including reasonable attorneys' fees under 15 U.S.C. § 1117 and 42 U.S.C. § 1988; and

5.    Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted this 26th day of November, 2014.

/s/ Marcus R. Mumford
Attorney for Plaintiff

VERIFICATION

I, James Evans, Chairman of the Utah Republican Party, have read the foregoing

Complaint and declare under penalty of perjury that it is true and correct, and true and correct to

best of my knowledge, information and belief.

Executed on this 26th day of November, 2014.


_____
James Evans