# Exhibit 0018

Marcus R. Mumford (12737)
MUMFORD PC
405 South Main Street, Suite 975
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
Email: mrm@mumfordpc.com

Christ Troupis (applying for admission *pro hac vice*)
Troupis Law Office, P.A.
801 East State Street, Suite 50
Eagle, Idaho 83616
Telephone: (208) 938-5584
Email: ctroupis@troupislaw.com
*Attorneys for Plaintiff Utah Republican Party*

<table>
<tr><td colspan="2" align="center">IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF UTAH, CENTRAL DIVISION</td></tr>
<tr><td>UTAH REPUBLICAN PARTY,<br><br>       Plaintiff,<br><br>v.<br><br>GARY R. HERBERT, in his Official Capacity as Governor of Utah, and SPENCER J. COX, in his Official Capacity as Lieutenant Governor of Utah,<br><br>       Defendants.</td><td><br><br>**COMPLAINT**<br><br>Case No. _____<br><br></td></tr>
</table>

Plaintiff Utah Republican Party ("Party") hereby complains and alleges as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff Utah Republican Party is an unincorporated association established under Title 20A of the Utah Code, with its principal place of business in Salt Lake County, Utah.

2.    Defendant Gary R. Herbert is the Governor of Utah and, in that capacity, supervises the official conduct of all executive and ministerial officers, including those responsible for the

enforcement of the law titled Senate Bill 54 ("SB54"), enacted by the Utah Legislature and signed by Governor Gary R. Herbert (collectively, with the Utah Legislature, the "State") in 2014, amending the Utah election code.[1] In prior litigation regarding SB54, titled *Utah Republican Party v. Herbert, et al.*, Case No. 2:14-cv-00876 (D. Utah), Herbert asserted certain legal and factual positions – made in statements to the court by State counsel representing Herbert, and in sworn testimony made by the State's representative, Utah Director of Elections Mark Thomas – that the Court and Party relied on in resolving that matter.

3.      Defendant Spencer J. Cox is the Lieutenant Governor of Utah and, in that capacity, also the chief election officer of Utah,[2] empowered with general supervisory authority over all political parties and elections, and responsible for the enforcement and implementation of SB54, among other things. In prior litigation regarding SB54, titled *Utah Republican Party v. Herbert, et al.*, Case No. 2:14-cv-00876 (D. Utah), Cox asserted certain legal and factual positions – made in statements to the court by State counsel representing Herbert, and in sworn testimony made by Cox's representative, Utah Director of Elections Mark Thomas – that the Court and Party relied on in resolving that matter.

4.      Defendants are responsible for the administration of Utah's election process, including overseeing all voter registration activities, the activities of political parties, and coordinating "with local, state, and federal officials to ensure compliance with state and federal election laws," including SB54.[3]

5.      This case is brought pursuant to the First and Fourteenth Amendments to the United

---

[1] Utah Code Ann. § 67-1-1(1).
[2] Utah Code Ann. § 67-1a-2(2)(a).
[3] Utah Code Ann. § 20A-2-300.6(2)(b).

States Constitution, 42 U.S.C. § 1983, and other applicable law, seeking declaratory and injunctive relief.

6.      The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

8.      On December 1, 2014, the Party filed the matter titled *Utah Republican Party v. Herbert, et al.*, Case No. 2:14-cv-00876 (D. Utah) (the "First Lawsuit"), with this court, the Honorable David Nuffer presiding.

9.      In the First Lawsuit, among other things, the Party alleged that SB54 infringed and burdened the Party's constitutional rights, especially the right of the Party to determine for itself how its nominee standard bearers are selected, and to ensure that those nominees represent its political platform. The allegations set forth in the First Lawsuit are attached and incorporated herein by reference.[4]

10.     In the First Lawsuit, the Party prayed for a declaratory judgment that SB54 was unconstitutional, and for injunctive relief, to enjoin the enforcement and implementation of SB54, and prevent the State from infringing on the Party's rights.

11.     On or about January 5, 2015, the Party filed an Amended Motion for a Preliminary Injunction and asked the district court to stay enforcement and/or implementation of SB54 during the pendency of the First Lawsuit.

12.     In response to the allegations raised by the Party in the First Lawsuit and Amended

---

[4] *See* Complaint, First Lawsuit, Doc. 2, filed December 1, 2014, attached hereto as Exhibit 1.

Motion for a Preliminary Injunction, the State amended the Utah election code by enacting and

signing into law Senate Bill 207 ("SB207"), addressing one of the claims raised by the Party in

its complaint – that SB54 modified then-existing law to allow the State to impose a candidate on

a registered political party without ensuring that candidate was even a member of the registered

political party.[5]

13.     In response to the allegations raised by the Party in the First Lawsuit and Amended

Motion for a Preliminary Injunction, the State's representative, Utah Director of Elections Mark

Thomas, gave sworn testimony disputing allegations asserted by the Party that SB54 imposed a

burden on its rights, testifying that the State has little, if any, interest or authority to review the

Party's candidate-selection rules or to dictate to the Party how it should select its candidates.[6]

14.     Based on the testimony of the State's representative and the passage of SB207,[7] on April

10, 2015, the court in the First Lawsuit heard and denied the Party's Amended Motion for a

Preliminary Injunction on ripeness grounds, explaining, in part, that "because the party has not

elected the [Qualified Political Party, or] QPP route … we're not ripe for an as applied

challenge."[8]

---

[5] *See id.* ¶¶ 68-76, 100, 110; *compare* Notice of SB207, First Lawsuit, Doc. 66, filed March 31, 2015.

[6] *See* Deposition of Utah Director of Elections Mark Thomas, First Lawsuit, Doc. 69-3, filed April 1, 2015 (hereinafter "**Thomas Tr.**"), at 99:11-103:21, 103:17-104:19, 111:7-112:10, 119:6-124:7, 131:14-17, 132:9-133:24; 135:7-136:5, 145:18-147:8; 148:24-149:23; and 151:21-152:25.

[7] *See* Transcript of Hearing, First Lawsuit, Doc. 107, held April 10, 2015 (hereinafter "**4/10/2015 Hrg.**") at 13:10-4, 124:7-12; Court Order, First Lawsuit, Doc. 170, filed September 24, 2015 (hereinafter "**Prelim. Inj. Order**"), at 5-8, 13, 19-20.

[8] First Lawsuit, 4/10/2015 Hrg. at 122:22-25. In this, the court concluded that the other "route" of a "Registered Political Party" (or "RPP") under SB54 would not impose an "unconstitutional burden and outcome" on the Party, but it also rejected the State's argument that the QPP route was constitutionally permissible because SB54 gave the Party a "choice": "[T]he difference is …

15.     Based on the positions that the State had taken in the First Lawsuit, the court rejected the
Party's concerns that its "nominee may not necessarily be a party member or committed to the
party platform," suggesting that the Party should adjust its "membership requirements" to
resolve them.[9] In particular, the court summarized its understandings of the State's position to
assure the Party that "[t]he State has nothing to say about who's the member of a party, at least
under this statute, except to say it's determined in accordance with party rules."[10]

16.     In its formal order denying the Party's Amended Motion for a Preliminary Injunction, the
court rejected the Party's claims that SB54 restricted its ability to endorse the candidates of its
choice and to regulate the Party's internal affairs free from State influence.[11] In reaching its
conclusions, the court held "[s]ignificantly, under SB54, the State does not dictate who is
allowed to be a member of a political party," that "state law allows all political parties to define
membership in accordance with party rules," and that "SB207 eliminate[d] the Party's concern
that its nominees may not be members of the Republican Party" because "a candidate may not
file a declaration of candidacy for a political party of which the candidate is not a member,
except to the extent that the political party permits otherwise in the political party's bylaws."[12]

17.     Significantly, the order's analysis invited the Party to file objections to a candidate's

---

[the QPP route] pushes the unaffiliated voter in. The voter under past practice would make the
choice to opt in. And it is the State's pushing or forcing which is questionable constitutionally.
No cases ever upheld in my view this sort of provision when presented directly to the Court. But
at this stage there are alternative paths so a facial challenge, again not pled for, cannot succeed,
and an as applied challenge is not ripe. So there may be further development of the record, but at
this stage there will be no injunction against the enforcement of Senate Bill 54." *Id*. at 126:14-
127:8.

[9] First Lawsuit, 4/10/2015 Hrg. at 124:7-12.

[10] *Id*.

[11] First Lawsuit, Prelim. Inj. Order at 19.

[12] *Id*. at 19-20.

declaration of candidacy under Utah Code § 20A-9-202(5) as one way to ensure that candidates comply with its rules.[13]

18.     Following the April 10, 2015, hearing, the Party acted in reliance on the State's position, as stated by its counsel and representatives in the First Lawsuit and summarized by the court, and amended its Utah Republican Party Constitution and Utah Republican Party Bylaws to address the issues raised by SB54 and to preserve its associational rights to control who will be selected as the Party's nominees for elected office, being identified with the Party's official mark and endorsement, and how those nominees will be selected. In particular:

    a.  the Party amended Article I, § C of its Constitution to restrict membership to those who comply with its internal rules: "Party membership is open to any resident of the State of Utah who registers to vote as a Republican and complies with the Utah Republican Party Constitution and Bylaws ....".[14]

    b.  the Party amended its Bylaws to require that any candidate choosing to run for its nomination "shall sign and submit a certification that they will comply with the rules and processes set forth in the Utah Republican Party Constitution and these Bylaws ....".[15] and

    c.  the Party amended the specific provisions of the caucus/convention candidate selection procedure set forth in its Constitution to provide that any "candidate for an office that receives 60% or more of the votes cast at any point in the balloting process at the state nominating conventions shall proceed to the general election," nominating

---

[13] *Id.* at 20 n.79.
[14] 2015 Utah Republican Party Constitution (hereinafter "**Const.**") Art. I, § C.
[15] 2015 Utah Republican Party Bylaws ("**Bylaws**"), § 8.0(A).

the top two candidates to run in a primary election only if neither receives 60% or more of the delegates' vote at the convention.[16]

19.      On August 18, 2015, the Party delivered a letter to the office of Lieutenant Governor to designate itself a QPP in the 2016 election cycle, certifying "its intent to nominate candidates in 2016 in accordance with its internal rules and procedures and Utah Code Ann. § 20A-9-406 … without prejudice to the positions the party has asserted in the matter *Utah Republican Party v. Herbert, et al.*, Case No. 2:14-cv-876 (D. Utah), challenging the constitutionality of recent amendments to the Utah Election Code."

20.      In response to the State's motion for summary judgment in the First Lawsuit, the Party requested summary judgment in its favor under Rule 56(f) of the Federal Rules of Civil Procedure, and at a hearing held October 27, 2015, on pending motions of the State, the Party, and other parties, the court indicated that it was inclined to grant partial summary judgment to the Party, striking at least one provision of SB54 as unconstitutional, § 20A-9-101(12)(a), after giving the State a reasonable opportunity to respond.[17]

21.      At the October 27, 2015, hearing, the court inquired into Defendants' position regarding another provision of SB54, § 20A-9-101(12)(d), which only required that members of a QPP, such as the Party, be permitted "to seek nomination by either or both of the following methods," referring to the convention method and signature-gathering methods, and asked Defendants' counsel to "tell me what that means."[18]

---

[16] Const. Art. XII.2.I & 5.A.
[17] See Summary Judgment Ruling, First Lawsuit, Doc. 207, filed November 3, 2015 (hereinafter "**Summary Judgment Ruling**"), at 2, 37-38; Opposition to Motion for Summary Judgment, First Lawsuit, Doc. 176, filed October 9, 2015, at 3.
[18] *See* Transcript of Hearing, First Lawsuit, Doc. 202, held October 27, 2015 (hereinafter

22.     Following the Defendants' counsel response, the court clarified: "The qualified political party – let me go back to that – under 12(d), has to permit the member to do one or both of the petition method or nomination through the convention method. So if they only permit nomination by convention, they would be a QPP under 12(d)."[19] To which Defendants' counsel answered: "Yes," later confirming: "You can be a QPP by providing either of those methods or both."[20]

23.     After this exchange at the October 27 hearing, the court indicated its intent to strike § 101(12)(d) as unconstitutional, and asked the parties what, if any, issues remained in the case ripe for adjudication.[21]

24.     In reliance on the statements made by Defendants' counsel, and other developments since the First Lawsuit was filed, the Party answered that there were no remaining issues in the case.[22]

25.     On November 3, 2015, the court issued its order striking § 20A-9-101(12)(a) as unconstitutional, and, based on the statements of the parties at the October 27 hearing, directed the case be closed.[23]

26.     On November 23, 2015, the court entered a Declaratory Judgment and Injunction in the First Lawsuit, declaring that Utah Code § 20A-9-101(12)(a) is unconstitutional and enjoining its

---

"**10/27/2015 Hrg.**"), at 34:7-9.

[19] *Id*. at 35:17-21.

[20] *Id*. at 35:23, 36:8-10. Defendants' counsel stated that he viewed § 101(d) as conflicting with another provision from SB54, § 20A-9-406(3), which he argued, "reaffirm[ed] the right of the individual,"[20] explaining how he anticipated that would "be the next lawsuit." Id. at 35:4-15, 35:24-36:5.

[21] *Id*. at 90:9-12.

[22] *Id*. at 90:17-19; First Lawsuit, Summary Judgment Ruling at 37.

[23] First Lawsuit, Summary Judgment Ruling at 29, 33, 38-39.

enforcement as applied to the Party.[24]

27.    The court left the remainder of SB54 intact, finding that the unconstitutional provision was severable, and noting that "Utah Code § 20A-9-406(1) replaces the function of Utah Code § 20A-9-101(12)(a), as applied to the Utah Republican Party," referring to the provision of the law that allows a QPP to determine for itself and certify to the Utah Lieutenant Governor who may vote for the QPP's candidates.[25]

28.    By leaving the remainder of SB54 intact, and having § 9-406(1) replace the function of § 9-101(12)(a), the court also restricted those persons who may sign nominating petitions for candidates seeking the nomination of a QPP by way of signature-gathering to those voters who are permitted by the QPP to vote in its primary election.[26]

29.    Accordingly, by its plain language, and as confirmed by Defendants in the First Lawsuit, SB54 only requires that a QPP permit its members to seek nomination "by either or both" of two methods: convention or signature-gathering.[27]

30.    Relying on the plain language of SB54, as well as statements made by or on behalf of Defendants in the First Lawsuit, the Party amended its membership requirements and the candidate-selection rules and procedures set forth in its Constitution and Bylaws, to restrict its candidate-selection procedures to the convention method.

31.    The Party formally declared this position to the Lieutenant Governor's office by letter dated November 10, 2015.[28] In response, by letter dated November 19, 2015, the Lieutenant

---

[24] Declaratory Judgment and Injunction, First Lawsuit, Doc. 215, filed November 23, 2015.
[25] *Id.* at ¶ 3.
[26] *Compare* Utah Code Ann. § 20A-9-408(8) *and* § 20A-9-406(1).
[27] Utah Code Ann. § 20A-9-101(12)(b).
[28] *See* Letter from James Evans, Chairman of the Utah Republican Party, to Lt. Gov. Spencer J.

Governor stated his understanding that there was "a conflict between the Utah Republican Party's reading of two sections of the Utah Code enacted in 2014 by SB54 and the reading by my office of those same sections, namely Utah Code Sections 20A-9-406(3) and 20A-9-101(12)(d)."[29]

32.     The Lieutenant Governor stated his intent to overrule and impose his reading of those provisions enacted by SB54 to force the Party to accept the nomination of candidates by way of the signature-gathering method: "I must, and intend to, allow candidates, in a qualified political party, the opportunity to choose between the convention system, gathering signatures or both. Any objection by a qualified political party to reject candidates who gather signatures will not be sustained by my office."[30] That statement of intent is contrary to the legal and factual positions Defendants took in the First Lawsuit – as set forth in statements made by State counsel representing Defendants and the sworn testimony of their representative – that the Court and Party relied on in resolving that matter.

33.     The Lieutenant Governor further extended his intent – that is now contrary to the legal and factual positions Defendants took in the First Lawsuit and which the Court and Party relied on in resolving that matter – in a in a letter that his office prepared, dated November 20, 2015, responding to inquiries made by Republican State Senator Todd Weiler.[31]

---

Cox, dated November 19, 2015, available at http://elections.utah.gov/Media/Default/2016%20Election/UTGOP%20Lt%20Gov%20Position%20Letter%20Preliminary%2011.10.2015.pdf (last checked at the time of filing).

[29] *See* Letter from Lt. Gov. Spencer J. Cox to James Evans, Chairman of the Utah Republican Party, dated November 19, 2015 (hereinafter "11/19/2015 Cox Letter"), at 1, available at http://elections.utah.gov/Media/Default/2016%20Election/James%20Evans%20letter%2011.19.2015.pdf (last checked at the time of filing).

[30] *Id*. at 3.

[31] *See* Letter from Utah Director of Elections Mark Thomas, Lieutenant Governor's Office, to

34.     In that letter, the Lieutenant Governor's office was responding to Weiler's inquiries based on his stated intent to seek the Party's nomination in the 2016 election cycle by signature-gathering.

35.     Weiler asked the Lieutenant Governor's office if he, as a Republican Party member, has the choice under current law to seek the Party's nomination by signature-gathering, to which the Lieutenant Governor's office responded: "Yes…. [T]he individual or member [of the Party] has the ability to choose which method they will seek the nomination under," regardless of what the Party's rules or procedures say in that respect.[32]

36.     By taking that position, which is contrary to the legal and factual positions Defendants took in the First Lawsuit – as set forth in statements made by State counsel representing Defendants and the sworn testimony of their representative – and that the Court and Party relied on in resolving that matter, Defendants are imposing SB54 in a way that is both contrary to the plain language of § 9-101(12)(b) and (d) and unconstitutionally burdens the Party's rights.

37.     By taking that position, the Lieutenant Governor's office is permitting a member seeking the Party's nomination to violate the its rules and procedures, and to act contrary to the member's certification that he or she will comply with the Party's rules and procedures in seeking the nomination.

38.     Weiler asked the Lieutenant Governor's office, "what if my party says I can't collect signatures?" to which the Lieutenant Governor's office responded that it would overrule any

---

Utah State Senator Todd Weiler, dated November 20, 2015 (hereinafter "Weiler Letter"), attached hereto as Exhibit 2.

[32] *Id.* at 1.

objection the Party might make to "candidates who gather signatures."[33]

39.     By taking that position, which is contrary to the legal and factual positions Defendants took in the First Lawsuit – as set forth in statements made by State counsel representing Defendants and the sworn testimony of their representative – and that the Court and Party relied on in resolving that matter, Defendants are imposing SB54 in a way that is both contrary to the plain language of § 9-101(12)(b) and (d) and unconstitutionally burdens the Party's rights.

40.     By taking that position, the Lieutenant Governor's office is permitting a member seeking the Party's nomination to violate the its rules and procedures, and to act contrary to the member's certification that he or she will comply with the Party's rules and procedures in seeking the nomination.

41.     Weiler asked if the Lieutenant Governor's office would certify him for the Party's primary even if it was contrary to the Party's rules and procedures (and his certification to comply with them), to which the Lieutenant Governor's office responded, stating that the Party "must allow candidates to collect signatures" and that it "will not be in compliance [with the law] if it does not allow a candidate to collect signatures."[34]

42.     By taking that position, which is contrary to the legal and factual positions Defendants took in the First Lawsuit – as set forth in statements made by State counsel representing Defendants and the sworn testimony of their representative – and that the Court and Party relied on in resolving that matter, Defendants are imposing SB54 in a way that is both contrary to the plain language of § 9-101(12)(b) and (d) and unconstitutionally burdens the Party's rights.

43.     By taking that position, the Lieutenant Governor's office is permitting a member seeking

---

[33] *Id*. at 2.
[34] *Id*. at 3.

the Party's nomination to violate the its rules and procedures, and to act contrary to the member's certification that he or she will comply with the Party's rules and procedures in seeking the nomination.

44.     In response to further questions, the Lieutenant Governor's office indicated that it was considering disqualifying the Party as a QPP (or otherwise) if it did not allow members to seek its nomination by signature-gathering, in a manner that violated Party rules, and the candidate's own certification required by those rules.[35]

45.     By taking that position, which is contrary to the legal and factual positions Defendants took in the First Lawsuit – as set forth in statements made by State counsel representing Defendants and the sworn testimony of their representative – and that the Court and Party relied on in resolving that matter, Defendants are imposing SB54 in a way that is both contrary to the plain language of § 9-101(12)(b) and (d) and unconstitutionally burdens the Party's rights.

46.     By taking that position, the Lieutenant Governor's office is permitting a member seeking the Party's nomination to violate the its rules and procedures, and to act contrary to the member's certification that he or she will comply with the Party's rules and procedures in seeking the nomination.

47.     On December 3, 2015, the Party wrote a letter to the Lieutenant Governor asking him to reconsider his position, but to date the Lieutenant Governor has not responded or indicated that he intends to reconsider.

48.     Accordingly, based on the Lieutenant Governor's change in position from that asserted in the First Lawsuit, and how the State intends to enforce SB54 against the Party, including a

---

[35] *Id*. at 3.

possible disqualification as a QPP or otherwise as a Utah registered political party, the Party's

rights are being, and will be, unconstitutional burdened by the unstricken provisions of SB54.

49.     As set forth above, the Lieutenant Governor is now threatening to disqualify the Party as

a QPP if it does not allow candidates to seek its nomination pursuant to SB54's signature-

gathering provisions.

50.     As Defendants have stated their intent to enforce SB54 against the Party, it will burden

the rights of the Party and its members in at least the following ways:

### **Judicial Estoppel**

51.     First, the State's change in position from those taken by the Defendants, and their

representatives, in the First Lawsuit burdens the Party's rights in how it violates the principles of

judicial estoppel.

52.     As the Supreme Court has held: "Where a party assumes a certain position in a legal

proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his

interests have changed, assume a contrary position, especially if it be to the prejudice of the party

who has acquiesced in the position formerly taken by him."[36]

53.     The actions of Defendants contrary to the positions they took in the First Lawsuit, that the

Party relied on, and that the court relied on in, among other things, rejecting the Party's claims

that SB54 restricted its ability to endorse the candidates of its choice and to regulate the Party's

internal affairs free from State influence.[37]

### **Unconstitutional Burden on the Party's Constitutional Rights**

54.     Second, the State's interpretation of SB54 to require that a QPP permit members to seek

---

[36] *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).
[37] First Lawsuit, Prelim. Inj. Order at 19-20.

its nomination by "both" methods of convention and signature-gathering burdens the rights of the Party and its members in a way that is contrary to the plain language of SB54, which only requires that the Party permit members to seek its nomination by "either or both" of those methods. And Defendants are seeking impermissibly to impose its preferred candidate-selection process on the Party in place of the rules and procedures that the Party has determined for itself will produce nominees that best reflect the Party's platform and views.

55.     Contrary to the assurances that the court in the First Lawsuit gave the Party in rejecting some of its claims, Defendants are now dictating to the Party who is, and is not, allowed to be a member, how the Party defines membership, and that the Party has no say in whether an individual may seek the Party's nomination in a manner that is contrary to its rules, and contrary to the certification that the individual must make in choosing to pursue the Party's nomination in the first place.[38]

56.     The First and Fourteenth Amendments to the United States Constitution guarantee to the Party and its members the right to associate in a political party, the right to act and govern themselves as a political party, the right to vote as a party in Utah elections, the right to define who belongs to the Party, the right to determine for itself the Party's platform and message, the right to allocate its name, title, emblems, and endorsements to those candidates it believes will best represent the Party's political platform, the right to determine for itself the candidate selection process that will produce the nominee who best represents the Party's political platform, and to not be deprived of those rights without due process of law. These are core Constitutional freedoms held individually and collectively by the members of the Utah

---

[38] *Compare id*. at 19-20.

Republican Party, and by the Party itself.

57.     By now taking an interpretation of SB54 that is contrary to the positions taken by the State in the First Lawsuit, and contrary to the assurances of the court in the First Lawsuit, the State is seeking to impose on the Party a system of candidate-selection rules and internal processes that is different from the rules and processes the Party has chosen for itself to ensure that its nominees for elected office are members in good standing who represent its political platform. In so doing, the State is violating the rights of the Party and its members to free association, free speech and due process, and its ability to control its own brand and message, and its authority over its endorsement, name, and emblems.

## Unconstitutional Signature-Gathering Requirements

58.     There is at least one final way in which Defendants' actions burdens the rights of the Party and its members, and it relates to the threshold signature-gathering requirements set forth in SB54.

59.     As stated above, despite assurances that the Party could limit candidates to the convention method, less than a month after the October 27 hearing, Defendants reversed course, asserting in letters dated November 19 and 20 that the Lieutenant Governor's office will (1) overrule any objection to candidates who seek nomination by signature-gathering in violation of the Party's rules, and (2) potentially disqualify the Party as a QPP if it does not allow members to seek nomination by signature-gathering, in violation of its rules and the individual's own certification to the Party, with impunity.

60.     Signature gathering for a QPP under SB54 is governed by Utah Code § 20A-9-408, which requires that candidates seeking the Party's nomination for elected office in any of the

following political subdivisions obtain signatures in the following amounts:

      a.   for a statewide race, 28,000 signatures of registered voters permitted by the QPP to vote in a primary election;

      b.   for a congressional district race, 7,000 signatures of registered voters permitted by the QPP to vote in a primary election;

      c.   for a state Senate district race, 2,000 signatures of registered voters permitted by the QPP to vote in a primary election;

      d.   for a state House district race, 1,000 signatures of registered voters permitted by the QPP to vote in a primary election; and

      e.   for a county office race, signatures of 3% of registered voters permitted by the QPP to vote in a primary election.[39]

61.    According to the Lieutenant Governor's office, there are currently approximately 586,702 registered Republican voters in the State of Utah.

62.    By demanding that the Party must allow candidates to seek its nomination by signature-gathering under § 9-408, under the threat of disqualification by the Lieutenant Governor, SB54 imposes threshold requirements on candidates seeking the Party's nomination by signature-gathering at the state, county, or local levels that exceed the thresholds established by the Supreme Court.

63.    The United States Supreme Court has only upheld signature-gathering requirements that were 5% of the designated population, suggesting that anything more than 5% would impose an unconstitutional burden on the rights of the party and its members under the First and Fourteenth

---

[39] Utah Code Ann. § 20A-9-408.

Amendments of the U.S. Constitution, and other federal courts have applied these standards to strike down signature requirements over 5%.[40] The Party is challenging the entirety of these signature requirements as unconstitutional.

64.     In particular, under SB54, and because the Party has certified as a QPP, members seeking the Party's nomination for elected office in at least two congressional districts, Districts 2 and 4 which according to the Lieutenant Governor's records have 139,593 and 123,542 registered Republican Party members, respectively, face signature-gathering requirements under Utah Code Ann. § 20A-9-408 that exceed the 5% levels that the Supreme Court has indicated are constitutionally permissible, imposing a severe and unconstitutional burden on the Party and its members.

65.     The unconstitutional burden of the signature-gathering requirements that Utah Code Ann. § 20A-9-408 imposes on the Party and its members are even more onerous, and more blatantly unconstitutional, as applied to members seeking the Party's nomination for elected office in the state legislature.

66.     Under SB54, and because the Party has certified as a QPP, members seeking the Party's nomination for elected office in one of the State's twenty-nine State Senate districts, which according to the Lieutenant Governor's records have registered Republican Party members as set forth below, face signature-gathering requirements under Utah Code Ann. § 20A-9-408 that range between approximately 6% to 31% of all registered Republicans in their respective districts, exceeding the levels that the Supreme Court has indicated are constitutionally

---

[40] *See, e.g., Jenness v. Fortson*, 403 U.S. 431, 438 (1971); *Storer v. Brown*, 415 U.S. 724, 739 (1974); *Lee v. Keith*, 463 F.3d 763, 772 (7th Cir. 2006).

permissible and imposing a severe and unconstitutional burden on the Party and its members.

| STATE SENATE | | | |
|---|---|---|---|
| District # | Registered Party Members | Signatures Required | Percentage |
| 1 | 6490 | 2000 | 30.82% |
| 2 | 8216 | 2000 | 24.34% |
| 3 | 8397 | 2000 | 23.82% |
| 4 | 18901 | 2000 | 10.58% |
| 5 | 9596 | 2000 | 20.84% |
| 6 | 15624 | 2000 | 12.80% |
| 7 | 22474 | 2000 | 8.90% |
| 8 | 16128 | 2000 | 12.40% |
| 9 | 21523 | 2000 | 9.29% |
| 10 | 24121 | 2000 | 8.29% |
| 11 | 23305 | 2000 | 8.58% |
| 12 | 12025 | 2000 | 16.63% |
| 13 | 26936 | 2000 | 7.43% |
| 14 | 32212 | 2000 | 6.21% |
| 15 | 24186 | 2000 | 8.27% |
| 16 | 21325 | 2000 | 9.38% |
| 17 | 24362 | 2000 | 8.21% |
| 18 | 16024 | 2000 | 12.48% |
| 19 | 18147 | 2000 | 11.02% |
| 20 | 18503 | 2000 | 10.81% |

| 21 | 19585 | | 2000 | 10.21% |
|---|---|---|---|---|
| 22 | 26404 | | 2000 | 7.57% |
| 23 | 24122 | | 2000 | 8.29% |
| 24 | 26473 | | 2000 | 7.55% |
| 25 | 22596 | | 2000 | 8.85% |
| 26 | 24255 | | 2000 | 8.25% |
| 27 | 20232 | | 2000 | 9.89% |
| 28 | 26362 | | 2000 | 7.59% |
| 29 | 28178 | | 2000 | 7.10% |
| TOTAL | 586702 | | | |

67. Under SB54, and because the Party has certified as a QPP, members seeking the Party's nomination for elected office in one of the State's seventy-five State House districts, which according to the Lieutenant Governor's records have registered Republican Party members as set forth below, face signature-gathering requirements under Utah Code Ann. § 20A-9-408 that range between approximately 7% to 57% of all registered Republicans in their respective districts, exceeding the levels that the Supreme Court has indicated are constitutionally permissible and imposing a severe and unconstitutional burden on the Party and its members. In fact, in those districts where the requirements exceed 50% levels, the requirements of SB54 limit the number of candidates to 1 who can possibly qualify for the Party's primary, because members may only sign one petition per elected office.

| STATE HOUSE OF REPRESENTATIVES |
|---|

| District # | Registered Party Members | Signatures Required | Percentage |
|---|---|---|---|
| 1 | 10061 | 1000 | 9.94% |
| 2 | 9835 | 1000 | 10.17% |
| 3 | 10008 | 1000 | 9.99% |
| 4 | 6119 | 1000 | 16.34% |
| 5 | 10137 | 1000 | 9.86% |
| 6 | 10078 | 1000 | 9.92% |
| 7 | 8383 | 1000 | 11.93% |
| 8 | 6102 | 1000 | 16.39% |
| 9 | 4531 | 1000 | 22.07% |
| 10 | 5003 | 1000 | 19.99% |
| 11 | 7343 | 1000 | 13.62% |
| 12 | 7253 | 1000 | 13.79% |
| 13 | 6526 | 1000 | 15.32% |
| 14 | 5932 | 1000 | 16.86% |
| 15 | 10004 | 1000 | 10.00% |
| 16 | 7064 | 1000 | 14.16% |
| 17 | 10423 | 1000 | 9.59% |
| 18 | 12227 | 1000 | 8.18% |
| 19 | 11075 | 1000 | 9.03% |
| 20 | 8691 | 1000 | 11.51% |
| 21 | 5645 | 1000 | 17.71% |
| 22 | 3868 | 1000 | 25.85% |

| 23 | 2086 | 1000 | 47.94% |
|----|-------|------|--------|
| 24 | 3648 | 1000 | 27.41% |
| 25 | 2294 | 1000 | 43.59% |
| 26 | 1748 | 1000 | 57.21% |
| 27 | 14004 | 1000 | 7.14% |
| 28 | 5678 | 1000 | 17.61% |
| 29 | 10210 | 1000 | 9.79% |
| 30 | 4177 | 1000 | 23.94% |
| 31 | 2805 | 1000 | 35.65% |
| 32 | 8769 | 1000 | 11.40% |
| 33 | 2897 | 1000 | 34.52% |
| 34 | 4737 | 1000 | 21.11% |
| 35 | 2684 | 1000 | 37.26% |
| 36 | 8442 | 1000 | 11.85% |
| 37 | 7246 | 1000 | 13.80% |
| 38 | 3475 | 1000 | 28.78% |
| 39 | 5163 | 1000 | 19.37% |
| 40 | 4641 | 1000 | 21.55% |
| 41 | 9940 | 1000 | 10.06% |
| 42 | 7284 | 1000 | 13.73% |
| 43 | 5861 | 1000 | 17.06% |
| 44 | 5600 | 1000 | 17.86% |
| 45 | 6599 | 1000 | 15.15% |

| 46 | 7587 | 1000 | 13.18% |
| 47 | 5786 | 1000 | 17.28% |
| 48 | 12104 | 1000 | 8.26% |
| 49 | 9222 | 1000 | 10.84% |
| 50 | 11799 | 1000 | 8.48% |
| 51 | 8100 | 1000 | 12.35% |
| 52 | 9222 | 1000 | 10.84% |
| 53 | 9964 | 1000 | 10.04% |
| 54 | 8898 | 1000 | 11.24% |
| 55 | 10089 | 1000 | 9.91% |
| 56 | 10763 | 1000 | 9.29% |
| 57 | 10567 | 1000 | 9.46% |
| 58 | 9255 | 1000 | 10.80% |
| 59 | 9732 | 1000 | 10.28% |
| 60 | 10657 | 1000 | 9.38% |
| 61 | 8799 | 1000 | 11.36% |
| 62 | 10619 | 1000 | 9.42% |
| 63 | 5359 | 1000 | 18.66% |
| 64 | 6957 | 1000 | 14.37% |
| 65 | 10745 | 1000 | 9.31% |
| 66 | 9451 | 1000 | 10.58% |
| 67 | 8615 | 1000 | 11.61% |
| 68 | 8695 | 1000 | 11.50% |

| 69 | 6182 | | 1000 | 16.18% |
|---|---|---|---|---|
| 70 | 9169 | | 1000 | 10.91% |
| 71 | 10513 | | 1000 | 9.51% |
| 72 | 9621 | | 1000 | 10.39% |
| 73 | 9764 | | 1000 | 10.24% |
| 74 | 12138 | | 1000 | 8.24% |
| 75 | 10034 | | 1000 | 9.97% |
| TOTAL | 586702 | | | |

68.     These requirements exceed any signature-gathering requirement ever allowed by the United States Supreme Court, and thus unconstitutionally burden the rights of the Party and its members.

69.     By imposing such high levels of signature-gathering requirements on candidates seeking the Party's nomination, under the interpretation now threatened by the Lieutenant Governor, SB54 effectively seeks to force the Party to allow unaffiliated voters to sign petitions for candidates seeking its nomination signature-gathering, which, in turn, would force the Party to allow those unaffiliated voters to participate in the Party's primary. That is exactly what the court ruled the State could not do in the First Lawsuit.

### FIRST CAUSE OF ACTION

### For Declaratory Relief Establishing The Unconstitutionality of SB54 For Violating The Party's Rights

70.     Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

71.     This claim for relief arises under the First and Fourteenth Amendments to the United

States Constitution, and 42 U.S.C. § 1983.

72.     An actual controversy exists between the Party and the State of Utah with regard to the

exercise of constitutionally protected First Amendment associational rights.

73.     The Party is entitled to a declaratory judgment establishing the unconstitutionality of the

SB54 set forth above as applied to the manner in which

       a.   the State has taken a different position from that taken in the First Lawsuit, that

            the Party relied on in terminating prior litigation;

       b.   the State has taken away and misappropriated the Party's right to certify and

            endorse its nominees for elected office;

       c.   the State has taken away and misappropriated the Party's right to communicate its

            endorsement on the general election ballot and to control the use of its name and

            emblem on the ballot;

       d.   the State has taken away and misappropriated the Party's right to determine for

            itself the candidate selection process that will produce a nominee who best

            represents the Party's political platform;

       e.   burdened the Party's associational rights by mandating changes to the Party's

            internal rules and procedures, at the threat of depriving the Party of its rights if it

            refuses to comply, that disadvantage the Party, and that the Party has rejected and

            that conflict with the rules the Party has determined for itself, as set forth in its

            Constitution and Bylaws, will produce a nominee who best represents the Party's

            political platform;

f.  burdened the Party's associational rights, and the rights of disassociation, by imposing upon the Party a nominee who may not necessarily be a Party member and without guaranteeing that nominee has been selected by a majority of Party members participating in the primary election;

g.  burdened the Party's associational rights and rights to free speech, by taking away the Party's right to have its nominees commit themselves to the Party Platform "as the standard by which my performance as a candidate and as an officeholder should be evaluated," and replacing it with a process that requires only that candidates gather signatures;

h.  burdened the Party's associational rights, and the rights of disassociation, by taking away the Party's convention system as its preferred way of selecting nominees and allowing a party to designate candidates in the primary election by convention only if it agrees to open that primary election, that the State now mandates, to persons unaffiliated with the Party;

i.  burdened the Party's associational rights and the rights of disassociation, by imposing on candidates seeking the Party's nomination onerous signature gathering requirements beyond those ever allowed by the United States Supreme Court, and thus unconstitutionally burdens the Party's rights;

j.  burdened the rights of the Party and its members by imposing on them signature-gathering requirements beyond those ever allowed by law; and

k.  otherwise burdening the Party's rights of association, or depriving it of its rights of disassociation, free speech and due process as set forth above.

74.     SB54 authorizes and directs Defendants and other election officials to infringe on the Party's rights as set forth above without a compelling state interest.

75.     Pursuant to 42 U.S.C. § 1983 *et. seq.*, the Party is entitled to a declaratory judgment declaring these rights, and to an award of reasonable attorneys' fees and costs in this action.

## SECOND CAUSE OF ACTION

### For Injunctive Relief To Prevent The Deprivation Of Plaintiff's Constitutional Rights

76.     Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

77.     Enforcement of SB54 constitutes an imminent and ongoing threat by the State of Utah, acting by and through Defendants, to deprive the Party and its members of their civil rights and constitutionally protected rights.

78.     The Party will suffer irreparable injury the State is allowed to take a different position from that taken in the First Lawsuit, which the Party relied on in terminating prior litigation.

79.      The Party will suffer irreparable injury its nominees are selected in the manner now dictated by the election code, as amended by SB54, where the Party and its members are deprived of the right

    a.  to certify and endorse its nominees for elected office;

    b.  to communicate its endorsement on the general election ballot and to control the use of its name and emblem on the ballot;

    c.  to determine for itself the candidate selection process that will produce a nominee who best represents the Party's political platform;

    d.  to determine the internal rules and procedures that govern that designated

27

candidate selection process, free of the State's threat to deprive the Party of its

rights if it refuses to comply with rules that disadvantage the Party and that

conflict with the Party's chosen rules;

e.   to require that Party's nominee is a member selected by either a supermajority of

Party delegates or a majority of Party members participating in the primary

election;

f.   to require that its nominees commit themselves to the Party Platform "as the

standard by which [their] performance as a candidate and as an officeholder

should be evaluated";

g.   to require that, in order to keep aspects of the Party's convention system, the Party

open up its primary election, that the State now mandates, to persons unaffiliated

with the Party;

h.   to require that candidates seeking the Party's nomination gather signatures beyond

requirements ever allowed by the United States Supreme Court, thus

unconstitutionally burdening the Party's rights; and

i.   to exercise its rights of association, free speech, and disassociation as set forth

above.

80.   SB54 deprives the Party, and its members and supporters, of the right to due process of

law as guaranteed by the Fourteenth Amendment to the United States Constitution, without a

compelling state interest.

81.   Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment stating that

SB54 violates the Party's rights and 42 U.S.C. § 1983, and should enter a permanent injunction

enjoining enforcement or application of SB54 to the Party.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for an entry of judgment in its favor and against

Defendants as follows:

1.      A declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that SB54

violates the Party's rights under the First and Fourteenth Amendments to the United States

Constitution, and the Party's rights to control and direct the use of its name, title, emblems, and

endorsements;

2.      A permanent injunction enjoining enforcement and implementation of SB54;

3.      A judgment awarding Plaintiff its damages and costs of suit, including reasonable

attorneys' fees under 42 U.S.C. § 1988; and

4.      Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted this 15th day of January, 2015.

*/s/ Marcus R. Mumford*
Attorney for Plaintiff

VERIFICATION

I, James Evans, Chairman of the Utah Republican Party, have read the foregoing

Complaint and declare under penalty of perjury that is true and correct, and true and correct to

the best of my knowledge, information and belief.

_____

James Evans