R. Blake Hamilton (11395)
Janise K. Macanas (8065)
John R. Richardson (18078)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000
blake.hamilton@dentons.com
janise.macanas@dentons.com
johnny.richardson@dentons.com

*Attorneys for County Defendant Brian McKenzie*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>SPENCER COX, *et al.*,<br><br>Defendants. | **DEFENDANT BRIAN MCKENZIE'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No.: 2:25-cv-00909-HCN-JCB<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

Defendant Brian McKenzie hereby submits this memorandum opposing Plaintiffs' Motion for Preliminary Injunction (the "Motion").[1]

---

[1] Both McKenzie and the State, Legislative, and Judicial Defendants filed motions to extend their respective deadlines to oppose the Motion on November 7, 2025. Because the Court has yet to enter an order granting the motions to extend, McKenzie submits this narrow opposition to the Motion and reserves the right to join in any memoranda filed in opposition to the Motion by other defendants.

## I.     ALLEGATIONS AGAINST BRIAN McKENZIE

The Complaint advances sweeping accusations against numerous government officials and Utah Republican Party figures, alleging the existence of a racketeering enterprise that allegedly conspired to manipulate the nomination process for candidates for Utah office from 2016 through 2024. According to Plaintiffs, the defendants collectively violated Utah election laws, infringed constitutional rights, and engaged in mail and wire fraud by certifying candidates who sought Utah Republican Party ("URP") nominations through the signature-gathering method authorized by section 20A-9-408 of the Utah Code, rather than by the convention method described in section 20A-9-407. Plaintiffs contend that this conduct unlawfully nullified the results of the 2024 URP convention and corrupted Utah's electoral process.

Within that broader framework, the specific allegations directed at Defendant Brian McKenzie, the Davis County clerk, are exceedingly sparse. The Complaint does not allege that Mr. McKenzie participated in drafting, implementing, or enforcing the legislation at issue; in certifying any particular candidate to the ballot; or in administering the URP's internal nomination procedures. Plaintiffs allege only that McKenzie played a role in the verification of candidate signatures submitted under Utah's dual-path nomination system—which the Complaint acknowledges is a statutory duty under Utah Code section 20A-9-408(c)(3)—and that he made two public statements defending the County's role in that verification process. (Compl. ¶¶ 12, 112, 145.) The Complaint contains no allegation that McKenzie manipulated, falsified, or misrepresented any signature data, nor that he had any legal authority over the certification of URP candidates to the statewide ballot.

## II.   ARGUMENT

"Because a preliminary injunction is an extraordinary remedy never awarded as of right, the movant must make a clear and unequivocal showing it is entitled to such relief." *State v. U.S. Envt'l Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021) (cleaned up). To obtain a preliminary injunction, the movant must show (1) it "is substantially likely to succeed on the merits," (2) it "will suffer irreparable injury if the injunction is denied," (3) its "threatened injury outweighs the injury the opposing party will suffer under the injunction," and (4) "the injunction would not be adverse to the public interest." *Id.* (citation omitted).

"Certain types of preliminary injunctions are disfavored and require a movant to satisfy a heightened standard." *Id.* (citation omitted). Such injunctions include those "that alter the status quo." *Id.* (citation omitted). Because Plaintiffs' proposed injunction seeks to halt enforcement of decade-old legislation that has been applied in numerous elections, it is a disfavored injunction.

   A. *Plaintiffs Are Not Substantially Likely to Prevail on Their Claim Against McKenzie*[2]

"To prove a RICO violation, a plaintiff must show that that the defendant violated the RICO statute, and the plaintiff was injured 'by reason of' that violation." *CGC Holding Co. v. Broad and Cassel*, 773 F.3d 1076, 1088 (citing 18 U.S.C. §§ 1962, 1964(c)). "A defendant violates the act when he (1) participates in the conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity." *Id.* As to any particular defendant, this requires a showing that the defendant "participated in the operation or management of the enterprise itself" and must have had "some part in directing the enterprise's affairs." *George v. Urban Settlement Servs.*, 833 F.3d

---

[2] The Complaint includes five separate claims. The only claim that names McKenzie is Count II: Civil Claim Under 18 U.S.C. § 1964 (Civil RICO). (*See* Compl. ¶¶ 219–260.)

1242, 1251 (10th Cir. 2016) (cleaned up). And "a defendant must do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise." *Id.*

As with any other claim, a complaint alleging RICO violations "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints*, 148 F.4th 1202, 1210 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 662). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Given the allegations in the Complaint, Plaintiffs are unlikely to show that Defendant Brian McKenzie is liable for a RICO violation. Plaintiffs' RICO theory rests on the assertion that various Utah officials and party figures orchestrated a racketeering enterprise to manipulate candidate certifications and that McKenzie, merely by verifying signatures and publicly defending his office's role in that process, participated in that allegedly criminal enterprise. The Complaint identifies no facts suggesting that McKenzie had any agreement with, or knowledge of, any alleged scheme, much less that he participated in its operation or management or that he had any part in directing its affairs. This is fatal to the RICO claim against McKenzie.

There is no dispute that McKenzie's role in verifying signatures is required by statute. The relevant provision of the Utah Election Code provides that the election officer shall, "with the assistance of the county clerk as applicable, determine whether each signer is a registered

4

voter who is qualified to sign the petition." Utah Code § 20A-9-408(9)(c)(iii). The Complaint itself recognizes this. (Compl. ¶ 12.) The Complaint includes no allegation that McKenzie, either intentionally or unintentionally, counted unregistered voters as qualified signers, accepted invalid signatures, or otherwise participated in any criminal act. Nor does it allege that he falsified, concealed, or manipulated any data in the course of verifying candidate-nomination petitions. The only factual references to McKenzie concern two public social media posts—one on June 21, 2024, and another on August 20, 2024—in which he explained his office's statutory responsibilities regarding signature verification and affirmed that those duties had been carried out in accordance with Utah law. (Compl. ¶¶ 112, 145; Compl. Ex. 39 at Images 13, 47.)

At bottom, Plaintiffs attempt to transform McKenzie's limited, obligatory administrative role in verifying signatures into participation in a racketeering enterprise. The factual allegations are wholly conclusory and do not plausibly suggest criminal conduct or criminal intent. Because Plaintiffs have failed to allege facts that, if proven, would establish that McKenzie conducted or participated in an enterprise through a pattern of racketeering activity, or that his actions are the cause of their injuries, they are not substantially likely to prevail on their RICO claim against him.

B.  <u>There Is No Threat of Irreparable Harm as a Result of McKenzie's Actions</u>

For similar reasons, there is no conduct by Brian McKenzie that the Court could enjoin to prevent irreparable harm. McKenzie's only relevant duties involve the routine verification of candidate-nomination signatures pursuant to Utah Code § 20A-9-408(3). That process is purely ministerial. Plaintiffs do not allege that McKenzie has discretion to alter or disregard those statutory requirements or that his lawful performance of them threatens any constitutional injury.

5

At most, Plaintiffs' allegations suggest that McKenzie will again perform the same verification functions in future election cycles. But an injunction preventing him from carrying out those duties would not redress Plaintiffs' claimed harms, which stem from the existence of the signature-gathering path itself. Thus, unless the Court finds it necessary to enjoin the entire signature-path election route altogether, there is no conduct on McKenzie's part alone that the Court should enjoin.

C. *An Injunction Is Not in the Public Interest*

The public interest is unquestionably served by a lawful and trustworthy election system. Could Plaintiffs demonstrate a substantial likelihood of proving Utah's statutory nomination procedures unlawful, an injunction preserving constitutional integrity would plainly advance that interest. But Plaintiffs have not demonstrated a likelihood of making such a showing, especially under the heightened standard required for disfavored injunctions that alter the status quo. Their allegations are speculative and their challenge rests on a sweeping disagreement with the State's dual-path nomination statute that has already been repeatedly upheld court. Entering an injunction on such a record would disserve, not promote, the public interest.

County clerks such as Brian McKenzie occupy a critical role in maintaining public trust in elections. Their ministerial duties are designed to preserve transparency and confidence in the process. Enjoining those duties without clear proof of illegality would signal to voters that the ordinary mechanisms of election administration cannot be trusted to function lawfully. Such an order would foster confusion, delay, and uncertainty.

While it is always in the public interest to ensure that elections comply with the law, it is contrary to the public interest—and to the governing equitable standards—to enjoin an established, duly enacted, and lawfully administered election system.

## III.   CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction insofar as it seeks relief against Defendant Brian McKenzie.

Dated: November 10, 2025.

**DENTONS DURHAM JONES PINEGAR P.C.**

/s/ *R. Blake Hamilton*
R. Blake Hamilton
Janise K. Macanas
John R. Richardson
*Attorneys for County Defendant Brian McKenzie*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to all counsel of record and to all pro se Plaintiffs.

/s/ *Carma Harper*
Paralegal