FILED
2025 NOV 14 AM 8:35
CLERK
U.S. DISTRICT COURT

Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN; et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX as an individual and official capacity; et. al, <br><br> Defendants | **PLAINTIFFS' REPLY TO [65] DEFENDANT OPPOSITION TO JOIN THE UNITED STATES AS A PLAINTIFF PURSUANT TO RULE 19** <br><br> Case No.2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

### I.   Introduction

1.      COMES NOW the Plaintiffs, Tracie Halvorsen, et. al., and hereby submits this reply to Defendant's Opposition to Plaintiffs' Motion for to join the United States as a Plaintiff pursuant to Rule 19 (ECF 65), pursuant to DUCivR 7-1(a)(4)(D)(iii). As set forth below, Defendants refuse to recognize the Plaintiffs' Constitutional rights granted to them by God.

### II.   Plaintiffs Reply to Defendants Introduction

2.      There is one thing Defendants are in no danger of possessing, and that's common sense—and their fondest hope is that this Court has misplaced its own. According to Defendants, the law permits conjuring up a second-chance primary, all while pretending the State's convention process in Utah Code 20A-9-407 is just a figment of the legislative imagination. One

doubts the legislative drafters intended to "ignore the statutes at will" as a path to good governance.

3. On the subject of common sense (or its elusive cousin), Defendants graciously remind us that the Tenth Circuit already upheld the "Either or Both" provision *in Utah Republican Party v. Cox*, 892 F.3d 1066 (10th Cir. 2018)—precisely because it doesn't mandate signature-gathering under Utah Code § 20A-9-101(13)(c) for every qualified political party. Those not on speaking terms with common sense may believe otherwise, but forcing signature gathering on a party to grant the convention **losers** a "second chance" at is nomination is so unconstitutional it's like inviting the runner-up to rewrite the rules once they've lost the race.

4. Defendants admit the Utah Supreme Court issued an interpretation of Utah Code § 20A-9-101(13)(c) ("the Either or Both Provision"), but they fail to mention that under Utah Code § 20A-9-401(2) states:

> "(2) This part may not be construed to govern or regulate the internal procedures of a registered political party."

Quoting Utah Code § 20A-9-401(2).

5. The URP does permit a member to seek its nomination for any elective office by choosing to do so through the party's convention process, in accordance with Section 20A-9-407. Despite Defendants' position, the party is not required to permit its members to seek nomination by collecting signatures under Section 20A-9-408. Defendants concede that the code allows "either" or both methods. Yet, in their preference for consolidating control and their disregard for the statutory language, they fail to recognize that the election code does not require both procedures and does not obligate a qualified political party to allow the signature-gathering option. The use of "either" in the statute plainly vests discretion in the party, not in state officials or third parties, to determine which nomination procedures it will offer.

> (13) "Qualified political party means a registered political party that:
>
> (c) permits a member of the registered political party to seek the registered political party's nomination for any elective office by the member choosing to seek the nomination by **either or** both of the following methods:
> (i) seeking the nomination through the registered political party's convention process, in accordance with the provisions of Section 20A-9-407; **or**
> (ii) seeking the nomination by collecting signatures, in accordance with the provisions of Section 20A-9-408; and"

Quoting Utah Code 20A-9-101(13)(c). [Internal quotes omitted and emphasis on bold.]

6. The reason this statutory language was found constitutional is its flexibility—members may seek nomination through either the convention or signature gathering, but only if the qualified politic party allows it. Here, the qualified political party, the URP, allows its members to seek its nomination through the states' primary convention process under Utah Code § 20A-9-407. The Section is even titled "convention process to seek the nomination of a qualified political party." Common sense is further defied by Defendants as this statute particularly mandates that the qualified political party certify the candidates nominated under the Section 20A-9-407.

> (6)(a) "A qualified political party **that nominates a candidate under this section shall certify the name of the candidate to the lieutenant governor** before the deadline described in Subsection 20A-9-202(1)(b)."

Quoting § 20A-9-407(6)(a). [Emphasis on bold]

7. Following Utah Code § 20A-9-407, the statute not only confirms the party's authority to choose its nomination procedures, but it also clarifies the practical outcomes the party's process creates. Defendants continue to deny common sense: the law provides that a qualified political party may nominate a candidate directly to the general election ballot or, if no candidate secures the required delegate support, to a final primary ballot. This structure is straightforward—when a candidate receives 60% or more of the delegate vote at the URP

primary convention, that candidate advances to the general ballot. If no candidate achieves that threshold, the top two vote-getters are "nominated to a final primary ballot," which is the state-issued primary. Thus, the code's process reflects precisely the discretion and outcome that the plain statutory text requires..

> (b) "The lieutenant governor shall include, in the **primary ballot certification** or, for a race where a primary is not held because the candidate is unopposed, in the **general election ballot certifica**tion, the name of each candidate nominated by a qualified political party under this section."

Quoting Utah Code § 20A-9-407(6)(b). [Emphasis on bold.]

8. The real dispute springs not from the words of the statute, but from how Defendants have managed to twist them; under their reading, a primary convention is just the first inning, and the losing side always gets to call for extra innings, all in defiance of 20A-9-401(2) "[t]his part may not be construed to govern or regulate the internal procedures of a registered political party."

9. Defendants improperly disregard the convention process in their approach to candidate nominations, electing instead to pursue a direct primary mechanism that circumvents the state's statutory requirements under Utah Code § 20A-9-407 and the political parties ability to use the convention process to nominate its candidates to the general ballot. Such conduct is contrary to the plain language and intent of the statute, which expressly provides at § 20A-9-407(6)(a) that "[a] qualified political party that nominates a candidate under [the convention process]…" Thus, Defendants' actions fail to adhere to the lawful procedures set forth by the Utah Legislature and undermine the integrity of the nomination process as contemplated by the state's election code.

10. After reviewing Defendants' response, Plaintiffs are compelled to question whether Defendants have meaningfully engaged with the claims and arguments set forth in the

Complaint. Defendants erroneously rely on the ruling of Chief Justice Durrant, who construed and applied the relevant law in a manner that denies Mr. Lyman's challenge without authority. Specifically, Chief Justice Durrant issued an opinion *per curiam*—an opinion meant to reflect the collective judgment of the full court—despite lacking statutory or constitutional authority to do so under the circumstances presented. Article VIII, Section 2 of the Utah Constitution requires that the Utah Supreme Court render final judgment either *en banc*[1] or in *division*, as provided by rule. Defendant Durrant, acting under color of law, issued an opinion contravening the requirements of both the Utah Constitution and Utah Code § 20A-4-403(4), thereby exceeding his lawful authority and undermining the proper judicial process.

11. Moreover, Defendants inaccurately assert that Plaintiffs seek to overturn the 2024 gubernatorial election. This is a mischaracterization of Plaintiffs' claims and borders on clever trickery or deceptive maneuvering. Plaintiffs have not asked this Court to overturn a valid election; rather, Plaintiffs maintain that the 2024 gubernatorial election cannot be "overturned" because no lawful election took place in the first place. Plaintiffs claim that those holding office, after being disqualified at convention, were nonetheless placed—improperly—on the primary and subsequently the general election ballot, in clear violation of controlling law. Thus, far from seeking to undo a lawful election, Plaintiffs simply seek to enforce the legal requirements for ballot qualification and officeholding.

---

[1] "En banc is a French term for on the bench, and it refers to a special court procedure where all judges of a particular appellate court hear a case, rather than a smaller panel of three judge."— *En banc*, Law.com Legal dictionary, https://dictionary.law.com/Default.aspx?selected=625#:~:text=en%20banc.%20(on%20bonk)%20French%20for%20%22in,more%20than%20one%20three%2D%20or%20four%2Djudge%20panel. (Last visited Nov. 13, 2025)

12. Moreover, Defendants falsely claim that Plaintiffs are seeking to overturn the 2024 governor election, this is what we the people call legal witchcraft as this is what the Defendants want this Court to believe, that there was a lawful election, which there was not. The Plaintiffs do not seek to overturn election because the Plaintiffs claim there was not a lawful election held. Those sitting in office, that gathered signatures, were disqualified at convention and should have never been placed on a Primary ballot, or a general ballot.

### III. Reply to Legal Standard

13. Defendants assert that a Rule 19 motion should only be granted in "exceptional circumstances," as though the violation of Plaintiffs' constitutional rights could never rise to that lofty standard. Yet nothing is more exceptional—nor more deserving of judicial attention—than the deprivation of those fundamental guarantees that form the bedrock of our republic. The United States Constitution, through Article IV's Guarantee Clause, obligates the federal government to secure for every state a representative, republican form of government. Here, Plaintiffs specifically claim that Defendants, through their conduct, did not merely undermine the electoral process or dilute representation—they categorically vetoed the delegate vote, which embodies the people's direct representative voice in governance. By nullifying this vote, Defendants have effectively stolen the federal constitutional guarantee from Utah's citizens, stripping them of meaningful representation at the very heart of their own government. To deny joinder in the face of such a threat to core constitutional protections is to elevate form over substance and ignore the very purpose of Rule 19: assuring complete and just relief where the foundational structure of representative government has been placed in jeopardy. This is precisely the circumstance for which federal courts exist—to vindicate the rights and principles that anchor our democratic republic.

### IV. Complete Relief and Practical Consequences

14. Defendants say the court doesn't need to involve the United States because everyone in the case can get the relief they need without it. But federal courts aren't just supposed to settle arguments between the people who show up—they also have to make sure their decisions don't hurt important federal interests, especially rights protected by federal law. Even if the United States isn't officially "bound" by a court's decision, a ruling made without its participation can still cause problems for the country and for others who want to protect their federal rights. If the United States has the legal power to enforce a law, or has a responsibility to protect federal rights, leaving it out may lead to unfair results or make it harder for people to get proper justice in the future. That's why courts sometimes need everyone whose rights or interests are at stake to be included—so their final decision truly fixes the problem and doesn't create long-term issues.

15. This issue carries even greater weight because Utah receives significant federal funding, and those elected in Utah—including through the processes challenged in this lawsuit—have the authority to decide where those federal dollars are allocated and who benefits from them. When the election process is compromised, it isn't just an abstract procedural harm; it directly impacts how and by whom federal resources will be distributed within the state. This means any error or violation in the state's electoral system can have real, practical effects on how federal programs are implemented and on the lives of Utah's residents who depend on them. That's yet another reason why it is critical for the United States to be included in this litigation—to safeguard not only constitutional principles but also the integrity and intended use of federal funds overseen by those holding state office.

16. When a candidate who was disqualified through Utah's convention process nonetheless occupies a United States Senate seat, the ramifications extend far beyond state borders. The U.S. Senate is a federal institution with the power to make decisions that affect national policy, confirm judicial appointments, ratify treaties, and allocate federal resources. If someone holds a Senate seat without properly following the qualification and nomination procedures established by state law, it compromises not only the legitimacy of that office but also undermines the integrity of federal governance and representation for all Americans. In essence, permitting a disqualified individual to serve in the U.S. Senate distorts the intent of both state and federal law and directly threatens the principle of representative government guaranteed by the United States Constitution. The federal government therefore has a direct and urgent interest in the outcome of litigation that challenges such fundamental violations, as the legitimacy and effectiveness of the Senate itself depends on the lawful selection of its members.

### V. Defendants' Misapplication of Rule 19

17. Defendants argue Rule 19(a)(1)(B) requires an absent party to "claim" an interest, but this is narrow legal maneuvering meant to sidestep Rule 19(a)(1)(A) and the equitable standard of *Provident Tradesmens Bank v. Patterson*, 390 U.S. 102 (1968). Federal courts recognize the United States's protectable interest even without formal intervention when federal rights, elections, or constitutional principles are at stake—these interests are substantial, not theoretical.

18. Defendants selectively apply Rule 19, relying only on subsection (B) and ignoring (A). Their approach asks the Court to overlook the mandatory, comprehensive nature of Rule 19; but the law is not a buffet—parties cannot pick the sections that suit them and ignore the rest.

8

19.　　Defendants cite *Greer v. Moon*, No. 2:24-cv-00421-DBB-JCB, 2024 WL 4241350 (D. Utah Sept. 19, 2024 to argue that Rule 19 requires an absent party to "explicitly claim" an interest, but *Greer* actually supports Plaintiffs: it focuses on practical responsibility for harm. If the United States is not joined, it becomes the de facto target for enforcing the Guarantee Clause while Defendants distort the law—underscoring why federal participation is necessary to protect foundational rights.

20.　　*Greer* teaches that Rule 19 is pragmatic and fact-sensitive, asking whether an absent party's exclusion leaves vital interests unprotected. Here, unlike in *Greer*, the United States has a direct, constitutional stake in guaranteeing a republican form of government and enforcing federal election rights, making its joinder essential to achieve complete, legitimate relief.

21.　　A sovereign or governmental interest of constitutional dimension means the government's core constitutional duties—guaranteeing representative government, enforcing federal rights like due process and equal protection, and safeguarding the integrity of federal institutions. When litigation threatens those duties, the government's participation is not optional; it is constitutionally necessary to protect the republic and the rule of law.

22.　　*United States v. Bowen,* 172 F.3d 682 (9th Cir. 1999) makes clear that under Rule 19, a party is "necessary" when its absence prevents the court from granting full relief, or when its interests may be affected by the case. Unlike Bowen, where joinder was unnecessary, here the United States holds sovereign and constitutional interests—guaranteeing republican government and protecting federal rights—that are directly implicated and cannot be fully protected if the United States is absent. Bowen's pragmatic approach to Rule 19 supports joining the United States to ensure complete and effective relief on federal constitutional issues.

## VI. Conclusion

23. Defendants present authority and arguments that misconstrue both the flexible and pragmatic standard governing Rule 19 and the scope of federal interests at issue. Plaintiffs' motion is well-supported by precedent ensuring that federal constitutional claims—where national interests could be prejudiced—require the consideration of the United States as a necessary party.

24. For these reasons, and those set forth in Plaintiffs' motion, joinder is proper. Plaintiffs respectfully request that the Court grant the motion to join the United States as a plaintiff.

## VII. Representations to the Court (Rule 11).

25. WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing PLAINTIFFS' REPLY TO [65] DEFENDANT OPPOSITION TO JOIN THE UNITED STATES AS A PLAINTIFF PURSUANT TO RULE 19 contains 2,751 words, complies with DUCivR 7-1(a)(4), is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated: November 14, 2025

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ Sophie Anderson
SOPHIE ANDERSON
138 East 12300 South
C275
Draper, Utah 84020
801-953-2841
jessandsophie03@yahoo.com
Plaintiff Pro Se

/s/ NANCY INMAN

/s/ STEVEN HUBER

| | |
|---|---|
| NANCY INMAN<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>916-396-4395<br>Nancyjinman@gmail.com<br>Plaintiff Pro Se | STEVEN HUBER<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>801-688-3594<br>traciehalvorsen@outlook.com<br>Plaintiff Pro Se |
| /s/ WAYNE WICKIZER<br>WAYNE WICKIZER<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>385-239-8326<br>justice@utahwtp.com<br>Plaintiff Pro Se | /s/ DANIEL NEWBY<br>DANIEL NEWBY<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>801-949-3360<br>danieltrouble@protonmail.com<br>Plaintiff Pro Se |

**Certificate of Service**

We hereby certify that on this 14th day of November, 2025, we electronically filed the PLAINTIFFS' REPLY TO [65] DEFENDANT OPPOSITION TO JOIN THE UNITED STATES AS A PLAINTIFF PURSUANT TO RULE 19 with the Clerk of the Court under the filing and electronic notification procedures outlined under DUCivR 5-1, which will send notification of such filings to all registered participants in this case.

Additionally, we certify that we caused a true and correct copy of the document to be served by mailing it pursuant to Federal Rules of Civil Procedure 5(b)(2)(c) to the following address, intended for all Defendants:

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Scott Cheney
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-4858
scheney@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

| | |
|---|---|
| R. Blake Hamilton<br>111 S. Main Street, Suite 2400<br>Salt Lake City, Utah 84111<br>Blake.hamilton@detons.com<br>*Attorney for Brian McKenzie* | Janise K. Macanas<br>111 S. Main Street, Suite 2400<br>Salt Lake City, Utah 84111<br>Janise.macanas@dentons.com<br>*Attorney for Brian McKenzie* |
| Alan R. Houston<br>Office of Legislative Research and General Counsel<br>Utah State Capitol Complex<br>House Building, Suite W210<br>Salt Lake City, Utah 84114-5210<br>ahouston@le.utah.gov<br>*Attorney Bramble, McCay, Durrant, Schultz, and Adams* | Christine R. Gilbert<br>Office of Legislative Research and General Counsel<br>Utah State Capitol Complex<br>House Building, Suite W210<br>Salt Lake City, Utah 84114-5210<br>cgilbert@le.utah.gov<br>*Attorney Bramble, McCay, Durrant, Schultz, and Adams* |
| Victoria S. Ashby<br>Office of Legislative Research and General Counsel<br>Utah State Capitol Complex<br>House Building, Suite W210<br>Salt Lake City, Utah 84114-5210<br>vashby@le.utah.gov<br>*Attorney Bramble, McCay, Durrant, Schultz, and Adams* | Robert Axson<br>7323 Hickory Hill Circle<br>Cottonwood Heights, Utah 84121 |
| Chris Null<br>5147 W. Gossamer Way<br>Riverton, Utah 84096 | Kim Coleman<br>8303 South 5260 West<br>West Jordan, Utah 84081 |

Executed on this 14th day of November 2025.

| | |
|---|---|
| /s/ Tracie Halvorsen<br>TRACIE HALVORSEN<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>801-688-3594<br>traciehalvorsen@outlook.com<br>Plaintiff Pro Se | /s/ Sophie Anderson<br>SOPHIE ANDERSON<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>801-953-2841<br>jessandsophie03@yahoo.com<br>Plaintiff Pro Se |
| /s/ NANCY INMAN<br>NANCY INMAN<br>138 East 12300 South | /s/ STEVEN HUBER<br>STEVEN HUBER<br>138 East 12300 South |

C275  
Draper, Utah 84020  
916-396-4395  
Nancyjinman@gmail.com  
Plaintiff Pro Se  

/s/ WAYNE WICKIZER  
WAYNE WICKIZER  
138 East 12300 South  
C275  
Draper, Utah 84020  
385-239-8326  
justice@utahwtp.com  
Plaintiff Pro Se  

C275  
Draper, Utah 84020  
801-688-3594  
traciehalvorsen@outlook.com  
Plaintiff Pro Se  

/s/ DANIEL NEWBY  
DANIEL NEWBY  
138 East 12300 South  
C275  
Draper, Utah 84020  
801-949-3360  
danieltrouble@protonmail.com  
Plaintiff Pro Se