FILED
2025 NOV 24 PM 2:19
CLERK
U.S. DISTRICT COURT

Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX, et. al, <br><br> Defendants | **PLAINTIFFS' OBJECTION TO [66] and [74] THE ORDERS GRANTING [54] and [73] DEFENDANTS' MOTION FOR EXTENSION OF TIME** <br><br> Case No. 2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

## I.    Statement of Objection

1.    COMES NOW Plaintiffs, Tracie Halvorsen, et al., and submit this Objection to Magistrate Judge Jared C. Bennett's Orders granting extensions of time to respond to Plaintiffs' Complaint and Motion for Preliminary Injunction. Plaintiffs object to the Order (ECF No. 66) granting the Motions for Extension of Time (ECF No. 54) filed by Defendants Spencer Cox, Deidre Henderson, the State of Utah, Curtis Bramble, Daniel McCay, Mike Schultz, J. Stuart Adams, and Matthew Durrant (collectively, the "State Defendants"), as well as the Order (ECF No. 74) granting an extension of time (ECF No. 73) for Defendants Robert Axson, Kim Coleman, and Chris Null (collectively, the "Party Official Defendants").

2.     Plaintiffs contend that Defendants have failed to demonstrate good cause for any further delay under Federal Rule of Civil Procedure 6(b). The Magistrate Judge's Orders provide no findings of fact or analysis supporting a conclusion that good cause exists, nor do Defendants' filings provide any justification beyond vague references to complexity or convenience. Such generalized assertions do not satisfy the Rule 6(b) standard, which requires a showing that the deadline could not reasonably have been met despite the diligence of the party seeking the extension.

3.     Furthermore, the challenged extensions cause substantial prejudice to Plaintiffs by frustrating the expedited resolution necessary to address the ongoing constitutional violations claimed in the Complaint. Plaintiffs seek preliminary injunctive relief to prevent imminent and irreparable harm arising from Defendants' conduct. Each day of delay exacerbates that harm, chilling participation, and diminishes Plaintiffs' ability to obtain timely and meaningful relief. The public interest in the swift adjudication of constitutional claims, particularly those involving fundamental rights, strongly weighs against further postponement.

4.     Accordingly, Plaintiffs request that this Court sustain this Objection and vacate the Magistrate Judge's Orders granting extensions of time.

## II.     Request for Relief

WHEREFORE, Plaintiffs request this Court:

5.     **Sustain this Objection** and set aside the Orders (ECF Nos. 66 and 74) granting extensions of time to the State Defendants and Party Official Defendants;

6.     **Order the State Defendants and Defendant Null to file their responses** to Plaintiffs' Complaint and Motion for Preliminary Injunction within seven (7) days of the date of this Court's Order, or such shorter period as the Court deems appropriate;

7. **Declare Party Official Defendants—Axson, Coleman, Null—defaulted** for failure to respond to Plaintiffs' Preliminary Injunction (ECF 07) by required due date and grant the Motion as it applies to the Party Official Defendants.

8. **Declare Robert Axson and Kim Coleman defaulted** for failure to respond to Plaintiffs' Complaint by required due date.

9. **Order the Party Official Defendants' attorney, D. Loren Washburn, to submit a memorandum** explaining why sanctions should not be imposed upon him under Rule 11 for the misleading argument that the Complaint is "convoluted", "full of non-sequiturs," and calling the Motion for Joinder "frivolous."

10. **Schedule an expedited hearing** on Plaintiffs' Motion for Preliminary Injunction to ensure prompt resolution of the urgent issues presented;

11. **Award Plaintiffs their reasonable costs and fees** incurred in connection with this Objection, to the extent permitted by law; and

12. **Grant such other and further relief** as the Court deems just, proper, and equitable under the circumstances.

### III.    Preservation Statement

13. Plaintiffs state that all objections, arguments, and issues raised herein are expressly preserved for the record, including for purposes of appeal. Plaintiffs further preserve and do not waive any additional objections or grounds for relief that may arise from subsequent orders, rulings, or actions taken in this matter. Nothing in this filing shall be construed as a waiver of any substantive or procedural rights, defenses, or claims available to Plaintiffs under the United States Constitution, federal law, state law, or the applicable rules of civil procedure.

### IV.    Grounds for Objection

14.    **Lack of "Good cause" under Rule 6(b)(1)(A)**: Defendants have not carried their burden to make an "actual showing of good cause" as required by Federal Rule of Civil Procedure 6(b)(1)(A), and their motions therefore should have been denied. Rule 6(b)(1)(A) permits extensions only "for good cause," which demands a concrete, fact-based demonstration that the party, despite diligent efforts, could not meet the existing deadline. Here, Defendants rely almost entirely on the length of the Complaint, the number of exhibits, and the existence of other filings, but they offer no specific facts showing what steps they took to comply with the current deadlines, why those steps were insufficient despite diligence, or why the existing response period—set by the Rules themselves—was inadequate for competent counsel.

15.    This Court's approach to statutory and rule-based deadlines confirms that clear timing requirements are to be enforced as written, not relaxed for parties who simply find them inconvenient. In *Hitchman Fiduciaries, LLC v. Dominion Ins. Servs., Inc.*, Case No. 2:22-cv-580-HCN (D. Utah May 12, 2023), Judge Nielson rejected an attempt to proceed in federal court where its notice of removal was both substantively and procedurally defective, including because it was untimely under the plain 30-day deadline in 28 U.S.C. § 1446(b)(1) and the "last day" computation rules of Federal Rule of Civil Procedure 6(a). The Court not only remanded but also awarded attorneys' fees under 28 U.S.C. § 1447(c), finding that the removing party "lacked an objectively reasonable basis" to proceed given the clear text of the removal and forum-defendant rules.

16.    If it is objectively unreasonable, and sanctionable, for a sophisticated litigant to disregard clear timing and forum-defendant requirements in removal practice, it is likewise unreasonable for Defendants here to treat Rule 6(b)(1)(A)'s "good cause" requirement as a formality and to seek extra time without a concrete, diligence-based justification. *Hitchman*

4

reflects this Court's expectation that parties will comply with straightforward procedural and jurisdictional rules and will bear the consequences when they do not; that expectation is fully consistent with requiring a genuine showing of good cause—grounded in specific facts and diligence—before enlarging Rule-based response deadlines. Why do the Courts have rules if they can be so easily ignored?

17.    The Attorney General's Office and private defense counsel are experienced litigators who routinely handle complex constitutional and statutory cases; the mere assertion that the Complaint is "91 pages" with "298 paragraphs and 92 exhibits," or that there are multiple defendants and a joinder motion, is not itself good cause but simply describes ordinary litigation burdens that Rule 6(b)(1)(A) presumes counsel can manage absent a particularized showing of diligence-related necessity. Defendants do not identify any exceptional circumstance—such as unforeseen unavailability of counsel, newly emerging facts, or genuine logistical impossibility—that prevented them from drafting a timely response; instead, they seek to convert routine case complexity into an automatic extension, which is inconsistent with the Rule's requirement that "good cause" be demonstrated, not presumed.

18.    Moreover, Defendants' own motions underscore a lack of diligence rather than good cause. The last-served Defendants were served on October 30, 2025, giving them three weeks to respond under the Rules, yet their filings do not detail any concrete work undertaken during that period or explain why essential tasks (reviewing the pleadings, conferring among co-defendants, assigning drafting responsibilities) could not reasonably have been completed within the allotted time. Instead, Defendants attempt to shift blame to Plaintiffs by characterizing the Complaint as "bloated" and "vexatious," which is not a Rule 6(b)(1)(A) standard and does nothing to establish that Defendants themselves acted diligently and were nonetheless unable to

comply. Because Defendants have not made the sort of specific, diligence-based showing that Rule 6(b)(1)(A) requires, the Orders granting an extension rest on an insufficient record and should be set aside.

19.    DUCivR 7-1(a)(5) requires that a party seeking more time to file a response or reply obtain and file a stipulated motion before the original deadline expires; in other words, an extension is supposed to be based on both sides' agreement and requested in advance, not asked for unilaterally after the fact.

> "(5)    Stipulation to Extend Filing Time. Parties seeking to extend the filing time for a response or reply **must** file a stipulated motion before the filing time has passed. A stipulation to extend a filing time is ineffective without a court order.

Quoting DUCivR 7-1(a)(5) [emphasis on bold].

20.    Here, Plaintiffs did not and would not stipulate to any extension, and Defendants—with a large team of attorneys at their disposal—have offered no compelling reason as to why they could not meet the existing deadlines. Granting an extension despite the lack of a timely, stipulated motion disregards the plain requirements of DUCivR 7-1(a)(5) and unfairly rewards Defendants' disregard of both the local rule and the Court's scheduling order.

21.    **Rule 6(b)(1)(B) requires an actual showing of excusable neglect**: Rule 6(b)(1)(B) allows an extension after a deadline only if the movant actually "failed to act because of excusable neglect," which requires a concrete, fact-based showing tied to that party's own diligence and circumstances, not mere carelessness or a tactical decision to do nothing. Here, Defendants Axson and Coleman missed the November 10, 2025 deadline to respond to Plaintiffs' Motion for Preliminary Injunction, and Defendant Null missed his November 13, 2025 deadline, yet their motion provides no particularized facts showing excusable neglect—only an admission that they assumed counsel for the elected officials would "have their back," which is a

6

conscious choice to rely on others rather than to meet their own court-ordered obligations. This pattern of disregard for clear court-ordered deadlines, while simultaneously dismissing Plaintiffs' well-supported Complaint as "so long," "convoluted," "full of non-sequiturs," "bloated," etc.,  is consistent with a broader effort to obstruct and undermine Plaintiffs' efforts to vindicate their rights and thereby reinforces Plaintiffs' claims of conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3) and agreement to participate in a racketeering enterprise under 18 U.S.C. § 1962(d).

22.    This Court has recently applied Rule 6(b)(1)(B) rigorously. In *Fuller v. Salt Lake City*, No. 2:21-cv-593-HCN, 2025 BL 291830, at *2 (D. Utah Aug. 18, 2025), the Court denied a Rule 6(b)(1)(B) motion where counsel's sole explanation was a misunderstanding of local rules, holding that such a mistake does not constitute excusable neglect and emphasizing that inadvertence, ignorance of the rules, and misreading the rules cannot satisfy the standard. If confusion about the rules is insufficient, then a deliberate, coordinated decision by the Party Official Defendants to "sit back" and assume someone else's lawyer will protect their interests is even further removed from excusable neglect and reflects, at best, negligent inattention and, at worst, willful disregard of their responsibilities.

23.    Supreme Court precedent confirms this strict approach. In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP*, 507 U.S. 380 (1993), the Court described "excusable neglect" as flexible but made clear it does not extend to simple carelessness, negligent inattention, or strategic disregard of clear deadlines, warning that the standard must not invite parties to ignore court-ordered timelines in hopes of a lenient reprieve. Likewise, *Klapprott v. United States*, 335 U.S. 601 (1949), distinguished truly extraordinary circumstances from "willful and inexcusable neglect," underscoring that intentional or reckless deadline violations do not warrant relief. Read

together with Fuller and the Tenth Circuit authority on which it relies, these cases confirm that the Party Official Defendants' conduct is precisely the kind of non-excusable neglect Rule 6(b)(1)(B) is designed to deter.

24.     Defendants' conduct also constitutes an abuse of Rule 11 of the Federal Rules of Civil Procedure. Rule 11 requires that every pleading, motion, or other paper presented to the court be signed by counsel or a party, certifying that, to the best of the signer's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the filing is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Here, Defendants' motion for an extension of time contains no factual basis for excusable neglect and instead relies on vague assertions and subjective characterizations of Plaintiffs' Complaint. By filing a motion that fails to meet the threshold requirements for relief and by disparaging Plaintiffs' Complaint in conclusory and inflammatory terms—calling it "so long," "convoluted," "full of non-sequiturs," and "bloated"— Defendants have used the motion not to seek legitimate relief, but to delay proceedings and denigrate Plaintiffs' claims without any evidentiary support. This conduct violates Rule 11's mandate that filings must be grounded in fact and law and not used to unnecessarily prolong litigation or undermine the judicial process.

25.     Against this backdrop, Defendants' repeated characterization of Plaintiffs' well-supported Complaint—backed by 92 exhibits—as "frivolous" only underscores the weakness of their position. Courts have cautioned that loosely branding non-frivolous claims as "frivolous" chills legitimate advocacy and misuses Rule 11, which is aimed at objectively baseless filings made without reasonable inquiry, not at punishing parties for advancing

substantial, evidence-based claims that an opponent happens to dislike. See *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536–40 (9th Cir. 1986).

26.     Nor can Defendants plausibly dismiss this case as "frivolous." In related litigation over Utah's SB54 framework, then Chief Judge Tymkovich concurred in the denial of rehearing en banc precisely to emphasize that the constitutional and associational-rights questions raised by Utah's regulation of party primaries "deserve the Supreme Court's attention" and that the time is ripe for a closer look at the burdens such schemes impose on political parties and their members. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1071–72 (10th Cir. 2018) (Tymkovich, C.J., concurring in denial of rehearing en banc). Plaintiffs bring this action now because those burdens have fully materialized in concrete, election-specific injuries, confirming that the controversy is ripe for adjudication—not a baseless or speculative challenge that can be shrugged off as "frivolous." Against that backdrop, Attorney Washburn's repeated efforts to brand the Complaint as "frivolous," "bloated," and "convoluted" are not only inaccurate; they risk crossing the line into sanctionable conduct by misusing Rule 11 rhetoric to demean a non-frivolous, substantial civil-rights and RICO action and to chill Plaintiffs' legitimate advocacy.

27.     *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1991) (en banc), explains that a judge can punish a lawyer under Rule 11 for specific parts of a filing that are abusive, and that a lawyer cannot avoid responsibility for baseless, harassing statements just by hiding them inside an otherwise valid court paper. Here, Attorney Washburn's repeated Rule-11-style accusations that Plaintiffs' detailed, evidence-laden civil-rights and RICO complaint is "frivolous," "bloated," and "convoluted" are not grounded in a reasonable factual or legal inquiry and instead appear calculated to exploit Plaintiffs' pro se status by creating the false impression that, simply because a licensed attorney uses such labels, Plaintiffs' claims must lack

merit. That tactic improperly seeks to taint the public and the Court's view of a non-frivolous complaint, and it is precisely the sort of abusive use of "frivolous" rhetoric that *Townsend* recognizes as a proper subject for Rule 11 scrutiny and potential sanctions.

28.     **Improper Referral and Scope Under 28 U.S.C. § 636(b)(1)(B)**: Plaintiffs object to the manner in which this matter was referred to the Magistrate Judge and to the scope of the authority exercised in connection with the November 12, 2025, Order (ECF 66). Under 28 U.S.C. § 636(b)(1), only "a judge of the court" may designate a magistrate judge to handle specified pretrial matters, and that designation must remain within the limits Congress set for nondispositive determinations under § 636(b)(1)(A) and for proposed findings and recommendations under § 636(b)(1)(B). The statute does not authorize the clerk of court to create or expand a magistrate judge's jurisdiction on her own initiative, nor does it permit a standing or generic referral to be used as a vehicle for effectively dispositive rulings that bypass the safeguards of § 636(b)(1)(B).

29.     Section 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement." This language makes two points clear. First, it is the district judge—not the clerk—who must make the designation for purposes of handling dispositive matters or motions functionally equivalent to those listed. Second, in those contexts the magistrate judge's role is limited to issuing "proposed findings" and "recommendations," with the ultimate disposition reserved to the Article III judge upon de novo (from the beginning) review of any specific objections.

"(B) **a judge may** also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."

Quoting 28 U.S.C. § 636(b)(1)(B) [emphasis on bold].

30.     To the extent the clerk's October 29, 2025, entries purported to refer this civil action or Plaintiffs' request for preliminary injunctive relief to a magistrate judge in a manner that either (a) did not trace back to a clear designation by Judge Nielson under § 636(b)(1), or (b) permitted the Magistrate Judge to issue effectively dispositive rulings without the protections of § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), that procedure exceeded the limited authority Congress granted. It improperly allowed administrative action by the clerk to stand in for the judicial designation the statute requires, and it risked depriving Plaintiffs of the Constitutional and statutory right to have dispositive or quasi-dispositive matters resolved by a district judge on a proper record of proposed findings and recommendations. In a court that otherwise enforces jurisdictional and procedural requirements according to their plain terms, this departure from § 636(b)(1)(B)'s structure and allocation of authority is neither trivial nor harmless.

31.     **Lack of Consent to Magistrate Jurisdiction**. Plaintiffs have not consented to the magistrate judge exercising full civil jurisdiction in this case. Under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, a magistrate judge may conduct all proceedings and enter final judgment in a civil action only where all parties voluntarily and expressly consent, ordinarily through a written consent form filed with the court. Those provisions also require that parties receive clear notice of their right to withhold consent without adverse substantive consequences. Plaintiffs have received no such notice, have not executed any consent form, and

11

have never affirmatively agreed to proceed before a magistrate judge for all purposes, as contemplated by Rule 73 and the District of Utah's procedures for civil consent jurisdiction. In the absence of unanimous, voluntary consent, any exercise of case-dispositive authority by the magistrate judge—beyond the limited report-and-recommendation framework of § 636(b)(1)(B)—exceeds the scope of consent jurisdiction and infringes Plaintiffs' right to adjudication by an Article III judge.

32.     Moreover, to the extent the procedures employed here resulted in an automatic assignment or de facto (in fact) transfer of effective control over this civil action to the magistrate judge without strict compliance with § 636(c) and Rule 73, they conflict with the consent regime Congress and what the Rules require. Those provisions are designed to ensure that consent is an intentional, informed waiver of the right to proceed before a district judge, not something inferred from silence, default, or administrative routing. Because Plaintiffs have neither been afforded proper notice of a consent election nor provided any form of explicit consent, they object to any orders and do not consent to magistrate judge jurisdiction and request that such orders be vacated and that all dispositive or functionally dispositive matters be resolved by the assigned Article III judge, Judge Nielson Jr..

33.     **Extension Orders Function as Effectively Dispositive**. Courts recognize that preliminary injunctions serve the critical function of preventing ongoing or imminent harm before final judgment, and that delay in adjudicating such motions can, as a practical matter, defeat the very relief sought. When a court grants an extension that significantly postpones a ruling on a motion for preliminary injunction, the result may be to perpetuate the harm and to deny Plaintiffs the timely protection that injunctive relief is designed to provide. In that circumstance, the prejudice to Plaintiffs is substantive, not merely procedural: the passage of

time itself becomes the mechanism by which Defendants effectively obtain the denial of interim relief.

34.      Although motions for extensions of time are ordinarily treated as nondispositive pretrial matters, an extension that materially frustrates or nullifies a pending request for preliminary injunctive relief operates, for the aggrieved party, much like a dispositive ruling. Where, as here, delaying Defendants' responses to the Complaint and Motion for Preliminary Injunction threatens to render injunctive relief ineffective or moot, requests for additional time warrant heightened scrutiny. Granting such extensions without a rigorous showing of need and without careful attention to the irreparable-harm and public-interest considerations transforms a routine scheduling decision into a de facto (in reality) denial of meaningful relief. Under these circumstances, Plaintiffs object to the extensions not only as unauthorized under the governing magistrate-jurisdiction and consent provisions, but also as functionally dispositive decisions that should be reserved to, and independently reconsidered by, the district judge.

35.      **The Extension Prejudices the Plaintiffs**. Civil RICO claims are, by their nature, complex and fact-intensive, often requiring detailed allegations of an enterprise, a pattern of racketeering activity, multiple predicate acts, and resulting injury over an extended period. Plaintiffs devoted substantial time and effort—outside regular employment and personal responsibilities—to meet these demanding pleading standards, which federal courts routinely enforce with particular rigor in RICO cases. Against that backdrop, Defendants' attempt to distort the Complaint as "so long, convoluted, and full of non-sequiturs" is not a good-faith observation about burden; it is a tactical effort to delegitimize the level of detail RICO pleading requires and to recast Plaintiffs' diligence as a procedural defect.

13

36.     Granting an extension under these circumstances materially prejudices Plaintiffs because it rewards and amplifies Defendants' strategy of belittling both the Complaint and Plaintiffs' procedural efforts. Party Official Defendants have dismissed Plaintiffs' Rule 19 Motion for Joinder as "frivolous" and "baseless," and they now seek more time while simultaneously portraying Plaintiffs' filings and pre-suit notice (Complaint Exhibit 65) as something that can be ignored without consequence. Allowing additional delay despite that history signals that such dismissive tactics carry no cost, undermines the seriousness of Plaintiffs' RICO and joinder claims, and risks creating the misimpression that Plaintiffs' efforts lack merit simply because Defendants choose to mock them.

37.     The prejudice is especially severe in the context of Plaintiffs' pending Motion for Preliminary Injunction. Every day of delay prolongs the racketeering conduct and its consequences, narrowing the window in which meaningful interim relief can be granted. In practice, an extension that pushes Defendants' responses further into the future functions as a partial denial of injunctive relief, because it allows the challenged conduct to continue unabated during a critical period. Under these conditions, a "routine" extension is not neutral; it tilts the field in Defendants' favor by eroding the effectiveness of the very remedy Plaintiffs urgently seek, and by reframing Plaintiffs' necessary thoroughness in preparing a complex RICO case as an excuse to delay accountability.

38.     Although Plaintiffs object to Defendants' reliance on taxpayer-funded counsel, the asserted need for additional time is especially untenable given that Defendants have retained at least twelve attorneys in this matter. With that level of staffing and public resources behind them, Defendants cannot credibly claim that responding to a well-supported RICO Complaint and pending motion for preliminary injunction within the original deadlines is unduly

14

burdensome, and their request for more time appears less as a matter of genuine necessity than as a further tactic to delay and prejudice Plaintiffs.

39.    **Defendants Had Advance Notice and Cannot Show Prejudice or Surprise**. Defendants' request for an extension is unwarranted because they received clear advance warning of this dispute and of the civil consequences of inaction. Plaintiff Halvorsen served a detailed Notice of Intent (Complaint Ex. 65) expressly advising that failure to address Defendant Henderson's unlawful disqualification of convention nominees would result in litigation and civil liability. Having been put on formal notice well before the Complaint was filed, Defendants cannot plausibly claim surprise or an inability to prepare for Plaintiffs' claims.

40.    That pre-suit notice gave Defendants ample opportunity to investigate the issues, coordinate or retain counsel, and be ready to respond within ordinary deadlines. Granting an extension despite this history rewards their decision not to act on a clear warning and signals that formal notices from aggrieved parties may be ignored without consequences. Under these circumstances, extending Defendants' time to respond does not merely adjust scheduling; it excuses avoidable neglect and further tilts the litigation landscape against Plaintiffs, who did exactly what the law encourages—provide notice and attempt to avert litigation before filing suit.

41.    **Urgency of Immediate Relief**. Swift judicial intervention is essential. Candidate filings for the 2026 cycle are due the first week of January 2026, leaving little time for Plaintiffs and other potential candidates to make informed decisions. The continued imposition of a "second-chance primary" through the signature-gathering process compelled by force upon the Utah Republican Party fundamentally alters the nomination process and is so burdensome that many candidates will reasonably decide not to run at all, depriving Plaintiffs and the people of Utah of a genuine choice and "republican form of government."

42.     Without prompt relief, the filing window will close before the Court can meaningfully adjudicate Plaintiffs' claims, causing permanent loss of candidacies and political participation that cannot be remedied later. Each day of delay functions as a de facto (in reality) denial of relief, forcing individuals to choose between enduring an onerous, defective process or abandoning their campaigns.

43.     The urgency is heightened by the Utah Republican Party caucus on March 17, 2026. If the current "second-chance" nomination structure remains in place, the caucus and convention will be perceived as largely pointless, since their outcomes can again be vetoed or nullified afterward. Faced with that uncertainty, many potential candidates and delegates are likely to forgo participation, chilling engagement and undermining the legitimacy of the State's and Party's nomination process.

44.     In short, candidates need a clear, lawful framework in place by early January 2026, and party members need assurance that the March 17, 2026, caucus and convention will have real effect. Any further delay or extension threatens to exclude candidates from the ballot, suppress participation, and damage the core democratic republic functions Plaintiffs seek to protect.

45.     **Chilling Effect on Joinder and Class Relief.** Continued delay materially prejudices Plaintiffs by chilling participation and undermining their ability to pursue broader relief on behalf of similarly situated individuals. In a politically charged RICO case against high-ranking state officials, potential additional plaintiffs and putative class members closely watch how the case progresses; each extension that leaves the enterprise intact and the case in limbo signals that joining will be prolonged, risky, and unlikely to yield timely protection.

46.     These delays also undercut Plaintiffs' practical ability to seek class treatment under Rule 23 by pushing key milestones further into the future while the unlawful conduct and electoral deadlines move forward. As time passes, evidence grows stale and potential class members lose confidence, so extensions function not as neutral scheduling changes but as substantive barriers to aggregating claims, unfairly narrowing Plaintiffs' options for fully and efficiently vindicating widely shared injuries.

47.     **Ongoing RICO Harm Warrants Denial of Extension**. Defendants should not be granted an extension because the current record shows an ongoing, coordinated scheme that strikes at both Utah's election laws and federal RICO, with immediate and irreparable consequences for Plaintiffs and for the integrity of Utah's electoral system. The Complaint details how Defendant Henderson usurped her authority by placing on the ballot candidates who had been disqualified through the State's nominating convention process in contravention of Utah Code §§ 20A-9-407 and 20A-9-401(2),[1] thereby nullifying the lawful actions of convention delegates. It further claims that, despite being disqualified through that process, Defendant Cox—and other disqualified candidates—continue to present themselves as a legitimate officeholders and acting under color of that disputed authority—specifically Defendant Cox is using his position to engage in international meetings and foreign-trade outreach in which he shares Utah's mineral and strategic resource information with foreign leaders and counterparties, as reflected in **Exhibit A** (Cox's foreign trade activities), while simultaneously orchestrating ongoing acts in furtherance of a racketeering enterprise affecting interstate and foreign commerce (Complaint ¶¶ 60–70, 183–209, 230–235; Exhibits 1, 19, 39, 53, 65).

---

[1] Utah Code § 20A-9-401(2) "This party may not be construed to govern or regulate the internal procedures of a registered political party."

48.    Granting additional time in this posture would not simply reorder briefing; it would entrench and legitimize these disputed acts of governance and foreign engagement by a convention-disqualified candidate. Each day of delay allows Cox and his co-Defendants to continue leveraging contested state authority in dealings with foreign actors, to further erode the binding effect of Utah's convention results, and to maintain unlawful pressure on candidates and voters as statutory filing deadlines and key electoral events approach. Defendants have long been on notice of the core facts and legal theories—through Plaintiffs' Notice of Intent and extensive pre-suit warnings—and now seek more time in a way that operates as a substantive benefit to an enterprise purported to span state, interstate, and international spheres, at the direct expense of electoral legitimacy and the timely vindication of Plaintiffs' federal and constitutional rights.

49.    Federal enforcement trends confirm that when elected officials leverage public office in coordination with foreign or private interests to advance corrupt schemes, the law treats such conduct as exceptionally serious—even apart from traditional organized crime. Recent federal indictments include: Representative Henry Cuellar, charged with accepting hundreds of thousands of dollars from entities tied to the Government of Azerbaijan and a Mexican bank in exchange for official acts; Senator Bob Menendez, charged with bribery and foreign-influence offenses based on alleged payments and benefits tied to the government of Egypt; Representative Sheila Cherfilus-McCormick, charged with defrauding federal disaster programs; and former Representative George Santos, expelled and later sentenced on federal fraud charges. These cases illustrate that when public officials entangle official authority with foreign or private gain in ways that affect interstate or international channels, the federal system responds swiftly and seriously. In that context, allowing a convention-disqualified state official to continue engaging in foreign-facing activities and enterprise-based conduct under color of disputed authority, while

this case is slowed by repeated extensions, poses precisely the kind of ongoing harm and risk that warrants prompt judicial intervention rather than further delay.

## V.    Conclusion

50.    In light of Defendants' repeated violations, their disregard of formal notice, and their continued use of disputed state authority—including in foreign-facing activities—to advance the enterprise, any further extension would compound rather than cure the ongoing harm to Plaintiffs and Utah's electoral system. Swift judicial intervention is necessary to halt the continued manipulation of the nomination and election process and to ensure that Plaintiffs' federal and constitutional rights are vindicated through timely, effective relief.

## VI.    REPRESENTATIONS TO THE COURT (Rule 11)

WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing PLAINTIFFS' OBJECTION TO [66] and [74] THE ORDERS GRANTING [54] and [73] DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINT AND PRELIMINARY INJUNCTION contains 5,299 words, complies with the Court's Local Civil Rules, is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated: November 24, 2025

/s/ Tracie Halvorsen                           /s/ NANCY INMAN

TRACIE HALVORSEN                      NANCY INMAN
138 East 12300 South                        138 East 12300 South
C275                                                C275
Draper, Utah 84020                           Draper, Utah 84020
801-688-3594                                    916-396-4395
traciehalvorsen@outlook.com          Nancyjinman@gmail.com

Plaintiff Pro Se                                          Plaintiff Pro Se


/s/ STEVEN HUBER                                          /s/ DANIEL NEWBY

STEVEN HUBER                                              DANIEL NEWBY
138 East 12300 South                                     138 East 12300 South
C275                                                     C275
Draper, Utah 84020                                       Draper, Utah 84020
801-688-3594                                             801-949-3360
traciehalvorsen@outlook.com                              danieltrouble@protonmail.com
Plaintiff Pro Se                                         Plaintiff Pro Se

/s/ WAYNE WICKIZER

WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se

## Certificate of Service

We hereby certify that on this 24th day of November, 2025, we electronically filed the

PLAINTIFFS' OBJECTION TO [66] and [74] THE ORDERS GRANTING [54] and [73]

DEFENDANTS' MOTION FOR EXTENSION OF TIME with the Clerk of the Court under the

filing and electronic notification procedures outlined under DUCivR 5-1, which will send

notification of such filings to all registered participants in this case.

Additionally, we certify that we caused a true and correct copy of the document to be

served by mailing it pursuant to Federal Rules of Civil Procedure 5(b)(2)(c) to the following

address, intended for all Defendants:

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox,
Henderson, Bramble, McCay, Durrant,
Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox,
Henderson, Bramble, McCay, Durrant,
Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox,
Henderson, Bramble, McCay, Durrant,
Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox,
Henderson, Bramble, McCay, Durrant,
Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

21

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

Alan R. Houston
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

Christine R. Gilbert
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

Victoria S. Ashby
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park city, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

Executed on this 24th day of November 2025.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ NANCY INMAN
NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ DANIEL NEWBY
DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020
801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER
WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se