ANIKKA HOIDAL (16489)
DAVID N. WOLF (6688)
JASON DUPREE (17509)
SCOTT CHENEY (6198)
Assistant Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
P.O. Box 140874
Salt Lake City, Utah 84114
ahoidal@agutah.gov
dnwolf@agutah.gov
jndupree@agutah.gov
scheney@agutah.gov

*Attorneys for State, Legislative, and Judicial Defendants*

IN THE UNITED STATES DISTRICT COURT IN AND FOR

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRACIE HALVORSEN, an individual; NANCY INMAN, an individual; STEVEN HUBER, an individual; WAYNE WICKIZER, an individual; and DANIEL NEWBY, an individual.<br><br>                            Plaintiffs,<br><br>v.<br><br>SPENCER COX, as an individual and in official capacity; DEIDRE HENDERSON, as an individual and in official capacity, STATE OF UTAH, et al.<br><br>                            Defendants. | **CHIEF JUSTICE MATTHEW DURRANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Case No. 2:25-cv-00909-HCN-JCB<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

Defendant Chief Justice Matthew Durrant submits this Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiffs' Complaint is focused on the path political candidates take to seek the Utah Republican Party's nomination. Plaintiffs take issue with how Utah Code § 20A-9-101(13)(c) has been lawfully implemented and followed in Utah based on the interpretation and ruling on the statute's constitutionality, issued by the Utah Supreme Court and the Tenth Circuit almost a decade ago. It is well settled law that a member of a Qualified Political Party can qualify for a primary through the party's convention process or by collecting a designated number of signatures. But Plaintiffs refuse to accept the courts' prior rulings and claim that it is the Utah Republican Party and not the party member that decides the method a candidate must use to get on the primary ballot. Expanding upon their erroneous misapplication of the law, Plaintiffs allege that there is a scheme furthering what they believe to be the "unauthorized" or "fraudulent" or "unlawful" certification of candidates who sought nomination through the signature-gathering process. Plaintiffs theorize that a number of government officials, including Chief Justice Durrant, are involved in this scheme. Plaintiffs base their unfounded allegations against Chief Justice Durrant on two specific judicial actions the Chief Justice performed: 1) issuing a judicial order resolving an extraordinary writ petition that was filed in the Utah Supreme Court; and 2) administering the oath of office to Governor Cox and Lieutenant Governor Henderson, who sought nomination through the signature-gathering process and prevailed in the election.

Plaintiffs' claims against Chief Justice Durrant fail for four reasons: 1) judicial immunity shields Chief Justice Durrant from claims for monetary damages; 2) the Federal Courts

Improvement Act precludes Plaintiffs' request for injunctive relief; 3) Plaintiffs fail to state a claim upon which relief can be granted, including claims premised on Utah criminal statutes that provide no private right of action for civil claims; and 4) Plaintiffs' RICO claim does not plausibly allege that Chief Justice Durrant operated, controlled or conspired with any enterprise through a pattern of racketeering activity. Accordingly, the claims against the Chief Justice should be dismissed, with prejudice.

## STATEMENT OF FACTS

For the purposes of this motion only, Justice Durrant assumes the following facts, taken from the Complaint and exhibits thereto. In Utah, the Declaration of Candidacy form provides candidates with three options to seek the nomination of a Qualified Political Party.[1] These options are: the convention process, the signature-gathering process, or both.[2] The Utah Republican Party's ("URP") bylaws prohibit candidates from signature gathering pursuant to Utah Code § 20A-9-403 and only permit candidates to run as Republicans if they are nominated through a convention process that uses elected delegates to select party candidates.[3] On January 2, 2024, Phil Lyman declared his candidacy for governor seeking the nomination of the URP through both the convention and signature-gathering process.[4] Incumbents Cox and Henderson also declared their candidacy for governor and lieutenant governor, respectively, seeking nomination of the URP through both the convention and signature-gathering process.[5] At the April 27, 2024 state primary convention, URP delegates elected Phil Lyman as their nominee for

---

[1] Compl. ¶ 71.
[2] Compl. ¶ 71.
[3] *E.g.*, Compl. ¶¶ 1, 2, 4, 6, 7.
[4] Compl. ¶ 75.
[5] Compl. ¶ 75.

governor.⁶ On May 1, 2024, Henderson certified Cox to a "closed primary" ballot for the URP by nomination through the signature-gathering process.⁷ On July 22, 2024, Henderson certified candidates, including Cox, as the URP nominees on the 2024 general election ballot.⁸ On August 1, 2024, Phil Lyman filed a petition for an extraordinary writ in the Utah Supreme Court contesting the primary election and challenging the application of Utah Code 20A-9-408 (nomination by signature-gathering).⁹ On August 13, 2024, Chief Justice Durrant issued an order denying the petition without holding a hearing or receiving a response from the defendants.¹⁰ The election process continued.¹¹ Following that process and after Cox and Henderson were elected as the governor and lieutenant governor of Utah, on January 6, 2025, Chief Justice Durrant administered the oath of office to Cox and Henderson.¹²

Now Plaintiffs allege the court's order, denying Lyman's petition, constitutes wrongdoing because it was issued: without holding a hearing or receiving a response from the Defendants¹³; by violating Utah Code § 20A-4-403(4)¹⁴; by violating Utah Code § 76-8-201 and § 76-8-504, asserting the judicial act constituted an "unauthorized order" and "making a written false statement"¹⁵; by misapplying Utah election code (e.g. ¶ 20A-9-403(1)(a))¹⁶ and by

---

⁶ Compl. ¶ 87.
⁷ Compl. ¶ 98.
⁸ Compl. ¶ 127.
⁹ Compl. ¶ 129.
¹⁰ Compl. ¶ 133.
¹¹ *See* Compl. ¶¶ 164, 165.
¹² Compl. ¶ 166.
¹³ Compl. ¶133.
¹⁴ Compl. ¶ 133.
¹⁵ Compl. ¶¶ 133, 136.
¹⁶ Compl. ¶ 136.

"obstructing fraud investigations."[17] And Plaintiffs allege that Chief Justice Durrant's administering the oath of office to "illegitimate candidates" Cox and Henderson, "furthered the scheme."[18]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, that states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hall v. Witteman*, 584 F.3d 859,863 (10th Cir. 2009). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Ashcroft*, 556 U.S. at 678; *Leverington v. City of Colo. Springs*, 643 F.3d at 723 (quoting (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010) (cleaned up). A complaint that provides no more than labels and conclusions, and threadbare recitals of the elements of a claim supported only by conclusory statements will not survive a Rule 12(b)(6) motion. *Khalik v. United Airlines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012).

## ARGUMENT

**1. Chief Justice Durrant is entitled to absolute judicial immunity.**

Judicial immunity protects judges from suits for monetary damages. *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Judicial immunity is broad and extends to all judicial acts even if such acts

---

[17] Compl. ¶ 205.
[18] Compl. ¶ 167.

were "performed maliciously and corruptly as well as acts performed in bad faith or with malice." *Hunt v. Bennett*, 17 F. 3d 1263, 1266 (10th Cir. 1994) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978)). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *see also Davit v. Davit*, 173 F. App'x 515, 518 (7th Cir. 2006) (absolute immunity applied even though the plaintiff alleged the judges were criminally liable under RICO). The doctrine of judicial immunity "ensures that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871). In other words, judicial immunity allows judges to perform their role without fear of being the subject of retaliatory litigation.

This immunity is abrogated only when a judge either (1) acts outside the judge's judicial capacity, or (2) takes judicial action in clear absence of all jurisdiction. *Mireles*, 502 U.S. at 11–12. To determine if an act is within judicial capacity, a court looks to the "nature of the act itself i.e. whether it is a function normally performed by a judge, and to the expectation of the parties, i.e. whether they dealt with the judge in his judicial capacity." *Id.* at 12 (quoting *Stump*, 435 U.S. at 362).

Judicial immunity applies to Chief Justice Durrant's acts here. Plaintiffs' allegations against Chief Justice Durrant arise from the Chief Justice's issuance of a written judicial ruling

in a formal court proceeding[19] or his administration of an oath[20] - both acts at the core of judicial responsibilities.[21]

Plaintiffs cannot transform a judicial act into a non-judicial act simply by labeling it "illegal," "invalid," "fraudulent," or "criminal." Judicial immunity "is not overcome by allegations of bad faith or malice." *Mireles*, 502 U.S. at 11. It "applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Similarly, an allegation that a judicial ruling constitutes a crime cannot be used to circumvent absolute immunity. It is the judicial nature of the act, not Plaintiffs' characterization of the act, that controls.

Chief Justice Durrant's administration of the oath of office was a judicial act. The Utah Constitution requires the oath be taken by "all officers made elective or appointive by this Constitution or by the laws made in pursuance thereof, before entering upon the duties of their respective offices." UTAH CONST. Art. IV, § 10. "Every . . . justice . . . has the power to administer oaths or affirmations." Utah Code § 78B-1-142. Chief Justice Durrant had the power, as a justice of the Utah Supreme Court, to administer the oath. Doing so was a formal and official judicial act protected by judicial immunity.

Moreover, there is no dispute as to whether the Utah Supreme Court had jurisdiction over Lyman's petition for extraordinary writ. The Utah Constitution states that "[t]he Supreme Court

---

[19] Compl. ¶ 133.
[20] Compl. ¶ 166.
[21] Plaintiffs appear to misunderstand Utah Code § 20A-4-403(4), which they allege Chief Justice Durrant violated by not holding a hearing or receiving a response from Defendants. This particular subsection says nothing about a hearing or a response from a defendant. It says that a petition cannot be dismissed for its form. Form is different than substance.

shall have original jurisdiction to issue all extraordinary writs." UTAH CONST. Art. VIII, §8, *see also* Utah Code §78A-3-102(2) ("The Supreme Court has original jurisdiction to issue extraordinary writs . . . ."). Plaintiffs' disagreement with the court's decision (on a writ they did not submit), does not impact judicial immunity. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump*, 435 U.S at 356 (citing *Bradley v. Fisher*, 80 U.S. at 351 ). A judge acts in clear absence of jurisdiction only when acting with no semblance of subject matter jurisdiction whatsoever, a standard not satisfied here.

Justice Durrant is absolutely immune from liability from any action alleging that he violated or conspired to violate Plaintiffs' constitutional rights by dismissing Lyman's petition for extraordinary relief or by administering the oath of office to Cox and Henderson. Those acts were judicial acts. Plaintiffs' claims should be dismissed based on judicial immunity.

**2. Plaintiffs are not entitled to injunctive relief**

Plaintiffs' claims for injunctive relief are barred by the Federal Courts Improvement Act ("FCIA"). Pub. L. No. 104-317, 110 Stat. 3847 (1996). In the FCIA, Congress amended 42 U.S.C. § 1983 to create an exception to the availability of an injunctive remedy against sitting judges: "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was not available."[22] Plaintiffs have not alleged that any acts taken

---

[22] As explained above, Chief Justice Durrant was acting in his judicial capacity when he entered the order and administered the oath to Cox and Henderson.

8

by Justice Durrant were in violation of a declaratory decree, or that declaratory relief was unavailable. Accordingly, the FCIA bars Plaintiffs' claims for injunctive relief. Those claims should be dismissed.

### 3. Plaintiffs' allegations of violations of the Utah criminal code are inapplicable

Plaintiffs attempt to assert a civil cause of action by citing Utah criminal statutes, specifically Utah Code §§ 76-8-201 (Official Misconduct) and 76-8-504 (Written False Statement). These statutes are criminal provisions enforceable only by the State's prosecutors and do not create a private right of action for civil damages or relief. A private individual does not have standing to demand the criminal prosecution of another. *Davit*, 173 F. App'x at 518. "There is no private prosecution in federal court; a private individual cannot criminally prosecute, or cause the government to criminally prosecute, another private individual." *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 618–19 (1973)). Therefore, any claim premised on the violation of these criminal statutes, which are all claims tied to the Chief Justice's issuance of the order dismissing Lyman's petition, must be dismissed for failure to state a claim upon which relief can be granted.

### 4. Plaintiffs' RICO Claim Against Chief Justice Durrant Fails as a Matter of Law

Plaintiffs allege that Chief Justice Durrant and the other Defendants violated 18 U.S.C. §§ 1962 (b),(c), and (d), the Racketeer Influenced and Corrupt Organizations Act ("RICO").[23] A RICO claim consists of four elements: "(1) investment in, control of, or conduct of (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Tal*, 453 F.3d at 1261.

---

[23] Compl. ¶¶ 197,198, 199.

Plaintiffs' § 1962(b) claim against Chief Justice Durrant fails because Plaintiffs do not allege that Chief Justice Durrant had any interest in or control of the alleged enterprise. A critical element of a § 1962 claim is that a person, through a pattern of racketeering activity, "acquire[s] or maintain[s], directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Interest in, or control of, an enterprise "requires more than a general interest in the results of its actions, or the ability to influence the enterprise through deceit . . . . Rather, it requires some ownership of the enterprise or an ability to exercise dominion over it." *Tal*, 453 F.3d at 1268.

Here, none of Plaintiffs' allegations even suggest that Chief Justice Durrant acquired or maintained some ownership interest or control of, or dominion over, the alleged enterprise, let alone through a pattern of racketeering activity. Plaintiffs' allegations regarding the Chief Justice center on the order he issued denying Lyman's petition for extraordinary writ and his administering the oath of office to Cox and Henderson. Neither of these acts can plausibly be allegations of an ownership interest in or control of the alleged enterprise. Therefore, Plaintiffs have not plausibly pled a § 1962(b) claim.

Similarly, a critical element of § 1962(c) requires a defendant to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. 1962(c). "For liability to be imposed under [this] test, the defendant must have participated in the operation or management of the RICO enterprise." *BancOklahoma Mortg. Corp. v. Capital Title, Inc.Corp.,* 194 F.3d 1089, 1100 (10th Cir. 1999).

Again, Plaintiffs have failed to allege any facts to establish that Chief Justice Durrant participated in the operation or management of a RICO enterprise. Plaintiffs fare no better here than on their § 1962(b) claim.

Plaintiffs' § 1962(d) claim necessarily fails because it makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "If a plaintiff has no viable claim under §1962(a), (b), or (c) then its subsection (d) claim fails as a matter of law. *Tal*, 453 F.3d at 1270. As detailed above, Plaintiffs' claims under § 1962(b) and (c) are not plausibly pled, and thus their claim under § 1962(d) also fails.

## CONCLUSION

For the reasons set forth above, Plaintiffs' claims against Chief Justice Durrant should be dismissed with prejudice.

DATED: November 26, 2025.

          OFFICE OF THE UTAH ATTORNEY GENERAL

          /s/ *Anikka Hoidal*
          ANIKKA HOIDAL
          Assistant Utah Attorney General
          *Counsel for State, Judicial, and Legislative Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, the foregoing, *Defendant Chief Justice Matthew Durrant's Motion to Dismiss Plaintiffs' Complaint,* was filed using the Court's electronic filing system, which gave notice to the following:

Tracie Halvorsen
138 E 12300 S, C275
DRAPER, UT 84020
Email: traciehalvorsen@outlook.com
*Plaintiff Pro Se*

Nancy Inman
138 E 12300 S, C275
DRAPER, UT 84020
(916)396-4395
Email: nancyjinman@gmail.com
*Plaintiff Pro Se*

Steven Huber
138 E 12300 S, C275
DRAPER, UT 84020
(801)688-3594
Email: traciehalvorsen@outlook.com
*Plaintiff Pro Se*

Wayne Wickizer
138 E 12300 S, C275
DRAPER, U 84020
(385)239-8326
Email: justice@utahwtp.com
*Plaintiff Pro Se*

/s/ *Asia Reid*
ASIA REID
Paralegal

Daniel Newby
138 E 12300 S, C275
DRAPER, UT 84020
(801)949-3360
Email: danieltrouble@protonmail.com
*Plaintiff Pro Se*