ANIKKA HOIDAL (16489)
DAVID N. WOLF (6688)
JASON DUPREE (17509)
SCOTT CHENEY (6198)
Assistant Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
P.O. Box 140874
Salt Lake City, Utah 84114
ahoidal@agutah.gov
dnwolf@agutah.gov
jndupree@agutah.gov
scheney@agutah.gov

*Attorneys for State, Legislative, and Judicial Defendants*

---

IN THE UNITED STATES DISTRICT COURT IN AND FOR

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRACIE HALVORSEN, et al.<br><br>                              Plaintiffs,<br><br>v.<br><br>SPENCER COX, as an individual and in official capacity; DEIDRE HENDERSON, as an individual and in official capacity, STATE OF UTAH, et al.<br><br>                              Defendants. | **STATE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Case No. 2:25-cv-00909-HCN-JCB<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

# TABLE OF CONTENTS

**STATEMENT OF RELIEF REQUESTED AND GROUNDS FOR RELIEF** ........................ 1

**BACKGROUND** ............................................................................................................. 5

1.   Legal background ............................................................................................... 5

    1.1.   The Utah Legislature enacts S.B. 54, which allows a candidate to qualify for the primary by gathering signatures ................................................................................ 5

    1.2.   The URP tries to prohibit candidates from using the signature-gathering method ..... 6

    1.3.   The Utah Supreme Court rules that the Either or Both Provision allows the candidate member, not the party, to select which path to qualify for the primary ................................... 6

    1.4.   The Tenth Circuit rules that the Either or Both Provision is constitutional and a valid exercise of the State's right to manage elections .................................................................. 6

2.   The State Defendants continue to correctly apply the Either or Both Provision ............... 7

3.   Plaintiffs file their Complaint to challenge the State Defendants' correct application of the Either or Both Provision ........................................................................................... 8

**LEGAL STANDARD** .................................................................................................... 9

**ARGUMENT** ................................................................................................................ 10

1.   The Court must dismiss Plaintiffs' Section 1983 claims because the Tenth Circuit has already rejected similar claims ....................................................................................... 10

    1.1.   The State Defendants' correct application of the Either or Both Provision is constitutional under binding Tenth Circuit precedent ............................................................. 11

    1.2.   Plaintiffs' due process and equal protection claims fail under the *Anderson-Burdick* test for the same reasons articulated in *URP* ..................................................................... 15

    1.3.   The State Defendants are entitled to legislative immunity from Plaintiffs' claim based on a meeting to discuss legislation ......................................................................... 15

    1.4.   Plaintiffs' Guarantee Clause claim is non-justiciable ............................................... 17

    1.5.   The State Defendants are entitled to qualified immunity ......................................... 17

2.   Plaintiffs do not plausibly allege a conspiracy under Section 1985 claim ........................ 20

2.1.    Plaintiffs do not plausibly allege a violation of Section 1985. ................................ 21

2.2.    The State Defendants are entitled to qualified immunity .......................... 23

3.    Plaintiffs' Section 1986 claim fails because Plaintiffs do not state a Section 1985 claim 25

4.    Plaintiffs fail to state a RICO claim ............................................................... 26

4.1.    Plaintiffs do not plausibly allege racketeering activity ............................ 27

4.2.    Plaintiffs fail to sufficiently allege a pattern ............................................ 32

4.3.    Plaintiffs cannot state a RICO conspiracy claim .................................... 34

4.4.    Plaintiffs do not plausibly allege a RICO injury nor causation ............... 34

4.5.    Qualified immunity bars the RICO claim against the State Defendants ............ 37

4.6.    Plaintiffs' official capacity RICO claim must be dismissed .................... 38

5.    Plaintiffs' declaratory relief claims should be dismissed ................................ 39

5.1.    Plaintiffs do not have standing to challenge someone else's GRAMA request ........ 39

5.2.    Utah law allows interlocal agreements ................................................... 41

**CONCLUSION** ................................................................................. 42

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Abcarian v. Levine,*
972 F.3d 1019 (9th Cir. 2020) ............................................................................ 39

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
483 U.S. 143 (1987) ............................................................................ 36

*Amaya v. Bregman,*
149 F. Supp. 3d 1312 (D.N.M. 2015) ............................................................................ 37

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451 (2006) ............................................................................ 37

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................ 10

*Auwae v. Metro. Life Ins. Co.,*
441 F. Supp. 3d 1188 (D. Colo. 2020) ............................................................................ 12

*Babbar v. Ebadi,*
216 F.3d 1086 (10th Cir. 2000) ............................................................................ 22

*Baker v. Carr,*
369 U.S. 186 (1962) ............................................................................ 17

*BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.,*
194 F.3d 1089 (10th Cir. 1999) ............................................................................ 28

*Baraka v. McGreevey,*
481 F.3d 187 (3d Cir. 2007) ............................................................................ 16

*Binnifield v. Diamond,*
2011 WL 220654, (N.D. Ill. May 31, 2011) ............................................................................ 29

*Bisbee v. Bey,*
39 F.3d 1096 (10th Cir. 1994) ............................................................................ 23

*Bixler v. Foster,*
596 F.3d 751 (10th Cir. 2010) ............................................................................ 27

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998) ............................................................................ 16

*Bray v. Alexandra Women's Health Clinic,*
506 U.S. 263 (1993) .................................................................................. 21

*Brown v. Reardon,*
770 F.2d 896 (10th Cir. 1985) ................................................................... 26

*Burnett v. Fallin,*
785 F. App'x 546 (10th Cir. 2019) ............................................................. 17

*Canary v. Adams,*
2025 WL 2938676 (D. Utah Oct. 15, 2025) .............................................. 41

*Carpenters v. Scott,*
463 U.S. 825 (1983) .................................................................................. 21

*Cayman Explor. Corp. v. United Gas Pipe Line Co.,*
873 F.2d 1357 (10th Cir. 1989) ................................................................. 28

*Chapman v. Nichols,*
989 F.2d 393 (10th Cir. 1993) ................................................................... 24

*Coosewoon v. Meridian Oil Co.,*
25 F.3d 920 (10th Cir. 1994) ..................................................................... 41

*Erikson v. Farmers Grp., Inc.,*
151 Fed. Appx. 672 (10th Cir. 2005) ......................................................... 33

*Estate of Booker v. Gomez,*
745 F.3d 405 (10th Cir. 2014) ................................................................... 18

*Estate of Smart by Smart v. City of Wichita,*
951 F.3d 1161 (10th Cir. 2020) ................................................................. 18

*Fish v. Schwab,*
957 F.3d 1105 (10th Cir. 2020) ................................................................. 15

*Gaddy v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints,*
665 F. Supp. 3d 1263 (D. Utah March 28, 2023) ...................................... 33

*Gravel v. United States,*
408 U.S. 606 (1972) .................................................................................. 16

*Grow Mich., LLC v. LT Lender,*
50 F.4th 587 (6th Cir. 2022) ..................................................................... 37

*Gutierrez v. Cobos*,
841 F.3d 895 (10th Cir. 2016) ........................................................................ 18

*Hafer v. Melo*,
502 U.S. 21 (1991) ........................................................................................... 39

*Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*,
32 F.3d 989 (6th Cir. 1994) ............................................................................ 22

*Hemi Group, LLC v. City of New York*,
559 U.S. 1, 2 (2010) ........................................................................................ 37

*Henry v. Bd. of Leavenworth Cnty. Comm'rs*,
229 F.3d 1163 (10th Cir. 2000) ...................................................................... 23

*Herrera v. Hadfield*,
2022 WL 2953725, (D. Utah July 26, 2022) .................................................. 41

*Hill v. Unnamed Arapahoe Cnty. Det. Officers*,
2012 WL 899278, (D. Colo. Mar. 15, 2012) ................................................... 26

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ......................................................................................... 35

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
2025 WL 1135726, (D. Utah Apr. 17, 2025) .................................................... 9

*Kamplain v. Curry Cnty. Bd. of Comm'rs*,
159 F.3d 1248 (10th Cir. 1998) ...................................................................... 16

*Klayman v. Obama*,
125 F. Supp. 3d 67 (D.D.C. 2015) .................................................................. 38

*Knopf v. Williams*,
884 F.3d 939 (10th Cir. 2018) ........................................................................ 18

*Lauter v. Anoufrieva*,
642 F. Supp. 2d 1060 (C.D. Cal. 2009) .......................................................... 36

*Lincoln v. Maketa*,
880 F.3d 533 (10th Cir. 2018) ........................................................................ 18

*Lunnon v. United States*,
2022 WL 17729999 (10th Cir. Dec. 16, 2022) ............................................... 38

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000) ............................................................... 35

*McCormick v. City of Lawrence*,
130 F. App'x 987 (10th Cir. 2005) ..................................................... 36

*McDonnell v. United States*,
4 F.3d 1227 (3rd Cir. 1993) ............................................................... 41

*Minneapolis Cmty. Dev. Agency v. Buchanan*,
268 F.3d 562 (8th Cir. 2001) ............................................................. 29

*Murray v. Mulgrew*,
704 F. Supp. 2d 45 (D.D.C. 2010) ..................................................... 38

*Ohio ex rel. Davis v. Hildebrant*,
241 U.S. 565 (1916) ........................................................................... 17

*Pacific States Telephone & Telegraph Co. v. Oregon*,
223 U.S. 118 (1912) ........................................................................... 17

*Pedrina v. Chun*,
97 F.3d 1296 (9th Cir. 1996) ............................................................. 39

*Phelps v. Hamilton*,
59 F.3d 1058 (10th Cir. 1995) ........................................................... 12

*Powell v. McCormack*,
395 U.S. 486 (1969) ........................................................................... 17

*Public Citizen v. United States Dep't of Justice*,
491 U.S. 440 (1989) ........................................................................... 41

*RJR Nabisco v. Eur. Cmty.*,
579 U.S. 325 (2016) ........................................................................... 35

*Rucho v. Common Cause*,
588 U.S. 684 (2019) ........................................................................... 17

*Ruggles v. Ige*,
2017 WL 427498 (D. Haw. Jan. 31, 2017) ....................................... 39

*Rylewicz v. Beaton Servs., Ltd.*,
888 F.2d 1175 (7th Cir. 1989) ........................................................... 36

*Safe Streets All. v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) ................................................................. 10, 35

*Santistevan v. Loveridge*,
732 F.2d 116 (10th Cir. 1984) ......................................................................... 26

*Savage v. Fallin*,
845 F. App'x 772 (10th Cir. 2021) ................................................................... 17

*Sensoria, LLC v. Kaweske*,
548 F. Supp. 3d 1011 (D. Colo. 2021) ........................................................... 36

*Shifrin v. State of Colorado*,
2010 WL 3834397 (D. Colo. Sept. 27, 2010) ................................................ 26

*Silkwood v. Kerr–McGee Corp.*,
637 F.2d 743 (10th Cir. 1980) ......................................................................... 21

*Sw. Env't Ctr. v. Sessions*,
355 F. Supp. 3d 1121 (D.N.M. 2018) ............................................................. 40

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) ................................................................. Passim

*Taylor v. Nichols*,
558 F.2d 561 (10th Cir. 1977) ......................................................................... 25

*Tilton v. Richardson*,
6 F.3d 683 (10th Cir. 1993) ............................................................................. 21

*Utah Republican Party v. Cox*,
892 F.3d 1066 (10th Cir. 2018) ................................................................. Passim

*Velasquez v. Amazon*,
2025 WL 3187411 (D. Utah Nov. 14, 2025) ................................................. 10

*VoteAmerica v. Schwab*,
121 F.4th 822 (10th Cir. 2024) ....................................................................... 15

*Wilhelm v. Cont'l Title Co.*,
720 F.2d 1173 (10th Cir. 1983) ....................................................................... 21

*Wilkerson v. Utah, Gateway*,
2013 WL 6185040 (D. Utah Nov. 26, 2013) ................................................. 22

*Wilson v. Layne,*
526 U.S. 603 (1999) ................................................................................................ 38

*Young v. Schultz,*
2023 WL 3324687 (N.D. Cal. May 8, 2023) ........................................................... 36

*Ziglar v. Abbasi,*
582 U.S. 120 (2017) ................................................................................................ 25

<u>Statutes</u>

18 U.S.C. §§ 1961-1968 ........................................................................................... 27

42 U.S.C. § 1983 ............................................................................................... Passim

42 U.S.C. § 1985(3) ................................................................................................. 20

42 U.S.C. § 1986 ......................................................................................... 3, 25, 26

Senate Bill 205 ................................................................................................. 16, 20

Senate Bill 54 ................................................................................................. 5, 6, 14

Utah Code § 20A-5-400.1(1)(a) .............................................................................. 43

Utah Code § 20A-9-101(13)(c) ............................................................................ 1, 6

Utah Code § 20A-9-403(3)(a) ................................................................................... 5

Utah Code § 20A-9-406 ............................................................................................ 5

Utah Code §§ 20A-9-407 ..................................................................................... 5, 29

Utah Code §§ 20A-9-408 ........................................................................................ 29

Utah Code § 63G-2-305(74) .................................................................................... 41

<u>Rules</u>

Rule 12(b)(6) ............................................................................................................. 1

Defendants Spencer Cox, Deidre Henderson, and the State of Utah (collectively, "State Defendants") submit this Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim pursuant to Rule 12(b)(6).

**STATEMENT OF RELIEF REQUESTED AND GROUNDS FOR RELIEF**

Plaintiffs' Complaint centers around a conflict that has already been resolved by the Utah Supreme Court and the Tenth Circuit. Plaintiffs claim that the Utah Republican Party ("URP") can prohibit its candidates from using the signature-gathering method to get on the primary ballot. Plaintiffs believe that Utah Code § 20A-9-101(13)(c), or what's known as "the Either or Both Provision," allows the URP to do this.

Not true. The Utah Supreme Court and Tenth Circuit have ruled on the interpretation and constitutionality of the Either or Both Provision. Those courts concluded that under the Either or Both Provision, the URP must allow candidate members to choose the signature-gathering method, the convention method, or both, to try to qualify for the primary election. Those courts held that the party cannot prohibit the signature-gathering method. And the Tenth Circuit upheld Utah's law as constitutional.

Curiously, Plaintiffs' Complaint alleges that the State Defendants have continued to **<u>correctly</u>** apply the Either or Both Provision. Almost all of Plaintiffs' claims against the State Defendants are based on the allegation that Lt. Governor Henderson has certified candidates who qualified for the primary by signature-gathering. That is exactly what the Utah Supreme Court said she must do.

Plaintiffs now seek to penalize Utah's executive branch for following the law. Plaintiffs raise a plethora of statutory and constitutional claims. Regardless of the different statutes under

which Plaintiffs raise their claims, almost all of the claims are based on the theory that Lt. Governor Henderson cannot certify candidates who qualified through signature-gathering.  These claims are baseless because the established law in Utah is that Lt. Governor Henderson must do so.  It is time for Plaintiffs to start respecting the law.

And Plaintiffs should start accepting election results.  Plaintiffs ask this Court to do what Plaintiffs could not accomplish through the ballot box – unseat Spencer Cox as Governor of Utah.  The Republican supermajority of the Utah Legislature decided that the hundreds of thousands of Utah Republican voters should all have a voice in deciding who should be the party nominee.  Through a democratic process, those voters elected Cox to be Governor.  Plaintiffs' message to those voters is clear: your vote shouldn't matter.  Plaintiffs bring this lawsuit, asking the Court to erase those votes and remove Governor Cox because convention delegates wanted another candidate.  The Tenth Circuit has stated that the Constitution is meaningless if just a select few controls who qualifies for the primary.  The State Defendants have upheld the Constitution.  This lawsuit is simply baseless.

The State Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim for relief.  This Court should dismiss the Complaint for the following reasons:

- Plaintiffs bring a Section 1983 claim, alleging that Lt. Governor Henderson certifying candidates who qualified through signature-gathering violates Plaintiffs' rights under the First Amendment, Equal Protection, Due Process, and Guarantee Clause.

    - Plaintiffs' First Amendment claim fails because this claim is just a rehashing of the URP's claim this Court and the Tenth Circuit previously rejected.  And Plaintiffs' equal protection and due process claims fail for the same reasons because the Tenth Circuit applies the same test to those claims.

2

- o The State Defendants are entitled to legislative immunity for Plaintiffs' claim based on the State Defendants meeting with legislators to discuss legislation.

- o Plaintiffs' Guarantee Clause claim must be dismissed because claims under the Guarantee Clause are non-justiciable.

- o The State Defendants are entitled to qualified immunity. Plaintiffs cannot demonstrate that the State Defendants' particular conduct has been clearly established as unlawful. Just the opposite has occurred. The Tenth Circuit has expressly upheld the State Defendants' particular conduct.

- Plaintiffs bring a Section 1985 claim, alleging that the State Defendants conspired to certify candidates who qualified by signature-gathering and to defeat legislation. Plaintiffs fail to state a Section 1985 claim.

  - o Plaintiffs do not allege they are members of a protected class recognized under Section 1985, and do not allege that the State Defendants acted out of any invidiously discriminatory animus.

  - o Plaintiffs do not allege that the State Defendants conspired to violate a protected right because, as the Tenth Circuit held, the State may require political parties to allow candidates to seek the nomination by signature-gathering.

  - o Even if Plaintiffs plausibly alleged a Section 1985 violation, the State Defendants are entitled to qualified immunity

- Plaintiffs next bring a Section 1986 claim, which alleges that the State Defendants knew of the purported conspiracy and failed to stop it. This claim fails because Plaintiffs do not state a Section 1985 claim, and the State Defendants are entitled to qualified immunity.

- Plaintiffs allege that the State Defendants violated the RICO Act. This claim fails for multiple reasons.

  o Plaintiffs' RICO claims are based on the allegation that the State Defendants engaged in mail fraud and wire fraud through the State Defendants' correct application of the Either or Both Provision. As a matter of law, this is not fraud. Plaintiffs therefore fail to plausibly allege a pattern of racketeering activity.

  o Plaintiffs fail to plausibly allege a recognized RICO injury or that the State Defendants proximately caused any such injuries.

  o And the State Defendants are entitled to qualified immunity on these claims.

- Finally, Plaintiffs bring two declaratory relief claims.

  o Plaintiffs claim that the Lt. Governor's Office violated Utah's GRAMA statute when the office withheld names of signers marked private or withheld. Plaintiffs do not have standing to challenge the Lt. Governor's withholding of names on signature-gathering packets because Plaintiffs did not make the GRAMA request for these records, a non-plaintiff did. And Plaintiffs have not exhausted their administrative remedies through the GRAMA process. Furthermore, Plaintiffs offer a single conclusory assertion of "constitutional injuries;" this is insufficient to state a plausible claim for relief.

  o Plaintiffs claim that the Interlocal Cooperation Agreement between the Lt. Governor's Office and Davis County violates Utah statute. But Utah statute allows election officers to engage in contracts and interlocal agreements to conduct elections. Plaintiffs offer nothing more than a conclusory assertion of "constitutional injuries" from this agreement. This is not a plausible claim.

4

## BACKGROUND

1.     <u>Legal background</u>

At the center of this case, Plaintiffs take issue with Utah's S.B. 54. The URP challenged S.B. 54 in this Court a decade ago. Courts have ruled on the meaning and constitutionality of S.B. 54. The State Defendants provide a brief recap of that case to help frame the issues before the Court in this case.

   1.1.     <u>The Utah Legislature enacts S.B. 54, which allows a candidate to qualify for the primary by gathering signatures</u>

S.B. 54 was signed into law in March 2014. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1072 (10th Cir. 2018). Prior to S.B. 54, the URP selected its candidates for primary elections exclusively through its nominating convention. *Id.* S.B. 54 provides an alternative signature-gathering path to the primary ballot. *Id.*

S.B. 54 created two types of political parties: Registered Political Parties ("RPPs") and Qualified Political Parties ("QPPs"). *Id.* at 1073. Members of RPPs can only qualify for a primary by gathering signatures. Utah Code § 20A-9-403(3)(a). If a party chooses to register as a QPP, it may hold a convention and certify the winners of the convention to the primary ballot. Utah Code § 20A-9-406, -407. But a QPP may not restrict access to the primary ballot just to candidates who emerge from the convention. 892 F.3d at 1073. Under S.B. 54, a candidate who is unwilling or unable to gain placement on the primary ballot through the convention may qualify for the primary by gathering an established number of signatures by petition. *Id.* Specifically, the Either or Both Provision of S.B. 54 provides that a QPP must allow its members to seek the party's nomination "by the member choosing to seek the nomination by either or both of the following methods: (i). . . party's convention process . . . or (ii) . . . by collecting signatures[.]" Utah Code § 20A-9-101(13)(c).

1.2.   <u>The URP tries to prohibit candidates from using the signature-gathering method</u>

In 2015, the URP announced that it would permit nomination only by caucus.[1]  892 F.3d at 1074.  The URP interpreted the Either or Both Provision as offering the political party (not the candidates) the option to allow nomination by either signature-gathering, or the convention, or both.[2]  *Id.*  Spencer Cox (the Lt. Governor at the time) responded that the State's position is that under S.B. 54, it is the party member's choice, not the party's, whether to pursue the nomination using the signature-gathering method, the convention method, or both.[3]  *Id.*  The URP then sued in this Court, seeking declaratory and injunctive relief that the Either or Both Provision violated its First Amendment associational rights.  *Id.*

1.3.   <u>The Utah Supreme Court rules that the Either or Both Provision allows the candidate member, not the party, to select which path to qualify for the primary</u>

In that lawsuit, Judge David Nuffer certified to the Utah Supreme Court the question of interpretation of the Either or Both Provision.  This Court asked whether it is the candidate member or it is the party who has the right to choose which – or both – of the qualification processes to use.  *Id.*  The Utah Supreme Court replied that the Either or Both Provision allows the candidate member, not the party, to select which of those two paths to follow to be certified to the primary ballot.  *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 4.

1.4.   <u>The Tenth Circuit rules that the Either or Both Provision is constitutional and a valid exercise of the State's right to manage elections</u>

After the Utah Supreme Court issued its decision on the certified question, this Court ruled that the Either or Both Provision does not infringe on the URP's First Amendment rights.  892 F.3d at 1075.  The Tenth Circuit affirmed.  The Tenth Circuit found that the Either or Both

---

[1] Ex. 19 to Pls.' Compl.
[2] Ex. 19 to Pls.' Compl.
[3] Compl. ¶ 55; Ex. 19 to Pls.' Compl.

Provision does not severely burden the URP's associational rights "by potentially allowing the nomination of a candidate with whom the URP leadership disagrees." *Id.* at 1083. And the court found that the Either or Both Provision is a reasonable regulation furthering Utah's important interests of managing elections in a controlled manner, increasing voter participation, and increasing access to the ballot. *Id.* at 1084. The Tenth Circuit thus held that the Either or Both Provision is constitutional. *Id.* at 1085.

2.    <u>The State Defendants continue to correctly apply the Either or Both Provision</u>

Now to this case. For the 2024 governor election, Cox sought to get on the Republican primary ballot through both the convention and the signature-gathering method.[4] In February 2024, Cox submitted a sufficient number of signatures to qualify for the primary ballot.[5] Candidates for other statewide offices, such as U.S. Senator and Utah Attorney General, declared they sought the URP nomination through both the convention and signature-gathering process.[6]

In April 2024, the URP held its state nominating convention. Phil Lyman received 67.54% of the delegate vote for nominee for governor.[7] Under the URP's rules, if a candidate receives 60% or more of the delegates' votes at convention, that candidate "shall proceed to the general election" as the party's nominee. But if no candidate gets 60%, the top two candidates proceed to a URP primary.[8]

On May 1, 2024, Lt. Governor Henderson certified the list of candidates to appear on the June primary ballot.[9] The list included candidates who obtained placement on the primary ballot

---

[4] Compl. ¶ 75.
[5] Compl. ¶¶ 82, 84.
[6] Compl. ¶¶ 77-78.
[7] Compl. ¶ 87.
[8] Compl. ¶¶ 87, 99-100.
[9] Compl. ¶ 98; Ex. 50 to Pls.' Compl.

through the signature-gathering process, such as Cox.[10]  In June, Cox defeated Lyman in the Republican primary, and Cox became the Republican nominee.[11]  The next month, Lt. Governor Henderson certified the general election ballot.[12]  Lt. Governor Henderson certified candidates such as Cox, who won the Republican primary after qualifying through the signature-gathering method.[13]  In October 2024, ballots listing such candidates were mailed out to voters.[14]  Cox won the 2024 governor election.[15]

3.    <u>Plaintiffs file their Complaint to challenge the State Defendants' correct application of the Either or Both Provision</u>

Plaintiffs bring this lawsuit challenging the 2024 election process.  Plaintiffs claim that state officials from all three branches of government were in on a conspiracy.  Plaintiffs raise numerous federal constitutional and statutory claims.  At the foundation of Plaintiffs' claims lies the same theory: Plaintiffs claim that Lt. Governor Henderson certified "disqualified" candidates.

Plaintiffs' theory goes like this.  Plaintiffs allege that the URP prohibits the signature-gathering method and mandates nominations exclusively through the convention process.[16]  Ignoring the Utah Supreme Court's ruling, Plaintiffs take the legal position that the Either or Both Provision permits the URP to decide how a candidate can be nominated.[17]

In the 2024 election cycle, Cox and other Republican candidates sought placement on the Republican primary ballot through signature-gathering.  When those candidates obtained enough signatures, Lt. Governor Henderson certified those candidates on the Republican primary ballot.

---

[10] Compl. ¶ 98; Exs. 50-51 to Pls.' Compl.
[11] Compl. ¶¶ 117-19.
[12] Compl. ¶ 127.
[13] Compl. ¶¶ 127, 150.
[14] Compl. ¶ 159.
[15] Compl. ¶ 165.
[16] Compl. ¶¶ 1-2.
[17] Compl. ¶¶ 72, 91.

Plaintiffs claim that these candidates are "disqualified" from the Republican primary, and certifying the candidates was unlawful and unconstitutional. After Cox won the primary, Lt. Governor Henderson certified Cox to the general election ballot. Plaintiffs again claim this was unlawful and unconstitutional. The State Defendants now move to dismiss the Complaint.

## LEGAL STANDARD

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion,

> a plaintiff must plead sufficient factual allegations to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In other words, a plaintiff must establish more than a sheer possibility that a defendant has acted unlawfully. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient.

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, No. 2:24-MD-03102-RJS-DAO, 2025 WL 1135726, at *7 (D. Utah Apr. 17, 2025) (cleaned up).

"Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. Courts therefore disregard legal conclusions masquerading as factual allegations." *Velasquez v. Amazon*, No. 2:25CV00674 DAK, 2025 WL 3187411, at *2 (D. Utah Nov. 14, 2025) (cleaned up). Here, Plaintiffs' Complaint frequently mischaracterizes the effect of statutes and case law. These characterizations of the law are legal conclusions and thus are not entitled to any deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

**ARGUMENT**

1.    <u>The Court must dismiss Plaintiffs' Section 1983 claims because the Tenth Circuit has already rejected similar claims</u>

Plaintiffs raise claims under Section 1983, claiming that the State Defendants' correct application of the Either or Both Provision violates the Constitution.[18]  Plaintiffs raise claims under the First Amendment, Equal Protection Clause, Due Process Clause, and Guarantee Clause.[19]  Plaintiffs' claims are based on Lt. Governor Henderson certifying candidates who qualified through signature-gathering.

These claims have no merit because the Tenth Circuit has ruled that this application of the Either or Both Provision is correct and constitutional.  For the same reasons the URP's claim failed in *URP* under the *Anderson-Burdick* test, Plaintiffs' associational rights claim here similarly fails.  And because the *Anderson-Burdick* test applies to due process and equal protection challenges to election regulations, Plaintiffs' due process and equal protection claims fail for the same reasons as in *URP*.  Moreover, the Court must dismiss Plaintiffs' Guarantee Clause claim because the Supreme Court has ruled that such claims are non-justiciable.

Plaintiffs also claim that Governor Cox's meeting with Lt. Governor Henderson and legislators to discuss proposed legislation violated Plaintiffs' constitutional rights.  This claim must be dismissed because the State Defendants are entitled to legislative immunity.

Finally, Plaintiffs' Section 1983 claims must be dismissed because the State Defendants are entitled to qualified immunity on all claims.  Even if Plaintiffs could plausibly allege that the State Defendants' conduct violated the Constitution, Plaintiffs must also demonstrate that it was

---

[18] Compl. ¶¶ 233-34.
[19] *Id.*

clearly established that such conduct was unlawful. Plaintiffs cannot do so because the Tenth Circuit held in *URP* that the State Defendants' conduct is lawful.

> 1.1. <u>The State Defendants' correct application of the Either or Both Provision is constitutional under binding Tenth Circuit precedent</u>

The central premise of Plaintiffs' Section 1983 claims is Plaintiffs' allegation that the State Defendants certified "disqualified" candidates.[20] In other words, Plaintiffs allege that Lt. Governor Henderson certified Republican candidates who qualified for the primary by gathering signatures. These claims fail as a matter of law for two reasons. First, Plaintiffs' claims are based on an incorrect reading of the Either or Both Provision. Second, the Tenth Circuit holds that the State Defendants' application of the Either or Both Provision is constitutional.

As to Plaintiffs' interpretation of the Either or Both Provision, Plaintiffs claim the provision offers the URP the choice to allow nomination by either signature-gathering method, or the convention, or both. The Utah Supreme Court rejected this interpretation, instead ruling that the provision allows the candidate member, not the party, to select which (or both) of those paths to reach the primary. *URP*, 2016 UT 17, ¶ 4. That interpretation of a state statute is binding. *Auwae v. Metro. Life Ins. Co.*, 441 F. Supp. 3d 1188, 1191 (D. Colo. 2020) (citing *Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir. 1995)).

With that in mind, Plaintiffs' Complaint is actually alleging that the State Defendants have followed the Utah Supreme Court's ruling and have correctly applied the Either or Both Provision by allowing the candidate to select which path to pursue the nomination. Plaintiffs' allegation that the State Defendants certified "disqualified" candidates is not a well-pled factual allegation. It is an incorrect legal conclusion based on a misreading of statute.

---

[20] Compl. ¶ 234.

And the Tenth Circuit holds that the Either or Both Provision (and the State Defendants' application of it) is constitutional. In *URP*, the URP argued that the Either or Both Provision violates its associational rights. 892 F.3d at 1076. Because the Either or Both Provision is an electoral regulation, the Tenth Circuit analyzed the URP's claim using the *Anderson–Burdick* test. *Id.* at 1077. Under the *Anderson–Burdick* test, a court weighs the character and magnitude of the injury to the plaintiff's rights against the State interests that justify the burden imposed by its rule, and also considers the extent to which those interests make it necessary to burden the plaintiff's rights. *Id.* If a regulation imposes severe burdens on a person's associational rights, it must be narrowly tailored to serve a compelling state interest. *Id.* However, when regulations impose lesser burdens, a State's important regulatory interests justify the law. *Id.*

The URP argued that the Either or Both Provision infringes on its associational rights by forcing it to adopt a candidate-selection process it doesn't want. *Id.* at 1077. The Tenth Circuit found that the Either or Both Provision does not severely burden the URP's rights because it "does not regulate the party's internal process." *Id.* at 1080. And it does not prevent the URP "from endorsing the candidate of its choice." *Id.* "The party leaders and convention delegates are still free to communicate to the rest of their party which of the candidates on the primary ballot the leadership supports." *Id.* at 1082.

On the other hand, the Tenth Circuit recognized that "a party's external activities in selecting candidates for public office must necessarily be subject to greater state involvement and scrutiny than its wholly internal machinations." *Id.* at 1079. The court further recognized that when the State "giv[es] certain parties the right to have their candidates appear with party endorsement on the general-election ballot," then "the State acquires a legitimate governmental

12

interest in ensuring the fairness of the party's nominating process, enabling it to prescribe what that process must be." *Id.* 1078 (citation omitted).

In the Tenth Circuit's view, the case was not "about who the candidates are, but rather who the deciders are." *Id.* at 1080. The Either or Both Provision only "ensure[s] that all the party members" – about a million people in total today – "have some voice in deciding who their party's representative will be in the general election," rather than a select few. *Id.*

The Tenth Circuit criticized the exact position Plaintiffs take here. The court stated that it does not violate the Constitution "when the will of [Utah Republican] voters might reflect a different choice than would be made by the party leadership." *Id.* at 1082. Moreover, the First Amendment "would be toothless if party bosses could dictate how candidates can qualify for the primary ballot . . . by requiring candidates to win the support of 'party bosses' . . . , leading to primary 'elections' with a single candidate on the ballot." *Id.* at 1082-83.

The Tenth Circuit concluded that the Either or Both Provision is not a severe burden. *Id.* at 1080, 1083. By "allowing the nomination of a candidate with whom the URP leadership disagrees," the provision "is at most only a minimal burden." *Id.* at 1083.

Turning to the next step in the *Anderson-Burdick* framework, the court found that the Either or Both Provision is a reasonable regulation furthering Utah's important interests in managing elections in a controlled manner, increasing voter participation, and increasing access to the ballot. *Id.* at 1083-84. "These state interests constitute the very backbone of our constitutional scheme—the right of the people to cast a meaningful ballot." *Id.* at 1084.

Moreover, Utah has a "compelling . . . interest in ensuring that the governed have an effective voice in the process of deciding who will govern them." *Id.* at 1085. These "State interests in SB54 surely predominate over the minimal burdens imposed upon the URP." *Id.*

The Tenth Circuit held that "that the Either or Both Provision is a constitutional exercise of the State's regulatory authority." *Id.* at 1085. And the Court of Appeals went beyond concluding that the Either or Both Provision does not violate the Constitution. Rather, the court stated that because S.B. 54 allows Utahns "to express their preferences and values in a democratic fashion," the Either or Both Provision goes to the "very essence" of the Constitution. *Id.* at 1094-95.

The Tenth Circuit's analysis and holding apply directly to, and are dispositive of, Plaintiffs' claims here. Applying the *Anderson-Burdick* test, the State Defendants have not severely burdened Plaintiffs' rights. As a matter of law, the State Defendants' enforcement of the Either or Both Provision does not regulate the URP's internal process. The State Defendants have not prevented Plaintiffs from endorsing the candidate of their choice; Plaintiffs are free to communicate which candidate they support. At the heart of Plaintiffs' claim is their belief that Utah Republican party members should not have been able to vote for Governor Cox in the primary because the delegates wanted Lyman to be the nominee. Plaintiffs wished Lyman could have gone unopposed in a primary. But Utah Republican voters thought otherwise and expressed their voices at the ballot box. The State Defendants have not severely burdened Plaintiffs' rights by allowing the nomination of candidates with whom the URP convention delegates disagree.

And the State Defendants' application of the Either or Both Provision furthers Utah's important interests in managing elections in a controlled manner, increasing voter participation, and increasing access to the ballot. These interests are enough to justify the State Defendants' actions. The State Defendants exercised their constitutional authority. Plaintiffs cannot state a claim that the State Defendants violated their associational rights. This claim must be dismissed.

1.2.    <u>Plaintiffs' due process and equal protection claims fail under the *Anderson-Burdick* test for the same reasons articulated in *URP*</u>

In addition to their First Amendment associational rights claim, Plaintiffs claim that the State Defendants violated Plaintiffs' due process and equal protection rights.[21]  The Tenth Circuit applies the *Anderson-Burdick* test to challenges to election regulations, whether those claims are brought under the First Amendment or the "Due Process or Equal Protection Clauses." *VoteAmerica v. Schwab*, 121 F.4th 822, 840-41 (10th Cir. 2024).  *See also Fish v. Schwab*, 957 F.3d 1105, 1121 (10th Cir. 2020) (applying *Anderson-Burdick* test to "Equal Protection" claim).

Therefore, the Tenth Circuit's analysis of the Either or Both Provision under the *Anderson-Burdick* test in *URP* applies to Plaintiffs' due process and equal protection claims.  For the same reasons Plaintiffs' First Amendment associational rights claim fails under the *Anderson-Burdick* test discussed above, Plaintiffs' due process and equal protection claims also fail.  The Court should dismiss Plaintiffs' due process and equal protection claims.

1.3.    <u>The State Defendants are entitled to legislative immunity from Plaintiffs' claim based on a meeting to discuss legislation</u>

As part of their Section 1983 claim, Plaintiffs contend that the State Defendants' "secret meeting to defeat SB205" violated Plaintiffs' rights.[22]  S.B. 205 proposed to establish a class of political party that chooses a nominee by convention only.[23]  Plaintiffs allege that Governor Cox called a meeting with legislators and Lt. Governor Henderson.[24]  Plaintiffs allege that Governor Cox took charge of the meeting, and that Governor Cox's influence at this meeting led to the

---

[21] Compl. ¶¶ 4, 282.
[22] Compl. ¶ 240.
[23] Compl. ¶ 65.
[24] Compl. ¶ 67.

Legislature failing to pass S.B. 205.[25]  This claim fails because State Defendants' are entitled to legislative immunity on this claim.

Legislative immunity applies to Section 1983 actions seeking damages and declaratory or injunctive relief.  *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).  "[O]fficials outside the legislative branch," including "executive officials[s]" "are entitled to legislative immunity when they perform legislative functions."  *Id.* at 55.  "[W]hether an act is legislative turns on the nature of the act itself, rather than on the motive or intent of the official performing it."  *Id.* at 54.

Activities "that directly affect drafting, introducing, debating, passing or rejecting legislation, are 'an integral part of the deliberative and communicative processes,' and are properly characterized as legislative" functions.  *Baraka v. McGreevey*, 481 F.3d 187, 196 (3d Cir. 2007) (quoting *Gravel v. United States,* 408 U.S. 606, 625 (1972)).  "[T]he legislative function involves determining, formulating, and making policy."  *Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998).  A governor's "discretionary policy-making decisions" are "shielded by legislative immunity."  *Burnett v. Fallin*, 785 F. App'x 546, 553 (10th Cir. 2019).  Legislative immunity also applies to a governor "failing to sign certain bills."  *Savage v. Fallin*, 845 F. App'x 772, 778-79 (10th Cir. 2021).

Here, Plaintiffs allege that Governor Cox and Lt. Governor Henderson discussed proposed legislation with legislators.  This communicative process regarding the debating, passing, or rejecting of legislation is legislative in nature.  The State Defendants are thus entitled to legislative immunity from this claim.  This claim must be dismissed.

---

[25] Compl. ¶¶ 68-69.

1.4.    Plaintiffs' Guarantee Clause claim is non-justiciable

Plaintiffs also raise a claim under the Guarantee Clause in Article IV, Section 4 of the Constitution.  The Supreme "Court has several times concluded, however, that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause*, 588 U.S. 684, 718 (2019).  *See also Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 569 (1916) ("[T]he question of whether that guarantee of the Constitution has been disregarded presents no justiciable controversy.").  "Guaranty Clause claims involve those elements which define a 'political question.'" *Baker v. Carr*, 369 U.S. 186, 218 (1962).  Such claims are "political in character, and therefore not cognizable by the judicial power, but solely committed by the Constitution to the judgment of Congress." *Pacific States Telephone & Telegraph Co. v. Oregon*, 223 U.S. 118, 133 (1912).  The non-justiciability of political questions is a function of the constitutional separation of powers.  *Powell v. McCormack,* 395 U.S. 486, 518 (1969).  Plaintiffs' Guarantee Clause claim is non-justiciable and must be dismissed.

1.5.    The State Defendants are entitled to qualified immunity

Even if Plaintiffs could plausibly allege a constitutional violation, which they cannot, Plaintiffs' claims against the State Defendants in their individual capacities must be dismissed because the State Defendants are entitled to qualified immunity.  "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (cleaned up).  This doctrine "creates a presumption that the defendant is immune from suit." *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020).

"Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id.* (citation omitted).

"To be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "A right is clearly established when every reasonable official would understand that what he is doing violates that right." *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018) (cleaned up). That "right," however, cannot be defined "at a high level of generality." *Knopf*, 884 F.3d at 944. "Instead, the clearly established law must be particularized to the facts of the case." *Id.* (cleaned up). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* "[T]o show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (citation omitted).

Plaintiffs cannot meet their heavy burden to demonstrate that the State Defendants' conduct was unreasonable in light of clearly established law. To begin with, Plaintiffs allege a violation of their rights at too high of a level of generality. Plaintiffs allege that they have "experienced violations of their First Amendment rights to associate and participate in the party's nominating process."[26] This does not satisfy Plaintiffs' burden to overcome qualified immunity.

---

[26] Compl. ¶ 193.

Needing something more specific, perhaps Plaintiffs may argue that the State Defendants' enforcement of the Either or Both Provision infringes on their "associational rights by forcing [them] to adopt a candidate-selection process different from that which it would prefer." *URP*, 892 F.3d at 1077. Or that the State Defendants have violated Plaintiffs' rights by allowing "the nomination of a candidate with whom" Plaintiffs disagree; a nominee who "may not enjoy the support" of the convention delegates. *Id.* at 1081, 1083. But those arguments do not save Plaintiffs' claims from dismissal. The Tenth Circuit has already held that Plaintiffs do not have such rights. Under binding precedent, Plaintiffs do not have a right to "dictate how candidates can qualify for the primary ballot." *Id.* at 1082. Plaintiffs cannot demonstrate that the State Defendants violated a clearly established right.

And Plaintiffs cannot show that it is clearly established that the particular conduct alleged in the Complaint is unlawful. The particular conduct Plaintiffs allege is the State Defendants' "interpretation and application" of the Either or Both Provision.[27] Plaintiffs claim that the Either or Both Provision allows the URP to prohibit candidates from qualifying for the primary through signature-gathering.[28] Plaintiffs cannot point to a single court ruling that established such an interpretation. On the contrary, the Utah Supreme Court ruled that the Either or Both Provision gives the candidate the choice of which (or both) paths to pursue. The court effectively ruled that then Lt. Governor Cox's interpretation and application of the Either or Both Provision was correct. Plaintiffs cannot show that their proposed interpretation is "clearly established."

Moreover, Cox's "particular conduct" in the Complaint was at issue in *URP*. The URP sued because then Lt. Governor Cox stated "that under SB54 it is the party *member's* choice, not

---

[27] Compl. ¶ 60.
[28] Compl. ¶¶ 4, 6, 72.

the party's, whether to pursue the nomination using the signature gathering method, the convention method, or both." 892 F.3d at 1074. This is the particular conduct the URP challenged in federal court. The Tenth Circuit held that Cox's particular conduct did not violate the Constitution. Plaintiffs here allege that same particular conduct is unlawful,[29] yet the particular conduct alleged in this case has been expressly upheld as lawful. In light of *URP*, Plaintiffs cannot demonstrate that every reasonable official would believe that continuing this particular conduct is against the law. The State Defendants are entitled to qualified immunity on Plaintiffs' Section 1983 claim. This claim must be dismissed.

2.    <u>Plaintiffs do not plausibly allege a conspiracy under Section 1985 claim</u>

Plaintiffs next raise a claim under 42 U.S.C. § 1985(3).[30] This claim largely repeats the same theory as Plaintiffs' Section 1983 claims, but now alleges a conspiracy between all three branches of State government. Plaintiffs claim that the State Defendants conspired to certify "disqualified" candidates and to defeat S.B. 205.[31] Plaintiffs allege that this vast government conspiracy was "coordinated through a secret meeting" at the Governor's mansion.[32]

Section 1985 prohibits conspiracies to interfere with civil rights. The elements of a § 1985(3) claim are: 1) a conspiracy; 2) to deprive plaintiff of equal protection or equal privileges and immunities; 3) an act in furtherance of the conspiracy; and 4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

Plaintiffs' Section 1985 claim fails because Plaintiffs are not members of a protected class recognized under Section 1985, Plaintiffs do not allege a discriminatory animus against a

---

[29] Compl. ¶ 73 (alleging that the State Defendants have acted "consistent with Cox's view" expressed "in his letter dated November 19, 2015.").
[30] Compl. ¶ 244.
[31] Compl. ¶ 245.
[32] Compl. ¶ 245.

protected class, and Plaintiffs do not plausibly allege that the State Defendants conspired to deprive Plaintiffs of a protected right.  Moreover, the State Defendants are entitled to qualified immunity on this claim.

    2.1.    <u>Plaintiffs do not plausibly allege a violation of Section 1985.</u>

Section "1985(3) does not apply to all tortious, conspiratorial interferences with the rights of others, but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton*, 6 F.3d at 686 (cleaned up).  To state a Section 1985(3) claim, "the plaintiff must be a member of a protected class, and the actions taken by defendant must stem from plaintiff's membership in that protected class." *Silkwood v. Kerr–McGee Corp.,* 637 F.2d 743, 746 (10th Cir. 1980).  Because Section 1985 was solely enacted to remedy racial animus, "it is a close call whether Section 1985(3) was intended to reach any class-based animus other than [racial] animus." *Carpenters v. Scott*, 463 U.S. 825, 836 (1983). For that reason, the list of classes protected under Section 1985 are "narrowly construed." *Tilton, 6 F.3d at 686.*  And "the classes covered by § 1985 should not be extended beyond those already expressly provided by the [Supreme] Court." *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983) (handicapped persons not a class under § 1985(3)); *Bray v. Alexandra Women's Health Clinic*, 506 U.S. 263, 278 (1993) (women seeking abortions not a class under § 1985(3))).

A "class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994).  Here, Plaintiffs do not allege that they belong to any protected class recognized under Section 1985.  Plaintiffs claim that the supposed conspiracy was aimed against "Utah citizens."[33]  This broad class is not a protected class recognized under

---

[33] Compl. ¶ 246.

Section 1985.  Plaintiffs do not allege that they are members of a protected class based on race or national origin.  Because Plaintiffs do not plausibly allege that they "belong[] to any protected class," the "Complaint therefore fails to state a claim for relief under § 1985(3)."  *Wilkerson v. Utah, Gateway*, No. 2:13 CV-666-DN-BCW, 2013 WL 6185040, at *2 (D. Utah Nov. 26, 2013).

Nor do Plaintiffs plausibly allege that the State Defendants' actions stem from Plaintiffs' membership in a protected class.  To state a Section 1985 claim, "a plaintiff must establish that a class-based or racially discriminatory motive lurks behind the conspiratorial activities."  *Babbar v. Ebadi*, 216 F.3d 1086, No. 99-3040, 2000 WL 702428, at *9 (10th Cir. 2000).  This "invidiously discriminatory animus" requirement "requires that the defendant have taken his action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group."  *Bray*, 506 U.S. at 275-76 (cleaned up).  Because Plaintiffs fail to plausibly allege that an invidiously discriminatory animus against a protected class[34] was the motivating force behind the State Defendants' actions, Plaintiffs cannot state a claim under Section 1985.

Plaintiffs also fail to show a conspiracy to violate Plaintiffs' constitutional rights because the State Defendants' actions do not implicate any protected right of Plaintiffs.  *See Bray*, 506 U.S. at 276.  To state a Section 1985 claim, Plaintiffs must plausibly allege that Defendants conspired for the purpose of violating a "federally-protected right of plaintiffs."  *Henry v. Bd. of Leavenworth Cnty. Comm'rs*, 64 F. Supp. 2d 1042, 1060 (D. Kan. 1999), aff'd sub nom., 229 F.3d 1163 (10th Cir. 2000).  "A conspiracy is not for the purpose of denying equal protection

---

[34] As Plaintiffs allege they are in the class of Utah citizens, it is implausible (and illogical) that the State Defendants' actions stem from animus against Utahns.  Plaintiffs allege that the State Defendants' actions allowed hundreds of thousands of Utah citizens to vote for their preferred candidate in the primary.  Plaintiffs cannot plausibly allege animus against Utah citizens.

simply because it has an effect upon a protected right.  The right must be *aimed at*; its impairment must be a conscious objective of the enterprise."  *Bray*, 506 U.S. at 275 (cleaned up).

The only constitutional violation that Plaintiffs allege is that the State Defendants applied the Either or Both Provision to allow candidates to pursue the party nomination through the signature-gathering method.  As the Tenth Circuit made abundantly clear in *URP*, Plaintiffs do not have a constitutional right to prohibit Republican candidates from seeking placement on the primary ballot through signature-gathering.  Accordingly, any purported "conspiracy" to continue to correctly apply the Either or Both Provision is not a conspiracy aimed at impairing Plaintiffs' protected rights.  Plaintiffs fail to state a Section 1985 claim, and this claim should be dismissed.

### 2.2.    The State Defendants are entitled to qualified immunity

Even if Plaintiffs could state a plausible Section 1985 claim, which they cannot, the State Defendants are entitled to qualified immunity on this claim.  "[D]efendants in section 1985 actions are entitled to claim qualified immunity."  *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994).  Here, the State Defendants are entitled to qualified immunity on Plaintiffs' Section 1985 claim for three reasons.

First, Plaintiffs cannot show that the State Defendants' particular conduct violates a clearly established right.  "An official is protected from personal liability if his allegedly unlawful official action was objectively reasonable when assessed in light of legal rules that were clearly established when the action was taken."  *Chapman v. Nichols,* 989 F.2d 393, 397 (10th Cir. 1993).  In light of the controlling rulings from *URP*, Plaintiffs cannot demonstrate that every reasonable official would believe that continuing to correctly apply the Either or Both Provision is a conspiracy to deprive rights.  The courts' rulings established that Cox's interpretation of the Either or Both Provision is correct, and that such application of the Either or Both Provision is

constitutional.  Plaintiffs cannot establish, then, that continuing such application of the Either or Both Provision has been clearly established as a conspiracy to deprive rights.  As made clear in *URP*, Plaintiffs do not have a right to be free from the State requiring the URP to allow candidates to pursue the signature-gathering method.

Second, Plaintiffs cannot demonstrate that it has been clearly established that their alleged class is a protected class recognized under Section 1985.  The Supreme Court has questioned whether Section 1985 extends beyond race-based classes.  *Scott*, 463 U.S. at 836.  The Court also "made it clear that § 1985(3) did not cover conspiracies motivated by economic, political or commercial animus." *Wilhelm*, 720 F.2d at 1175.  And the Tenth Circuit stated that "the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court." *Id.* at 1176.  Plaintiffs cannot point to a controlling case establishing that their proposed class is protected under Section 1985.  Because existing precedent has not placed the question beyond debate, Plaintiffs do not meet their burden to show a clearly established right.

Third, Plaintiffs cannot point to any controlling authority establishing that a governor and lieutenant governor meeting with legislators to discuss pending legislation constitutes a conspiracy under Section 1985.  Plaintiffs allege that the Section 1985 conspiracy was coordinated in a meeting between executive and legislative officials.[35]  A reasonable state official would conclude that conversations amongst elected officials should not be the subject of a Section 1985 claim.  The case law establishes legislative immunity for both legislative and executive officials for discussing legislation.  This is because open discussion between the executive and legislature should be encouraged.  "Were those discussions, and the resulting policies, to be the basis for private suits seeking damages against the officials as individuals, the

---

[35] Compl. ¶ 245.

24

result would be to chill the interchange and discourse that is necessary for the adoption and implementation of governmental policies." *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017). Plaintiffs cannot demonstrate that the State Defendants' particular conduct in this case has been clearly established as unlawful. Qualified immunity bars Plaintiffs' Section 1985 claim. The Court should dismiss this claim.

3.      Plaintiffs' Section 1986 claim fails because Plaintiffs do not state a Section 1985 claim

Plaintiffs also bring a claim under 42 U.S.C. § 1986.[36] Plaintiffs claim that the State Defendants knew of the vast government conspiracy and failed to stop it.[37] "A claim under Section 1986 exists for refusal to take positive action where the circumstances demand to prevent acts which give rise to a cause of action under Section 1985." *Taylor v. Nichols,* 558 F.2d 561, 568 (10th Cir. 1977). A plaintiff asserting a § 1986 claim must show: 1) the defendant knew of the conspiracy; 2) the defendant had the power to prevent a violation of § 1985; 3) the defendant neglected to prevent the violation; and 4) a violation of § 1985 occurred. 42 U.S.C. § 1986.

Section 1986 depends on liability under Section 1985. *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985). There "cannot be a valid claim under Section 1986 unless there is also a claim under Section 1985." *Taylor*, 558 F.2d at 568. Courts must dismiss a Section 1986 claim if the plaintiff fails to state a Section 1985 claim. *Id.*; *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). Because Plaintiffs fail to state a Section 1985 claim, as discussed above, Plaintiffs' Section 1986 claim fails and must be dismissed.

Even if Plaintiffs could plausibly allege that the State Defendants' conduct violated Section 1986, the Court must dismiss this claim because the State Defendants are entitled to

---

[36] Compl. ¶ 254.
[37] Compl. ¶ 258.

qualified immunity. Qualified immunity applies to suits against government officials under Section 1986. *Hill v. Unnamed Arapahoe Cnty. Det. Officers*, No. 11-CV-00835-PAB-KMT, 2012 WL 899278, at *5 (D. Colo. Mar. 15, 2012); *Shifrin v. State of Colorado*, No. CIV.A. 09-CV-03040-R, 2010 WL 3843083, at *12 (D. Colo. Aug. 11, 2010), report and recommendation adopted, 2010 WL 3834397 (D. Colo. Sept. 27, 2010).

Plaintiffs cannot meet their burden to overcome qualified immunity. Plaintiffs cannot demonstrate that it was clearly established that the State Defendants' particular conduct is a failure to prevent a conspiracy to violate rights. Rather, courts have established that the State Defendants' conduct is lawful and constitutional. Plaintiffs' Section 1986 claim must be dismissed.

4.    <u>Plaintiffs fail to state a RICO claim</u>

Plaintiffs allege that the State Defendants violated the RICO Act, codified at 18 U.S.C. §§ 1961-1968. Plaintiffs allege violations of 18 U.S.C. § 1962(b),[38] (c),[39] and (d).[40] Plaintiffs, however, fail to state a claim for each of the three subsections. "A RICO claim must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 760-61 (10th Cir. 2010) (cleaned up). Specifically, 18 U.S.C. § 1962(b) makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Under 18 U.S.C. § 1962(c) it is "unlawful for any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

---

[38] Compl. ¶ 197.
[39] Compl. at ¶ 198.
[40] Compl. at ¶ 199.

commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." And, 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate" subsection (a), (b), or (c).

Plaintiffs' RICO claims fail because they do not to plausibly allege "racketeering activity" and a "pattern of racketeering activity," two elements necessary for a RICO claim under 18 U.S.C. § 1962 (b) and (c). And Plaintiffs cannot maintain a claim under 18 U.S.C. § 1962(d) without a successfully alleged claim under either subsection (b) or (c). Furthermore, Plaintiffs fail to plausibly allege a recognized RICO injury or that the State Defendants proximately caused any such injuries. Like the claims above, the RICO claim should be dismissed because the State Defendants are entitled to qualified immunity.

    4.1.   <u>Plaintiffs do not plausibly allege racketeering activity</u>

Plaintiffs fail to sufficiently allege "racketeering activity." Racketeering activity is certain enumerated criminal acts, which includes the predicate acts of mail fraud and wire fraud that Plaintiffs allege.[41] 18 U.S.C. § 1961(1)(B). To establish mail fraud, a plaintiff must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme."[42] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citation omitted). "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." *Id.*

---

[41] Compl. ¶ 3.

[42] The State Defendants incorporate by reference the argument made in the motion to dismiss by Defendants Chris Null, Robert Axson, and Kim Coleman that Plaintiffs fail to state a claim for mail or wire fraud as predicate acts because they do not allege that any Defendant undertook an action to obtain money or property from any Plaintiff.

"[T]he common thread among each of these crimes is the concept of 'fraud.'"
*BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999).
Mail or wire fraud must be pled with the particularity required by Federal Rule of Civil
Procedure 9(b), meaning that the allegations must set forth the "time, place and contents of the
false representation, the identity of the party making the false statements and the consequences
thereof." *Tal*, 453 F.3d at 1263 (citation omitted). "A plaintiff asserting fraud must also identify
the purpose of the mailing within the defendant's fraudulent scheme." *Id.* (cleaned up). This
particularity requirement is especially important given the "threat of treble damages and injury to
reputation which attend RICO actions." *Cayman Explor. Corp. v. United Gas Pipe Line Co.*, 873
F.2d 1357, 1362 (10th Cir. 1989).

To determine whether Plaintiffs have plausibly pled mail or wire fraud, the Court's
starting point is the underlying alleged fraud. Plaintiffs allege that the fraud is certifying
candidates who sought nomination through signature-gathering, as permitted by the Either or
Both Provision.[43] Plaintiffs refer to those candidates as "disqualified" candidates.[44] Plaintiffs
also allege that Defendant Cox's representation that he was a candidate furthered the "scheme,"[45]
and that "[t]he scheme to defraud Utah voters continued with the intent to deceive the public into
believing that the Defendants and other disqualified candidates were valid contenders."[46]
Plaintiffs go on to allege other acts in furtherance of the "fraud" of certifying these candidates.

---

[43] *See* Compl. ¶¶ 1, 2, 194.
[44] *See* Compl. ¶ 9 (providing that there are policies that enable "the certification of disqualified candidates Defendants' certification of candidates via signature-gathering under Utah Code § 20A-9-408); *see also* ¶ 98 (stating that Defendant Henderson certified "disqualified candidates" and then listing candidates who "were nominated through the signature-gathering").
[45] Compl. ¶¶ 109, 141.
[46] Compl. ¶ 161.

But Plaintiffs' failure to acknowledge the constitutionality of the Either or Both Provision is not grounds for a RICO claim. The Either or Both Provision is constitutional under settled and binding Tenth Circuit law. 892 F.3d at 1094-95. And the Utah Supreme Court held that "a political party must permit its members to seek its nomination by 'choosing to seek the nomination by either or both' the convention and the signature process.'" 2016 UT 17, ¶ 4. The law is settled that the provision allows candidates to seek nomination through either the convention process or by collecting signatures. *See* Utah Code §§ 20A-9-407, -408.

Certifying candidates based on the signature-gathering process is therefore a valid process by settled law, and cannot be a basis for fraud. Plaintiffs cannot meet the elements of their alleged predicate acts of mail fraud and wire fraud to succeed on their RICO claim. *See Minneapolis Cmty. Dev. Agency v. Buchanan*, 268 F.3d 562, 568 (8th Cir. 2001) ("Because the fraud issue has been decided adversely to the [plaintiff], the [plaintiff] is unable to prove every element necessary to demonstrate a RICO violation."); *Binnifield v. Diamond*, No. 10-cv-5200, 2011 WL 220654, *4 (N.D. Ill. May 31, 2011) ("Importantly, at bottom, the basis of her RICO claim . . . indicates that Binnifield can assert no fraud allegations that could form the basis of a RICO claim."). Plaintiffs' RICO claim fails as a matter of law.

A specific analysis of Plaintiffs' wire fraud allegations demonstrate that Plaintiffs' RICO claims fail. Plaintiffs allege that the State Defendants' X posts and emails are acts of wire fraud. Most of these allegations pertain to Defendants Cox and Henderson sharing election information. In making these representations, they are stating their views, opinions, and even excitement and gratitude, as qualified, not disqualified, candidates based on their legal nomination, and ultimate victory in a lawful election. These representations are not plausibly false and cannot be the basis for wire fraud. Quotes from Defendants that Plaintiffs allege include:

29

- Governor Cox announcing that he and Lt. Governor Henderson submitted enough signatures to qualify for the primary ballot.[47]

- Governor Cox asking friends to help "get ready for the primary election."[48]

- Lt. Governor Henderson stating: "[T]he convention [is] 'no longer a family friendly environment.'"[49]

Other examples of Plaintiffs' allegations of Defendants' use of X or email include:

- Henderson "certified disqualified candidates to a 'closed primary' ballot for the URP . . . . She declared that [candidates] were nominated through the signature-gathering process, granting them a second chance at being nominated . . . as the URP nominee . . . ."[50]

- "Cox emailed party members announcing the 'endorsements' he and the Lieutenant Governor received, further attempting to convince party members that he is a valid candidate. . . . He also continued to actively campaign on X to further persuade the public that he was a legitimate candidate."[51]

- "On June 6, 2024, Defendant Henderson used social media and Fox 13 to further promote the notion that the mailed ballots were legitimate and valid."[52] [53]

Additionally, Defendant Cox stated his position on the interpretation of the Either or Both Provision in his November 19, 2015 letter responding to the URP's restriction of its candidate

---

[47] Compl. ¶ 82 (citing Ex. 39); ¶ 84 (citing Ex. 39).
[48] Compl. ¶ 94 (citing Ex. 39).
[49] Compl. ¶ 95 (citing Ex. 39 at Image 4).
[50] Compl. ¶ 98 (citing Ex. 50 and 51).
[51] Compl. ¶ 105 (citing Ex. 52; Ex. 39 at Image 6).
[52] Compl. ¶ 108 (citing Ex. 39 at Image 9).
[53] *See also* Compl. ¶¶ 82, 84,95, 97, 98, 102, 107, 109, 111, 113, 115, 116, 118, 119, 121, 122, 123, 124, 125, 126, 127, 130, 137, 138, 141, 151, 163, 166, 167 (describing other uses of social media or "retweets" by Defendants).

selection procedures to the convention method.[54]  Plaintiffs allege that letter is an example of wire fraud in furtherance of the scheme.[55]  But again, this allegation is tethered to, and, appears to be a direct reflection of, a legal ruling that led to the Tenth Circuit ruling the Either or Both Provision is constitutional.

Plaintiffs' allegation of mail fraud is also meritless.  Plaintiffs allege that ballots containing false statements and misrepresented candidates who had been disqualified at the URP convention (e.g., through the state convention process) were distributed using the U.S. Postal Service. These ballots unlawfully included candidates from an illegitimate direct primary, constituting an act of mail fraud crossing state lines into Nevada similar to the primary ballots containing false statements and reported to have arrived in Nevada.[56]

While Plaintiffs' allegation of mail fraud suffers the same fatal deficiency as their claim of wire fraud of not being based on fraudulent conduct, it also suffers its own additional pleading deficiencies.  Here, Plaintiffs' allegation of mail fraud lacks the requisite particularity. Specifically, the allegation does not provide the place of the alleged false representation other than to say the ballots crossed into Nevada.  Plaintiffs also do not identify the party making the alleged false statement.  And Plaintiffs do not allege the purpose of the mailing within the alleged fraudulent scheme.  Plaintiffs have failed to sufficiently plead mail fraud.  It therefore cannot be one of the two required predicate acts to establish "racketeering activity."

In sum, Plaintiffs' RICO claim fails because Plaintiffs cannot plead "racketeering activity" when there is no set of circumstances under which they can allege wire fraud and mail fraud as predicate acts because the underlying allegations of fraud have been resolved by settled,

---

[54] Compl. ¶55 (citing Ex. 19), referencing Compl. ¶ 54 (citing Ex. 18).
[55] Compl. ¶ 208.
[56] Compl. ¶ 159 (citing Ex. 74).

binding Tenth Circuit law to not constitute fraud.  The Court does not need any other reason than that to dismiss Plaintiffs' RICO claim.  But beyond that, Plaintiffs' RICO claim should be dismissed because Plaintiffs failed to plead mail fraud with the requisite particularity so it cannot be the second predicate act necessary to plead "racketeering activity."  The Court should dismiss Plaintiffs' RICO claim.

4.2.    <u>Plaintiffs fail to sufficiently allege a pattern</u>

The Court should also dismiss Plaintiffs' RICO claim on the grounds that Plaintiffs fail to plead a pattern of racketeering activity.  A pattern of racketeering activity requires at least two predicate acts that "themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  *Bixler*, 596 F.3d at 761 (cleaned up).  Plaintiffs fail to plead such a pattern because there is no racketeering activity and there is no continuity.

Because Plaintiffs have failed to sufficiently allege the predicate acts of mail fraud and wire fraud as detailed above, they have necessarily failed to allege a "pattern" of those predicate acts.  *See Gaddy v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*, 665 F. Supp. 3d 1263, 1297 (D. Utah March 28, 2023) ("Because Plaintiffs fail to allege even a single predicate act of mail or wire fraud, the court agrees with the Church that Plaintiffs have failed to allege a 'pattern' of predicate acts sufficient to plead a cognizable civil RICO claim.").  Their RICO claim must be dismissed for this reason alone.

And Plaintiffs cannot establish a pattern of racketeering activity based on the lack of continuity.  "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Bixler*, 596 F.3d at 761 (cleaned up).  Plaintiffs allege that the "pattern of

racketeering activity, spanning 2015 to 2025, shows open-ended continuity."[57] "Closed ended continuity requires a series of related predicates extending over a substantial period of time." *Erikson v. Farmers Grp., Inc.*, 151 Fed. Appx. 672, 677 (10th Cir. 2005) (cleaned up).  In turn, "[o]pen-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct." *Id.* (cleaned up).

Plaintiffs have placed a time frame on the alleged pattern of racketeering activity (2015 to 2025),[58] which would suggest closed-ended continuity.  But they have alleged open-ended continuity, which requires Plaintiffs to allege "a clear threat of future criminal conduct related to past criminal conduct."[59] *Erikson*, 151 Fed. Appx. at 677.  The only mention of any potential for future criminal conduct—though there is none because there is no underlying basis for the alleged fraud—is in Plaintiffs' requests for relief including "restrictions on future activities,"[60] declaratory relief;[61] enjoining "future activities;"[62] "preventing future violations under color of state law";[63] and "preventing future violations or neglect."[64] "[P]reventing future racketeering activities"[65] and "prevent[ing] and restrain[ing] ongoing and future violations of 18 U.S.C. § 1962"[66] are the closest Plaintiffs come to allegations to support their allegation of open-ended continuity.  But those statements do not identify "a clear threat of future criminal conduct related to past criminal conduct." *Erikson*, 151 Fed. Appx. at 677.  Nor can those statements identify any

---

[57] Compl. ¶ 209.
[58] Compl. ¶ 209.
[59] Compl. ¶ 209.
[60] Compl. ¶ 218.
[61] Compl. ¶¶ 220, 227.
[62] Compl. ¶ 277.
[63] Compl. ¶ 288.
[64] Compl. ¶ 295.
[65] Compl. ¶ 281.
[66] Compl. ¶ 298.

type of criminal conduct because the underlying fraud Plaintiffs allege is not fraud at all but is instead a legal process of seeking party nomination.  Those statements only request that there be restrictions against future violations without describing what conduct Defendants would undertake to commit future violations.  Alleging "future racketeering activities" is not a description of a "type of criminal conduct."  Indeed, the definition of "racketeering activity" includes a long list of acts that are "indictable."  *See* 18 U.S.C. § 1961(1)(B).  Plaintiffs not only fail to meet the requirement to plead a pattern of racketeering activity because they have not pled the element of racketeering activity, but also because they have not pled the continuity required to establish a pattern.  The Court should dismiss Plaintiffs' RICO claim based on the failure to plead a pattern of racketeering activity.

### 4.3.    Plaintiffs cannot state a RICO conspiracy claim

Plaintiffs cannot maintain a claim under 18 U.S.C. § 1962(d) for a conspiracy to violate § 1962(b) or (c) when there is no viable claim under either of those subsections as detailed above.  A claim under 18 U.S.C. § 1962(d) requires a "person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  "If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal*, 453 F.3d at 1270 (collecting cases).  Because Plaintiffs have failed to allege a sufficient claim under subsections (b) and (c), their subsection (d) claim fails as a matter of law.

### 4.4.    Plaintiffs do not plausibly allege a RICO injury nor causation

Plaintiffs' RICO claim should be dismissed because Plaintiffs fail to allege a RICO injury or that a RICO violation led directly to Plaintiffs' injuries.  To state a RICO claim, a plaintiff must show an injury to his or her "business or property" that was proximately caused by a RICO violation.  *Hickenlooper*, 859 F.3d at 881.  "Injury in his business or property" connote "words of

limitation," and excludes what courts refer to as "personal injuries." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 279 (1992) (O'Connor, J., concurring); *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 350 (2016). The requirement of an injury to business or property ensures "that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Many of Plaintiffs' claimed injuries are not recognized as RICO injuries. For example, Plaintiffs allege emotional distress, loss of confidence, and reputational harms.[67] Because RICO is "designed to remedy economic injury," "injury to . . . reputation, dignity and emotional damages are not the type of injuries redressable by . . . RICO[.]'" *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987); *Tal*, 453 F.3d at 1254. Plaintiffs' alleged emotional and reputational harms do not constitute a RICO injury.

Plaintiffs also allege "constitutional harms" and "constitutional injuries."[68] These are also insufficient because alleged deprivation of constitutional rights "does not constitute the kind of injury required to invoke RICO's civil remedies." *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1209 (D. Kan. 2004), aff'd, 130 F. App'x 987 (10th Cir. 2005) (citation omitted). *See also Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085-86 (C.D. Cal. 2009).

Plaintiffs next allege a loss of time and effort spent.[69] "Lost effort and time are properly characterized as non-compensable personal injuries" and "do not provide . . . standing to bring a RICO claim." *Rylewicz v. Beaton Servs., Ltd.*, 698 F. Supp. 1391, 1395-96 (N.D. Ill. 1988),

---

[67] Compl. ¶¶ 9, 211, 230.
[68] Compl. ¶¶ 211, 230.
[69] Compl. ¶ 211 (alleging as an injury their "convention participation" and "time spent battling legislative policies via initiatives and a blog.").

aff'd, 888 F.2d 1175 (7th Cir. 1989). *See also Young v. Schultz*, No. 22-CV-05203-TSH, 2023 WL 3324687, at *3 (N.D. Cal. May 8, 2023) ("loss of time" not cognizable as a RICO injury).

Finally, Plaintiffs allege "financial losses" and "campaign donations."[70] These allegations are too vague and conclusory to plausible allege a RICO injury. *See Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011, 1029 (D. Colo. 2021) ("The conclusory nature of its claimed injury precludes Sensoria from stating a plausible RICO claim."); *Amaya v. Bregman*, 149 F. Supp. 3d 1312, 1320 (D.N.M. 2015) (plaintiff could not bring RICO claim based on "vague, conclusory allegations that he has been injured"). The Complaint "contains no specifics concerning what money Plaintiffs spent" regarding financial losses and campaign donations, nor "even what that means." *Young*, 2023 WL 3324687, at *4. Plaintiffs fail to provide sufficient factual detail to plausibly allege a RICO injury. Plaintiffs' RICO claim should thus be dismissed.

Even if Plaintiffs plausibly alleged a RICO injury, Plaintiffs' claim fails because Plaintiffs do not plausibly allege that a RICO violation caused that injury. To state a RICO claim, Plaintiffs must show that the RICO predicate offense was: 1) a "but for" cause of their injury; and 2) the proximate cause as well. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010). To prove proximate cause, Plaintiffs must show that the predicate offense led directly to Plaintiffs' injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006). RICO's causation standard is "demanding." *Grow Mich., LLC v. LT Lender*, 50 F.4th 587, 594 (6th Cir. 2022).

Plaintiffs do not plausibly allege that the State Defendants' conduct led directly to any purported financial injuries. For example, Plaintiffs' claimed financial losses include "expenses for convention participation."[71] But the Complaint alleges that regardless of the State

---

[70] Compl. ¶ 211, 230, 275.
[71] Compl. ¶¶ 6, 194.

Defendants' conduct, Plaintiffs Halvorsen, Anderson, Huber, and Inman were going to attend the Utah Republican caucus and convention.[72]  Plaintiffs therefore do not establish that the State Defendants were the "but for" cause for any purported financial losses.

Plaintiffs merely assert, in conclusory fashion, that Defendants' RICO violations "caused Plaintiffs' injuries."[73]  Plaintiffs do not provide any factual detail to plausibly allege that the State Defendants' actions directly led to any claimed injuries.  Plaintiffs do not explain the alleged causal link between the State Defendants' actions and alleged "financial losses."  Because Plaintiffs provide nothing beyond a bare recitation of the statutory requirements and allege no specific facts regarding the proximate cause of the injury, Plaintiffs fail to state a RICO claim. *See Murray v. Mulgrew*, 704 F. Supp. 2d 45, 48 (D.D.C. 2010) (dismissing RICO claim when plaintiff merely alleged that "as a direct and proximate result of Mulgrew's fraud . . ., she suffered damage to her property.").  The Court should therefore dismiss Plaintiffs' RICO claim.

### 4.5.    Qualified immunity bars the RICO claim against the State Defendants

Even if Plaintiffs could plausibly allege a RICO violation and injury, which they cannot, the RICO claim against State Defendants in their individual capacities should be dismissed because of qualified immunity.  "Qualified immunity analysis applies to claims against public officials for RICO violations." *Klayman v. Obama*, 125 F. Supp. 3d 67, 87 (D.D.C. 2015). *See also Lunnon v. United States*, No. CV 16-1152 MV/JFR, 2020 WL 1329821, at *5 (D.N.M. Mar. 23, 2020), aff'd, No. 21-2140, 2022 WL 17729999 (10th Cir. Dec. 16, 2022) (collecting cases).

Plaintiffs cannot show that it has been clearly established that the State Defendants' particular conduct violates the RICO statute.  To meet their burden to show it has been clearly

---

[72] Compl. ¶¶ 83, 87.
[73] Compl. ¶ 211.

established that the State Defendants' particular conduct is unlawful, "the unlawfulness must be apparent" in "the light of pre-existing law." *Wilson v. Layne,* 526 U.S. 603, 615 (1999). Plaintiffs cannot show existing law makes it apparent that the State Defendants' conduct amounts to a RICO violation. Specifically, Plaintiffs cannot produce a Tenth Circuit or Supreme Court case establishing that certifying candidates who qualified for the primary through signature-gathering amounts to mail or wire fraud. In this case, Plaintiffs allege that Cox's November 2015 letter to the URP is a predicate act of wire fraud. Yet that letter was at issue in the *URP* litigation. Courts held that Cox's interpretation of the Either or Both Provision in that letter was the correct interpretation, and his enforcement of the Either or Both Provision, as expressed in that letter, was constitutional. Given that courts upheld Cox's interpretation of the Either or Both Provision as contained in his November 2015 letter, Plaintiffs cannot demonstrate that every reasonable official would think that such conduct amounts to mail and wire fraud.

Qualified immunity bars Plaintiffs' RICO claims against the State Defendants in their individual capacities. The Court must dismiss those claims.

### 4.6. Plaintiffs' official capacity RICO claim must be dismissed

Plaintiffs' RICO claim against the State of Utah and Defendants Cox and Henderson in their official capacities must be dismissed. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, Plaintiff's RICO claims against the [State Defendants] in their official capacities are effectively RICO claims against the" State of Utah. *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 27 (D.D.C. 2015) (citing *Hafer v. Melo,* 502 U.S. 21, 25 (1991)). And "government entities are incapable of forming the malicious intent necessary to support a RICO action." *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996)

(cleaned up).  That rule extends to claims against individuals sued in their official capacities.
*Abcarian v. Levine*, 972 F.3d 1019, 1027 (9th Cir. 2020).

Plaintiffs cannot maintain a RICO claim against the State or the State Defendants in their official capacities "because the State is not capable of forming the intent necessary to support a RICO claim."  *Ruggles v. Ige*, No. CV 16-00304 LEK-KJM, 2017 WL 427498, at *5 (D. Haw. Jan. 31, 2017).  These claims must be dismissed.

5.    Plaintiffs' declaratory relief claims should be dismissed

Finally, Plaintiffs bring two declaratory relief claims based on allegations that the State Defendants violated Utah law.

5.1.    Plaintiffs do not have standing to challenge someone else's GRAMA request

Plaintiffs raise a claim alleging a GRAMA violation.  Plaintiffs allege that Casey Seely made a GRAMA request to the Lt. Governor's Office, seeking the names of all who signed the nominating packets for all U.S. Senate candidates, Utah Attorney General candidates, and the Governor Cox campaign.[74]  In Plaintiffs' exhibit to the Complaint, the Lt. Governor's Office stated that it will provide Seely a report containing the signers of each packet.[75]  If the signer is a private or withheld voter, that designation will appear in place of the voter's name since the law does not allow the Lt. Governor's Office to release those names.[76]  Plaintiffs filed exhibits purporting to be produced reports.  In those reports, some signer names are marked as "Private" or "Withheld."[77]  The report also contains almost 300 pages of the full names of signers.[78]

---

[74] Compl. ¶ 106; Ex. 53 to Pls.' Compl.
[75] Ex. 53 to Pls.' Compl.
[76] *Id.*
[77] *See* Ex. 54 to Pls.' Compl. at 2, 179.
[78] *Id.* at 197-478.

Plaintiffs contend that Utah's GRAMA statute protects only the signature from public disclosure.[79]  Plaintiffs claim that by withholding some signer names, the Lt. Governor's Office violated the GRAMA statute and Plaintiffs' constitutional rights.[80]  Plaintiffs' claim fails for four reasons.

First, Plaintiffs do not have standing to bring this claim based on someone else's records request.  Parties establish standing under open records statutes "by showing that '*they* sought and were denied specific agency records.'"  *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1135 (D.N.M. 2018) (quoting *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449-50 (1989)) (emphasis added).  A plaintiff does not suffer a particularized injury from an agency's failure to disclose records to other persons.  *See, e.g., McDonnell v. United States*, 4 F.3d 1227, 1260 (3d Cir. 1993) (plaintiff had "no standing to challenge the Government's decision to withhold documents" because plaintiff "has not made any formal requests for documents").  Here, Plaintiffs allege that Seely, who is not a plaintiff in this case, filed a GRAMA request.  But "Plaintiffs do not allege that they have filed a [GRAMA] request," and therefore they do not have standing to assert a claim based on a GRAMA request.  *Sw. Env't Ctr.*, 355 F. Supp. 3d at 1135-36.

Second, Plaintiffs claim that the withholding of voter names designated as private or withheld "violate[s] Utah Code § 63G-2-305(74)."[81]  Plaintiffs are thus seeking a declaration of Utah law.  But because "the implication of denied records is based on GRAMA, this does not provide a basis for a federal cause of action."  *Herrera v. Hadfield*, No. 1:21-CV-95 RJS, 2022 WL 2953725, at *4 (D. Utah July 26, 2022) (cleaned up).

---

[79] Compl. ¶ 226.
[80] *Id.*
[81] Compl. ¶ 270.

Third, Plaintiffs have failed to exhaust their administrative remedies. "A party must exhaust administrative remedies when a statute or agency rule dictates that exhaustion is required." *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994). A plaintiff is not "entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* (cleaned up). "GRAMA details an administrative appeals process that is followed by a petition for judicial review in Utah state court." *Canary v. Adams*, No. 4:25-CV-000077-DN-PK, 2025 WL 2939394, at *3 (D. Utah Sept. 26, 2025), report and recommendation adopted, 2025 WL 2938676 (D. Utah Oct. 15, 2025) (citing Utah Code. § 63G-2-400.5 to -406). Plaintiffs have not indicated that they exhausted their administrative remedies. "Any complaint that Defendants violated the provisions of GRAMA should be addressed through this remedial process." *Canary*, 2025 WL 2939394, at *3.

Fourth, Plaintiffs fail to state a plausible constitutional claim because Plaintiffs rely solely on vague, conclusory assertions. The Complaint provides nothing beyond the conclusory assertion that the withholding of signer names causes "constitutional injuries."[82] Plaintiffs do not allege how the Lt. Governor's Office withholding the names designated as private or withheld, yet disclosing all other signer names, amounts to a constitutional violation. Plaintiffs' claim should be dismissed.

5.2.     Utah law allows interlocal agreements

Plaintiffs allege that an Interlocal Cooperation Agreement was signed by the Davis County Commissioner and Ryan Cowley, Director of Elections in the Lt. Governor's Office.[83] Plaintiffs allege that this agreement centralizes the review of nominating petitions for signature-

---

[82] Compl. ¶ 226.
[83] Compl. ¶ 74; Ex. 21 to Pls.' Compl.

gathering candidates seeking a party's nomination for a statewide office, rather than having each of the local county clerks verify signatures.[84]  Plaintiffs claim that the agreement violates Utah law because Utah law allegedly requires all 29 county clerks to verify signatures.  Plaintiffs further claim that "Defendants' centralization facilitated fraudulent certifications" and caused "constitutional injuries."[85]  Plaintiffs' claim fails for three reasons.

First, Plaintiffs allege the agreement violates state law, which "does not provide a basis for a federal cause of action." *Herrera*, 2022 WL 2953725, at *4.  Second, Utah statute provides that an election officer may enter into a contract or interlocal agreement to conduct an election. Utah Code § 20A-5-400.1(1)(a).  Utah law thus provides for such agreements.  And third, Plaintiffs again do not go beyond vague and conclusory assertions that the agreement has caused a constitutional violation.  The Complaint does not provide any sufficient factual detail to plausibly allege how the agreement violated Plaintiffs' constitutional rights.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Complaint, with prejudice.


DATED: November 26, 2025.


OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/Jason Dupree*
JASON DUPREE
Assistant Utah Attorney General
*Counsel for State, Judicial, and Legislative Defendants*

---

[84] Compl. ¶¶ 74, 225.
[85] Compl. ¶ 225.

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, the foregoing, *State Defendants' Motion to Dismiss for Failure to State a Claim,* was filed using the Court's electronic filing system, which gave notice to the following:

Tracie Halvorsen
138 E 12300 S, C275
DRAPER, UT 84020
Email: traciehalvorsen@outlook.com
*Plaintiff Pro Se*

Nancy Inman
138 E 12300 S, C275
DRAPER, UT 84020
(916)396-4395
Email: nancyjinman@gmail.com
*Plaintiff Pro Se*

Steven Huber
138 E 12300 S, C275
DRAPER, UT 84020
(801)688-3594
Email: traciehalvorsen@outlook.com
*Plaintiff Pro Se*

Wayne Wickizer
138 E 12300 S, C275
DRAPER, U 84020
(385)239-8326
Email: justice@utahwtp.com
*Plaintiff Pro Se*

Daniel Newby
138 E 12300 S, C275
DRAPER, UT 84020
(801)949-3360
Email: danieltrouble@protonmail.com
*Plaintiff Pro Se*

*/s/ Asia Reid*
ASIA REID
Paralegal