D. LOREN WASHBURN (10993)
BRENNAN MOSS (10267)
CLIFF PARKINSON (13327)
PARKINSON BENSON POTTER
2750 Rasmussen Rd., Suite H-107
Park City, UT 84098
Loren@pbp.law
Brennan@pbp.law
Cliff@pbp.law

Attorneys for Kim Coleman, Robert Axson, and Chris Null

---

## IN THE UNITED STATES DISTRICT COURT IN AND FOR DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRACEY HALVORSEN, an individual; SOPHIE ANDERSON, an individual; NANCY INMAN, an individual; STEVEN HUBER, an individual; WAYNE WICKIZER, an individual; and DANIEL NEWBY, an individual.<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>SPENCER COX, as an individual and in official capacity; DEIDRE HENDERSON, as an individual and in official capacity, STATE OF UTAH, et al.<br><br>　　　　　　　　Defendants. | **DEFENDANTS MOTION TO DISMISS COMPLAINT**<br><br>Case No. 2:25-cv-00909-HCN-JCB<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

Come now Defendants Chris Null, Robert Axson and Kim Coleman (the "**Moving Defendants**") and move the Court pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for an order dismissing all claims in Plaintiff's Complaint against them.

i

## TABLE OF CONTENTS

STATEMENT OF RELIEF REQUESTED AND GROUNDS FOR RELIEF ....................... 1

APPLICABLE LAW ................................................................................................. 3

APPLICABLE FACTS ............................................................................................. 5

    A.   *Chris Null* ............................................................................................. 5

    B.   *Kim Coleman* ....................................................................................... 5

    C.   *Robert Axson* ....................................................................................... 6

    D.   *Halvorsen Threatens a Lawsuit and Attempts to Attend a Committee Meeting.* .............. 6

ARGUMENT ........................................................................................................... 9

I.    The Complaint Does Not Allege Facts Sufficient To Sustain Plaintiffs RICO Claims Against The Moving Defendants. ............................................................. 9

    A.   *Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity Because They Have Not Pleaded Viable Mail Or Wire Fraud Claims.* ............................... 9

    B.   *Plaintiffs Have Failed To Allege That A RICO Enterprise Existed* .............................. 10

    C.   *Plaintiffs Have Not Alleged That Any Moving Defendant Conducted The Affairs Of A Rico Enterprise.* ................................................................... 11

    D.   *Plaintiffs Do Not Allege Facts Sufficient To Infer That Any of the Moving Defendants Entered a RICO Conspiracy.* .................................................... 12

II.    Plaintiffs Have Not Pleaded Viable Civil Rights Claims .................................. 13

    A.   *Plaintiffs Have Not Identified A Constitutionally Protected Right The Moving*

*Defendants Violated Or What Specific Acts Are Alleged To Have Violated Those Rights....14*

*B.    The Moving Defendants Did Not Violate Plaintiffs' Rights When Mr. Axson Responded to the Notice of Intent. ..........................................................................................................15*

*C.    Plaintiffs Did Not Violate Plaintiffs Rights By Attempting to Exclude Plaintiff Halvorsen From The Committee Meeting On September 7, 2024. ........................................16*

    1.    Plaintiffs Have Not Identified A Constitutionally Protected Right For Plaintiff Halvorsen To Attend The Committee Meeting. ..................................................................16

    2.    Plaintiffs Have Not Alleged Facts That Make It Plausible To Conclude That Plaintiff Halvorsen Was Entitled To Attend The September 7 Committee Meeting Under the Utah Republican Party Rules. ..................................................................................................18

        a.    The Utah Republican Party Bylaws Do Not Require The Committee To Allow Nonmembers To Attend Committee Meetings. ...........................................................19

        b.    Roberts Rules Of Order Authorized the Moving Defendants To Exclude Plaintiff Halvorsen From The Committee Meeting. ..................................................................19

        c.    Utah Law Does Not Require The Utah Republican Party State Central Committee To Open Its Meetings To Nonmembers ........................................................................21

*D.    Plaintiff Halvorsen Was Not Excluded From The Meeting ...........................................21*

*E.    The Moving Defendants Were Not State Actors ...........................................................22*

III.    The Court Should Award Attorneys Fees To The Moving Defendants ...........................23

**CONCLUSION** .............................................................................................................**25**

## <u>TABLE OF AUTHORITIES</u>

### <span style="font-variant:small-caps">Cases</span>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ----------------------------------------------------------------3, 13, 15

*Boyle v. United States*, 556 U.S. 938 (2009) -------------------------------------------------------- 10, 11

*City of Madison Joint School District v. Wisconsin Public Employment Relations Comm'n*, 429
    U.S. 167 (1976)------------------------------------------------------------------------------------------17, 18

*Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264 (10th Cir. 2023) ----------------------------------4

*Fox v. Vice*, 563 U.S. 826 (2011) ----------------------------------------------------------------------- 5, 23

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995)-----------------4, 22, 23

*George v. Urb. Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016) ---------------------------------- 12

*Gillmor v. Thomas*, 490 F.3d 791 (10th Cir. 2007) ----------------------------------------------------4

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981)---------------------- 17

*Kousisis v. United States*, 605 U.S. 114 (2025)------------------------------------------------------- 4, 10

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)------------------------------------------------------ 22

*Lyman v. Cox*, 2024 UT 35, 556 P.3d 49. ------------------------------------------------------------------1

*Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271 (1984) -------------------------- 16

*Neitzke v. Williams*, 490 U.S. 319 (1989) -------------------------------------------------------------- 23

*New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008)----------------------------- 18

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) --------------------------------------------------------- 11

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) -------------------------------------------------------- 10

*United States v. Dazey*, 403 F.3d 1147  (10th Cir. 2005)--------------------------------------------- 13

*Utah Republican Party v. Cox*, 178 F. Supp. 3d 1150 (D. Utah 2016) --------------------------------1

*Utah Republican Party v. Cox*, 2016 UT 17, 373 P.3d 1286 --------------------------------------- 1

*Utah Republican Party v. Cox*, 885 F.3d 1219 (10th Cir. 2018) ----------------------------------- 1, 7

*West v. Atkins*, 487 U.S. 42 (1988) ------------------------------------------------------------ 4, 14

STATUTES

18 U.S.C. § 1341 ----------------------------------------------------------------------------- 9

18 U.S.C. § 1343 ----------------------------------------------------------------------------- 9

18 U.S.C. § 1962 ------------------------------------------------------------------------- 4, 11

42 U.S.C. § 1983 ---------------------------------------------------------------------- 13, 22

42 U.S.C. § 1988 ------------------------------------------------------------------------- 4, 23

Utah Code § 20A-1-501 ------------------------------------------------------------------- 19, 21

Utah Code § 52-4-101 et seq --------------------------------------------------------------- 18

Utah Code § 52-4-103(7)(c)(i) ------------------------------------------------------------- 18

OTHER AUTHORITIES

Roberts Rules of Order (12th Ed.) ------------------------------------------------------- 19, 20, 21

RULES

Rule 12(b)(6) -------------------------------------------------------------------------------- 3

**STATEMENT OF RELIEF REQUESTED AND GROUNDS FOR RELIEF**

From its foundation this lawsuit has been about a group of Plaintiffs who know what the law is but refuse to acknowledge the binding decisions of the Utah Supreme Court[1], this Court[2], and the Tenth Circuit.[3] All three courts have ruled on the core dispute Plaintiffs have with the Defendants in this case: whether Utah law requires that candidates be allowed to qualify for the Utah Republican Party's primary ballot through gathering signatures or whether the delegates of the Utah Republican Party convention can insist that only candidates who are nominated at the state convention be listed on the ballot. All three courts have rejected the very arguments underpinning Plaintiffs' Complaint. Plaintiffs know this is the law because they cited the controlling Tenth Circuit case in their Motion For Preliminary Injunction in this case. (See ECF 7 at pg. 3, quoting *Utah Republican Party v. Cox*, 885 F.3d 1219, 1252 (10th Cir. 2018)) and Plaintiff Halvorsen cited to the same controlling Tenth Circuit case in a Notice of Intent to sue various Republican Party leaders that she wrote more than a year ago. (*See* Ex. 65)[4] So, from the beginning Plaintiffs have known that the theory underlying their Complaint directly contradicts controlling Tenth Circuit and Utah Supreme Court decisions.

But filing a meritorious lawsuit was never the object of the exercise for Plaintiffs.

---

[1] *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 12, 373 P.3d 1286, 1289 ("a registered political party must permit its members to seek access to nomination for electoral office by either or both the signature-gathering method or the convention method."); *see also Lyman v. Cox*, 2024 UT 35, ¶ 8, 556 P.3d 49, 52, cert. denied, 145 S. Ct. 1057 (2025), reh'g denied, 145 S. Ct. 1323 (2025) ("Mr. Lyman has not shown a legal basis for setting aside the 2024 Republican primary election.").

[2] *Utah Republican Party v. Cox*, 178 F. Supp. 3d 1150, (D. Utah 2016), aff'd, 885 F.3d 1219 (10th Cir. 2018), *opinion revised and superseded on denial of reh'g*, 892 F.3d 1066 (10th Cir. 2018), and aff'd, 892 F.3d 1066 (10th Cir. 2018).

[3] *Utah Republican Party v. Cox*, 885 F.3d 1219, 1235 (10th Cir.), opinion revised and superseded on denial of reh'g, 892 F.3d 1066 (10th Cir. 2018).

[4] Citations to Ex. Refer to Exhibits to the Complaint filed by Plaintiffs. The Moving Defendants attach two Exhibits to this Motion, neither of which is referenced in this Statement of Facts section.

Instead, Plaintiff Halvorsen's public statements demonstrate that Plaintiffs' lawsuit is simply an attempt to harass the Defendants, by imposing punishing attorney's fees on unpaid volunteers who serve as Utah Republican Party leadership, as well as on Utah's publicly elected officials (see ECF 62, seeking to preclude the state employees from representing state officials) simply because they did their jobs and enforced Utah law as decided by the Courts. Plaintiffs, especially Plaintiff Halvorsen, do not like the outcome of Utah's democratic lawmaking process and they are using this lawsuit to harass those who have the courage to uphold the law in the face of their bullying tactics.

Plaintiffs have brought five causes of action in their Complaint: a request for declaratory relief that does not seek relief from or allege anything about the Moving Defendants[5], a civil RICO claim, and three largely overlapping federal civil rights claims.[6] As it relates to the Moving Defendants, the immense 92 page complaint with its many superfluous exhibits boils down to allegations that Mr. Axson exercised his First Amendment right a couple of times, including to point out that Plaintiff Halvorsen's Notice of Intent was meritless, and a dispute about whether Plaintiff Halvorsen had a Constitutionally protected right to attend a meeting of the Utah Republican Party State Central Committee on September 7, 2024 (the "**Meeting**").

In any event, it seems obvious that a RICO case and a 1983 action cannot reasonably be sustained solely because of a disagreement about whether the Meeting was open to the public

---

[5] The State Defendants have fully briefed the Declaratory Relief cause of action, which does not directly pertain to the Moving Defendants. The Moving Defendants hereby adopt the arguments made by the State Defendants in Section 5 of their brief. See ECF 85 at Section 5, 5.1, and 5.2.

[6] The State Defendants have fully briefed the Section 1985 claims and that Section 1985 does not apply because the Plaintiffs are not part of a protected class. See, ECF 85 at Section 2. The State Defendants have also fully briefed the Section 1986 claims. See, ECF 85 at Section 3. The Moving Defendants incorporate the State Defendants' arguments on these causes of action, with the exception of Section 2.2 and the portion of Section 3 dealing with qualified immunity, which does not apply to the Moving Defendants.

and whether Mr. Axson can disagree with Plaintiff Halvorsen. Common sense makes clear Plaintiffs' claims against the Moving Defendants are at best a wild overreach. And indeed, under the legally applicable standards, the facts alleged by Plaintiffs do not state a valid claim for relief against the Moving Defendants on any of Plaintiffs' theories.

The Complaint's deficiencies are not merely technical, nor is it a close call. Plaintiffs' claims lack any merit, are contrary to clear decisions of the courts, and were brought for the improper purpose of harassing and imposing financial costs on the Moving Defendants. The Complaint should be dismissed, and the Plaintiffs should be ordered to pay Moving Defendants' attorney fees and costs.

## APPLICABLE LAW

Under Rule 12(b)(6) the Court must dismiss a plaintiff's complaint when the plaintiff fails, "to state a claim upon which relief can be granted."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint contains sufficient facts the Court disregards "bare assertions . . .[that] amount to nothing more than a 'formulaic recitation of the elements' of a claim." *Id*. at 681.

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion, but exceptions to this general rule include . . . documents incorporated by reference in the complaint [and] documents referred to in and central to the complaint. . . and matters of which a court may take judicial notice." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th

3

1264, 1275 (10th Cir. 2023) (citations and quotations omitted).

"In order to bring a civil RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007)(citations and quotations omitted). "To establish a pattern of racketeering activity, Plaintiffs must allege at least two predicate acts" such as mail or wire fraud violations. *Clinton*, 63 F.4th at 1281. For a mail or wire fraud claim, the United States Supreme Court recently explained that obtaining money or property must be the object, not merely a byproduct, of the alleged scheme and artifice to defraud:

> Although the lower courts once interpreted the phrase money or property as something of a catchall, we recently reiterated that the federal fraud statutes reach only traditional property interests. Schemes that target the exercise of the Government's regulatory power, for example, do not count. Nor do schemes that seek to deprive another of intangible interests unconnected to property. And in all cases, because money or property must be an object of the defendant's fraud, the traditional property interest at issue must play more than some bit part in a scheme. Obtaining the victim's money or property must have been the aim, not an incidental byproduct, of the defendant's fraud.

*Kousisis v. United States*, 605 U.S. 114, 121–22 (2025) (quotations and citations omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

Under 42 U.S.C. § 1988, in an action brought under Section 1983 and related sections including Sections 1985 and 1986, the prevailing party is entitled to obtain attorney's fees from

the Defendants. Section 1988 "authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826 (2011).

## APPLICABLE FACTS

### A.  Chris Null

Beyond mere formulaic recitations, the Complaint contains only three paragraphs mentioning Chris Null. The first is convoluted and full of legal conclusions but essentially alleges that Chris Null is the Salt Lake County Republican Party Chair and as part of that role he is a voting member of the Utah Republican Party State Central Committee (the "**Committee**"). (Complaint at ¶ 20). The second describes Null as a "compliant Salt Lake County GOP figure" who "follows suit" with Mr. Axson and "reinforced party control" but provides no specific factual allegations about any conduct by Mr. Null. (Complaint at ¶ 189). The third alleges that Null "actively assisted Defendant Coleman and the West Valley City Police in removing Halvorsen from the State Central Committee meeting." (Complaint at ¶ 155).

### B.  Kim Coleman

The Complaint contains numerous legal conclusions and recitations of elements of claims in the paragraph introducing Defendant Kim Coleman, but no clear factual allegation of what role she actually served, in what organization, or during what time period. The discernible gist of paragraph 19 of the Complaint is that Kim Coleman was the Vice Chair of the Committee during some periods covered by the Plaintiff's Complaint.[7] The Complaint also contains irrelevant and

---

[7] The Complaint also contains a parenthetical grouping Ms. Coleman with others, including defendants and non-

superfluous allegations that Ms. Coleman is "director of the Utah Children First Education Fund" (Complaint at ¶ 189) and "a co-founder of Monticello Academy." (Complaint at ¶ 190). The only other allegations about Ms. Coleman relate to the September 7 Committee meeting and are described in more detail below.

### C.   Robert Axson

Robert Axson is the Chair of the State Central Committee of the Utah Republican Party and as such is the liaison between the Party and the Lieutenant Governor's office as well as with county officials. (Complaint at ¶ 18). He also has a role in certifying the Party's candidates for elected office to the Lieutenant Governor's office so they can be included on the official ballot. (Complaint at ¶ 18). Mr. Axson, the Complaint alleges, sent various tweets in 2024, including a tweet congratulating Spencer Cox on being the Republican Party nominee for Utah governor and criticizing Phil Lyman (a former candidate for the Republican nomination for governor who lost to Cox in the primary) for endorsing the Democratic nominee; and, a second tweet wishing Lieutenant Governor Henderson a happy birthday and calling her an "amazing leader." (Complaint at ¶¶ 142, 151). Also, he is a lobbyist for The Other Side Academy and Piper Hill Consulting, though there is no indication how, if at all, this is relevant to Plaintiffs' claims. (Complaint at ¶ 189). Other than the facts described below centering on the Notice of Intent and the Meeting, these are all the specific factual allegations about Axson in the Complaint.

### D.   Halvorsen Threatens a Lawsuit and Attempts to Attend a Committee Meeting.

According to the Complaint, in August 2024, Plaintiff Halvorsen sent a "Notice of

---

defendants, whom the Complaint characterizes as "Utah GOP Officials." Complaint ¶ 147.

Intent" threatening to sue various Utah Republican Party officials unless they capitulated to her demands which centered around rejecting candidates, like Spencer Cox, who collected signatures to qualify for the ballot and certifying only candidates, like Phil Lyman, who were successful in the state convention process. (Complaint at ¶ 146 and Ex. 65). The Notice of Intent both cites the Tenth Circuit's Decision in *Utah Republican Party v. Cox* and completely ignores the holding of that case. The case is directly on point and makes clear that the position Plaintiff Halvorsen advocated in her Notice of Intent is not the law. (See Ex. 65 at p. 7) The settled law notwithstanding, Plaintiff Halvorsen claimed that Utah Republican Party's governing documents and state law required that the Party certify only candidates who had gone through the convention to be listed on the ballot, at least if they garnered 60% of the vote at the state convention. (Complaint at ¶ 146 and Ex. 65) Plaintiff Halvorsen sent this document to members of the Committee by "a text blast." (*Id*.)

The Committee apparently consulted with counsel regarding the Notice of Intent after which Mr. Axson sent an email to the Committee members. (Complaint at ¶ 147 and Ex. 66). The email explained that the leadership of the Utah Republican Party was aware of the Notice of Intent, that they were consulting with legal counsel and would take action in response to the Notice of Intent "as and when appropriate" and that the leadership considered itself to be in full compliance with Utah law, federal law, and "our Party Documents." (Ex. 66). The email further explained that "the Utah Republican Party will appropriately defend itself, including defending each of you in" Halvorsen's threatened lawsuit. (*Id*.) Axson also expressed to recipients of the Notice of Intent that because the party was committed to defending them, they "should feel confident that the threats made against you are meritless." (*Id*.)

Not satisfied with Mr. Axson's response to her Notice of Intent, on September 7, 2024, Plaintiff Halvorsen attempted to attend the Utah Republican Party State Central Committee quarterly meeting because she wanted to "address the Committee regarding a Notice of Intent and potential actions to ensure the proper nomination of candidates through the state convention." (Complaint at ¶ 152). While she alleges she was attending "by invitation to address the committee," it is fair to infer from the Complaint that neither the Committee Chair, Mr. Axson, nor the Vice Chair, Ms. Coleman, was the source of Plaintiffs' supposed invitation —the Complaint says they demanded she leave the Meeting and eventually called the police to remove her when she would not voluntarily leave. (Complaint at ¶ 153 and Ex. 70 at p. 7-8). Nor does it seem she was on the agenda of the Meeting. [8]

The Complaint next alleges that Mr. Axson demanded that Plaintiff Halvorsen leave the Meeting, but she refused, whereupon Ms. Coleman called the police. (Complaint at ¶ 153) A uniformed West Valley Police Officer responded to a call and came to investigate the claim that Plaintiff Halvorsen was trespassing at the Committee meeting. (Ex. 70). After speaking with both Ms. Coleman and Plaintiff Halvorsen, whom he asked to step into the hall briefly so they could speak, Officer Rodriguez allowed Plaintiff Halvorsen to return to the meeting, which was still underway, until his supervisor arrived. (Ex. 70 at p. 8 of 10). When his supervisor arrived Officer Rodriguez approached Plaintiff Halvorsen to explain the police department's "stance on the

---

[8] In the Utah Republican Party Bylaws that Plaintiffs cite Section 3.0C governs the agenda of State Central Committee meetings. Under that section the Agenda is proposed by the Committee Chair, Mr. Axson in this case. 3.0(c)(1). Additions to the Agenda must be submitted 28 days in advance. *Id.* The Complaint does not allege that Plaintiff Halvorsen was on the Agenda. Indeed if she was on the Agenda it seems improbable that the Chair would have asked her to leave the meeting and called the police, so it is fair to say the facts alleged by the Complaint do not support the conclusion that Plaintiff Halvorsen was on the agenda. Thus, the Complaint's allegation that she wished to address the Committee makes clear her purpose in attending the Committee meeting was to disrupt the meeting and deviate from the meeting's agenda.

matter" but at the point Plaintiff Halvorsen told Officer Rodriguez that "she was done and was leaving." (*Id.*). Plaintiff Halvorsen was not arrested or cited for trespassing and the police case was closed. (*Id.*). Neither Mr. Axson nor Mr. Null is mentioned in the police report. (Ex. 70).

## ARGUMENT

### I. The Complaint Does Not Allege Facts Sufficient To Sustain Plaintiffs RICO Claims Against The Moving Defendants.

Plaintiffs' RICO claims fail because: (1) they have failed to plead a pattern of racketeering activity by failing to allege RICO predicate mail fraud or wire fraud violations; (2) they have failed to plead facts sufficient to support the finding of the structure of an association-in-fact RICO enterprise; (3) they have failed to allege that the Moving Defendants conducted the RICO enterprise; and (4) as to the RICO conspiracy claim, Plaintiffs have failed to allege any facts suggesting the Moving Defendants entered an agreement with anyone.

### A. Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity Because They Have Not Pleaded Viable Mail Or Wire Fraud Claims.

The RICO predicates Plaintiffs allege in their Complaint are mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. (*See, e.g.* Complaint at ¶ 229). According to the Complaint, the acts of mail fraud were the Defendants mailing "counterfeit ballots." (*Id.*, see also, ¶ 207). As for the wire fraud, Plaintiffs allege that the Defendants violated the wire fraud statute by "transmitting deceptive communications via interstate servers." (*Id.*) Plaintiffs allege that the objective of the mail fraud and wire fraud was "to control the [Utah Republican Party candidate] nominating process." (Complaint at ¶ 199).

To establish the predicate act of mail fraud or wire fraud, Plaintiffs must first allege "the

existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006)(quotation and citation omitted). As noted above, the Supreme Court has recently reiterated that for an alleged fraud to be actionable under the mail fraud and wire fraud statutes, "[o]btaining the victim's money or property must have been the aim, not an incidental byproduct, of the defendant's fraud." *Kousisis*, 605 U.S. at 121–22.

Plaintiffs have failed to plead facts that would establish any violations of the mail or wire fraud statutes. Specifically, Plaintiffs do not allege that any Defendant undertook any action with the aim of obtaining money or property from anyone, much less any Plaintiff. Rather, Plaintiffs claim is that the aim of the alleged conspiracy was to control the Utah Republican Party and its nominating process and had the effect of nullifying the "Utah Republican Party's (URP) 2024 convention results, including Phil Lyman's 67.54% delegate win." (Complaint at ¶¶ 199, 229).

Because the aim of the alleged fraudulent scheme was not to obtain any money or property, Supreme Court precedent establishes that Plaintiffs have failed to allege an actionable scheme and artifice to defraud under the mail fraud or wire fraud statutes. Without a viable RICO predicate, Plaintiffs have not alleged a pattern of racketeering activity, which is a necessary element of all of Plaintiffs' RICO claims.

### B. Plaintiffs Have Failed To Allege That A RICO Enterprise Existed

Even if Plaintiffs had properly alleged a RICO predicate their RICO claims still fail because the Complaint does not allege the structure of a RICO Enterprise. The controlling authority on the requirements for pleading an association-in-fact RICO enterprise is *Boyle v. United States*, 556 U.S. 938 (2009). In *Boyle*, the Supreme Court held that a RICO enterprise

10

must possess at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 946.

Plaintiffs have not alleged any relationships or any coordination among those they allege participated in the RICO enterprise. Rather, Plaintiffs' theory seems to be that anyone who believes that a candidate can qualify for the Utah Republican Party's primary by gathering signatures rather than by going through the convention process, or in other words anyone who believes that the law is what the Utah Supreme Court, this Court, and the Tenth Circuit have said it is, is part of a grand RICO enterprise. This approach of describing a RICO enterprise is contrary to the law. A RICO enterprise requires structure and Plaintiffs allege none. They do not allege that the co-defendants in the RICO enterprise had any interpersonal relationships with the other alleged enterprise members, that they met or otherwise coordinated their actions, or that anyone directed their actions at all.  Plaintiffs have failed to allege the kind of structure the Supreme Court decision in *Boyle* requires to find an association-in-fact RICO enterprise exists.

C.  <u>Plaintiffs Have Not Alleged That Any Moving Defendant Conducted The Affairs Of A Rico Enterprise.</u>

Even if Plaintiffs had properly alleged the structure of a RICO enterprise, they have not alleged facts sufficient to make it plausible that any of the Moving Defendants participated in the conduct of the RICO Enterprise. RICO requires a showing that the defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). This, in turn, requires a showing that the defendant "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). "Under

11

*Reves*' operation or management test, the defendant must have 'some part in directing' the enterprise's affairs." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1251 (10th Cir. 2016) (quoting *Reves*, 507 U.S. at 179).

The Complaint's scant allegations about Defendant Null starkly demonstrate that Plaintiffs' do not come close to alleging facts to meet the *Reves* standard. The only action the Complaint alleges Mr. Null took was to "actively assist" Ms. Coleman and the West Valley Police to remove Plaintiff Halvorsen from a meeting. (Complaint at ¶ 155). This single substantive factual allegation about the single act Mr. Null is alleged to have taken is insufficient to make it plausible that Mr. Null had some part in directing the hypothetical enterprise's affairs. His inclusion is the RICO claim is baseless and serves no purpose other than harassment.

The Complaint's allegations about Ms. Coleman and Mr. Axson fare no better. The Complaint does not allege that any of the Moving Defendants directed or had any say in the operation of an enterprise. There are two main reasons for this deficiency. First the Complaint does not describe any actual enterprise for them to conduct; it lists only uncoordinated actions of various actors who happen to share a consistent view of Utah law, the one confirmed by the courts. Second, even if the Plaintiffs had described an enterprise, the single episode Plaintiffs allege as to the Moving Defendants – removing Plaintiff Halvorsen from a meeting that was not open to the public – is so attenuated from the alleged enterprise that this single action cannot qualify as "directing the affairs" of the enterprise.

The Complaint simply does not state facts sufficient to give rise to the plausible inference that any of the Moving Defendants had a part in the conduct of the imagined RICO Enterprise.

D. <u>Plaintiffs Do Not Allege Facts Sufficient To Infer That Any of the Moving</u>

<u>Defendants Entered a RICO Conspiracy.</u>

Plaintiffs also allege that there was a conspiracy that violates the RICO statute. "The core of a conspiracy is an agreement to commit an unlawful act." *United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005). Other than repeated formulaic recitation of the elements, Plaintiffs do not allege any facts that would support the plausible inference that any of the Moving Defendants agreed to commit any unlawful act.

The closest Plaintiffs come to alleging that any of the Defendants entered an agreement is their allegations of a "secret meeting on February 27, 2021, at the governor's mansion" (Complaint at ¶ 199). Indeed, this meeting is the centerpiece of the Plaintiffs RICO story. *Id*. The Complaint identifies a list of attendees at that meeting. Notably, the Moving Defendants are not among them. (Complaint at ¶ 67). Other than their conspiratorial musings about this meeting of Utah politicians, which again the Moving Defendants did not attend, Plaintiffs do not allege any facts establishing a basis to believe that any of the Defendants ever entered *any* agreement to violate the law. Consequently, Plaintiffs have alleged no facts supporting their claim that the Moving Defendants entered into an agreement, which is a fatal deficiency to their inclusion in the conspiracy claim.

Setting aside the pleading deficiencies – which are fatal – Plaintiffs' description of the conspiracy is simply not believable. Plaintiffs' conspiracy claim is simply not "plausible on its face." *Ashcroft v. Iqbal* 556 U.S. at 678.

## II. Plaintiffs Have Not Pleaded Viable Civil Rights Claims

Plaintiffs have failed to allege a viable civil rights claim under 42 U.S.C. § 1983 against

the Moving Defendants because: (1) they have not identified a constitutional right that the

Moving Defendants violated; (2) Plaintiffs do not have a right to preclude Mr. Axson from

opining that Plaintiff Halvorsen's Notice of Intent was meritless; and (3) Plaintiff Halvorsen did

not have a right to attend the Committee meeting and therefore attempting to remove her for

trespassing did not violate any constitutionally protected right she held; (4) Plaintiff Halvorsen

was not actually removed from the meeting but stayed until she voluntarily chose to leave; and (5)

the Moving Defendants were not state actors.

A. <u>Plaintiffs Have Not Identified A Constitutionally Protected Right The Moving Defendants Violated Or What Specific Acts Are Alleged To Have Violated Those Rights.</u>

The entirety of the Complaint's allegations against the Moving Defendants in the Section

1983 claims is as follows:

> Defendants Axson, Coleman, and Null, as URP leaders, acted under color of state
> law by coordinating with state officials to suppress delegate rights (Exhibits 0066
> and 0070), constituting state action (*West v. Atkins*, 487 U.S. 42 (1988)).

(Complaint at ¶ 235). Though this paragraph fails to describe what specific actions "suppressed

delegate rights," the only available inference is that Plaintiffs refer to (1) Mr. Axson's

disagreement with Plaintiff Halvorsen's Notice of Intent; or, (2) the Moving Defendants

attempting to remove Plaintiff Halvorsen from the Committee meeting on September 7, 2024. It

could only be those two actions since the Complaint does not allege the Moving Defendants did

anything else.

Plaintiffs also have not clearly alleged exactly what Constitutionally protected right of the

Plaintiffs was violated. Plaintiffs use only the formulaic recitation that "Plaintiffs assert that

Defendants, acting under color of state law, violated 42 U.S.C. § 1983 by depriving Plaintiffs of

rights secured by the First Amendment, Fourteenth Amendment, and Article IV, Section 4 of the U.S. Constitution." This boilerplate recitation is the exact type of pleading the Supreme Court disallowed in *Iqbal*: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662, at 678. Because they have failed to make particularized allegations of the specific Constitutionally protected right the Moving Defendants purportedly violated, the Plaintiffs' 1983 claims against the Moving Defendants must be dismissed.

      B.  <u>The Moving Defendants Did Not Violate Plaintiffs' Rights When Mr. Axson Responded to the Notice of Intent.</u>

As the Complaint explains, Plaintiff Halvorsen wrote a Notice of Intent to sue various Utah Republican Party officials that essentially tracks Plaintiffs' arguments in their Complaint here: the Utah Republican Party should not have certified for inclusion on the ballot candidates who went through the signature gathering process, only those who prevailed at the convention. (Complaint at ¶ 146 and Ex. 65). Plaintiff sent it to every member of the Committee using a "text blast" that had a link to an electronic copy of the Notice of Intent; she was not stopped from expressing her opinion, however unsupportable her theories were. (Complaint at ¶ 146). As noted above, her Notice of Intent was contrary to the settled decisions of the Utah Supreme Court, this Court, and the Tenth Circuit, even though it cited the very Tenth Circuit opinion it contradicts.

According to the Complaint, Plaintiffs are upset that Mr. Axson disagreed with Plaintiff Halvorsen's position expressed in the Notice of Intent and that he told the Committee members her claims were meritless. (Complaint at ¶ 147 and Ex. 66). Plaintiffs characterize Mr. Axson's disagreement as having "suppressed dissent by dismissing fraud claims" and that he attempted to

"suppress delegate rights." (Complaint at ¶ 235) Not true; he simply disagreed with Plaintiff Halvorsen's Notice of Intent and told the Committee members so.

There is no basis in the law to claim that Mr. Axson's email disagreeing with the Notice of Intent and calling it meritless violated a Constitutionally protected right of Plaintiff Halvorsen or anyone else. Plaintiff Halvorsen has a First Amendment right of free speech, but no Constitutional right to be listened to or to have her views taken seriously. *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283 (1984) ("Appellees have no constitutional right to force the government to listen to their views.") Plaintiff Halvorsen's theories were meritless then and they are meritless now. Mr. Axson was not required to pretend otherwise nor to keep his views to himself.

   C. <u>Plaintiffs Did Not Violate Plaintiffs Rights By Attempting to Exclude Plaintiff Halvorsen From The Committee Meeting On September 7, 2024.</u>

Plaintiffs' other apparent claim is that the Moving Defendants violated Plaintiff Halvorsen's rights – and by extension somehow violated the other Plaintiffs' rights – when Mr. Axson demanded that Plaintiff Halvorsen leave the Meeting and Ms. Coleman called the police to remove Plaintiff Halvorsen when she would not voluntarily go. This claim fails for three reasons. First, Plaintiffs have not identified any Constitutionally protected right that they say was violated. Second, the Complaint provides no basis to conclude that Plaintiff Halvorsen had a right to attend the Meeting under the Utah Republican Party rules. Finally, the facts alleged by the Plaintiffs show that Plaintiff Halvorsen was not excluded from the Meeting.

   1. <u>Plaintiffs Have Not Identified A Constitutionally Protected Right For Plaintiff Halvorsen To Attend The Committee Meeting.</u>

Plaintiffs have failed to show that anyone's Constitutionally protected rights were violated when Plaintiff Halvorsen was asked to leave the Meeting. Defendants can find no case that would support Plaintiffs' implicit argument, which is that there is a right under the United States Constitution for the public to attend a meeting of a committee of a political party.

At times Plaintiffs allege that Plaintiff Halvorsen was intending to speak at the Meeting, suggesting their argument is that she had a Constitutional right to not only attend the Meeting, but to speak at it.[9] Of course if this is the case Plaintiffs would have to find support for the proposition that individuals have a Constitutionally protected right to address a meeting of a political party even without being on the agenda or getting the consent of the chair of the meeting. The Moving Defendants are unaware of any laws or court decisions that would require or even allow such a result. Indeed, as the Supreme Court has explained, "public bodies may confine their meetings to specified subject matter and may hold non-public sessions to transact business." *City of Madison Joint School District v. Wisconsin Public Employment Relations Comm'n*, 429 U.S. 167, 175 n. 8 (1976). Further, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any matter that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

To the extent Plaintiffs' argument is not that Plaintiff Halvorsen had the right to speak, but merely the right to attend the Committee meeting, that argument is also unavailing. The Supreme

---

[9] See Complaint at ¶ 152 ("Plaintiff Halvorsen attended the State Central Committee meeting by invitation *to address the Committee* regarding a Notice of Intent and potential actions to ensure the proper nomination of candidates through the state convention.")(emphasis added) and ¶ 154 ("The trespass was an improper attempt to remove Halvorsen from the meeting in response to *her concerns about election laws and her intention to address them*. This action improperly influenced the Committee's deliberations on Plaintiff Halvorsen's Notice of Intent, *illegally prevented her from participating in a discussion* about unlawful primary ballot certification.")(emphasis added)

Court has held that even government bodies, "may hold non-public sessions to transact business." *City of Madison*, 429 U.S. at 175 n. 8. If government bodies can hold private meetings, a private association like a political party has no Constitutional obligation to open its meetings to the public. *See, New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008)(holding that political parties are private associations that have First Amendment rights to govern their organizations).

As for Utah law, the Utah Open and Public Meetings Act ("OPMA") governs when meetings conducted by a "public body" must be open to the public. Utah Code § 52-4-101 et seq. The Act specifically excludes political parties from its application, meaning that Utah law does not require meetings of political parties to be open to the public. Utah Code § 52-4-103(7)(c)(i). Thus, Utah law does not provide a basis to claim a right to attend the Committee meeting. In any event, a federal 1983 claim requires a federally protected right, so state law would not suffice.

There is no basis for Plaintiffs' position that the Constitution, or any other law, required that Plaintiff Halvorsen be allowed to attend the Committee meeting.

2. <u>Plaintiffs Have Not Alleged Facts That Make It Plausible To Conclude That Plaintiff Halvorsen Was Entitled To Attend The September 7 Committee Meeting Under the Utah Republican Party Rules.</u>

Plaintiffs also cannot establish that Plaintiff Halvorsen had a right to attend the September 7, 2024, Committee meeting under the rules of the Utah Republican Party. Because she had no right to attend the meeting, the Moving Defendants were perfectly entitled to call the police to remove her for trespassing.

In the Complaint Plaintiffs appeal to three sources to argue Plaintiff Halvorsen was entitled to attend the Committee meeting: the Utah Republican Party bylaws, Roberts Rules of

Order, and Utah Code § 20A-1-501. (¶ 153 at fns 89, 90). None of these three sources supports Plaintiffs' position.

                      a.     *The Utah Republican Party Bylaws Do Not Require The Committee To Allow Nonmembers To Attend Committee Meetings.*

The Complaint's first source of authority for their claim that Plaintiff Halvorsen was entitled to attend the Committee meeting is Utah Republican Party Bylaws Section 3.0.E.13. The subsection cited by Plaintiffs, E.13, governs electronic access to Committee meetings and reads as follows: "Public Access: The state party shall not provide electronic access or allow electronic participation for non-SCC members." (Complaint at ¶ 153, fn 89; Exhibit 30 at p.7). Plaintiffs do not explain how a prohibition on electronic participation in Committee meetings by non-Committee-members supports their claim. It does not logically follow from the fact that nonmembers are categorically prohibited from electronically participating in Committee meetings that nonmembers are allowed to participate in person, or more specifically that Plaintiff Halvorsen was allowed to participate in the Meeting.

                      b.     *Roberts Rules Of Order Authorized the Moving Defendants To Exclude Plaintiff Halvorsen From The Committee Meeting.*

Plaintiffs next point to Roberts Rules of Order as support for their argument that Plaintiff Halvorsen was entitled to attend the Meeting. While Plaintiffs do not cite to any particular section of Roberts Rules, an examination of applicable sections reveals that Roberts Rules categorically undermine Plaintiffs' argument. Indeed, Roberts Rules of Order entirely support every step taken by the Moving Defendants. Relevant sections of Roberts Rules of Order[10] provide that:

---

[10] A copy of the relevant sections of Roberts Rules of Order ("RONR") is attached as Exhibit 1.

- "A society has the right to determine who may be present at its meetings and to control its hall while meetings are in progress;" (RONR (12th ed.) 61-6).

- "Nonmembers . . . can be excluded at any time from part or all of a meeting of a society;" (*Id*. 61-7)

- "Any nonmembers allowed in the hall during a meeting, as guests of the organization, have no rights with reference to the proceedings (*Id*. 61: 6-8). An assembly has the right to protect itself from annoyance by nonmembers, and its full authority in this regard . . . can be exercised by the chair acting alone. **The chair has the power to require nonmembers to leave the hall, or to order their removal, at any time during the meeting**, and the nonmembers have no right of appeal from such an order of the presiding officer." (*Id*. 61-19)(emphasis added)

- "If a person . . . refuses to obey the order of proper authority to leave the hall during a meeting, the chair should take necessary measures to see that the order is enforced, but should be guided by a judicious appraisal of the situation. The chair can appoint a committee to escort the offender to the door . . . **If those who are assigned that task are unable to persuade the offender to leave, it is usually preferable that he removed by police**." (*Id*. 61-20) (emphasis added).

Plaintiff Halvorsen was not a member of the Committee and thus for purposes of Roberts Rules' application to the Committee meeting she was a "nonmember". As such the Chair of the Committee, Mr. Axson, had full authority to require her to leave the meeting hall. When those Mr. Axson appointed to act as a "committee" to escort Plaintiff Halvorsen to the door – the Complaint alleges this was Defendants Coleman and Null – were unable to "persuade the

offender to leave" Roberts Rules instructs that it is preferable for them to call the police to remove her.

In other words, the Moving Defendants all but used Roberts Rules of Order as a script for how to respond to Plaintiff Halvorsen's attempt to attend the Committee meeting. Roberts Rules of Order do not provide a basis to conclude that the Moving Defendants violated any right of Plaintiff Halvorsen by excluding her from the Committee meeting.

### c. *Utah Law Does Not Require The Utah Republican Party State Central Committee To Open Its Meetings To Nonmembers*

Finally, Plaintiffs point to Utah Code § 20A-1-501. Section 501, titled "Candidate vacancies -- Procedure for filling," does not speak to central committee meetings at all. As such, it provides no support for Plaintiffs' claim that Utah law requires State Central Committee meetings to be open to the public. And, as noted above, the OPMA specifically exempts political parties from open meeting requirements under Utah law.

Plaintiffs have not alleged a single fact or legal source that would lead to the plausible inference that Plaintiff Halvorsen had a right to attend the Committee meeting and not to be escorted from the building by the police when she refused to leave. Since Plaintiffs have not alleged facts sufficient to establish that Plaintiff Halvorsen was entitled to attend the Meeting, it cannot be a denial of her Constitutionally protected rights to exclude her from the Meeting by reporting her for trespassing when she refused to voluntarily leave.

### D. Plaintiff Halvorsen Was Not Excluded From The Meeting

Further, as explained in the statement of facts above, the Complaint and attached exhibits establish that Plaintiff Halvorsen attended the entire meeting until she told the police "that she

was done and was leaving" and voluntarily left the meeting. Compl., Ex. 70 at 8. Even if the Moving Defendants intended to exclude her from the meeting, their efforts were unsuccessful.

### E.   The Moving Defendants Were Not State Actors

Finally, even if the Moving Defendants violated some Constitutionally protected right of Plaintiff Halvorsen, Plaintiffs' 1983 claims must still be dismissed because the Moving Defendants were not state actors.

The Tenth Circuit has adopted four tests to determine whether someone is a state actor for purposes of a claim under Section 1983 – the nexus test, the symbiotic relationship test, the joint action test, and the public function test – but the upshot is that "[u]nder each of these four tests, 'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Gallagher*, 49 F.3d at 1447 (*quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, (1982)).

Here the chair of a political party's central committee was exercising his authority to exclude someone from attending a committee meeting. The person he excluded had threatened to sue members of the committee using an aggressive theory that was contrary to State and Federal law. She also, according to the Complaint, came to the political party meeting with the intent of addressing the Committee even though she was not on the agenda. Maintaining order and choosing which nonmembers can attend and who will speak at a political party committee meeting is a private political party governing its own affairs, not state action. Neither did calling the police to forcibly remove Plaintiff Halvorsen when she would not voluntarily leave the meeting convert private action to state action. *See, Gallagher* at 1454 (individuals who call the police are not state actors merely because the police act).

Also, even if the Moving Defendants had been attempting to take action using the authority of the state, they failed. The Moving Defendants were so removed from the levers of state power that when they told the police to remove Plaintiff Halvorsen Officer Rodriguez effectively ignored the Moving Defendants, allowing her to stay in the meeting until she voluntarily left.

No actions taken by Moving Defendants can "be fairly attributable to the State." *Gallagher*, 49 F.3d at 1447 (quotation omitted).

## III.    The Court Should Award Attorneys Fees To The Moving Defendants

Plaintiffs' complaint is frivolous, unreasonable and without foundation and the Court should order Plaintiffs to pay the Moving Defendants' attorney's fees and costs. Under 42 U.S.C. § 1988, a prevailing party is entitled to attorney's fees. This includes a defendant being entitled to fees from a plaintiff if the plaintiff's claims are "frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 833 (2011). A frivolous suit is one "based on an indisputably meritless legal theory, or whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Here Plaintiffs lawsuit is based on an indisputably meritless legal theory and baseless factual contentions. Plaintiffs entire Complaint is predicated on willful and knowing disagreement with the controlling decisions of the Utah Supreme Court and the Tenth Circuit. The main factual allegations are that Plaintiff Halverson had a right to attend a meeting of a private political party even after the chair of the committee holding the meeting instructed her to leave. The sources cited in the Complaint – the Republican Party Bylaws, Roberts Rules, and Utah Statutes – provide no support for Plaintiffs' claims. Indeed, no law could plausibly support Plaintiffs' claims based

on these facts.

In addition to being entirely frivolous, and utterly without foundation in the law, Plaintiffs claims were intentionally vexatious and designed with the objective of imposing a financial burden on the Moving Defendants. Plaintiff Halvorsen's very purpose in filing this lawsuit was to cost the Defendants money in attorney's fees. On November 4, Plaintiff Halvorsen tweeted a picture of huge boxes containing copies of Plaintiffs' Complaint and its numerous exhibits. In the text of her tweet she said, "Can you imagine the amount of money each Defendant will have to spend in order to defend themselves. How much will an attorney cost to read a 20 pound Complaint?"[11] For Plaintiff Halvorsen, and the other Plaintiffs who signed on to this vexatious litigation, simply imposing costs on their political rivals was the object of the exercise.

Both because Plaintiffs complaint is frivolous, unreasonable and without foundation in the law, and because Plaintiffs actions were intentionally vexatious, the Court should exercise its discretion to order that Plaintiffs pay all the Moving Defendants' attorney's fees.

---

[11] See Exhibit 2.

**CONCLUSION**

For the reasons cited herein, the Moving Defendants move the Court for an order dismissing Plaintiffs' Complaint against the Moving Defendants with prejudice. The Moving Defendants further move the Court to include in its order a finding that the Plaintiffs' Complaint is frivolous, unreasonable and without foundation.

DATED: November 26, 2025

/s/ D. Loren Washburn
D. LOREN WASHBURN
BRENNAN MOSS
CLIFF PARKINSON
Attorneys for Moving Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2025, the foregoing, Motion to Dismiss Complaint, was filed using the Court's electronic filing system, which gave notice to all counsel of record and to the pro se plaintiffs.


/s/ D. Loren Washburn
D. Loren Washburn
Counsel for Moving Defendant