R. Blake Hamilton (11395)
Janise K. Macanas (8065)
John R. Richardson (18078)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 S. Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000
blake.hamilton@dentons.com
janise.macanas@dentons.com
johnny.richardson@dentons.com

*Attorneys for County Defendant Brian McKenzie*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN et al., | **DEFENDANT BRIAN MCKENZIE'S MOTION TO DISMISS** |
| Plaintiffs, | |
| | Case No.: 2:25-cv-00909-HCN-JCB |
| v. | |
| SPENCER COX, et al., | Judge Howard C. Nielson, Jr. |
| Defendants. | Magistrate Judge Jared C. Bennett |

Defendant BRIAN MCKENZIE ("Mr. McKenzie"), by and through undersigned counsel, respectfully submits this Motion to Dismiss.

### RELIEF REQUESTED AND GROUNDS FOR RELIEF

Mr. McKenzie moves to dismiss all claims against him, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for the following reasons:

- Failure to State a Claim Under Federal Law:

Plaintiffs' claims rest on the assertion that Utah law prohibits candidates from qualifying for a party primary by signature gathering. This is contrary to binding precedent which holds that Utah's election code allows candidates, not parties, to choose their path to the ballot, whether by signature gathering, convention, or both. The "disqualification" theory advanced by Plaintiffs cannot support any federal or state claim.

- Lack of Article III Standing:

Plaintiffs fail to allege any concrete, particularized injury traceable to Mr. McKenzie's conduct, as required by Article III. Their grievances are generalized objections to election administration, not individualized harms. Any alleged harm is not traceable to Mr. McKenzie, whose actions were limited to two public statements and ministerial assistance in signature verification. Plaintiffs also fail to show that any relief against Mr. McKenzie would redress their claimed injuries.

- Qualified Immunity Bars All Personal Capacity Federal Claims:

The Complaint alleges no conduct by Mr. McKenzie outside his official duties as county clerk. All actions attributed to him such as verifying signatures and making public statements about the process were taken pursuant to statutory requirements under Utah Code Ann. § 20A-9-408(9). There are no allegations of willful misconduct, personal benefit, or participation in any alleged enterprise. Mr. McKenzie is therefore entitled to qualified immunity on all personal capacity claims. Plaintiffs cannot show that Mr. McKenzie's conduct violated any clearly established rights and the conduct at issue has been upheld as lawful.

2

- Failure to State a RICO Claim:

Plaintiffs do not allege that Mr. McKenzie personally committed, or agreed to commit, any predicate acts of racketeering activity as required by 18 U.S.C. § 1961(1). The Complaint describes only ministerial acts and public statements, not mail or wire fraud or any conduct with fraudulent intent. Making two public statements does not constitute mail or wire fraud. Plaintiffs also fail to allege a cognizable RICO injury or proximate causation.

- State Law Claims Barred by the Utah Governmental Immunity Act (UGIA):

All state law claims are barred by the UGIA because Mr. McKenzie's alleged conduct was within the scope of his employment and there is no allegation of willful misconduct. Plaintiffs have not complied with the UGIA's notice requirements and the one year notice period expired on June 21, 2025, and August 20, 2025.

- No Plausible Claims Under 42 U.S.C. §§ 1985 and 1986:

Plaintiffs do not allege any conspiracy motivated by class-based, invidious animus as required by § 1985 and do not allege any facts supporting a derivative § 1986 claim. The Section 1986 claim is dependent upon the existence of a valid claim § 1985 and fails automatically.

- Official Capacity Claims are Duplicative and Unsupported:

Any official capacity claims are, in effect, claims against Davis County. Plaintiffs have not alleged any county policy or custom that caused a violation of their rights, as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

- No Entitlement to Punitive Damages:

Plaintiffs fail to allege facts supporting punitive damages. As such, damages are not available against Davis County or its subdivisions as a matter of law.

## BACKGROUND[1]

This lawsuit is brought by several individuals who participated in Utah's 2024 election cycle as delegates, party members, voters, and citizens, and who are challenging the way candidates were nominated and certified for public office, focusing on the use of signature-gathering as a pathway to the ballot.[2] Plaintiffs claim that this method is not allowed under the Utah Republican Party's (URP) rules. They allege that state officials, party leaders, and others worked together to undermine the traditional delegate driven convention process in favor of signature gathering.[3] Plaintiffs contend that this change was not only improper but also part of an expansive effort to manipulate Utah's election laws and outcomes.[4]

Mr. McKenzie, the County Clerk for Davis County, Utah, is named as a defendant both individually and in his official capacity.[5] According to the complaint, his responsibilities include helping to verify signatures on candidate petitions, as required by Utah Code Ann. § 20A-9-408(9). This means he must determine whether each signature on a candidate's petition was made by a registered voter who is qualified to sign, using the same methods that apply to

---

[1] For purposes of this Motion to Dismiss under Rule 12(b)(6), the factual allegations in the Complaint are accepted as true. All rights are reserved to dispute or challenge the truth, accuracy, or evidentiary support for those allegations at later stages of the proceedings.

[2] ECF 1, ¶ 1.

[3] *Id.*

[4] *Id.*, ¶¶ 1, 200.

[5] *Id.*, ¶ 12.

statewide initiative petitions.[6] Plaintiffs assert that the URP does not permit nominations by signature gathering and this process is only relevant for political parties that allow it.[7]

Plaintiffs allege that starting in 2016, a group of state officials, party leaders, and private actors worked together to change Utah's election laws in a way that favored candidates who used signature gathering to get on the ballot.[8] They claim this was done in violation of the URP's rules, which they say only allow for nominations through the convention process.[9] The Complaint describes a pattern of alleged misconduct, including the use of mail and wire communications to distribute ballots and information that Plaintiffs say were fraudulent.[10] Plaintiffs argue that these actions nullified the results of the 2024 URP convention, where their preferred candidates had won.[11]

Plaintiffs further allege that the actions of all defendants, including Mr. McKenzie, resulted in their votes being nullified, their voting rights being diluted, and the undermining of Utah's republican form of government.[12] They are seeking remedies under federal statutes,

---

[6] *Id.*

[7] *Id.*

[8] *Id.*, ¶¶ 1, 200, 229.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

including RICO and civil rights laws, and claim they have suffered financial, reputational, and constitutional harm.[13]

The Complaint's references to Mr. McKenzie are limited to his official actions and public statements in the course of performing his responsibilities as county clerk. Across more than 90 pages of the Complaint, only three paragraphs directly mention Mr. McKenzie, highlighting how limited the accusations against him are. These paragraphs include:

> 12. "Defendant Brian McKenzie, individually and in his official capacity as a county clerk, is responsible for providing assistance "as applicable, under 20A-9-408(9). His role includes determining whether each signature on a candidate's petition was made by a registered voter qualified to sign, using the same circulation and verification requirements as those outlined for statewide initiative petitions in Sections 20A-7-105 and 20A-7-204. This process applies to petitions for qualified political parties that permit members to seek nomination by collecting signatures, in accordance with the provisions of Section 20A-9-408."[14]

Paragraph 12 simply describes Mr. McKenzie's statutory responsibilities.

> 112. "On June 21, 2024, Defendant Brian McKenzie, via the Davis County Clerk's Facebook account linked to X, publicly affirmed Cox, Curtis, and Brown's ballot legitimacy amid rising public concern over the integrity of the signature-gathering process and doubts about whether Cox and other disqualified candidates met the qualification requirements. This statement, issued in response to the May 1, 2024, primary certification, appeared to misrepresent the process, seemingly aimed at quelling criticism and supporting enterprise-backed candidates. Jon Cox supported this assertion by sharing it on his X account (@joncoxut43), while Defendant Henderson further amplified it with a retweet."[15]

> 145. "On August 20, 2024, in an effort to quell rumors that the Defendants failed to gather the required number of signatures to unlawfully secure a second chance at the URP nomination, Defendant McKenzie posted on social media stating that he welcomed

---

[13] *Id.*

[14] *Id.*, ¶ 12.

[15] *Id.*

an audit. He asserted that the signature verification process was properly followed, aiming to further the scheme and protect the enterprise-backed candidates."[16]

The Complaint does not allege that Mr. McKenzie engaged in conduct outside of his official duties or provide specific factual allegations connecting him to any alleged enterprise.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[17] "[M]ere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim."[18] When evaluating whether a complaint plausibly states a claim, we "disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable.[19] A plaintiff "must do more than generally allege a wide swath of conduct."[20] The plaintiff has the burden to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.[21] A plaintiff must allege sufficient facts to

---

[16] *Id.*, ¶ 145.

[17] For purposes of this Motion only, Plaintiffs' factual allegations are accepted as true. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[18] *Id.*

[19] *Id.*

[20] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir 2008) (internal citations omitted).

[21] *Id.*

"nudge his claims across the line from conceivable to plausible."[22] The Tenth Circuit has held that, for purposes of a Rule 12(b)(6) motion, "[i]n addition to construing a pro se complaint liberally, this court 'must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff."[23] Although Plaintiffs appear pro se, the court will not act as their advocate.[24]

In considering a motion to dismiss under Rule 12(b)(6), Rule 8 of the Federal Rules of Civil Procedure also plays a role in shaping the court's analysis. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has explained, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."[25] Similarly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[26]

Rather, the focus is on whether the complaint's specific factual allegations, assumed to be true, plausibly suggest that the defendant is liable for the alleged misconduct. The complaint must include enough factual matter to move the claims from the realm of speculation to

---

[22] *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23] *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

[24] *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

[25] See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[26] *Iqbal*, 556 U.S. at 678.

plausibility.[27] In this context, Rule 8's requirement for a "short and plain statement" is not satisfied by naked assertions without further factual enhancement. The burden remains on the plaintiff to frame the complaint with sufficient factual content to support each claim and to provide the court with a reasonable basis to infer entitlement to relief.

## ARGUMENT

### I.    Mr. McKenzie is Entitled to Qualified Immunity for All Personal Capacity Federal Claims

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[28] When an official is sued as an individual for damages, they may claim qualified immunity as a defense.[29] This protection shields Mr. McKenzie from personal capacity damages unless Plaintiffs can clear a high bar. Once a defendant raises qualified immunity, the plaintiff bears the burden to show that the defendant is not entitled to immunity.[30] To defeat this immunity, a plaintiff must reasonably allege: (1) defendant violated a constitutional or statutory right, and (2) that the right was clearly established at the time of the conduct.[31] Plaintiffs fail on both prongs. This doctrine is especially

---

[27] *Twombly*, 550 U.S. at 570.

[28] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Lincoln v Maketa*, 880 F.3d 533, 537 (10th Cir. 2018).

[29] *Id.*

[30] *Douglas v. Dobbs* , 419 F.3d 1097, 1100 (10th Cir. 2005); *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018).

[31] See *Id.*

important in the context of election administration, where county clerks like Mr. McKenzie are required by law to perform specific duties.

Far from acting outside the law, Mr. McKenzie's actions are dictated by Utah Code Ann. § 20A-9-408(9) and taken in his official capacity as Davis County Clerk: (1) verifying signatures on candidate petitions as required by Utah Code Ann. § 20A-9-408(9), and (2) making two public statements regarding the integrity of the signature verification process.[32] There are no allegations that Mr. McKenzie acted outside the scope of his statutory duties, personally benefitted from the alleged scheme, or played any role in legislative or party decisions at issue.[33] Plaintiffs do not allege that Mr. McKenzie forged or altered signatures, falsified records, was involved in deceptive mailing or wire transmission, or exercised authority over statewide ballot determinations. Based on these allegations, qualified immunity is not just appropriate, but required.

Plaintiffs allege that they suffered injuries under 18 U.S.C. § 1964 and 42 U.S.C. §§1983, 1985, and 1986, through predicate acts of mail fraud under 18 U.S.C. § 1341 (via ballot mailings) and wire fraud under 18 U.S.C. § 1343 (deceptive social media and emails).[34] However, Plaintiffs must allege particularized facts showing that Mr. McKenzie personally participated in the mail or wire fraud, with the specific intent to defraud. The Complaint misses the mark in this regard. Instead, it describes only Mr. McKenzie's ministerial role in verifying signatures (a task assigned to him by statute) which does not constitute RICO or racketeering

---

[32] ECF No. 1, ¶¶ 112, 145.

[34] *Id.* at 84-90.

activity.[35] As a result, Plaintiffs fail to establish a relevant federal violation for the initial stage of the qualified immunity assessment.

Furthermore, there is no clearly established law holding that a county clerk's ministerial act of certifying election results, even if allegedly erroneous or pursuant to state procedures, constitutes "racketeering activity" or otherwise violates federal law. The Tenth Circuit has made it clear that enforcing Utah's Either-or-Both provision and certifying candidates who qualify by signature, is constitutional and does not violate any clearly established right.[36] Because Plaintiffs have failed to allege that Mr. McKenzie violated any clearly established statutory or constitutional right, and because his actions were limited to carrying out his official duties as county clerk, he is entitled to qualified immunity. All personal capacity damages claims against Mr. McKenzie should be dismissed with prejudice.

### II. Failure to State a RICO Claim under Rule 12(b)(6)

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, authorizes a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions, § 1964(c), provided that the alleged violation was the proximate cause of the injury.[37] To survive a motion to dismiss under Rule 12(b)(6), "[a] plaintiff asserting a Section 1964(c) claim ... must plausibly

---

[35] *See Tal v. Hogan*, 453 F.3d 1244, 1263-64 (10th Cir. 2006) (civil RICO requires particularized predicate act allegations).

[36] *Utah Republican Party v. Cox*, 892 F.3d 1066, 1085 (10th Cir. 2018).

[37] *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 268, (1992); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (internal citations omitted).

allege that the defendants each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.[38] In other words, a civil RICO claim must allege with particularity that the defendant personally committed, or agreed to commit, at least two predicate acts of racketeering activity as defined in 18 U.S.C. § 1961(1).[39]

As discussed above, Plaintiffs' allegations against Mr. McKenzie are confined to his official duties as Davis County Clerk: (1) verifying signatures on candidate petitions as required by Utah Code Ann. § 20A-9-408(9); and (2) making public statements regarding the integrity of the signature verification process. There are no direct allegations that Mr. McKenzie participated in secret meetings, engaged in racketeering, was involved in interstate commerce, committed mail fraud, counterfeited ballots, manipulated election laws since 2016, engaged in misconduct, committed wrongful actions, or sought to influence electoral or political influence. Plaintiffs repeatedly group Mr. McKenzie with other "defendants" without providing specific allegations to his conduct.[40] This undifferentiated "shotgun" approach should be rejected. When a party "asserts complex claims against multiple defendants," because "it is "particularly important" to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations."[41] The Supreme Court has explained that a plaintiff must "nudge" his claims "across

---

[38] *Bixler v. Foster*, 596 F.3d 751, 760-61 (10th Cir. 2010).

[39] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).

[40] *Id.*, ¶¶ 162, 197, 200, 211, 212, 216-17.

[41] *Kan. Penn Gambling, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis omitted).

the line from conceivable to plausible" in order to survive a motion to dismiss.[42] "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[43]

Plaintiffs do not alleged that Mr. McKenzie personally committed mail or wire fraud, or that he acted with fraudulent intent. Certifying election results and verifying signatures as required by law are not predicate acts under RICO, which requires specific intent and direct involvement in fraud.[44] As the Tenth Circuit put it, "the common thread among each of these crimes is the concept of 'fraud.'"[45] The Complaint does not allege that Mr. McKenzie's actions were part of a racketeering enterprise or that he personally benefited from the activity. RICO is not a catch-all for every grievance with government process. RICO serves as a remedy for substantiated allegations of fraud, not a vehicle for challenging standard election procedures.

Paragraph 276 of the Complaint is particularly revealing because it does not include Mr. McKenzie among those alleged to be part of the racketeering enterprise, even as Plaintiffs seek the most severe RICO remedies of divestiture from the enterprise and restrictions on future activities against a specific list of defendants. Paragraph 276 states:

> 276. "Order the divestiture of Defendants Spencer Cox, Deidre Henderson, Curtis Bramble, Daniel McCay, J. Stuart Adams, Mike Schultz, Matthew Durrant, Robert Axson, Kim Coleman, Chris Null, and the State of Utah from the racketeering enterprise,

---

[42] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[43] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[44] *Tal,* 453 F.3d at 1263.

[45] *Id.*

> which manipulated Utah's election laws through the Count My Vote initiative and coordinated actions, to prevent further control over the Utah Republican Party (URP) nominating process and restore its autonomy under Utah Code § 20A-9-407 and Utah Code § 20A-9-101(13)(c)."

Notably, Plaintiffs' own requested relief in paragraph 276 confirms that Mr. McKenzie is not alleged to be a member of the racketeering enterprise at the heart of their RICO claims. The Complaint seeks divestiture and future restrictions only against a specific group of defendants, without naming Mr. McKenzie. This omission is dispositive. It demonstrates that Plaintiffs fail to allege that Mr. McKenzie was a participant, organizer, or beneficiary of the alleged enterprise. Instead, the only allegations lodged against Mr. McKenzie concern his routine, peripheral duties as county clerk, which do not constitute racketeering activity or enterprise participation.

Although Plaintiffs are proceeding pro se and their pleadings are to be construed liberally, the Court is not required to supply factual allegations or legal theories that Plaintiffs themselves have not chosen to assert. As the Tenth Circuit has explained, "[i]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[46] Even with the benefit of liberal construction, Plaintiffs do not seek RICO remedies against Mr. McKenzie. The Court should not rewrite the Complaint to "supply additional facts" or "construct a legal theory for a plaintiff that assumes facts that have not been pleaded."[47]Taken together, these facts demonstrate that the Court should dismiss all RICO

---

[46] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[47] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

claims against Mr. McKenzie with prejudice, as the relief sought does not apply to Mr. McKenzie.

### III.    Plaintiffs Lack Article III Standing

The case against Mr. McKenzie should also be dismissed at the outset because Plaintiffs lack Article III standing. To establish Article III standing, a plaintiff must show that: (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.[48] The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate.[49]

Plaintiffs' grievances are generalized objections to comprehensive election administration policies and outcomes, not concrete, particularized injuries suffered by any named plaintiff. The Supreme Court has repeatedly held that such generalized complaints "no matter how sincere" do

---

[48] *Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004) (internal citations omitted).

[49] *See Allen v. Wright*, 468 U.S. 737, 750-51 (1984).

not confer standing.[50] The Tenth Circuit has applied those same principles in the election litigation context to foreclose suits indistinguishable from Plaintiffs' claims here.[51]

In this context, first, Plaintiffs fail to allege a concrete and particularized injury in fact. Their theory is reduced to an undifferentiated assertion that "voters' rights" were violated by systemic practices. "A litigant 'raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'"[52]This principle is directly supported by the Supreme Court's decision in *Lance v. Coffman*, 549 U.S. 437 (2007), where the Court held that the Elections Clause has not been followed is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."[53] The Court distinguished such claims from the individualized injuries required for standing in voting rights cases, emphasizing that plaintiffs who assert no particularized stake in the litigation lack standing to bring Elections Clause claims.

---

[50] *See Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (lawyer's sincere interest in constitutional compliance is not a cognizable injury); *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (a generalized grievance about government's compliance with law is insufficient); *Diamond v. Charles*, 476 U.S. 54, 66-67 (1986) (Article III requires a personal and individual injury, not merely an interest in a problem's resolution).

[51] *See O'Rourke v. Dominion Voting Sys.*, No. 21-1161 (10th Cir. May 27, 2022) (not reported in Fed. Rptr.), 2022 WL 1699425 (affirming dismissal where plaintiffs failed to identify any injury to any named plaintiff that is in any way different than the alleged injuries to every registered voter in the United States).

[52] *Hollingsworth,* 570 U.S. at 706.

[53] *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

Second, Plaintiffs fail to show traceability. The alleged injury must be directly linked to Mr. McKenzie, who is only named for two public statements and a limited role in signature verification under Utah Code Ann. § 20A-9-408(9). Any harm claimed is due to legislative actions, party rules, certification processes, or third parties upstream, who are not controlled by Mr. McKenzie. This does not meet Article III requirements and the Tenth Circuit has similarly rejected attempts to blame ministerial officials for broad election issues.[54]

Third, Plaintiffs cannot establish redressability. Even if the Court accepted Plaintiffs' generalized allegations, they do not show that an order directed at Mr. McKenzie would remedy their claimed injuries. A county clerk's limited, ministerial assistance with signature verification cannot redress alleged statewide harms tied to other entities' rules or decisions. The Supreme Court has made clear that plaintiffs must show that requested relief is "likely," not merely "speculative," to redress their injury.[55] Where, as here, the alleged harms turn on policies and actors beyond the county clerk's authority, redressability is lacking.[56]

Fourth, Plaintiffs' statutory theories do not cure the Article III defects. To the extent Plaintiffs rely on civil RICO, standing independently fails because RICO requires an injury to "business or property," not non-economic, generalized political or constitutional grievances.[57]

---

[54] *See O'Rourke v. Dominion Voting Sys.*, No. 21-1161, at 9-11.

[55] *See Carney v. Adams*, 141 S. Ct. at 499.

[56] *See Hollingsworth v. Perry*, 570 U.S. at 706-07 (no standing where plaintiffs sought to vindicate an interest in proper application of the law without a remedy tied to their own concrete injury).

[57] *See O'Rourke v. Dominion Voting,* slip op. at 10-11 (rejecting indistinct, non-economic injuries asserted by voters challenging election processes).

Plaintiffs allege no direct, pecuniary harm proximately caused by Mr. McKenzie's conduct. That defeats both Article III and RICO's separate statutory-standing requirement. Because Plaintiffs have not alleged a specific injury directly linked to Mr. McKenzie or shown that a remedy against him would address their claimed injury, the Court should dismiss the case for lack of Article III standing.

### IV. Plaintiffs' State Law Theories are Barred by the Utah Governmental Immunity Act (UGIA) and Fail on the Merits

The Utah Governmental Immunity Act ("UGIA"), Utah Code Ann. § 63G-7-101 et seq., provides immunity to governmental entities and their employees for acts or omissions occurring within the scope of their employment, unless a specific statutory waiver applies. Under the UGIA, when a governmental employee acts within the scope of employment, the exclusive remedy for state law torts lies against the governmental entity, not the individual employee. Plaintiffs have not alleged that Mr. McKenzie acted outside the scope of his employment or engaged in willful misconduct. Plaintiffs pursue Mr. McKenzie exclusively for his official acts as county clerk: verifying signatures on candidate petitions and making two brief public statements about the signature verification process. These acts are plainly within Mr. McKenzie's statutory duties.

Additionally, the Complaint points to only two dates involving Mr. McKenzie:

> ¶ 112.  On June 21, 2024, Defendant Brian McKenzie, via the Davis County Clerk's Facebook account linked to X, publicly affirmed Cox, Curtis, and Brown's ballot legitimacy amid rising public concern over the integrity of the signature-gathering process and doubts about whether Cox and other disqualified candidates met the qualification requirements.

¶ 145.  On August 20, 2024, in an effort to quell rumors that the Defendants failed to gather the required number of signatures to unlawfully secure a second chance at the URP nomination, Defendant McKenzie posted on social media stating that he welcomed an audit. He asserted that the signature verification process was properly followed, aiming to further the scheme and protect the enterprise-backed candidates.[58]

The one year UGIA notice period for those alleged acts expired on June 21, 2025, and August 20, 2025.[59] The Complaint, filed October 14, 2025, contains no confirmation that Plaintiffs served a UGIA notice of claim on the Davis County Clerk or Mr. McKenzie as required by § 63G-7-401(3), (4)(a) and § 63G-7-401(2).[60]

Moreover, the UGIA preserves immunity for injuries arising out of the exercise or performance, or the failure to exercise or perform, a discretionary function, whether or not that discretion is abused. Election administration and certification and the act of verifying signatures or certifying election results are primary governmental functions and classic examples of discretionary acts for which immunity applies. The UGIA does not provide a statutory waiver for intentional torts or RICO claims and immunity is only lost if the official's conduct constitutes willful misconduct outside the scope of employment, which is not alleged here.

To the extent Plaintiffs attempt to assert state law tort theories such as defamation, false light, negligence, gross negligence, negligent misrepresentation, fraud, intentional infliction of

---

[58] See ECF No. 1.

[59] See Utah Code Ann. § 63G-7-402 ("A claim against a governmental entity, or against an employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the person and according to the requirements of Section 63G-7-401 within one year after the claim arises regardless of whether or not the function giving rise to the claim is characterized as governmental.").

[60] See generally ECF No. 1; see also ¶ 215 (no UGIA notice facts and only generalized assertions about "willful misconduct").

emotional distress (IIED), negligent infliction of emotional distress (NIED), civil conspiracy, or aiding and abetting, these claims are all subject to the UGIA. This is because they are based entirely on actions Mr. McKenzie took in his official capacity as county clerk. Any such tort theory may be brought, if at all, only against the governmental entity and only after strict compliance with UGIA's notice of claim requirements. Conclusory labels or generalized allegations are insufficient to displace the UGIA's immunity for employees acting within the scope of their employment. In light of this, all state law claims against Mr. McKenzie are barred by the UGIA and any such claims may only proceed against the governmental entity and not against Mr. McKenzie personally. Because Plaintiffs have not met the UGIA's mandatory prerequisites and have not alleged facts that would remove Mr. McKenzie from the Act's protections, these claims must be dismissed with prejudice.

### V. Sections 42 U.S.C. §§ 1985 and 1986 Fail

Plaintiffs asserts claims under 42 U.S.C. §§ 1985 and 1986, but it is vague and unclear why these statutory provisions are alleged by Plaintiffs. Section 1985 "concerns suits against those who conspire to deprive others of their civil rights and, as such, requires 'that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.[61] Plaintiffs identify no protected class and plead no discriminatory animus. The Section 1986 claim is dependent upon the existence of a valid claim under Section 1985 and

---

[61] *Griffin v. Breckenridge*, 403 U.S. 88, 104-05 (1971).

fails automatically.[62] "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under Sec. 1985."[63]

### VI. Official Capacity Claims are Duplicative and Barred by *Monell*

The official capacity claims against Mr. McKenzie are, in effect, claims against Davis County itself, and as such, are governed by the standards set forth in *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Under *Monell*, a local government entity such as a county cannot be held liable under 42 U.S.C. § 1983 for the actions of its employees or officials on a theory of respondeat superior; rather, liability only attaches where the alleged constitutional violation resulted from an official policy, custom, or practice of the governmental entity itself. The Supreme Court in *Monell* made clear that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."[64]

Here, Plaintiffs have not sufficiently alleged that any official county policy, custom, or practice caused a RICO violation or any other actionable harm, as required by *Monell*. The Complaint contains no factual allegations of a county wide policy or practice that would support liability against the county, and Plaintiffs fail to identify any specific policy or custom that was the "moving force" behind the alleged constitutional violations. Instead, the allegations against Mr. McKenzie are limited to his individual actions as county clerk, which, even if accepted as

---

[62] *See Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985).

[63] *Campbell v. Amax Coal Co*., 610 F.2d 701, 702 (10th Cir. 1979).

[64] *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).

true, do not establish the existence of an unconstitutional county policy or custom. As a result, the official capacity claims are unsupported by the necessary factual allegations under *Monell* and should therefore be dismissed.

### VII.    No Punitive Damages

The facts alleged do not support Plaintiffs' request for an award of punitive damages. Punitive damages are available only where there is evidence of conduct motivated by evil intent or involving reckless or callous indifference to federally protected rights. There are no factual allegations supporting such a finding in this case. Additionally, as a matter of law, punitive damages are not available against Davis County or its subdivisions. Finally, a municipality cannot be liable "when there was no underlying constitutional violation by any of its officials and/or employees." As discussed above, Plaintiffs do not show that any Davis County employee or official violated their rights or caused any actionable harm. As a result, all claims for punitive damages against Mr. McKenzie should be dismissed.

### VIII. Amendment of the Complaint would be Futile under Rule 15

In addition to the grounds set forth above, amendment of the Complaint would be futile and should not be permitted under Federal Rule of Civil Procedure 15. Although Rule 15(a) provides that leave to amend should be freely given when justice so requires, courts routinely deny leave where the proposed amendment would not survive a motion to dismiss. Here, Plaintiffs' claims against Mr. McKenzie are fundamentally foreclosed by binding precedent interpreting Utah's election laws, the doctrines of qualified and governmental immunity, and the requirements of Article III standing. The Complaint's allegations are limited to Mr. McKenzie's minor acts as county clerk and Plaintiffs do not connect him to any wrongdoing, personal

participation in a racketeering enterprise, or violation of a clearly established right. Moreover, Plaintiffs' pleadings confirm that Mr. McKenzie is not the focus of the RICO allegations or the extraordinary remedies sought. Any attempt to amend would not be able to overcome these dispositive legal barriers, and would only serve to delay resolution and increase the burden on the parties and the Court. Under the circumstances, amendment would be futile and dismissal with prejudice is warranted.

## ADOPTION OF STATE DEFENDANTS' ARGUMENTS

To the extent applicable, Mr. McKenzie hereby adopts and incorporates by reference the legal arguments, authorities, and grounds for dismissal set forth in the State Defendants' Motion to Dismiss, including but not limited to arguments regarding the constitutionality of Utah's election laws, the correct application of the "Either or Both" provision, the absence of any plausible constitutional or statutory violation, the lack of standing, the failure to state a claim under RICO, 42 U.S.C. §§ 1983, 1985, and 1986, and the application of qualified immunity and governmental immunity doctrines. The State Defendants' briefing thoroughly addresses the controlling precedent and legal standards that foreclose Plaintiffs' claims and those arguments are equally dispositive as to all claims asserted against Mr. McKenzie in both his individual and official capacities.

## CONCLUSION

For all the reasons set forth above, Defendant Brian McKenzie respectfully requests that the Court dismiss all claims against him, with prejudice. The allegations in the Complaint, even when taken as true, do not plausibly connect Mr. McKenzie to any actionable wrongdoing under federal or state law. Plaintiffs' claims misread Utah's election statutes and controlling precedent

23

amount to generalized objections to the administration of elections. Reciting statutory language or making conclusory assertions does not transform these objections into viable legal claims.

The record is clear: Mr. McKenzie's involvement was limited to the routine, ministerial duties required of a county clerk with no factual basis for personal participation in any alleged enterprise, conspiracy, or fraudulent scheme. Utah Code Ann. § 20A-9-408(9) both defines and confines Mr. McKenzie's role and Plaintiffs' claims cannot survive in the face of clear statutory command. Plaintiffs do not allege that Mr. McKenzie acted outside his lawful responsibilities, violated any clearly established right, or caused them any concrete, particularized injury. The doctrines of qualified immunity, governmental immunity, and the requirements of Article III standing all independently bar the claims asserted. Moreover, Plaintiffs' pleadings confirm that Mr. McKenzie is not a target of the RICO allegations or the extraordinary remedies sought. The Complaint fails to state any claim for relief against Mr. McKenzie. Further litigation would only burden the parties and the Court with meritless claims. Dismissal with prejudice is warranted and Mr. McKenzie should be released from this action in both his individual and official capacities.

Dated: November 26, 2025.

**DENTONS DURHAM JONES PINEGAR P.C.**

/s/ *R. Blake Hamilton*
R. BLAKE HAMILTON
JANISE K. MACANAS
R. JOHN RICHARDSON
*Attorneys for County Defendant Brian McKenzie*

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to all counsel of record and the following:

Tracie Halvorsen, Pro Se Plaintiff
138 E 12300 S, C275
Draper, Utah 84020
traciehalvorsen@outlook.com

Sophie Anderson, Pro Se Plaintiff
138 E 12300 S, C275
Draper, Utah 84020
Jessandsophie03@yahoo.com

Nancy Inman, Pro Se Plaintiff
138 E 12300 S, C275
Draper, Utah 84020
nancyjinman@gmail.com

Steven Huber, Pro Se Plaintiff
138 E 12300 S, C275
Draper, Utah 84020
traciehalvorsen@outlook.com

Wayne Wickizer, Pro Se Plaintiff
138 E 12300 S, C275
Draper, Utah 84020
justice@utahwtp.com

Daniel Newby, Pro Se Plaintiff
138 E 12300 S, C275
Draper, Utah 84020
danieltrouble@protonmail.com

/s/ *Dawn Veree Marshall*
DAWN VEREE MARSHALL
Legal Administrative Assistant