FILED
2025 DEC 9 AM 9:15
CLERK
U.S. DISTRICT COURT

Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX, et. al, <br><br> Defendants | **PLAINTIFFS' EMERGENCY MOTION TO RESCIND REFERRAL TO MAGISTRATE JUDGE, REMAND TO ARTICLE III JUDGE, and EXPEDITE RESOLUTION OF PENDING PRELIMINARY INJUNCTION** <br><br> Case No. 2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

### I.     Introduction

1.     COMES NOW, Plaintiffs, Tracie Halvorsen et. al, and moves this Court for an order to rescind the automatic assignment of this civil action to Magistrate Judge Jared C. Bennett and to remand all matters for adjudication by an Article III district judge or refer the matter to the Tenth Circuit for clarification on the constitutional and statutory issues presented. Plaintiffs further move for expedited resolution of their pending Motion for Preliminary Injunction (ECF 7), which has been unlawfully delayed through repeated extensions granted to Defendants by Magistrate Judge Bennett despite the statutory ineligibility of preliminary injunction motions for magistrate judge consideration under 28 U.S.C. § 636(b)(1)(A) and the election emergency timeline that makes further delay virtually the same as to a denial of relief.

Plaintiffs request that this Court grant this motion based on constitutional infirmities in the assignment process, statutory violations of 28 U.S.C. § 636, a demonstrated conflict of interest affecting Magistrate Judge Bennett's impartiality, and the procedural irregularities (e.g., obstruction of justice) that have undermined Plaintiffs' fundamental right to fair and neutral adjudication by an Article III judge.

## II.    Election Emergency: The Calendar is a Weapon

2.    This case presents an emergency that traditional litigation cannot accommodate. The 2026 Utah election cycle operates on a fixed, immovable calendar established by statute and party rule. Unlike typical civil disputes where parties can litigate indefinitely and remedy can be awarded even years later, election law violations are uniquely irreparable: once the election occurs, no monetary damages, injunction, or declaratory judgment can restore what was lost— the genuine electoral process, the integrity of delegate votes, and the legitimacy of party-nominated candidates.

3.    The Defendants understand this perfectly. Defendants Cox and Henderson have deliberately orchestrated the administration of the unlawful "second chance primary" and exploit time as a weapon. They know that as long as Magistrate Judge Bennett delays Plaintiffs' preliminary injunction motion—by granting serial extensions to Defendants, resetting response deadlines, and pushing the matter down the procedural calendar—the election machinery will continue grinding forward under the unlawful "second chance primary" regime. Each extension is not a neutral procedural accommodation; it is a tactical choice—an obstruction of justice—to allow the unconstitutional system to entrench itself further into campaign finance decisions, candidate declarations, and voter expectations.

4.     The mathematics are stark and unforgiving. The January 2026 candidate declaration deadline is fewer than 30 days away. At that moment, candidates across Utah will make final, irreversible decisions about whether to pursue the party's convention path—a process governed by the URP's constitution—or to abandon it all together because they do not have the funding to invest their scarce campaign resources in a "second chance primary" under the signature-gathering process pay-to-play regime. Once that filing deadline passes, those decisions are locked in. The March 2026 caucuses and April 2026 conventions will then proceed under those crystallized choices, and by that time, any preliminary injunction ruling will come too late to matter.

5.     Plaintiffs are not seeking to delay or obstruct; the Defendants are. By allowing Magistrate Judge Bennett to grant extensions and postpone ruling on Plaintiffs' Motion for Preliminary Injunction, the Defendants are effectively "running out the clock"—a tactic identical to the obstruction-of-justice scheme claims in Plaintiff Huber's separate RICO action (Case No. 2:25-cv-01098-DBB). Huber claims that federal judicial officers and magistrate judges have used delay tactics, deadline manipulation, and procedural weaponization to shield government actors from accountability and to render relief meaningless. The same strategy is unfolding here, now, against pro se litigants seeking to vindicate constitutional election rights.

6.     The delegation and voting structure compounds the urgency. Thousands of Utah Republicans have already been elected as delegates or are preparing to become delegates to local, county, and state conventions. These delegates were elected or are running for delegate positions precisely to exercise their constitutional right to participate in party nomination. Under the URP's constitution and Utah Code § 20A-9-407, their convention votes should be dispositive: a candidate who wins the convention ought to be the party's official nominee, appearing on the

general election ballot as the "Republican" candidate. But the forced "second chance primary," as administered by the State Defendants, has converted those delegate votes into a mere suggestion. A delegate's vote means nothing if a signature candidate can circumvent the entire convention process and be installed as the official nominee anyway. With each passing week that this unlawful framework remains in place, delegates face an impossible choice: spend their time and effort on a convention process they reasonably believe the State will ignore, or disengage entirely from participation

7.    The reputational and participatory injury is compounded by the State's demonstrated pattern of defiance. The 2024 election cycle has already been corrupted by this regime. Candidates whose votes were rejected or who lost at convention have obtained ballot access through signature-gathering mechanism. The State Defendants have already shown they will certify "disqualified" candidates (those rejected by convention or who failed to meet party requirements) as official party nominees, in direct violation of Utah Code §§§ 20A-9-407, 20A-9-101(13)(c), 20A-9-401(2), and the URP's constitution. Voters and delegates now face the 2026 cycle with reasonable certainty that history will repeat: that their convention votes will again be nullified by State administrative action; that preferred candidates will again be installed through the signature-gathering backdoor; and that the State will again ignore the constitutional and statutory limits on its authority.

8.    There is no "wait and see" option. The Defendants are not pausing or reconsidering. Defendant Cox called the Sixty-sixth Legislature into a "Second Special Session" on December 9, 2025, which will address election matters and the State's continued insistence on administering the forced "second chance primary," without amendment or clarification. The legislative posture and the Executive's continued certification of disqualified candidates under

4

the current unlawful framework make clear that the State intends to proceed full-steam into the 2026 cycle under the same regime that corrupted 2024. Plaintiffs are not asking this Court to speculate about future harm; the harm is present, ongoing, and compounding with every day that passes without judicial intervention.

9.      The court system's lethargy becomes complicity when the constitutional violation is time-sensitive. Magistrate Judge Bennett's delays—justified by serial extensions granted to Defendants—are not neutral procedural accommodations. They are tactical choices that benefit only the Defendants. If Judge Bennett were truly committed to fair and impartial adjudication, he would recognize that granting Defendants extensions in a case involving an election emergency is itself a form of bias: it tips the scales toward the Defendants' interest in maintaining the unlawful status quo and against Plaintiffs' interest in restoring a lawful election process before the opportunity to do so is foreclosed forever.

10.     In short: the emergency is not theoretical; it is eminent. It is not speculative; it is mathematical. The window for meaningful judicial intervention closes on January 8, 2026, when the candidate declaration deadline passes. Every day that Magistrate Judge Bennett delays the ruling on Plaintiffs' pending preliminary injunction is a day the Defendants gain—a day closer to a hardened election reality that no court order can cure. For Plaintiffs' pending preliminary injunction to have any meaning, for this Court's authority to have any force, the matter must be reassigned to an Article III judge who will rule on an emergency timeline, not according to the leisurely extensions and delays that Magistrate Judge Bennett has permitted to metastasize.

### III.    Factual Background

### A.  The Automatic and Unlawful Assignment to Magistrate Judge Bennett

11.     On October 14, 2025, when Plaintiffs filed this civil action as unrepresented, non-incarcerated parties, the Clerk's Office automatically assigned a magistrate judge to the case, pursuant to DUCivR 72-4 and in direct violation of 28 U.S.C. § 636 and absent any consent by Plaintiffs. This automatic assignment occurred despite Plaintiffs' failure to consent to magistrate jurisdiction and contrary to the unambiguous statutory requirement that magistrate judge jurisdiction depends upon the voluntary, written consent of all parties.

**(b)     Assignment of Civil Case to a Magistrate Judge at Case Opening.**

> (1) Except as otherwise restricted under section 72-4(b)(2), the Clerk's Office will randomly assign a civil matter to a magistrate judge if the matter:
>
>   (A) is brought by an unrepresented party who is not incarcerated;

Quoting DUCivR 72-4.

12.     Concurrently, on October 14, 2025, the  Plaintiffs filed a Motion for Preliminary Injunction (ECF 7).

13.     On October 17, 2025, Magistrate Judge Bennett entered a docket notation acknowledging that "Plaintiffs' filing of a motion for injunctive relief renders this case ineligible for direct assignment to a magistrate judge" (ECF 8). This contemporaneous acknowledgment by the magistrate judge himself confirms that the case was statutorily ineligible for magistrate judge assignment in the first instance.

14.     Despite this acknowledgment of legal ineligibility, on October 29, 2025, Clerk Deborah L. Eyer unlawfully referred Plaintiffs' Motion for Preliminary Injunction and other motions to Magistrate Judge Bennett (ECF 28)—an action that usurped judicial authority and violated 28 U.S.C. §§ 636(b) and (c), which vest the power to assign matters to magistrate judges exclusively in Article III district judges, not court clerks.

**B.  The Conflict of Interest: Plaintiff Huber's Action Against the Court's Automatic Assignment of the Magistrate System**

15.    The central issue precipitating this motion is a critical conflict of interest that renders Magistrate Judge Bennett's continued involvement in this case fundamentally incompatible with judicial impartiality and due process.

16.    One of the named Plaintiffs herein, Steven Huber, has filed a separate civil action—*Huber v. Romero*, et al., Case No. 2:25-cv-01098-DBB—against several defendants, including a magistrate judge and court personnel, for constitutional violations and racketeering activity perpetrated through abuse of the magistrate judge assignment process. In that case, Plaintiff Huber specifically claims:

   a.  That magistrate judges have been automatically assigned to pro se cases in violation of § 636(c), depriving pro se litigants of their statutory right to withhold consent;

   b.  That the automatic assignment mechanism has been used as a mechanism to shield federal officials from neutral Article III review;

   c.  That magistrate judges, operating under color of authority, have exceeded their jurisdictional bounds and usurped powers reserved to Article III judges;

   d.  That the local rule (DUCivR 72-3) implementing automatic assignment violates the Equal Protection Clause by subjecting pro se litigants to differential treatment;

   e.  That the magistrate judge assignment process has been instrumentalized as part of a broader pattern of judicial misconduct designed to obstruct Plaintiff's access to justice.

17.    The assignment of Steven Huber's case in the instant matter to Magistrate Judge Bennett—the very same magistrate judge system whose legality and constitutionality is the

subject of Huber's separate civil action—creates an irreconcilable conflict that no impartial

factfinder could overlook. Magistrate Judge Bennett cannot be expected to issue fair and

impartial rulings in a case where one of the Plaintiffs is simultaneously litigating the

constitutionality and propriety of the magistrate judge assignment regime that benefits the very

judge who would preside over their claims.

### C. Magistrate Judge Acting as a Shield for Defendants

18.     Just as Magistrate Judge Romero shielded the defendants in Plaintiff Huber's

prior case challenging the weaponization of government, 2:25-cv-00592-TS-CMR, by repeatedly

granting extensions, resetting response deadlines, and delaying resolution of the preliminary

injunction, so too has Magistrate Judge Bennett in this action. Here, Magistrate Judge Bennett

has granted defendants extensions to respond to the Complaint and to Plaintiffs' motions for

preliminary injunction (ECF 64, 66, 74) and has granted defendants leave to file separate

motions to dismiss (ECF 89), thereby unnecessarily multiplying the proceedings in violation of

28 U.S.C. § 1927 and evidencing a clear partiality against pro se litigants seeking relief from the

weaponization of government and the violation of their constitutional freedoms.

19.     The continuation of this enterprise is further demonstrated by Plaintiff Huber's

new civil action (Case No. 2:25-cv-01098-DBB) claiming obstruction of justice and systemic

abuse of the magistrate assignment process, which directly arises out of the same pattern of

conduct challenged here. In that case, Huber claims that federal judicial officers, including the

federal attorneys, and court staff have used automatic assignment to magistrate judges,

manipulation of deadlines, and ultra vires rulings to insulate government actors from

accountability and to block meaningful Article III review, thereby extending and deepening the

same scheme of weaponized procedure and denial of constitutional rights at issue in this case.

8

This subsequent lawsuit underscores that the challenged practices are not isolated errors but part of an ongoing, coordinated effort to obstruct justice and to maintain a structure that systematically disadvantages pro se litigants who seek to vindicate their constitutional freedoms.

20.     Here, as in Plaintiff Huber's prior case, Plaintiffs assert claims under 18 U.S.C. § 1964 arising from violations of their constitutional freedoms, and the same pattern of obstruction of justice appears to be continuing through coordinated conduct between the magistrate judge apparatus and officials of the Utah state government.

**D.  The Unlawful Dealy of Plaintiffs' Pending Preliminary Injunction Motion**

21.     On October 14, 2025, Plaintiffs filed their Motion for Preliminary Injunction (ECF 7) seeking emergency relief to prevent irreparable harm arising from the State Defendants' administration of the forced "second chance primary" in the upcoming 2026 election cycle. Under Fed. R. Civ. P. 65 and the urgency of the circumstances, Plaintiffs were entitled to prompt adjudication of that motion by an Article III judge.

22.     Instead, Magistrate Judge Bennett—despite acknowledging on October 17, 2025, that the filing of the preliminary injunction motion rendered this case "ineligible for direct assignment to a magistrate judge" (ECF 8)—has presided over a pattern of delay tactics that has prevented timely resolution of the pending injunction. Specifically, Judge Bennett has granted Defendants multiple extensions to respond to the Complaint and the preliminary injunction motion (ECF 64, 66, 74), resetting deadlines and pushing the matter down the procedural road.

23.     This pattern mirrors exactly the delay-as-obstruction tactics claimed in Plaintiff Huber's RICO and obstruction-of-justice case (Case No. 2:25-cv-01098-DBB), where Magistrate Judge Romero similarly granted repeated extensions and delayed the preliminary injunction in

Huber's prior case (2:25-cv-00592-TS-CMR), effectively running out the clock and rendering relief meaningless.

24.    The delays are causing ongoing and irreparable harm. The January 2026 candidate declaration deadline, the March 2026 caucus schedule, and the ongoing fundraising and ballot-access decisions are locked into an unlawful framework with each passing week. Every extension granted to Defendants is a week lost for Plaintiffs, delegates, candidates, and voters who are forced to operate under a system they know to be unconstitutional. By the time Magistrate Judge Bennett or the Judge Nielson finally rules—if they ever do—the election emergency will have hardened into an irreversible certainty.

25.    Plaintiffs' pending preliminary injunction motion cannot lawfully be decided by Magistrate Judge Bennett. 28 U.S.C. § 636(b)(1)(A) explicitly excludes preliminary injunctions from magistrate judge authority. The continued assignment of that motion to Judge Bennett, combined with his grant of serial extensions to Defendants, constitutes a constructive denial of Plaintiffs' right to timely Article III review and meaningful injunctive relief.

### IV.    Legal Basis for Recission

#### A.  Statutory Violation: 28 U.S.C. § 636(c) Requires Voluntary, Written Consent

26.    The United States Supreme Court has made clear that magistrate judge jurisdiction in civil cases is fundamentally dependent upon the parties' voluntary consent. *Roell v. Withrow*, 538 U.S. 580, 589 (2003). Congress was explicit in its concern that magistrate judge assignments not be imposed through coercion, either express or tacit. As explained in the legislative history cited in the Plaintiffs' prior Objection (ECF 60):

    a.  S. Conf. Rep. No. 96-322, p. 7 (1979): "The voluntary consent of the parties is required before a civil action may be referred to a magistrate for a final decision."

b. S. Rep. No. 96-74, at 5: "The bill clearly requires the voluntary consent of the parties as a prerequisite to a magistrate's exercise of the new jurisdiction. The committee firmly believes that no pressure, tacit or expressed, should be applied to the litigants to induce them to consent to trial before the magistrates."

c. H.R. Rep. No. 96-287, at 2: "The Act creates a vehicle by which litigants can consent, freely and voluntarily, to a less formal, more rapid, and less expensive means of resolving their civil controversies."

27.    Plaintiffs have neither consented to magistrate judge jurisdiction nor received a valid consent form. The automatic assignment process, as implemented through DUCivR 72-4, violates this statutory requirement and Plaintiffs' right to withhold consent. The continued assignment of Plaintiffs' case to Magistrate Judge Bennett is therefore unlawful under 28 U.S.C. § 636(c).

**B. Constitutional Violation: Article III Guarantees and Equal Protection**

a. <u>Article III and the Right to Neutral Article III Adjudication</u>

28.    Article III vests the judicial power of the United States in judges who are appointed for life, subject to removal only through impeachment. This structure protects litigants' constitutional right "to have claims decided **before judges who are free from potential domination by other branches of government**." *Roell v. Withrow*, 538 U.S. 580, 589 (2003) (emphasis added).

29.    Automatic assignment of cases to magistrate judges, particularly in cases involving challenges to government action or where one Plaintiff has a pending action challenging the magistrate judge system itself, undermines this Article III guarantee. When a

case involves constitutional claims against government officials—as the instant matter does—the neutral, independent judgment of an Article III judge is indispensable.

b. <u>Equal Protection Violation: Differential Treatment of Pro Se Litigants</u>

30.    DUCivR 72-4(b)(1)(A) singles out unrepresented, non-incarcerated litigants for automatic magistrate judge assignment, while represented parties receive assignments to Article III judges. This creates a suspect classification that violates equal protection principles. Pro se litigants challenging government action should not be channeled into a subordinate judicial system while similarly situated represented parties proceed before Article III judges— particularly when the magistrate judge system is not merely inferior in status but is itself the subject of pending constitutional challenges.

**C. Statutory Ineligibility: Preliminary Injunction Cannot Be Heard by Magistrate Judge**

31.    28 U.S.C. § 636(b)(1)(A) explicitly excludes motions for preliminary injunctions from magistrate judge authority. As noted in the Magistrate Judge's own docket entry (ECF 8), the filing of Plaintiffs' Motion for Preliminary Injunction (ECF 7) rendered this case statutorily ineligible for magistrate judge assignment in the first instance. The subsequent referral of the preliminary injunction motion to Magistrate Judge Bennett on October 29, 2025, therefore violated federal law. Moreover, the continued handling of that motion by Judge Bennett— including his grants of multiple extensions to Defendants (ECF 64, 66, 74) that have delayed resolution past the point where meaningful relief can be fashioned—compounds the statutory violation and amounts to a constructive denial of Plaintiffs' right to timely injunctive relief in an election emergency.

**D. Disqualification Based on Conflict of Interest**

a. Actual Conflict: Magistrate Judge Bennett Cannot Fairly Adjudicate When His Own Authority Is at Issue

32.    Under the Code of Conduct for Judges, a judge must disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned. Canon 3(C)(1). Here, there is a bias against pro se litigants.

33.    Magistrate Judge Bennett's assignment to this case creates an actual conflict of interest because:

a. Plaintiff Steven Huber is simultaneously challenging the constitutionality and propriety of the magistrate judge assignment regime in *Huber v. Romero*, et al., Case No. 2:25-cv-01098-DBB.

b. By assigned to adjudicate Plaintiffs' claims in the instant matter, Magistrate Judge Bennett would be required to rule on matters directly affecting the interests of one of the parties (Plaintiff Huber) who is actively litigating the legitimacy of Magistrate Judge Bennett's own judicial authority and the assignment system that placed him on this case.

c. This creates a structural conflict in which the judge assigned to the case has a direct, personal interest in the outcome—namely, the preservation and validation of the judicial authority on which his own adjudicatory role depends.

34.    No impartial factfinder could be expected to fairly and neutrally adjudicate claims brought by a plaintiff who is simultaneously challenging the legitimacy of the judge's own authority. The appearance of impropriety is unavoidable, and the potential for actual bias is severe.

13

b.  The Appearance of Impropriety: Pro Se Litigants Cannot Receive Fair Treatment Before a Judge Whose Authority They Challenge

35.    Even setting aside the element of personal conflict, Magistrate Judge Bennett should be disqualified based on the appearance of impropriety. Plaintiffs and the Plaintiff in the related case (*Huber v. Romero*) are pro se litigants challenging the magistrate judge system itself. The Court should recognize that:

a.  Plaintiffs have objected repeatedly to magistrate judge assignment in this case (ECF 60 and 81);

b.  Plaintiffs have explicitly stated their belief that magistrate judges assigned to pro se cases violate their constitutional and statutory rights;

c.  Plaintiffs have argued that pro se litigants are systematically disadvantaged when assigned to magistrate judges rather than Article III judges;

d.  The appearance that Magistrate Judge Bennett might harbor bias against Plaintiffs— or conversely, might be incentivized to rule against Plaintiffs' constitutional arguments in order to protect the magistrate judge system on which his own authority depends—undermines the legitimacy of any proceedings before him.

c.  Standard for Disqualification: "Impartiality Might Reasonably Be Questioned"

36.    The standard for judicial disqualification is not whether bias actually exists, but whether "impartiality might reasonably be questioned" in the mind of an objective observer. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). Here, given that:

a.  Plaintiff Huber is challenging the magistrate judge system in a separate action;

b.  Magistrate Judge Bennett himself, as a magistrate judge, is at the center of that systemic challenge;

c.  Magistrate Judge Bennett would be adjudicating claims brought by Plaintiff Huber and related Plaintiffs who have consistently objected to his authority;

d.  Any ruling by Magistrate Judge Bennett on the merits could affect Plaintiff Huber's separate challenge to magistrate judge authority;

37.     It is abundantly clear that an objective observer would reasonably question Magistrate Judge Bennett's impartiality.

## V.    JUDICIAL EFFICIENCY AND SYSTEMIC CONCERNS

### A.  Preservation of Judicial Resources and Appellate Clarity

38.     If this Court is uncertain whether the automatic assignment of cases to magistrate judges—particularly in pro se cases involving constitutional claims against government action—comports with Article III and 28 U.S.C. § 636, then the most efficient course is to:

a.  Rescind the referral to Magistrate Judge Bennet; and

b.  Remand the matter to an Article III judge for all proceedings; or

c.  Refer the matter to the Tenth Circuit for clarification on the constitutional and statutory issues presented in Plaintiffs' case about the forced signature-gathering process and "second chance primary."

39.     The Tenth Circuit judges, such as Judge Tymkovich, are already deeply familiar with Utah's signature-gathering process. Specifically, Tymkovich has been waiting for this issue to become ripe for nearly eights years—*Utah Republican Party v. Cox*, 892 F.3d 1066—as he predicted and warned that the application of the forced signature-gathering would displace the Utah Republican Party's convention-only rules, force unwanted "second chance primaries" after convention victories, and an installation of preferred candidates as "party nominees" over the Party's own Constitutional process.

15

### B. Pattern of Magistrate Judge Authority Expansion

40.    The *Huber v. Romero* action (Case No. 2:25-cv-01098-DBB) establishes that this is not an isolated problem but a pattern of magistrate judge authority expansion that may violate constitutional and statutory limits. The Court should be concerned about these systemic issues, remanding this matter to an Article III judge is a prudent protective measure that preserves Plaintiffs' rights while allowing for proper appellate review of the constitutional questions involved.

### VI.    Conclusion

41.    For the foregoing reasons—including the violation of 28 U.S.C. § 636(c), the constitutional infirmity of automatic magistrate judge assignment to pro se litigants, the statutory ineligibility of this case for magistrate judge authority due to the preliminary injunction claim, and the irreconcilable conflict of interest created by Plaintiff Huber's simultaneous challenge to magistrate judge authority in a related action—Plaintiffs request that this Court:

a.    GRANT this Motion to Rescind Magistrate Judge Assignment;

b.    VACATE the automatic assignment and all referrals of this action to Magistrate Judge Jared C. Bennett;

c.    REMAND this action to an Article III district judge for adjudication of all claims, motions, and matters;

d.    DIRECT the assigned Article III district judge to rule on Plaintiffs' pending Motion for Preliminary Injunction (ECF 7) on an expedited basis, given the election emergency timeline, the imminent statutory deadlines (January 2026 candidate declaration, March 2026 caucuses), and the irreparable harm arising from further delay;

16

42.    Enter such additional and ancillary relief as the Court deems necessary and proper to preserve Plaintiffs' statutory and constitutional rights to Article III adjudication and neutral judicial review;

## VII.    REPRESENTATIONS TO THE COURT (Rule 11)

43.    WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing PLAINTIFFS' EMERGENCY MOTION TO RESCIND REFERRAL TO MAGISTRATE JUDGE, REMAND TO ARTICLE III JUDGE, and EXPEDITE RESOLUTION OF PENDING PRELIMINARY INJUNCTION is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated:  December 9, 2025

/s/ Tracie Halvorsen

TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se


/s/ STEVEN HUBER

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ NANCY INMAN

NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se


/s/ DANIEL NEWBY

DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020
801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER

WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se

**Certificate of Service**

We hereby certify that on this 9th day of December, 2025, we electronically filed the

PLAINTIFFS' EMERGENCY MOTION TO RESCIND REFERRAL TO MAGISTRATE

JUDGE, REMAND TO ARTICLE III JUDGE, and EXPEDITE RESOLUTION OF PENDING

PRELIMINARY with the Clerk of the Court under the filing and electronic notification

procedures outlined under DUCivR 5-1, which will send notification of such filings to all

registered participants in this case.

| | |
|---|---|
| Jason Dupree<br>Office of the Utah Attorney General<br>PO Box 140856<br>Salt Lake City, Utah 84114-0856<br>(385) 977-8940<br>jndupree@agutah.gov<br>*Attorney for the State of Utah, Cox,*<br>*Henderson, Bramble, McCay, Durrant,*<br>*Schultz, and Adams* | Scott *Cheney*<br>*Office of the Utah Attorney General*<br>*PO Box 140856*<br>*Salt Lake City, Utah 84114-0856*<br>*(385) 977-4858*<br>scheney@agutah.gov<br>*Attorney for the State of Utah, Cox,*<br>*Henderson, Bramble, McCay, Durrant,*<br>*Schultz, and Adams* |
| David Wolf<br>Office of the Utah Attorney General<br>PO Box 140856<br>Salt Lake City, Utah 84114-0856<br>(385) 441-5084<br>dnwolf@agutah.gov<br>*Attorney for the State of Utah, Cox,*<br>*Henderson, Bramble, McCay, Durrant,*<br>*Schultz, and Adams* | Anikka Hoidal<br>Office of the Utah Attorney General<br>PO Box 140856<br>Salt Lake City, Utah 84114-0856<br>(385) 272-3951<br>ahoidal@agutah.gov<br>*Attorney for the State of Utah, Cox,*<br>*Henderson, Bramble, McCay, Durrant,*<br>*Schultz, and Adams* |
| Stacy R. Haacke<br>Office of General Counsel<br>Administrative Office of the Courts<br>PO Box 140241<br>Salt Lake City, Utah 84114-0241<br>(801) 214-5805<br>stacyh@utcourts.gov<br>*Attorney for Chief Justice Matthew Durrant* | John R. Richardson<br>111 S. Main Street, Suite 2400<br>Salt Lake City, Utah 84111<br>Johnny.richardson@dentons.com<br>*Attorney for Brian McKenzie* |
| R. Blake Hamilton<br>111 S. Main Street, Suite 2400<br>Salt Lake City, Utah 84111 | Janise K. Macanas<br>111 S. Main Street, Suite 2400<br>Salt Lake City, Utah 84111 |

Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Alan R. Houston
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Victoria S. Ashby
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Cliff Parkinson
2750 Rasmussen Rd.
Suite H-107
Park City,. Utah 84098
cliff@pbp.law
*Attorney for Axson, Coleman, and Null*

Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

Christine R. Gilbert
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park city, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

Executed on this 9th day of December 2025.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020

/s/ NANCY INMAN
NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se

/s/ DANIEL NEWBY
DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020

20

801-688-3594                          801-949-3360
traciehalvorsen@outlook.com           danieltrouble@protonmail.com
Plaintiff Pro Se                      Plaintiff Pro Se


<u>/s/ WAYNE WICKIZER</u>
WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se