Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

FILED
2025 DEC 16 PM 4:00
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX, et. al, <br><br> Defendants | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND RESPONSE TO [96] THE OPPOSITION FILED BY THE DEFENDANTS' (STATE, LEGISLATIVE, AND JUDICIAL)** <br><br> Case No. 2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

## I.      Introduction

1.      Plaintiffs, Tracie Halvorsen et. al, submit this Reply in further support of their Motion for Preliminary Injunction and to respond to the Opposition filed by Defendants' Spencer Cox, Deidre Henderson, the State of Utah, Curtis Bramble, Daniel McCay, Mike Schultz, Stuart Adams, and Matthew Durrant (collectively, "State, Legislative, and Judicial Defendants" or "Defendants").

## II.     Defendants' Misrepresentations to the Court

2. As Sir Walter Scott observed in his 1808 poem Marmion, "Oh, what a tangled web we weave, when we first practice to deceive."[1] Defendants' misrepresentations in their Opposition (ECF 96) are unsurprising to Plaintiffs. Throughout this litigation, Defendants have employed the same pattern of factual mischaracterization and legal distortion that prompted Plaintiffs to bring these claims in the first instance. Defendants' Introduction exemplifies this approach: their opening paragraph contains multiple material misstatements that lack evidentiary support. Most notably, Defendants falsely characterize Plaintiffs' motivation as rooted in support for a particular candidate, claim without foundation that all Plaintiffs supported Phil Lyman, misrepresent Plaintiffs' reliance on precedent dissent, and construct a narrative entirely divorced from the actual claims in the Complaint. These are not minor rhetorical flourishes—they are calculated misrepresentations that obscure the genuine constitutional issues at stake. Defendants have provided no evidence whatsoever to support any of these characterizations.

3. Plaintiffs have never previously litigated these specific constitutional claims. Plaintiffs bring this action based on the plain language of Utah's election statutes and their fundamental constitutional rights—not in support of any particular candidate. This distinction is critical and is precisely why Plaintiffs filed their Motion for Preliminary Injunction: Defendants' application of Utah election law violates the Constitution and infringes Plaintiffs' civil rights. Plaintiffs seek preliminary relief to prevent ongoing constitutional harm, not to advance any candidate's electoral prospects.

4. Here Plaintiffs ask this Court to halt the unconstitutional application of the "either or" provision. Properly construed, that provision permits a party member to seek the party's nomination either through the convention process or through the signature-gathering process; it

---

[1] Sir Walter Scott, Marmion: A Tale of Flodden Field, canto VI, st. 17 (1808).

does not compel the party to accept both paths in every circumstance. That is why neither this Court nor the Tenth Circuit has held that the availability of a signature-gathering option, standing alone, is unduly burdensome. Judge Tymkovich, however, correctly anticipated that compelling a party to accept candidates who qualify solely by signature-gathering, contrary to the party's chosen nomination method, would threaten to undermine—and ultimately destroy—the party's associational rights.

### III.     The "Either or Both" Provision

5. The dispute here does not arise from ambiguity in the statutory text but from Defendants' distortion of it. Under Defendants' reading, the convention is reduced to an initial round in which the losing candidate is guaranteed a renewed opportunity via signatures, regardless of party rules, in direct conflict with § 20A-9-401(2)'s protection of a party's internal procedures.

6. Defendants misread the statute in a way that strips the party of its core associational rights. Defendants concede that an individual member may choose to seek the party's nomination, but they then leap to the untenable conclusion that the party has no meaningful say in how its nominee is selected. That position is contrary to the Constitution and to well-established precedent recognizing a political party's right to structure its own nomination process.

> (13)   "Qualified political party means a registered political party that:
>
>     (c)  **permits a member** of the registered political party to seek the registered political party's nomination for any elective office by the **member choosing** to seek the nomination by **either or** both of the following methods:
>
>         (i)  seeking the nomination through the registered political party's convention process, in accordance with the provisions of Section 20A-9-407; or

>> (ii) seeking the nomination by collecting signatures, in accordance with the provisions of Section 20A-9-408; and"

Quoting Utah Code 20A-9-101(13)(c). [Internal quotes omitted and emphasis on bold.]

7. Properly understood, the statute allows a member to choose to seek the party's nomination through either the convention route or the signature-gathering route only within the framework the party itself has chosen to permit. Where, as here, the party has elected to use the convention as its exclusive nomination method, the State cannot override that choice by unilaterally creating a second-chance signature path for candidates who failed at convention. To do so is not "member choice;" it is State compulsion that rewrites the party's rules and commandeers its nomination process, in direct violation of the party's protected associational rights.

### IV. Plaintiffs' Win on the Merits of Their Claims

8. Defendants' web of lies is so tangled that they misread even *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986). *Tashjian* struck down a state law precisely because the State attempted to impose its preferred primary structure on a political party, overriding the party's own judgment about how to define and associate with its members. That is exactly what is happening here: although Utah's statute does not, on its face, require a forced "second-chance" primary through signature-gathering, Defendants apply it as if the State may compel the party to accept convention losers onto the second chance primary ballot anyway. *Tashjian* makes clear that even if the State sincerely believes it is protecting a party from itself, it "may not constitutionally substitute its judgment for that of the Party" regarding "the boundaries of its own association and … the structure that best allows it to pursue its political goals," a determination the Constitution reserves to the party, not the State.

9. Defendants themselves acknowledge that "there is no debate as to the merit of Plaintiffs' claims," (see ECF 96 at page 6) and the very authorities they invoke underscore why their application of Utah's election laws is unconstitutional. In their Opposition (ECF 96), Defendants cite cases recognizing that while a State may structure election procedures, it may not override a political party's First Amendment right to define its own nomination process and associational boundaries, including *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986); *California Democratic Party v. Jones*, 530 U.S. 567 (2000); *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196 (2008); *Clingman v. Beaver*, 544 U.S. 581 (2005); *Jenness v. Fortson*, 403 U.S. 431 (1971); and *American Party of Texas v. White*, 415 U.S. 767 (1974). Those decisions collectively hold that States may not "substitute [their] judgment for that of the Party" on the structure of its nominating process, may not compel parties to accept unwanted participants or procedures in candidate selection, and may regulate primaries and conventions only within constitutional limits.

10. Yet Defendants ask this Court to ignore those principles and to uphold a regime under which State officials effectively nullify the Party's chosen convention process under Utah Code § 20A-9-407 by forcing a second-chance, signature-gathering primary path the statute does not require. By treating the "either or both" language in § 20A-9-101(13)(c) as a mandate that the Party must accept both routes regardless of its internal rules, Defendants convert a flexible, constitutionally permissible framework into exactly the kind of compelled nomination structure the Supreme Court has repeatedly condemned. In doing so, they misapply the very case law they cite and invite this Court to disregard both the text of Utah's election code and the constitutional protections for party autonomy that those precedents affirm.

11. For these reasons, Plaintiffs' Motion for Preliminary Injunction should be granted. The record shows that Defendants are misapplying Utah's election statutes in a manner that overrides the Utah Republican Party's chosen nomination process, disregards statutory protections for party autonomy, and infringes Plaintiffs' constitutional associational and civil rights. Given the ongoing nature of these violations, the lack of adequate legal remedies, and the strong public interest in preserving both the integrity of Utah's statutory convention framework and the constitutional boundaries on state interference with party governance, preliminary injunctive relief is not only appropriate but necessary.

### V.    Plaintiffs' Irreparable Harm

12. All Plaintiffs—not only those involved in party governance—face irreparable harm because Defendants' ongoing misapplication of Utah's election laws deprives them of a free and fair election, controlled by state officials overriding party rules and voter choices. The injury here is twofold: first, Plaintiffs' constitutional rights of political association and participation in their chosen party's nomination process are compromised when Defendants nullify or dilute the results of the convention process; second, as voters and citizens, Plaintiffs are forced to participate in elections structured by an unconstitutional nomination regime that predetermines which candidates appear on the ballot, thereby skewing the electoral field before a single vote is cast. These harms affect every Plaintiff who seeks to engage in Utah's elections on equal and lawful terms, because the integrity of the ballot is the foundation of a free and fair election for all participants, not just party insiders

13. With the 2026 election cycle imminent, these constitutional injuries will recur under the same forced signature-gathering regime that nullified the 2024 convention. SB 2001, enacted December 11, 2025, escalates this violation for congressional races: it authorizes

signature gathering starting January 2, 2026, permits statewide collection of 7,000 signatures rather than district-only, and allows dual candidacy during the signature phase. Whether under the existing statutory framework or SB 2001's expanded provisions, Defendants will continue forcing candidates onto the primary ballot contrary to the party's convention choice. Once the 2026 filing deadlines pass and ballots are printed under this unconstitutional structure, no later ruling can restore Plaintiffs' opportunity to participate in a valid nomination system. The requirement of irreparable injury is fully satisfied.

14.     Defendants' delayed argument fails both legally and factually and cannot defeat a showing of irreparable harm. Defendants contend that because Plaintiffs did not immediately sue in 2015, or after each subsequent election, Plaintiffs have somehow forfeited their right to challenge Defendants' ongoing unconstitutional conduct. But delay alone is not dispositive where, as here, Plaintiffs allege a continuing violation of constitutional rights affecting the structure and integrity of elections. The Supreme Court has repeatedly recognized that violations of First Amendment and voting-related rights warrant equitable relief without any requirement that citizens bring suit at the earliest conceivable moment, particularly where the challenged practices recur each cycle and continue to burden constitutional interests.

15.     Defendants' own authorities do not support the sweeping proposition they advance. Cases discussing delay in the preliminary-injunction context, including those cited in their Opposition, focus on whether a plaintiff's inaction suggests the absence of urgency or irreparable harm in purely private disputes, such as commercial or contractual conflicts, not on systemic constitutional violations in the administration of elections. By contrast, election-law precedents like Storer v. Brown, 415 U.S. 724 (1974), and related ballot-access cases emphasize the need for courts to address unconstitutional ballot-qualification and nomination rules before

elections occur, precisely because once an election is conducted under an unlawful framework, the harm to voters and candidates cannot be undone. The continuing and forward-looking nature of Plaintiffs' claims—especially with the 2026 election fast approaching—places this case squarely in the category where courts are most reluctant to deny relief based on timing alone.

16. Moreover, Defendants' own narrative underscores why delay cannot be weaponized against Plaintiffs. Defendants repeatedly emphasize that their interpretation and application of the "either or both" provision has been consistent for years across multiple election cycles, effectively admitting a long-running pattern in how they have overridden the party's convention-based nomination method. In substance, Defendants argue: "We have been misapplying this law for nearly a decade; because Plaintiffs did not challenge us sooner, we should now be insulated from judicial review." That is not a delay argument—it is an attempt to convert the duration of an alleged violation into a defense to it. Courts do not reward entrenched constitutional violations by treating their longevity as a bar to relief, particularly where the alleged misconduct affects the fundamental rights of voters and party members in successive elections.

17. Defendants also ignore the practical realities facing these Plaintiffs. Plaintiffs are pro se citizens who have drafted and litigated this action in their limited spare time, without the institutional resources, staff, or budgets available to the Utah Attorney General's Office. Their status as unrepresented individuals challenging a complex, statewide election scheme weighs against drawing any negative inference from the time it took to research, draft, and file this case. Equitable principles do not require ordinary citizens to match the speed or capacity of a fully staffed Attorney General's office before they may seek protection of their constitutional rights. To the contrary, where state officials themselves are the ones administering and defending the

challenged practices, courts have repeatedly held that private plaintiffs play a crucial role in vindicating constitutional norms that the government has chosen not to enforce.

18. Finally, Defendants' position is especially troubling given the role of the Attorney General. Rather than serving as a constitutional check within the executive branch and scrutinizing a nomination scheme that burdens party autonomy and voters' rights, the Utah Attorney General's Office appears here as the primary defender of that very scheme. In effect, Defendants invoke Plaintiffs' supposed "delay" as a shield for what Plaintiffs allege is a longstanding pattern of unlawful conduct in the use of mail, electronic communications, and ballot-qualification mechanisms—precisely the kind of systemic practice that would ordinarily warrant close governmental scrutiny, not reflexive defense. The law does not support the notion that state officials may continue an unconstitutional election practice for years and then evade preliminary relief by arguing that citizens "did not catch us fast enough." Especially with the 2026 election rapidly approaching, and with another full cycle poised to occur under the same challenged framework, any reliance on delay is insufficient to overcome the ongoing, forward-looking irreparable harm Plaintiffs have demonstrated.

### VI. Balance of Harms and Public Interest Favor Plaintiffs

19. Defendants invert the balance of harms by treating their own misapplication of the statute as if it were a legal obligation. Under Utah Code § 20A-9-407(6), it is the qualified political party—not the State—that "nominates a candidate under this section" and certifies that candidate to the lieutenant governor, either for the general election ballot (where the candidate receives the required delegate percentage) or for the primary ballot (where the top two advance when no one meets that threshold). The statutory scheme thus places the certification decision in the hands of the party acting through the convention process; it does not authorize Defendants to

override those results by creating a State-imposed "second-chance" route for candidates who lost at convention.

> (6)(a)  "A qualified political party **that nominates a candidate under this section shall certify the name of the candidate to the lieutenant governor** before the deadline described in Subsection 20A-9-202(1)(b)."

Quoting § 20A-9-407(6)(a). [Emphasis on bold]

20. Enjoining Defendants from forcing a second-chance primary on the party does not require them to depart from their statutory or constitutional obligations; it requires them to comply with those obligations as written and prevents them from continuing to manipulate the nomination process in an unlawful manner. The only "harm" Defendants identify is the inability to continue administering nominations in a way that treats the convention process as advisory and injects defeated candidates back onto the ballot through signature gathering, contrary to the party's rules and the structure of § 20A-9-407. That is not a legally cognizable harm—it is the cessation of the very practice Plaintiffs claim is unconstitutional. By contrast, if an injunction is denied, Plaintiffs once again will be forced to participate in an election where their convention votes and associational choices are nullified by a state-mandated second-chance process, inflicting another round of constitutional injury that cannot be undone after the election is conducted.

21. The balance of harms therefore weighs decisively in Plaintiffs' favor. Preventing Defendants from continuing a disputed, constitutionally suspect "second-chance" scheme preserves both the text and intent of Utah's convention-based nomination statute and protects Plaintiffs from another election cycle conducted under a framework that distorts the party's choices and their own associational rights. Any administrative inconvenience to Defendants in returning to a process that respects party certification under § 20A-9-407 is minimal compared to

the repeated, irreparable constitutional harms Plaintiffs will suffer if the challenged practice is allowed to persist into the 2026 election.

22.  For these reasons, Plaintiffs' Motion for Preliminary Injunction should be granted. The requested relief would not disrupt any lawful obligation of Defendants; it would simply prevent them from continuing to administer Utah's elections under a misapplied statutory scheme that distorts the party's nomination process and deprives Plaintiffs of a genuinely free and fair election.

### VII.  Defendants Mischaracterization of Requested Relief

23.  Defendants mischaracterize Plaintiffs requested relief and misread the authorities they cite. Plaintiffs' Motion principally seeks to halt Defendants' ongoing unconstitutional application of Utah's election laws and to protect Plaintiffs' right to a free and fair election; the additional measures Defendants highlight—preserving evidence, addressing conflicted counsel, and limiting the use of funds to support the challenged scheme—are ancillary remedies designed to make any injunction effective, not new claims. Properly understood, *Belnap* and *Hicks* merely prohibit preliminary relief that is unrelated in kind to the claims pleaded; they do not prevent the Court from issuing interim orders that preserve the record, reduce conflicts, and prevent continued financing of the alleged violations as part of the equitable relief sought.

### VIII.  Conclusion

24.  For these reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction, enjoin Defendants from continuing to misapply Utah's election statutes, and require that all future nominations and ballot certifications conform to both the plain text of Utah law and the constitutional rights of all Plaintiffs to a free and fair election.

### IX.  REPRESENATIONS TO THE COURT (Rule 11)

25.     WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PLREMINARY INJUNCTION AND RESPONSE TO THE OPPOSITION FILED BY THE DEFENDANTS' (STATE, LEGISLATIVE, AND JUDICIAL) contains 3,073 words, complies with DUCivR7-1(a)(4), is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated:  December 16, 2025

/s/ Tracie Halvorsen

TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ NANCY INMAN

NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se

/s/ STEVEN HUBER

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ DANIEL NEWBY

DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020
801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER

WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020

385-239-8326
justice@utahwtp.com
Plaintiff Pro Se

**Certificate of Service**

We hereby certify that on this 16th day of December, 2025, we electronically filed the PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND RESPONSE TO THE OPPOSITION FILED BY THE DEFENDANTS' (STATE, LEGISLATIVE, AND JUDICIAL) with the Clerk of the Court under the filing and electronic notification procedures outlined under DUCivR 5-1, which will send notification of such filings to all registered participants in this case.

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111

| | |
|---|---|
| Blake.hamilton@detons.com<br>*Attorney for Brian McKenzie* | Janise.macanas@dentons.com<br>*Attorney for Brian McKenzie* |
| Alan R. Houston<br>Office of Legislative Research and General Counsel<br>Utah State Capitol Complex<br>House Building, Suite W210<br>Salt Lake City, Utah 84114-5210<br>ahouston@le.utah.gov<br>*Attorney Bramble, McCay, Durrant, Schultz, and Adams* | Christine R. Gilbert<br>Office of Legislative Research and General Counsel<br>Utah State Capitol Complex<br>House Building, Suite W210<br>Salt Lake City, Utah 84114-5210<br>cgilbert@le.utah.gov<br>*Attorney Bramble, McCay, Durrant, Schultz, and Adams* |
| Victoria S. Ashby<br>Office of Legislative Research and General Counsel<br>Utah State Capitol Complex<br>House Building, Suite W210<br>Salt Lake City, Utah 84114-5210<br>vashby@le.utah.gov<br>*Attorney Bramble, McCay, Durrant, Schultz, and Adams* | D. Loren Washburn<br>2750 Rasmussen Rd., Suite H-107<br>Park city, Utah 84098<br>loren@pbp.law<br>*Attorney for Axson, Coleman, and Null.* |
| Cliff Parkinson<br>2750 Rasmussen Rd.<br>Suite H-107<br>Park City,. Utah 84098<br>cliff@pbp.law<br>*Attorney for Axson, Coleman, and Null* | |

Executed on this 16th day of December 2025.

| | |
|---|---|
| /s/ Tracie Halvorsen<br>TRACIE HALVORSEN<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>801-688-3594<br>traciehalvorsen@outlook.com<br>Plaintiff Pro Se | /s/ NANCY INMAN<br>NANCY INMAN<br>138 East 12300 South<br>C275<br>Draper, Utah 84020<br>916-396-4395<br>Nancyjinman@gmail.com<br>Plaintiff Pro Se |
| /s/ STEVEN HUBER<br>STEVEN HUBER<br>138 East 12300 South<br>C275<br>Draper, Utah 84020 | /s/ DANIEL NEWBY<br>DANIEL NEWBY<br>138 East 12300 South<br>C275<br>Draper, Utah 84020 |

801-688-3594  
traciehalvorsen@outlook.com  
Plaintiff Pro Se

801-949-3360  
danieltrouble@protonmail.com  
Plaintiff Pro Se

/s/ WAYNE WICKIZER  
WAYNE WICKIZER  
138 East 12300 South  
C275  
Draper, Utah 84020  
385-239-8326  
justice@utahwtp.com  
Plaintiff Pro Se