Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX, et. al, <br><br> Defendants | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND RESPONSE TO [93] THE OPPOSITION FILED BY THE DEFENDANTS' AXSON, COLEMAN, AND NULL** <br><br> Case No. 2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

### I.     Introduction

1.     Plaintiffs, Tracie Halvorsen et al., submit this Reply in further support of the Motion for Preliminary Injunction to respond to the Opposition filed by Defendants Axson, Coleman, and Null (ECF 93) (collectively, the "Party Official Defendants").

### II.     Defendants Treat Constitutional Rights as Fantasy

2.     Defendants admit that the Utah Republican Party (URP) has "consistently opposed" the signature-gathering process, yet insist that efforts by rank-and-file Republicans and Utah voters to vindicate their First and Fourteenth Amendment associational and electoral rights are a "legal fantasy world" that "serious people" must reject. By treating constitutional limits and federal civil-rights statutes as fantasy and their preferred application of the signature-gathering

process as the only "real" law, Defendants invert constitutional hierarchy: their forced signature-gathering process becomes untouchable reality, while the Constitution and federal rights become optional.

3. That is backwards. The premise of 42 U.S.C. §§ 1983, 1985, 1986, and 18 U.S.C. § 1964 is that state and party officials may be sued when they use state law as a vehicle for fraud that violates constitutional rights. When Defendants claim they are "not at liberty" to do anything but follow the forced "second-chance primary," they are really saying they are not at liberty to disobey the enterprise if doing so would require them to alter how they allow the State to impose the signature-gathering process on the URP. They treat the forced "second-chance primary" regime as hard reality and Plaintiffs' constitutional rights as a mere wish that must yield. That is an admission of constitutional infidelity, not a defense.

### III. Reply to Party Official Defendants' Arguments

#### A. Plaintiffs Will Prevail on The Merits

(i) <u>The Party Official Defendants Misrepresent "Either-or-Both"</u>

4. The Party Official Defendants misrepresent what *Utah Republican Party v. Cox*, 2016 UT 17, decided. They concede the "either or both" provision but construe it to benefit preferred candidates whenever convention results prove unfavorable. Their position is that "either or both" authorizes the State to resurrect a defeated candidate through a second-chance signature-gathering process after the party's convention rejects him. It does not.

5. The *Utah Republican Party v. Cox* held that the URP's associational rights are not severely burdened because the signature-gathering process is not forced on the party: a "qualified political party" (QPP) is a registered party that permits its members to seek nomination through the convention process, the signature-gathering process, or both, at the party's option. The statute

2

leaves that choice to the party. Here is the fatal contradiction: Defendants admit the URP opposes signature-gathering, yet they knowingly permit—and actively facilitate—the State's weaponization of it against the Party's bylaws and the will of its delegates, converting what Cox treated as a permissive option into a mandate that nullifies the Party's chosen process.

6. This implementation violates the URP's First Amendment associational rights. The Supreme Court has held that a political party's freedom of association includes screening out those whose affiliation is slight or fleeting, and that such screening is essential to building an effective and responsible party. *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 123 (1981). When state action interferes with a party's chosen method of selecting nominees, strict scrutiny applies. As in *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214 (1989), Defendants' forced "second-chance primary" infringes the Party's right to identify its association and select standard-bearers who best represent its ideology and preferences.

7. This very principle drove the outcome in *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1263, 1280 (D. Utah 2015) where this Court held that forcing the URP to allow unaffiliated voters to participate in its closed primary violated the Party's First Amendment associational rights. *Herbert* recognized that diluting the Party's membership with non-members in its selection process was an unconstitutional intrusion on the Party's core function of choosing its own nominees under its own rules.

8. If allowing unaffiliated voters into the nominating process is an unconstitutional burden, then allowing the State effectively to nullify the votes of duly elected delegates is an even graver violation. Defendants have rendered convention delegates—Party insiders—irrelevant. Delegates at the 2024 convention voted under bylaws that authorize only the

convention process for nomination. Defendants then certified candidates who bypassed that process, using signature-gathering to access the ballot in contravention of Party rules and Utah election law, telling delegates that their votes meant nothing. If it is unconstitutional to dilute Party members' influence by adding unaffiliated voters, it is even more unconstitutional to nullify members' votes by certifying candidates the Party rejected.

9. he Supreme Court has made clear that a State may not substitute its judgment for that of the party in internal governance and candidate selection. *California Democratic Party v. Jones*, 530 U.S. 567, 582 (2000). Yet the Party Official Defendants have done just that. Under color of a permissive statute, they have imposed a mandatory outcome in which convention results are advisory at best and bylaws are treated as unenforceable suggestions. That is not the "minimal burden" contemplated by "either or both"; it is the substitution of state preferences for party self-governance that *Jones, La Follette, Eu, and Herbert* forbid.

10. Defendants cannot hide behind *Utah Republican Party v. Cox's* holding that the Party must permit members to seek nomination through either convention or signature-gathering, because that holding assumed neither path was forced. Defendants have turned that choice into a hammer that smashes the "either or" provision and compels "second-chance primaries." The violation lies not in the existence of "either-or-both" but in Defendants' fraudulent and coercive implementation, which treats Party opposition as irrelevant, bylaws as void, and members' votes as expendable. That is unconstitutional interference with the Party's nominating process

11. Defendants perpetuate the unconstitutional "second-chance" override of convention results they applied in 2024. SB 2001, enacted December 11, 2025, escalates this

4

practice for congressional races: while declarations are delayed until March 9–13, [1] the bill authorizes notice of intent to gather signatures on January 2 and expands collection statewide rather than restricting it to district residents. Combined with dual candidacy (§ 20A-9-201(2)(b)(iv)), this entrenches the scheme. Defendants' Motion to Dismiss consumes the window before these steps occur, leaving Plaintiffs with only post-hoc damages.

B. **Plaintiffs Have Shown Irreparable Harm**

(i) <u>Constitutional Deprivations Cannot Be Remedied by Damages</u>

12. The Tenth Circuit has made clear that loss of constitutional rights constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1268 (10th Cir. 2005 Once violated, constitutional rights cannot be fully restored by monetary damages, especially First Amendment associational and voting rights, which are temporally discrete and unrepeatable.

13. Defendants have systematically violated their First Amendment right to associate with the URP and select nominees through the Party's chosen process. Class 1 Plaintiffs (URP delegates) exercised that right at the April 27, 2024 convention, casting votes for Phil Lyman, Trent Staggs, and Frank Mylar. Their votes were nullified when Defendants certified candidates who bypassed the delegate-driven process in violation of URP bylaws and Utah Code § 20A-9-401(2). No damages award can restore their 2024 opportunity to participate meaningfully in the Party's nominating process.

---

[1] SB 2001, enacted in Utah's 2025 Second Special Session, took effect December 11, 2025. It amends Utah Code §§ 20A-9-201, 20A-9-201.5, and 20A-9-408 to create 2026-only rules for congressional races, including expanded signature-gathering authority and dual-candidacy provisions that override party convention results.

5

14. Class 2 Plaintiffs (URP members) participated in the March 5, 2024 caucus to elect delegates, exercising their associational right to influence nominee selection through representative governance. Defendants' nullification of convention results rendered that caucus participation meaningless. Once that cycle ended, the opportunity to exercise that particular right was lost, constituting irreparable harm.

15. Class 3 Plaintiff (an unaffiliated voter) was deprived of his right not to associate with convention nominees until the general election. Instead, Defendants forced him to confront an electoral landscape tainted by fraudulent certifications and to choose between illegitimately nominated candidates or a burdensome write-in option. That coerced, one-time choice cannot be undone.

16. Class 4 Plaintiff made a deliberate choice not to vote as a form of political protest against what he viewed as an illegitimate process. Defendants' certification of disqualified candidates and perpetuation of the fraudulent regime undermined the very foundation of his protest. A post-hoc damages award will not restore his right to a fraud-free electoral process.

17. Defendants' unconstitutional practices are not confined to 2024—they will recur in 2026 under the same forced signature-gathering regime that nullified convention results. SB 2001, enacted December 11, 2025, escalates this violation for congressional races: it opens signature gathering January 2, 2026 (months before the March 9–13 filing period), allows candidates to collect 7,000 signatures from any statewide party voter rather than district residents only, and authorizes simultaneous dual candidacy (§ 20A-9-201(2)(b)(iv)). These provisions institutionalize the 'second-chance' scheme by diluting district representation and validating signature-gathering as the dominant path regardless of party choice. Without injunction before

January 2, Defendants will replicate the 2024 nullification under both the existing framework and this new, accelerated authority.

18. Each day without an injunction brings Defendants closer to repeating the 2024 violation. By the time final judgment issues, the 2026 cycle will likely have unfolded under the same unlawful practices, causing another round of violations with only another damages suit as a remedy. Preliminary relief exists to prevent precisely that scenario.

(ii) <u>Plaintiffs' Timing Does Not Defeat Irreparable Harm When Violations Are Continuing</u>

19. Defendants argue that Plaintiffs' delay—from Plaintiff Halvorsen's August 2024 Notice of Intent to the October 2025 filing—undercuts urgency and irreparable harm. That argument misunderstands the nature of the harm, the standard for preliminary relief in continuing-violation cases, and the extraordinary circumstances that forced private citizens to act as litigators.

20. **The Structural and Ongoing Nature of the Violation**. Defendants cite *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994), and *Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1270 (D. Utah 2023), to claim that delay cuts against irreparable injury. But those cases support Plaintiffs. *Kansas Health Care* distinguished situations where a plaintiff long knew of a threatened harm from those where the need for preliminary relief arises suddenly. Here, violations are structural and ongoing; the "urgent need for speedy action" arose when the 2026 cycle became imminent and Defendants signaled they would repeat the scheme. *Schiermeyer* held that delay defeats relief only where harm is discrete and time-limited at the moment of injury, not where violations are continuing. Defendants' own authorities confirm that

earlier delay does not negate irreparable harm from recurring violations that will occur again in 2026 absent injunction.

21. **Good-Faith Exhaustion and the Abdication of the Attorney General**. Plaintiffs' timing reflects a structural failure of state governance. The Utah Attorney General has the duty to investigate and prosecute fraud by state actors and protect electoral integrity. Yet Derek Brown, the current Attorney General, was elected under the very fraudulent scheme alleged, certified via signature-gathering in violation of URP bylaws. Under those circumstances, there was no realistic prospect that his Office would investigate the officials and practices that produced his own election.

22. Plaintiff Halvorsen diligently pursued non-litigation remedies first, formally noticing the Party in August 2024 and attempting to address the violations at the September 7 State Central Committee meeting—where she was silenced, compounding the First Amendment injury. Plaintiffs could not turn to the Attorney General, whose authority is compromised by his own election under the challenged regime, nor could they find counsel where the threat of § 1988 sanctions is weaponized to chill constitutional litigation. This forced pro se path demonstrates necessity, not delay, and cannot equitably be used to deny relief.

23. **Defendants' Dilatory Tactics and the Running of the 2026 Election Clock**. Defendants' own tactics heighten the urgency. They filed a frivolous Motion to Dismiss and obtained multiple extensions, consuming weeks of calendar time. If Defendants wished to rely on delay as a defense, they should not have manufactured delay through obstruction. Their motion practice shows a strategy of running out the 2026 clock so no preliminary injunction can prevent a repeat of 2024's harm. Delay benefits Defendants and injures Plaintiffs.

24. **The Imminent Election Cycle**. Because the 2026 cycle is imminent, any remaining delay lies with Defendants, not Plaintiffs. Plaintiffs filed in October 2025; the 2026 nominating season is weeks away. Courts do not penalize plaintiffs who seek pre-election relief when defendants benefit from delay. Election cases require expedition because once an election passes, the chance to prevent harm is irretrievably lost. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363–64 (1997). Plaintiffs' earlier investigative delay was the cost of proceeding without institutional support; Defendants' present procedural delay is a deliberate choice to run out the clock.

C. **The Weaponization of § 1988 to Chill § 1983 Claims**

25. Defendants ask this Court to declare Plaintiffs' motion "frivolous" and award attorneys' fees under 42 U.S.C. § 1988. That request distorts the fee-shifting statute and seeks to weaponize civil procedure against citizens enforcing their federal constitutional rights.

26. Section 1988 was enacted to encourage private enforcement of civil rights by ensuring that prevailing plaintiffs could recover fees from defendants, thereby serving as 'private attorneys general' who advance the public interest. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968). Congress deliberately created an asymmetric standard: prevailing plaintiffs ordinarily recover fees to incentivize enforcement, while prevailing defendants may recover fees only when a claim is frivolous, unreasonable, or groundless, *Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)*, precisely to avoid deterring the bringing of claims that might ultimately prove successful, *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Defendants' request inverts this framework, weaponizing § 1988 as a sword to punish citizens for exercising their constitutional right to seek judicial review of state conduct. That is the opposite of what Congress intended.

27. Section 1983 exists precisely to empower private citizens to vindicate their federal constitutional rights against state actors who exceed their authority. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978). But that right is illusory if citizens know that bringing suit—even a well-pleaded suit with substantial factual support—where a Defendant can just use the word "frivolous" because they can't defend their unlawful corrupt actions.

28. Here, Plaintiffs have pleaded detailed factual allegations spanning a decade, identified specific statutes and constitutional provisions, alleged concrete injuries, and presented serious questions about the intersection of party autonomy, state election law, and individual constitutional rights. That is not frivolous litigation. That is precisely the kind of case § 1983 was designed to address—citizens challenging official conduct that they believe violates their constitutional rights.

29. Defendants' request for sanctions is a strategic attempt to decapitate this litigation before class certification. With over 4,000 potential claimants already identified, Defendants seek to impose financial ruin on named Plaintiffs to send a chilling message to those who would join: 'Challenge us, and you will pay.' This is not hypothetical. When a motion was made to allow Plaintiff Halvorsen to address the State Central Committee on September 7, 2024, leadership chilled the body's vote by attempting to remove her from the meeting before the vote could even occur—culminating in a false police report for trespassing. (See Sept. 7, 2024 SCC Minutes, **Exhibit A**). The message is clear: question the 'second-chance primary' and you will be met with criminal accusations; seek judicial redress and you will be met with financial sanctions. If the Court accedes to this fee request, it validates a strategy of intimidation designed to silence mass dissent.

30. Yet Defendants ask this Court to penalize Plaintiffs for having the courage to bring that challenge and to impose financial sanctions on ordinary citizens who dared to question whether state and party officials are above the law. If the Court accedes to that request, it will have sent a chilling message to every other citizen who contemplates challenging similar conduct: Do not bother suing. The cost of losing will exceed any benefit of winning. That is a chilling effect on § 1983 rights, and it is precisely what the statute forbids.

31. Plaintiffs are pro se litigants—ordinary citizens without institutional resources, without law firms backing them, without the ability to absorb massive litigation costs. They took on the task of documenting fraud and constitutional violations that the Utah Attorney General should have taken on. They collected evidence, organized documents, drafted pleadings, and filed suit—all while working full-time jobs and managing family obligations. For those efforts— for daring to challenge powerful officials and a well-resourced organization—Defendants' counsel now asks this Court to impose financial punishment on these citizens. That request reflects either a profound misunderstanding of what § 1988 is for, or a cynical and deliberate attempt to abuse it. Either way, it shames the legal profession.

32. Moreover, on the merits, Defendants' fee request fails. Plaintiffs' claims are not indisputably meritless. They rest on detailed factual unconstitutional actions grounded in Supreme Court and Tenth Circuit precedent (*La Follette, Eu, Jones, Herbert*), and claims of concrete constitutional injury.

33. Defendants' fee request should be denied with prejudice.

### IV. Conclusion

34. For the foregoing reasons, the Court should deny the Party Official Defendants' Opposition and grant Plaintiffs' Motion for Preliminary Injunction in full.

## V. REPRESENTATIONS TO THE COURT (Rule 11)

35. WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing Reply is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct. The foregoing contains 2,987 words and complies with DUCivR7-1(a)(4).

Dated: December 16, 2025

/s/ Tracie Halvorsen

TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ NANCY INMAN

NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se

/s/ STEVEN HUBER

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ DANIEL NEWBY

DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020
801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER

WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se

# Certificate of Service

We hereby certify that on this 16th day of December, 2025, we electronically filed the PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND RESPONSE TO [93] THE OPPOSITION FILED BY THE DEFENDANTS' AXSON, COLEMAN, AND NULL with the Clerk of the Court under the filing and electronic notification procedures outlined under DUCivR 5-1, which will send notification of such filings to all registered participants in this case.

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111

Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Alan R. Houston
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Victoria S. Ashby
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Cliff Parkinson
2750 Rasmussen Rd.
Suite H-107
Park City,. Utah 84098
cliff@pbp.law
*Attorney for Axson, Coleman, and Null*

Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

Christine R. Gilbert
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park city, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

Executed on this 16th day of December 2025.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020

/s/ NANCY INMAN
NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se

/s/ DANIEL NEWBY
DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020

801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER
WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se