## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **TRACIE HALVORSEN, et al.,** | **REPORT AND RECOMMENDATION** |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:25-cv-00909-HCN-JCB** |
| **SPENCER COX as an individual and official capacity, et al.,** | **District Judge Howard C. Nielson, Jr.** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

### INTRODUCTION[1]

Plaintiffs Tracie Halvorsen ("Ms. Halvorsen"), Nancy Inman, Steven Huber, Wayne Wickizer, and Daniel Newby's (collectively, "Plaintiffs")[2] complaint primarily takes issue with a specific provision of Utah's election code, which is commonly referred to as the Either or Both Provision.[3] To adequately frame the issues in Plaintiffs' complaint, the court first provides a brief history of the Either or Both Provision and subsequent litigation concerning it, all of which is taken from *Utah Republican Party v. Cox* ("*URP*").[4] Thereafter, the court provides the factual background for this case.

---

[1] This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B). ECF No. 21.

[2] Sophie Anderson was named as a plaintiff in the complaint, ECF No. 1, but was later voluntarily dismissed. ECF No. 80.

[3] Utah Code Ann. § 20A-9-101(13)(c).

[4] 892 F.3d 1066 (10th Cir. 2018).

## I.    Either or Both Provision and Subsequent Litigation

In March 2014, Utah Senate Bill 54 ("SB54") created the Either or Both Provision.[5] Prior to SB54, the Utah Republican Party ("URP") selected its candidates for primary elections exclusively through its state nominating convention.[6] However, the enactment of the Either or Both Provision provided an alternative to the convention that permitted candidates to gather a certain number of signatures to be placed on the primary election ballot.[7]

The code provisions enacted through SB54 created two categories of political parties: a Registered Political Party ("RPP") and a Qualified Political Party ("QPP").[8] Members of RPPs can qualify for a primary election only by gathering a certain number of signatures of the eligible primary voters for the office sought.[9] If a party chooses to register as a QPP, it may still hold a caucus and may certify winners of the caucus to the primary ballot.[10] However, a QPP may not restrict access to the primary ballot to only candidates who emerge from the party convention.[11] Under the enacted provisions, a candidate who is unwilling or unable to gain placement on the primary ballot through the caucus and convention may still qualify for the primary election by gathering a set number of signatures by petition from eligible primary voters.[12] Specifically, the Either or Both Provision provides that a QPP must allow its members to seek the political party's

---

[5] *Id.* at 1072.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 1073.

[9] *Id.*; *see also* Utah Code Ann. § 20A-9-403(3)(a).

[10] *URP*, 892 F.3d at 1073; *see also* Utah Code Ann. §§ 20A-9-406, -407

[11] *URP*, 892 F.3d at 1073.

[12] *Id.*

nomination for any elective office "by the member choosing to seek the nomination by *either or both* of the following methods: (i) seeking the nomination through the . . . political party's convention process . . . or (ii) seeking the nomination by collecting signatures."[13]

In 2015, the URP announced that it would permit nomination only by caucus.[14] The URP took the position that the Either or Both Provision permitted the political party—rather than the candidates—the option to allow nomination by either the signature-gathering method, the convention method, or both.[15] Utah Governor Spencer Cox ("Governor Cox"), who was then Utah Lieutenant Governor, responded that it was the State of Utah's position that under the Either or Both provision, it was the party member's choice—not the political party's—whether to pursue the nomination using the signature-gathering method, the convention method, or both.[16]

The URP then filed suit in this court seeking declaratory and injunctive relief that the Either or Both Provision was unconstitutional.[17] In that case, District Judge David Nuffer certified to the Utah Supreme Court the question of the interpretation of the Either or Both Provision.[18] Specifically, Judge Nuffer asked the Utah Supreme Court to determine whether the Either or Both Provision permitted the candidate member or the political party to choose which—or both—of the qualification processes to use.[19] In response, the Utah Supreme Court

---

[13] Utah Code Ann. § 20A-9-101(13)(c) (emphasis added); *see also URP*, 892 F.3d at 1073.

[14] *Id*. at 1074.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

[19] *Id*.

stated that the Either or Both Provision allows the candidate member—not the party—to select which of those two paths to follow to be certified to the primary ballot.[20]

Following the Utah Supreme Court's decision, Judge Nuffer ruled that the Either or Both Provision did not infringe on the URP's First Amendment rights of association.[21] URP appealed that decision to the Tenth Circuit.[22] The Tenth Circuit affirmed and held that the Either or Both Provision is constitutional.[23]

## II.    Factual Background

Plaintiffs initiated this case on October 14, 2025, against: (1) Defendants Governor Cox, Utah Lieutenant Governor Diedre Henderson ("Lt. Governor Henderson"), and the State of Utah (collectively, "State Defendants"); (2) Defendants Utah State Senator Curtis Bramble ("Senator Bramble"), Utah State Senator Daniel McCay ("Senator McCay"), Utah State Senator J. Stuart Adams ("Senator Adams"), and Utah State House Representative Mike Schultz ("Representative Schultz") (collectively, "Legislative Defendants"); (3) Defendant Utah Supreme Court Chief Justice Matthew Durrant ("Chief Justice Durrant"); (4) Defendants Robert Axson ("Mr. Axson"), Kim Coleman ("Ms. Coleman"), and Chris Null ("Mr. Null"), who all are or were associated in some capacity with the URP (collectively, "URP Defendants"); and (5) Defendant Brian McKenzie, who is the County Clerk for Davis County, Utah ("Mr. McKenzie") (hereinafter, all Defendants (1)-(5), collectively, "Defendants").[24] Plaintiffs assert claims against Defendants:

---

[20] *Id.* at 1074-75 (citing *Utah Republican Party v. Cox*, 373 P.3d 1286, 1287 (Utah 2016)).

[21] *Id.* at 1075.

[22] *Id.*

[23] *Id.* at 1076-85.

[24] ECF No. 1.

(1) for declaratory relief; (2) for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) under 42 U.S.C. § 1983 for violations of the First Amendment right to associate, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and the Guarantee Clause of the United States Constitution; (4) for violations of 42 U.S.C. § 1985; and (5) for violations of 42 U.S.C. § 1986.

Plaintiffs' claims are primarily based upon their position that the Either or Both Provision permits the URP to decide how its candidates can be nominated.[25] In that vein, Plaintiffs contend that the URP prohibits the signature-gathering method and mandates nominations of candidates exclusively through the convention method.[26] Thus, Plaintiffs maintain that Defendants were engaged in a conspiracy to violate Plaintiffs' constitutional rights by permitting "disqualified" candidates who used the signature-gathering method to appear on the primary election ballot.[27] Plaintiffs' allegations against each group of Defendants are outlined below.

A.  State Defendants

In Utah's 2024 election, numerous candidates for Utah political positions sought candidacy for office as members of the URP through both the convention method and the signature-gathering method, including Governor Cox.[28] In February and March 2024, Governor Cox posted messages on a social media platform indicating that he and Lt. Governor Henderson submitted enough signatures to qualify for the Republican primary election ballot.[29] The URP

---

[25] *See generally id*.; *see also id*. at ¶¶ 72, 91.

[26] *See generally id*.; *see also id*. at ¶¶ 1-2.

[27] *See generally id*.

[28] *Id*. at ¶¶ 75, 77-78.

[29] *Id*. at ¶¶ 82, 84.

subsequently held its nominating convention in April 2024 and nominated certain individuals for several Utah political offices, including Phil Lyman ("Mr. Lyman") for Utah Governor.[30]

On May 1, 2024, Lt. Governor Henderson certified the list of candidates to appear on the June primary election ballot.[31] That list included candidates who obtained placement on the primary election ballot using the signature-gathering method, including Governor Cox.[32] In June 2024, Governor Cox defeated Mr. Lyman in the Republican primary election and became the Republican nominee for Utah Governor.[33] The following month, Lt. Governor Henderson certified the general election ballot.[34] The ballot included candidates, such as Governor Cox, who won the Republican primary election after qualifying through the signature-gathering method.[35] Those ballots were mailed to voters in October 2024.[36] In November 2024, Governor Cox won the 2024 election for Utah Governor.[37]

B.  Legislative Defendants

In 2014, Senator Bramble and Senator McCay sponsored SB54.[38] The two senators discussed SB54 during committee meetings and floor debates.[39] Senator McCay sponsored

---

[30] *Id*. at ¶¶ 85-89.

[31] *Id*. at ¶ 98.

[32] *Id*.

[33] *Id*. at ¶¶ 117-19.

[34] *Id*. at ¶ 127.

[35] *Id*. at ¶¶ 127, 150.

[36] *Id*. at ¶ 159.

[37] *Id*. at ¶ 165.

[38] *Id*. at ¶ 39.

[39] *Id*. at ¶¶ 41, 43-44.

House Bill 338 in 2018, which related to the nomination process for political parties.[40] House Bill 338 did not pass the Utah Legislature.[41] Senator McCay sponsored Senate Bill 205 ("SB205") in 2021, which proposed a class of political party that chooses a nominee by convention only.[42] In February 2021, Governor Cox held a meeting with, among other people, Senator Bramble, Senator McCay, and Senator Adams to discuss SB205 ("Meeting").[43] SB205 did not pass the Utah Legislature.[44]

    C.  <u>Chief Justice Durrant</u>

On August 1, 2024, Mr. Lyman filed a petition for extraordinary writ with the Utah Supreme Court contesting the 2024 primary election and challenging the application of Utah Code Ann. § 20A-9-408, which is the Utah statute governing the signature-gathering process for nomination.[45] On August 13, 2024, Chief Justice Durrant issued an order denying Mr. Lyman's petition without holding a hearing or receiving a response from the defendants.[46] After Governor Cox and Lt. Governor Henderson won the 2024 general election, Chief Justice Durrant administered the oath of office to both of them.[47]

---

[40] *Id.* at ¶ 63.

[41] *Id.*

[42] *Id.* at ¶ 65.

[43] *Id.* at ¶ 67.

[44] *Id.* at ¶ 69.

[45] *Id.* at ¶ 129.

[46] *Id.* at ¶ 133

[47] *Id.* at ¶ 166.

D.  URP Defendants

On August 21, 2024, Ms. Halvorsen sent a notice of intent to Mr. Axson as URP State Central Committee Chair ("Notice of Intent").[48] The Notice of Intent indicated Ms. Halvorsen's intent to file suit against various URP officials unless they rejected candidates who qualified for the primary ballot using the signature-gathering method and certified candidates who were successful in the convention method.[49] Mr. Axson later sent an email to the URP State Central Committee members explaining that the URP was aware of the Notice of Intent and prepared to defend itself against Ms. Halvorsen's threatened lawsuit.[50] Mr. Axson also stated that the Notice of Intent contained "meritless" threats.[51]

On September 7, 2024, Ms. Halvorsen attended the URP State Central Committee meeting ("Committee Meeting") "to address the Committee regarding [the] Notice of Intent and potential actions to ensure the proper nomination of candidates through the state convention."[52] Mr. Axson demanded that Ms. Halvorsen leave the meeting. When Ms. Halvorsen refused, Ms. Coleman and Mr. Null attempted to escort her to the door but were unsuccessful in doing so.[53] At that point, Ms. Coleman called the police.[54]

---

[48] *Id.* at ¶ 146.

[49] *Id.*; *see also* ECF No. 5-10.

[50] ECF No. 1 at ¶ 147; *see also* ECF No. 5-11.

[51] ECF No. 1 at ¶ 147; *see also* ECF No. 5-11.

[52] ECF No. 1 at ¶ 152.

[53] *Id.* at ¶ 155.

[54] *Id.* at ¶ 153.

E.  Mr. McKenzie

As County Clerk for Davis County, Mr. McKenzie is responsible for verifying signatures on candidate petitions.[55] In June and August 2024, Mr. McKenzie posted statements on a social media platform about the integrity of the signature-verification process.[56]

## LEGAL STANDARDS

To resolve the motions addressed herein, the court applies the legal standards for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion for preliminary injunction under Fed. R. Civ. P. 65. Each standard is set forth below.

## I.    Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "'enough facts to state a claim to relief that is plausible on its face.'"[57] "Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[58] "[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[59] The analysis under Rule 12(b)(6) requires the court to "accept as true the well[-]pleaded factual allegations" in the complaint and "view them in the light most favorable to [the plaintiff], and draw all reasonable inferences from the

---

[55] *Id.* at ¶ 12.

[56] *Id.* at ¶¶ 112, 145.

[57] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[58] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56) (alterations in original).

[59] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

facts in favor of [the plaintiff]."[60] However, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'"[61]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.[62] Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[63] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[64]

## II.    Motion for Preliminary Injunction Under Rule 65

To be entitled to a preliminary injunction under Rule 65, the moving party must establish the following four elements: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."[65] "The likelihood-of-success and irreparable-harm factors are the most critical in the analysis."[66] "Because a preliminary

---

[60] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

[61] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[62] *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

[63] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[64] *Id.*

[65] *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation modified).

[66] *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 112 (10th Cir. 2024) (citation modified).

injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."[67] "[P]reliminary injunctions that alter the status quo" are among the types of "disfavored preliminary injunctions" for which a movant must "satisfy an even heavier burden of showing that the four preliminary injunction factors weigh heavily and compellingly in movant's favor before such an injunction may be issued."[68]

**ANALYSIS**

For the reasons explained below, the court recommends: (I) granting Defendants' motions to dismiss; and (II) denying Plaintiffs' motion for preliminary injunction. Each issue is considered in turn.

## I.    Defendants' Motions to Dismiss Should Be Granted.

The court should grant the motions to dismiss filed by: (A) the State Defendants; (B) the Legislative Defendants; (C) Chief Justice Durrant; (D) the URP Defendants; and (E) Mr. McKenzie. The court addresses each motion in order.

A.   The State Defendants' Motion to Dismiss Should Be Granted.

The State Defendants' motion to dismiss should be granted because Plaintiffs fail to state claims against the State Defendants under: (1) section 1983; (2) section 1985; (3) section 1986; (4) RICO; and (5) 28 U.S.C. § 2201 (i.e., declaratory relief). Each reason is addressed in turn.

1.   Plaintiffs' Fail to State Claims Against the State Defendants Under Section 1983.

Plaintiffs fail to state claims against the State Defendants under section 1983 because: (a) the State Defendants' application of the Either or Both Provision is constitutional; (b) the

---

[67] *Dine Citizens Against Ruining Our Env't*, 839 F.3d at 1281 (citation modified).

[68] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

State Defendants are entitled to legislative immunity from Plaintiffs' section 1983 claims based on the Meeting; (c) Plaintiffs' claims against the State Defendants under the Guarantee Clause are not justiciable; and (d) the State Defendants in their individual capacities are entitled to qualified immunity from Plaintiffs' section 1983 claims. The court discusses each issue below.

<em>a. The State Defendants' Application of the Either or Both Provision Is Constitutional.</em>

Plaintiffs fail to state section 1983 claims against the State Defendants for violations of the First Amendment right to associate or the Fourteenth Amendment's Due Process and Equal Protection Clauses. Section 1983 imposes civil liability upon any person who, acting under color of state law, deprives another of their federally protected rights.[69] Section 1983 does not confer any substantive rights but merely serves as a vehicle for vindicating rights secured by the United States Constitution or federal statutes.[70] To state a claim under section 1983, a plaintiff must allege a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law.[71]

Plaintiffs' section 1983 claims against the State Defendants are based on Plaintiffs' allegation that the State Defendants' application of the Either or Both Provision and Lt. Governor Henderson's corresponding certification of Republican candidates who qualified for Utah primary elections using signature-gathering "manipulate[d] Utah's election process" through

---

[69] 42 U.S.C. § 1983.

[70] *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980).

[71] *West v. Atkins*, 487 U.S. 42, 48 (1988).

certification of "disqualified candidates."[72] Plaintiffs' claims fail under the analysis and holding of *URP*.

The Tenth Circuit held in *URP* that the Either or Both Provision does not violate the First Amendment right to associate.[73] To reach that holding, the Tenth Circuit applied the *Anderson-Burdick* balancing test because the Either or Both Provision is an electoral regulation.[74] Under that test, a court is first required to weigh the character and magnitude of the asserted injury to the plaintiff's constitutional rights against the state's interests asserted as justifications for the burden imposed by the regulation. Also, the court considers the extent to which those interests made it necessary to burden the plaintiff's rights.[75] If the regulation imposes severe burdens on a the plaintiff's associational rights, it must be narrowly tailored to serve a compelling state interest.[76] If, on the other hand, the regulation imposes lesser burdens, a state's important regulatory interests will usually be enough justify the restrictions imposed by the regulation.[77]

In *URP*, the plaintiff argued that the Either or Both Provision violated its associational rights by requiring it to use a process for selecting candidates different from that which it would prefer.[78] Under the first part of the *Anderson-Burdick* test, the Tenth Circuit concluded that the

---

[72] ECF No. 1 at ¶ 234.

[73] 892 F.3d at 1094-95.

[74] *Id*. at 1077.

[75] *Id*.

[76] *Id*.

[77] *Id*.

[78] *Id*.

Either or Both Provision does not severely burden the URP's rights because it "does not regulate the [URP]'s internal process" and does not "prevent[] the URP from endorsing the candidate of its choice."[79] The court also concluded that the "case [was] not . . . about who the candidates are, but rather who the deciders are" and that the Either or Both Provision "only . . . ensure[s] that all the party members have some voice in deciding who their party's representative will be in the general election," rather than having the "will of all the URP . . . truncated by an overly restrictive and potentially unrepresentative nominating process."[80] Thus, the court concluded that the Either or Both Provision "does not impose a severe burden on the URP by potentially allowing the nomination of a candidate with whom the URP leadership disagrees."[81]

In the second part of the *Anderson-Burdick* test, the court concluded that the Either or Both Provision furthered the State of Utah's important regulatory interests in managing elections in a controlled manner, increasing voter participation, and increasing access to the ballot.[82] The court also concluded that "[t]hese state interests constitute the very backbone of our constitutional scheme—the right of the people to cast a meaningful ballot."[83]

When balancing the burden on the URP against the State of Utah's interests, the court concluded that the State of Utah "has a strong—even compelling—interest in ensuring that the governed have an effective voice in the process of deciding who will govern them."[84] Ultimately,

---

[79] *Id*. at 1080.

[80] *Id*..

[81] *Id*. at 1083.

[82] *Id*. at 1083-84.

[83] *Id*. at 1084.

[84] *Id*. at 1085.

the concluded that "the State interests in [the Either or Both Provision] surely predominate over the minimal burdens imposed upon the URP."[85]

In the end, the court concluded that the Either or Both Provision "allow[ed] the URP and all other political associations and individuals across Utah to express their preferences and values in a democratic fashion and to form associations as protected by the First Amendment to the Constitution."[86] Thus, the court held that "the Either or Both Provision is a constitutional exercise of the State's regulatory authority" and that it goes to the "very essence" of the United States Constitution.[87]

The Tenth Circuit's analysis and holding in *URP* apply with equal weight to Plaintiffs' claims. Applying that analysis under the *Anderson-Burdick* test to Plaintiffs' claims, the State Defendants have not severely burdened Plaintiffs' rights. Further, the State Defendants' application of the Either or Both Provision neither regulates URP's internal workings nor prevents Plaintiffs from endorsing the candidate of their choice. Additionally, the State Defendants' application of the Either or Both Provision advances the State of Utah's important interests identified in *URP*. Therefore, under the Tenth Circuit's holding in *URP*, Plaintiffs fail to state claims against the State Defendants under section 1983 for violations of the First Amendment right to associate. Those claims should be dismissed with prejudice.

Plaintiffs' section 1983 claims against the State Defendants for violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses fare no better under the

---

[85] *Id*.

[86] *Id*. at 1094.

[87] *Id*. at 1085, 1095.

*Anderson-Burdick* test.[88] Therefore, the analysis above applies to Plaintiffs' claims for violations of those clauses. Consequently, Plaintiffs fail to state claims against the State Defendants under section 1983 for violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses, and those claims should be dismissed with prejudice.[89]

### b. The State Defendants Are Entitled to Legislative Immunity from Plaintiffs' Section 1983 Claims Based on the Meeting.

Any of Plaintiffs' section 1983 claims against the State Defendants connected to the Meeting should be dismissed because the State Defendants are entitled to legislative immunity. Legislative immunity applies to section 1983 claims seeking damages and declaratory or injunctive relief.[90] "[O]fficials outside the legislative branch," such as "executive official[s]," "are entitled to legislative immunity when they perform legislative functions."[91] "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official

---

[88] *VoteAmerica v. Schwab*, 121 F.4th 822, 840-41 (10th Cir. 2024).

[89] Although the analysis and holding of *URP*, by themselves, provide sufficient bases on which to dismiss Plaintiffs' section 1983 claims against the State Defendants, the Utah Supreme Court's holding in *Utah Republican Party v. Cox*, 373 P.3d at 1287, provides additional support for dismissing those claims. In that case, the Utah Supreme Court rejected Plaintiffs' interpretation of the Either or Both Provision. As stated above, Plaintiffs allege that the Either or Both Provision permits the URP—not the members of the party—to choose nomination of candidates by either the signature-gathering method or the convention method, or both. That interpretation is in direct conflict with the Utah Supreme Court's holding that the plain language of the Either or Both Provision requires a political party to "permit its *members* to seek its nomination by choosing to seek the nomination by either or both the convention and the signature process." *Id.* (emphasis added) (citation modified). The Utah Supreme Court's interpretation of a Utah statute should be followed by this court. *Cf. Auwae v. Metro. Life Ins. Co.*, 441 F. Supp. 3d 1188, 1191 (D. Colo. 2020) ("In interpreting Colorado state statutes, federal courts are bound by the interpretations of the Supreme Court of Colorado." (citing *Phelps v. Hamilton*, 59 F.3d 1058, 1071 (10th Cir. 1995))).

[90] *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).

[91] *Id.* at 55.

performing it."[92] "[A]t its core, the legislative function involves determining, formulating, and making policy."[93] "[D]iscretionary policy-making decisions" are "shielded by legislative immunity."[94]

As noted above, Plaintiffs allege that the Meeting included Governor Cox, Lt. Governor Henderson, and others. Plaintiffs further allege SB205 was the topic of discussion at the Meeting. Because the Meeting involved discussions about potential legislation, the Governor Cox and Lt. Governor Henderson were engaging in a legislative function and, accordingly, are entitled to legislative immunity. Therefore, any of Plaintiffs' section 1983 claims related to the Meeting should be dismissed with prejudice.

### c. *Plaintiffs' Claims Against the State Defendants Under the Guarantee Clause Are Not Justiciable.*

Plaintiffs fail to state claims against the State Defendants under the Guarantee Clause because those claims are not justiciable. Indeed, the United States Supreme Court "has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim."[95] Claims under the Guarantee Clause are "political in character, and therefore not cognizable by the judicial power, but solely committed by the Constitution to the judgment of Congress."[96] Thus, Plaintiffs' claims against the State Defendants under the Guarantee clause are not justiciable and, therefore, should be dismissed with prejudice.

---

[92] *Id.*

[93] *Kamplain v. Curry Cnty. Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998).

[94] *Burnett v. Fallin*, 785 F. App'x 546, 553 (10th Cir. 2019).

[95] *Rucho v. Common Cause*, 588 U.S. 684, 718 (2019).

[96] *Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 133 (1912).

    *d.   The State Defendants in Their Individual Capacities Are Entitled to Qualified Immunity from Plaintiffs Section 1983 Claims.*

Having raised the defense in their motion to dismiss, the State Defendants are entitled to qualified immunity from Plaintiffs' individual-capacity claims under section 1983. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."[97] "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[98] "If the plaintiff fails to carry either part of [the] two-part burden, the defendant is entitled to qualified immunity."[99]

> Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity. Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment.[100]

Plaintiffs fail to carry either part of their burden. First, as demonstrated above, they have not plausibly alleged that the State Defendants committed any violations of Plaintiffs' federally

---

[97] *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citation modified).

[98] *Id.* at 900 (citation modified).

[99] *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

[100] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation modified); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (providing that when considering qualified immunity in the context of a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness" (citation modified) (emphasis in original)).

protected rights. Second, even if Plaintiffs could show such a violation, they have not plausibly

alleged that any right was clearly established.

> A clearly established right is one that is sufficiently clear that every
> reasonable official would have understood that what he is doing
> violates that right. [Courts] do not require a case directly on point,
> but existing precedent must have placed the statutory or
> constitutional question beyond debate. Put simply, qualified
> immunity protects all but the plainly incompetent or those who
> knowingly violate the law.[101]

Plaintiffs have not pointed to any existing and binding precedent that would have put the State

Defendants on notice that their conduct violated any of Plaintiffs' federally protected rights. To

the contrary, as discussed above, the Tenth Circuit's analysis and holding in *URP* demonstrate

that any authority is contrary to Plaintiffs' position. Consequently, Plaintiffs have not carried

either part of their burden, which entitles the State Defendants to qualified immunity. Thus,

qualified immunity bars Plaintiffs' individual-capacity claims under section, which requires

dismissal with prejudice.

　　　　2.　Plaintiffs' Fail to State Claims Against the State Defendants Under Section 1985.

　　　　Plaintiffs fail to state claims under section 1985 against the State Defendants because:

(a) Plaintiffs fail to include in their complaint the required allegations to state section 1985

claims; (b) Plaintiffs fail to plausibly allege a conspiracy to violate their federally protected

rights under section 1985; and (c) the State Defendants are entitled to qualified immunity from

Plaintiffs' individual-capacity claims under section 1985. Each issue is discussed in order.

---

[101] *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (per curiam) (citation modified).

     *a.   Plaintiffs's Complaint Fails to State Section 1985 Claims.*

Plaintiffs fail to make the required allegations to state claims under section 1985. Section 1985 "creates a cause of action against persons who conspire to deprive a person or class of 'equal' protection or 'equal' privileges and immunities."[102] To state a claim for violations of section 1985, the plaintiff must include allegations of "class-based or racially discriminatory animus. In the absence of allegations of class[-]based or racial discriminatory animus, the complaint fails to state a claim under § 1985."[103] Additionally, "the plaintiff must be a member of a statutorily protected class, and the actions taken by [the] defendant must stem from plaintiff's membership in the class."[104] As to protected classes, "the classes covered by § 1985 should not be extended beyond those already expressly provided by the [United States Supreme] Court."[105]

Plaintiffs fail to allege a class-based or racially discriminatory animus. Additionally, Plaintiffs do not plausibly allege that they are a member of any protected class recognized under section 1985. Indeed, Plaintiffs' only allegation concerning membership in any class is that the alleged conspiracy was directed toward "Utah citizens,"[106] which is not a protected class for

---

[102] *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994).

[103] *Id.* (citation modified); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (stating that a claim for violation of section 1985 must include an allegation of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").

[104] *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir. 1980).

[105] *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983); *see also Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (providing that a protected class under section 1985 "must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender").

[106] ECF No. 1 at ¶ 246.

purposes of section 1985. Thus, Plaintiffs' section 1985 claims against the State Defendants fail and should be dismissed with prejudice.

> ### b. *Plaintiffs Fail to Allege a Conspiracy to Violate Their Federally Protected Rights Under Section 1985.*

Plaintiffs fail to allege a conspiracy to violate their federally protected rights under section 1985 because they have failed to plausibly allege that any of those rights were violated. To state a claim under section 1985, a plaintiff must allege, among other things, "the existence of a conspiracy . . . resulting in an injury or deprivation of federally[ ]protected rights."[107] As discussed above, Plaintiffs fail to state claims against the State Defendants for violations of any federally protected right. For that additional reason, Plaintiffs' section 1985 claims fail and should be dismissed with prejudice.

> ### c. *The State Defendants in Their Individual Capacities Are Entitled to Qualified Immunity from Plaintiffs' Section 1985 Claims.*

The State Defendants assert and are entitled to qualified immunity from Plaintiffs' individual-capacity claims under section 1985. The Tenth Circuit has held that "defendants in section 1985 actions are entitled to claim qualified immunity."[108] Under the standard for qualified immunity set forth above, Plaintiffs again fail to carry their two-part burden. First, as the court has demonstrated, the Plaintiffs have failed to plausibly allege that the State Defendants violated any of Plaintiffs' federally protected rights. Second, Plaintiffs fail to identify any existing, binding precedent putting the State Defendants on notice that their conduct violated any

---

[107] *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995).

[108] *Bisbee*, 39 F.3d at 1102.

of those rights. Therefore, the State Defendants are entitled to qualified immunity from Plaintiffs' individual-capacity section 1985 claims, and those claims should be dismissed with prejudice.

    3.   <u>Plaintiffs' Fail to State Claims Against the State Defendants Under Section 1986</u>.

Plaintiffs fail to state claims against the State Defendants under section 1986 because Plaintiffs have not stated a valid claim under section 1985. "[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985."[109] Given the court's conclusion that Plaintiffs fail to state claims against the State Defendants under section 1985, it follows that Plaintiffs fail to state claims against the State Defendants under section 1986. Therefore, Plaintiffs' claims against the State Defendants under section 1986 should be dismissed with prejudice.

    4.   <u>Plaintiffs' Fail to State Claims Against the State Defendants Under RICO</u>.

Plaintiffs assert RICO claims against the State Defendants under 18 U.S.C. §§ 1962(b) and (c). Section 1962(b) provides that it is "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Section 1962(b) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The Tenth Circuit has stated that the elements of a RICO claim under either of

---

[109] *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984); *see also Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985) ("The district court did not err in finding that the § 1986 claim is dependent upon the existence of a valid claim under § 1985.").

those provisions are: "(1) investment in, control of, or conduct of (2) an enterprise (3) through a

pattern (4) of racketeering activity."[110] Plaintiffs also assert a RICO conspiracy claim under

section 1962(d), which provides that it is "unlawful for any person to conspire to violate any of

the provisions of" sections 1962(a), (b), or (c).

     Plaintiffs' RICO claims against the State Defendants fail because: (a) Plaintiffs have not

plausibly alleged racketeering activity under RICO; (b) Plaintiffs fail to plausibly allege a pattern

of racketeering activity under RICO; (c) Plaintiffs cannot state a RICO conspiracy claim without

an underlying RICO claim; and (d) Plaintiffs cannot state official-capacity RICO claims against

the State Defendants. The court addresses each issue in turn.

     *a.*   *Plaintiffs Have Not Plausibly Alleged Racketeering Activity Under RICO.*

     Plaintiffs have not sufficiently alleged racketeering activity, which is defined as any of

certain state and federal criminal acts, including the acts Plaintiffs rely upon—namely, mail fraud

under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343.[111] "These underlying acts are

referred to as predicate acts, because they form the basis for liability under RICO."[112]

> To establish the predicate act of mail fraud, [a plaintiff] must allege
> (1) the existence of a scheme or artifice to defraud or obtain money
> or property by false pretenses, representations[,] or promises, and
> (2) use of the United States mails for the purpose of executing the
> scheme. The elements of wire fraud are very similar, but require that
> the defendant use interstate wire, radio[,] or television
> communications in furtherance of the scheme to defraud.[113]

---

[110] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a)-(c)).

[111] 18 U.S.C. § 1961(1).

[112] *Tal*, 453 F.3d at 1261 (citation modified).

[113] *Id.* at 1263 (citation modified).

"The common thread among these crimes is the concept of fraud."[114] "The particularity requirement of [Fed. R. Civ. P.] 9(b) . . . applies to claims of mail and wire fraud."[115] Therefore, "a complaint alleging fraud must set forth the time, place[,] and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof."[116]

With respect to mail fraud, Plaintiffs allege that the State Defendants committed that predicate act by distributing "ballots containing false statements" through U.S. mail across state lines.[117] Plaintiffs allege that the "false statements" on the ballots were the listing on the ballots of "unlawfully included candidates" who used signature-gathering to qualify for primary elections.[118] As for wire fraud, Plaintiffs allege that the State Defendants committed that predicate act through social media posts and emails that included false statements about the legitimacy of certain candidates who used the same signature-gathering process.[119]

Plaintiffs' allegations of false statements made by the State Defendants are all grounded in Plaintiffs' overarching theory that the Either or Both Provision is unconstitutional. As discussed above, that position was squarely rejected by the Tenth Circuit in *URS*. Accordingly, Plaintiffs allegations do not demonstrate that the State Defendants made any false statements,

---

[114] *Id.* (citation modified).

[115] *Id.*

[116] *Id.* (citation modified).

[117] ECF No. 1 at ¶ 159.

[118] *Id.*

[119] *Id.* at ¶¶ 82, 84, 94-95, 97, 102, 105, 107-09, 111, 113, 115-16, 117, 119, 121-27, 130, 137-38, 141, 151, 163-64, 166-67

and, therefore, Plaintiffs fail to plausibly allege that the State Defendants committed any fraud.[120] Consequently, Plaintiffs cannot satisfy the elements for the predicate acts of mail fraud or wire fraud against the State Defendants. Thus, Plaintiffs have not sufficiently alleged racketeering activity, which means that their RICO claims against the State Defendants fail and should be dismissed with prejudice.

### b. Plaintiffs Fail to Plausibly Allege a Pattern of Racketeering Activity Under RICO.

Plaintiffs also fail to plausibly allege a pattern of racketeering activity under RICO. "To satisfy RICO's pattern requirement, a plaintiff must allege not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity."[121] As shown above, Plaintiffs fail to sufficiently allege that the State Defendants committed the predicate acts of mail fraud or wire fraud. Therefore, they likewise fail to plausibly allege a pattern of racketeering activity.[122] For that alternative reason, Plaintiffs' RICO claims against the State Defendants fail and should be dismissed with prejudice.

---

[120] Additionally, given *URS*, Plaintiffs cannot and have not alleged any facts establishing an intent to defraud, which is an element of both mail fraud and wire fraud. *See, e.g.*, *United States v. Camick*, 796 F.3d 1206, 1214 (10th Cir. 2015) (stating that specific intent to defraud is an element of mail fraud); *United States v. Zar*, 790 F.3d 1036, 1049-50 (10th Cir. 2015) (stating that specific intent to defraud is an element of wire fraud).

[121] *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (citation modified).

[122] *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 665 F. Supp. 3d 1263, 1297 (D. Utah 2023) ("Because [the plaintiffs] fail to allege even a single predicate act of mail or wire fraud, the court agrees with the [defendant] that [the plaintiffs] have failed to allege a 'pattern' of predicate acts sufficient to plead a cognizable civil RICO claim."), *aff'd sub nom*. *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 148 F.4th 1202 (10th Cir. 2025).

    *c.   Plaintiffs Cannot State a RICO Conspiracy Claim Without an Underlying RICO Claim.*

Because Plaintiffs' underlying RICO claims against the State Defendants fail, they cannot state a claim for a RICO conspiracy against the State Defendants. "If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law."[123] Thus, Plaintiffs' RICO conspiracy claim against the State Defendants fails and should be dismissed with prejudice.

    *d.   Plaintiffs Cannot State Official-Capacity RICO Claims Against the State Defendants.*

Plaintiffs cannot state RICO claims against the State Defendants in their official capacities. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, [a plaintiff's] RICO claims against [state officials] in their official capacities are effectively RICO claims against the [state]."[124] RICO claims against a state are not viable because "government entities are incapable of forming the malicious intent necessary to support a RICO action."[125] Accordingly, Plaintiffs fail to state official-capacity RICO claims against the State Defendants, and those claims should be dismissed with prejudice.

---

[123] *Tal*, 453 F.3d at 1270.

[124] *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 27 (D.D.C. 2015).

[125] *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (citation modified); *see also Ruggles v. Ige*, No. CV 16-00304 LEK-KJM, 2017 WL 427498, at *5 (D. Haw. Jan. 31, 2017) (concluding that a state "is not capable of forming the intent necessary to support a RICO claim," and, therefore, the plaintiff's RICO claims against the state defendants in their official capacities "fail as a matter of law").

5. <u>Plaintiffs' Fail to State Claims Against the State Defendants for Declaratory Relief</u>.

Plaintiffs assert two claims for declaratory relief against the State Defendants. First, Plaintiffs seek a declaration that the State Defendants' alleged withholding of election records violates the Utah Government Records Access and Management Act ("GRAMA"). Second, Plaintiffs seek a declaration that an Interlocal Cooperation Agreement signed by the Director of Elections for Lt. Governor Henderson violates Utah law. Each of those claims fails.

Plaintiffs' first claim for declaratory relief fails for two reasons. First, Plaintiffs are seeking a declaration that the State Defendants' alleged withholding of records violates Utah law. Because the ground for Plaintiffs' claim is an "implication of denied records . . . based on GRAMA, this does not provide a basis for a federal cause of action."[126] Second, Plaintiffs do not allege that they filed a GRAMA request for the records in question, and they cannot bring a claim based on another person's records request.[127] Therefore, Plaintiff's first claim for declaratory relief against the State Defendants fails and should be dismissed with prejudice.

Plaintiffs' next claim for declaratory relief likewise fails because they seek a declaration that the Interlocal Cooperation Agreement referenced above violates state law, which, again, does not provide a basis for a federal cause of action.[128] Further, Utah law specifically allows an

---

[126] *Herrera v. Hadfield*, No. 1:21-CV-95 RJS, 2022 WL 2953725, at *4 (D. Utah July 26, 2022) (citation modified).

[127] *Cf. Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1135 (D.N.M. 2018) ("Parties establish standing under [the Freedom of Information Act] by showing that they sought and were denied specific agency records.")

[128] *Cf. Herrera*, 2022 WL 2953725, at *4.

election officer to enter into a contract or interlocal agreement to conduct an election.[129] Accordingly, Plaintiff's second claim for declaratory relief against the State Defendants also fails and should be dismissed with prejudice.

B.  The Legislative Defendants' Motion to Dismiss Should Be Granted.

The court should grant the Legislative Defendants' motion to dismiss because: (1) they are entitled to absolute legislative immunity from Plaintiffs' claims; and (2) the court cannot grant Plaintiffs' requested relief against the Legislative Defendants. The court addresses each reason in order.

1.  The Legislative Defendants Are Entitled to Absolute Legislative Immunity.

Absolute legislative immunity shields the Legislative Defendants. "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty . . . ."[130] Legislative immunity applies to legislators' actions taken "in the sphere of legitimate legislative activity."[131] "[A]bsolute legislative immunity applies to claims for declaratory and injunctive relief, as well as claims for damages."[132] Legislative immunity exists because "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability."[133] In discussing legislative immunity, the United States Supreme Court has

---

[129] Utah Code Ann. § 20A-5-400.1(1)(a).

[130] *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).

[131] *Id.* at 376.

[132] *Hagan v. Quinn*, 838 F. Supp. 2d 805, 811 (C.D. Ill. 2012) (citing *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732-33; *Risser v. Thompson*, 930 F.2d 549, 551 (7th Cir.1991)).

[133] *Bogan*, 523 U.S. at 52.

"emphasized that any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process."[134]

All of Plaintiffs' allegations against the Legislative Defendants that are relevant to Plaintiffs' claims involve legitimate legislative activities. Indeed, Plaintiffs allege that the Legislative Defendants sponsored certain legislation that either was or was not enacted,[135] discussed proposed legislation in committee meetings and floor debates,[136] participated in the Meeting,[137] and failed to investigate alleged fraud or pursue impeachment proceedings.[138] All of that conduct is within the sphere of legitimate legislative activity. Thus, the Legislative Defendants are entitled to absolute legislative immunity from Plaintiffs' claims, and those claims should be dismissed with prejudice.

2. <u>The Court Cannot Grant Plaintiffs' Requested Relief Against the Legislative Defendants</u>.

Even if the Legislative Defendants were not entitled to absolute legislative immunity, the court cannot grant Plaintiffs' requests for relief against the Legislative Defendants. Plaintiffs request an injunction preventing the Legislative Defendants from "defeating legislation to restore convention-only nominations."[139] The court does not have the authority to provide Plaintiffs with

---

[134] *Spallone v. United States*, 493 U.S. 265, 279 (1990).

[135] ECF No. 1 at ¶¶ 39, 58, 63, 65.

[136] *Id*. at ¶¶ 41, 43-44,

[137] *Id*. at ¶ 67.

[138] *Id*. at ¶¶ 15-16, 204, 234, 256.

[139] ECF No. 1 at ¶¶ 284, 291.

that requested relief under well-established principles of separation of powers.[140] For that additional reason, Plaintiffs' claims against the Legislative Defendants should be dismissed with prejudice.[141]

C. <u>Chief Justice Durrant's Motion to Dismiss Should Be Granted</u>.

Chief Justice Durrant's motion to dismiss should be granted because: (1) he is entitled to absolute judicial immunity from Plaintiffs' claims; (2) Plaintiffs fail to state claims against him under RICO; (3) any claims for injunctive relief against him are barred; and (4) Plaintiffs cannot state claims against him for alleged violations of Utah criminal statutes. Each ground for dismissal is addressed in turn.

1. <u>Chief Justice Durrant Is Entitled to Absolute Judicial Immunity</u>.

Absolute judicial immunity shields Chief Justice Durrant from Plaintiffs' claims against him. "Under the common law, judges are absolutely immune from suit on any claim based on the conduct of their office, including allegations that a decision is erroneous, malicious, or in excess of their judicial authority."[142] This immunity ensures "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of

---

[140] *See, e.g.*, *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 484 F. Supp. 657, 665 (N.D. Cal. 1979) ("[U]nder the doctrine of separation of powers[,] courts may not order the [l]egislature or its members to enact or not to enact . . . specific legislation."); *City of Toledo v. State*, 110 N.E.3d 1257, 1259 (Ohio 2018) ("[T]he separation-of-powers doctrine precludes courts from enjoining [a legislative body] from exercising its legislative power to enact laws."); *State v. Sopher*, 71 P. 482, 485 (Utah 1903) (stating that courts "may not usurp the functions of the lawmaking power by assuming to interfere with or control the legislative discretion").

[141] *Huck v. United States*, No. 2:21-CV-11-TC, 2022 WL 2905663, at *4 (D. Utah July 22, 2022) (citing numerous cases for the proposition under the doctrine of standing that "the court cannot redress the injury if it does not have authority to provide the requested relief").

[142] *Christensen v. Ward*, 916 F.2d 1462, 1473 (10th Cir. 1990); *see also Mireles v. Waco*, 502 U.S. 9, 9-12 (1991) (per curiam).

personal consequences to himself."[143] "[J]udicial immunity is not overcome by allegations of bad faith or malice . . . ."[144] "Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all jurisdiction can overcome absolute immunity."[145]

Plaintiffs' first claim against Chief Justice Durrant involves the order denying Mr. Lyman's petition for extraordinary writ. Chief Justice Durrant's issuance of that order was a quintessential judicial act,[146] and the Utah Supreme Court had jurisdiction over the writ.[147] Plaintiffs' second claim against Chief Justice Durrant involves his administration of an oath of office to certain individuals. That was likewise a judicial act within Chief Justice Durrant's jurisdiction.[148] Therefore, Chief Justice Durrant is entitled to absolute judicial immunity from Plaintiffs' claims, and those claims should be dismissed with prejudice.

---

[143] *Mireles*, 502 U.S. at 10 (citation modified).

[144] *Id*. at 11.

[145] *Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006).

[146] Plaintiffs argue that this act was nonjudicial based on their belief that it was "a one-justice order." ECF No. 102 at 6. That position is directly contradicted by the order, which is attached as an exhibit to Plaintiffs' complaint. ECF No. 5-7. The first page of the order states that "Mr. Lyman's petition for extraordinary relief was referred to the full court for consideration." *Id*. at 2 of 7. Further, the order uses first-person, plural pronouns throughout, indicating that it was not only Chief Justice Durrant who considered Mr. Lyman's petition. Additionally, although Chief Justice Durrant signed the order, it indicates that he did so "FOR THE COURT." *Id*. at 6 of 7. Finally, the order was issued per curiam, which, even according to Plaintiffs, "reflects the collective judgment of the court." ECF No. 102 at 7.

[147] Utah Const. art. VIII, § 3 ("The Supreme Court shall have original jurisdiction to issue all extraordinary writs . . . ."); Utah Code Ann. § 78A-3-102 ("The Supreme Court has original jurisdiction to issue all extraordinary writs . . . .").

[148] Utah Const. art. IV, § 10 (providing that "[a]ll officers made elective or appointive by this Constitution or by the laws made in pursuance thereof, before entering upon the duties of their respective offices" must take and subscribe to an oath); Utah Code Ann. § 78B-1-142 ("Every . . . justice . . . has the power to administer oaths or affirmations.").

2.  <u>Plaintiffs Fail to State Claims Against Chief Justice Durrant Under RICO</u>.

Even if Chief Justice Durrant were not entitled to absolute judicial immunity from Plaintiffs' claims against him, Plaintiffs fail to state RICO claims against him for two reasons. First, as discussed above in reference to Plaintiffs' RICO claims against the State Defendants, Plaintiffs' RICO claims fail because they have not plausibly alleged racketeering activity or a pattern of racketeering activity. And, as previously established, Plaintiffs cannot state a RICO conspiracy claim without an underlying RICO claim.[149] That warrants dismissal by itself.

Second, if another reason were necessary, Plaintiffs' allegations fail to satisfy other elements for underlying RICO claims. Importantly, Plaintiffs' claims against Chief Justice Durrant fail to include any plausible allegations that he had "any interest in or control of" the alleged enterprise, as required by 18 U.S.C. § 1962(b).[150] Similarly, Plaintiffs fail to include any plausible allegations that Chief Justice Durrant "conduct[ed] or participate[d], directly or indirectly, in the conduct of" the alleged enterprise, as required by 18 U.S.C. § 1962(c).[151] Indeed, Plaintiffs' only allegations against Chief Justice Durrant involve the order he issued on Mr. Lyman's petition for extraordinary writ and his administration of an oath of office to Governor Cox and Lt. Governor Henderson. Neither of those allegations plausibly suggest that

---

[149] *Tal*, 453 F.3d at 1270.

[150] *Id.* at 1268-69 ("'Interest in or control of' requires more than a general interest in the results of [the enterprise's] actions, or the ability to influence the enterprise through deceit. Rather, it requires some ownership of the enterprise or an ability to exercise dominion over it." (citation modified)).

[151] *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999) ("For liability to be imposed under [18 U.S.C. § 1962(c)], the defendants must have participated in the operation or management of the RICO enterprise.").

Chief Justice Durrant violated either section 1962(b) or (c). In sum, Plaintiffs' fail to state any RICO claims against Chief Justice Durrant, and those claims should be dismissed with prejudice.

3. <u>Plaintiffs' Claims for Injunctive Relief Against Chief Justice Durrant Are Barred</u>.

Plaintiffs' claims for injunctive relief against Chief Justice Durrant are barred by a provision of section 1983, which states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiffs' complaint nowhere alleges that any of Chief Justice Durrant's actions violated a declaratory decree or that declaratory relief was unavailable in this case. Therefore, Plaintiffs' claims for injunctive relief against Chief Justice Durrant are barred and should be dismissed with prejudice.

4. <u>Plaintiffs Cannot State Claims Against Chief Justice Durrant for Alleged Violations of Utah Criminal Statutes</u>.

Plaintiffs' claims against Chief Justice Durrant for violations of Utah Code Ann. §§ 76-8-201 and 76-8-504—both of which are criminal statutes—fail because those provisions are enforceable only by the State of Utah and do not provide a private right of action. As private individuals, Plaintiffs do "not have standing to demand the criminal prosecution of another individual, let alone standing to prosecute the individual [themselves]."[152] Accordingly, Plaintiffs' claims against Chief Justice Durrant for violations of those criminal statutes fail and should be dismissed with prejudice.[153]

---

[152] *Davit v. Davit*, 173 F. App'x 515, 518 (7th Cir. 2006).

[153] For the first time in their opposition to Chief Justice Durrant's motion to dismiss, Plaintiffs argue that the violations of the criminal statutes in question are predicate acts supporting Plaintiffs' RICO claim. The court declines to consider that argument because it was raised for the first time in Plaintiffs' opposition. *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001)

D.  <u>The URP Defendants' Motion to Dismiss Should Be Granted</u>.

The court should grant the URP Defendants' motion to dismiss because Plaintiffs fail to state claims against the URP Defendants under: (1) section 1983; (2) sections 1985 and 1986; and (3) RICO. Each is addressed in order below.

1.  <u>Plaintiffs Fail to State Claims Against the URP Defendants Under Section 1983</u>.

Plaintiffs section 1983 claims against the URP Defendants fail because: (a) Plaintiffs fail to plausibly allege that the URP Defendants violated Plaintiffs' federally protected rights through Mr. Axson's response to the Notice of Intent; (b) Plaintiffs fail to plausibly allege that the URP Defendants violated Plaintiffs' federally protected rights by attempting to exclude Ms. Halvorsen from the Committee Meeting; and (c) the URP Defendants were not state actors. The court discusses each issue in turn.

---

("While it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint, a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint." (citation modified)); *Johnson v. Genworth Fin. Home Equity, Inc.*, No. 11-CV-00366 MCA/WDS, 2012 WL 13081651, at *4 (D.N.M. Mar. 19, 2012) ("In her response, Plaintiff has introduced new theories of wrongdoing that are not fairly encompassed by the allegations of her complaint. It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation modified)). Nevertheless, even if the court were to consider both Utah Code Ann. §§ 76-8-201 and 76-8-504 as a predicate offense for RICO purposes, Plaintiffs fail to state a claim because the factual allegations in support of these purported offenses relate to Chief Justice Durrant's signing the order dismissing Phil Lyman's election contest. As shown above, Chief Justice Durrant is entitled to absolute judicial immunity for the Utah Supreme Court's collective handling of Mr. Lyman's election challenge and, therefore, cannot serve as "racketeering" under RICO. *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 18-19 (D.D.C. 2014) (holding judge immune from RICO claims under absolute judicial immunity).

> a. *Plaintiffs Fail to Plausibly Allege That the URP Defendants Violated*
> *Plaintiffs' Federally Protected When Mr. Axson Responded to the Notice of*
> *Intent.*

Plaintiffs fail to state a section 1983 claim based upon Mr. Axson's response to the Notice

of Intent because they do not plausibly allege that Mr. Axson violated any of their federally

protected rights. Plaintiffs claim that Mr. Axson violated their federally protected rights when,

acting under color of state law, he responded to the Notice of Intent because he "suppressed

dissent by dismissing fraud claims"[154] and "suppress[ed] delegate rights."[155] However, other than

general citations to the First Amendment, the Fourteenth Amendment, and the Guarantee Clause,

Plaintiffs fail to identify the specific federally protected right that Mr. Axson violated. To the

extent that Plaintiffs claim that Mr. Axson violated Plaintiffs' First Amendment rights through his

response to the Notice of Intent, that claim fails. Although Ms. Halvorsen had a First Amendment

right to send the Notice of Intent, she did not have a federally protected right to have her views in

the Notice of Intent heard or met with approval.[156] Accordingly, Plaintiffs fail to state a section

1983 claim against the URP Defendants based upon Mr. Axson's response to the Notice of Intent.

Therefore, that claim should be dismissed with prejudice.

> b. *Plaintiffs Fail to Plausibly Allege That the URP Defendants Violated*
> *Plaintiffs' Federally Protected Rights by Attempting to Exclude Ms. Halvorsen*
> *From the Committee Meeting.*

Plaintiffs fail to state section 1983 claims based upon the URP Defendants alleged

attempts to exclude Ms. Halvorsen from the Committee Meeting because: (i) Plaintiffs fail to

---

[154] ECF No. 1 at ¶ 206.

[155] *Id*. at ¶ 235.

[156] *See, e.g.*, *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283 (1984) (stating
that individuals "have no constitutional right to force the government to listen to their views").

identify a federally protected right that the URP Defendants violated; and (ii) Plaintiffs' cited

authority fails to show that Ms. Halvorsen had a right to attend the Committee Meeting. Each

issue is discussed below.

>    i.    *Plaintiffs Fail to Identify a Federally Protected Right That the URP
>          Defendants Violated.*

Plaintiffs fail to plausibly allege that the URP Defendants violated any of Plaintiffs'

federally protected rights by attempting to exclude Ms. Halvorsen from the Committee Meeting.

Although not entirely clear, Plaintiffs appear to claim that Ms. Halvorsen had a right to attend

and speak at the Committee Meeting. However, the court is unable to find—and Plaintiffs have

not cited—any authority for the proposition that Ms. Halvorsen had a federally protected right to

do so. To the contrary, "the First Amendment does not guarantee the right to communicate one's

views at all times and places or in any manner that may be desired."[157] Additionally, the United

States Supreme Court has stated that even "public bodies may confine their meetings to specified

subject matter and may hold nonpublic sessions to transact business."[158] Thus, a private body

like a political party has neither a constitutional obligation to open its meetings to the public nor

an obligation to allow Ms. Halvorsen to speak at its meetings. Because Ms. Halvorsen did not

have a federally protected right to attend or speak at the Committee Meeting, Plaintiffs' section

1983 claim based on the URP Defendants' alleged attempts to exclude her from the Committee

Meeting should be dismissed with prejudice.

---

[157] *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

[158] *City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Emp. Rels. Comm'n*, 429 U.S. 167, 176
n.8 (1976).

>    ii.    *Plaintiffs' Cited Authority Fails to Show That Ms. Halvorsen Had a Right to Attend the Committee Meeting.*

The authorities Plaintiffs cite to show that Ms. Halvorsen had a right to attend the Committee Meeting do not support that proposition. First, Plaintiffs first cite Section 3.0.E.13 of the URP Bylaws, which, according to Plaintiffs, states: "Public Access: The state party shall not provide electronic access or allow electronic participation for non-[State Central Committee] members."[159] Plaintiffs fail to demonstrate how that inapposite citation supports their claim.

Second, Plaintiffs rely upon Roberts Rules of Order, which are incorporated into the URP Bylaws.[160] The relevant portions of those rules provide:

- "A society has the right to determine who may be present at its meetings and to control its hall while meetings are in progress . . . ."[161]

- "Nonmembers . . . can be excluded at any time from part or all of a meeting of a society, or from all of its meetings."[162]

- "Any nonmembers allowed in the hall during a meeting, as guests of the organization, have no rights with reference to the proceedings . . . . An assembly has the right to protect itself from annoyance by nonmembers, and its full authority in this regard—as distinguished from cases involving disorderly members—can be exercised by the chair acting alone. The chair has the power to require nonmembers to leave the hall, or to order their

---

[159] ECF No. 1 at ¶ 153 n. 89; ECF No. 3-13 at 8 of 29.

[160] ECF No. 1 at ¶ 153 n.90; ECF No. 3-13 at 26 of 29.

[161] ECF No. 87-1 at 6 of 8.

[162] *Id.*

removal, at any time during the meeting; and the nonmembers have no right of
appeal from such an order of the presiding officer."[163]

- "If a person . . . refuses to obey the order of proper authority to leave the hall
  during a meeting, the chair should take necessary measures to see that the
  order is enforced, but should be guided by a judicious appraisal of the
  situation. The chair can appoint a committee to escort the offender to the
  door . . . . If those who are assigned that task are unable to persuade the
  offender to leave, it is usually preferable that he be removed by police . . . ."[164]

Despite Plaintiffs' citation to Roberts Rules of Order to support their claim, those rules
undermine the claim because, according to Plaintiffs' own allegations, the URP Defendants did
precisely what those rules require when Ms. Halvorsen attempted to attend the Committee
Meeting. For purposes of the rules, Ms. Halvorsen was a nonmember because she was not a
member of the Committee. Thus, Mr. Axson, as Chair of the Committee, had authority to require
Ms. Halvorsen to leave the Committee Meeting. When the individuals Mr. Axson appointed to
escort Ms. Halvorsen to the door (i.e., Ms. Coleman and Mr. Null)[165] were unsuccessful in doing
so, Ms. Coleman called the police.[166] Because those actions are exactly what is required under
Roberts Rules of Order, Plaintiffs' reliance on those rules is entirely misplaced.

---

[163] *Id*. at 7 of 8.

[164] *Id*.

[165] ECF No. 1 at ¶ 155.

[166] *Id*. at ¶ 153.

Finally, Plaintiffs' citation to Utah Code Ann. § 20A-1-501 also fails to support their claim. Indeed, that provision says nothing about State Central Committee meetings much less provide a viable cause of action. In sum, Plaintiffs' cited authority fails to show that Ms. Halvorsen had a right to attend the Committee Meeting. For that alternative reason, Plaintiffs' section 1983 claim based on the URP Defendants' alleged attempts to exclude Ms. Halvorsen from the Committee Meeting should be dismissed with prejudice.

### c.    *The URP Defendants Were Not State Actors.*

Even if Plaintiffs had plausibly alleged that the URP Defendants violated Plaintiffs' federally protected rights by attempting to exclude Ms. Halvorsen from the Committee Meeting, Plaintiffs' section 1983 claim would still fail because the URP Defendants were not state actors. The Tenth Circuit has adopted four tests for determining whether a person is a state actor of purposes of section 1983.[167] Under any of the four tests, "the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State."[168]

All of Plaintiffs' allegations concerning the URP Defendants describe events that transpired at the Committee Meeting, which was a private meeting. Thus, the URP Defendants' actions are not "fairly attributable to the State."[169] For that additional reason, Plaintiffs' section 1983 claim based on the URP Defendants' alleged attempts to exclude Ms. Halvorsen from the Committee Meeting should be dismissed with prejudice.

---

[167] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

[168] *Id.* (citation modified).

[169] *Id.* (citation modified).

2.  Plaintiffs Fail to State Claims Against the URP Defendants Under Sections 1985 and 1986.

In their motion to dismiss, the URP Defendants incorporate all the State Defendants' arguments concerning Plaintiffs' section 1985 and 1986 claims, with the exception of the State Defendants' arguments about qualified immunity. Thus, for the same reasons the court relied upon to recommend granting the State Defendants' motion to dismiss Plaintiffs' claims under sections 1985 and 1986—except for qualified immunity—the court should dismiss Plaintiffs' claims against the URP Defendants under sections 1985 and 1986.[170]

3.  Plaintiffs Fail to State Claims Against the URP Defendants Under RICO.

For several of the same reasons the court discussed above when addressing the State Defendants' motion to dismiss and Chief Justice Durrant's motion to dismiss—that Plaintiffs have not plausibly alleged racketeering activity or a pattern of racketeering activity—Plaintiffs fail to state RICO claims against the URP Defendants. Further, without an underlying RICO claim against the URP Defendants, Plaintiffs cannot state a RICO conspiracy claim against the URP Defendants.[171]

Although those are sufficient bases to dismiss Plaintiffs' RICO claims, the URP Defendants provide an additional reason why those claims fail—namely, that Plaintiffs fail to

---

[170] In their motion to dismiss, the URP Defendants request an award of attorney fees against Plaintiffs under 42 U.S.C. § 1988, which "authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (citation modified). Because Judge Nielson will be making the final determination on the URP Defendants' motion to dismiss, this court declines to reach the issue of an attorney fee award to the URP Defendants under section 1988 at this time. The URP Defendants may move for such an award, if appropriate, after Judge Nielson enters a final ruling on their motion to dismiss.

[171] *Tal*, 453 F.3d at 1270.

adequately allege one of the elements for establishing the predicate acts of mail fraud and wire fraud. Specifically, Plaintiffs fail to plausibly allege "the existence of a scheme or artifice to defraud or obtain *money or property* by false pretenses, representations or promises."[172] With respect to that element, the United States Supreme Court recently explained:

> The money-or-property requirement lies at the heart of this dispute. Although the lower courts once interpreted the phrase "money or property" as something of a catchall, we recently reiterated that the federal fraud statutes reach traditional property interests. Schemes that target the exercise of the Government's regulatory power, for example, do not count. Nor do schemes that seek to deprive another of intangible interests unconnected to property. And in all cases, because money or property must be an object of the defendant's fraud, the traditional property interest at issue must play more than some bit part in a scheme. Obtaining the victim's money or property must have been the aim, not an incidental byproduct, of the defendant's fraud.[173]

Plaintiffs do not allege in their complaint that the aim of the alleged RICO enterprise was to obtain money or property. Although Plaintiffs reference "financial losses" for "delegate time," "convention participation," "campaign donations," and "time spent battling legislative policies via initiatives and a blog,"[174] their central allegation is that the object of the alleged fraud was to "control the URP nominating process"[175] and "manipulate Utah's election laws," thereby "nullif[ying] the [URP]'s 2024 convention results."[176] Because Plaintiffs' complaint makes clear that the aim of the alleged fraudulent scheme was not to obtain money or property, Plaintiffs fail

---

[172] *Id.* at 1263 (emphasis added) (citation modified); *see also* 18 U.S.C. §§ 1341, 1343.

[173] *Kousisis v. United States*, 605 U.S. 114, 121-22 (2025) (citation modified).

[174] ECF No. 1 at ¶ 211.

[175] *Id.* at ¶ 199

[176] *Id.* at ¶ 229.

to establish that requirement of the predicate acts of mail fraud and wire fraud. For that reason, and the other reasons identified above, Plaintiffs' fail to state RICO claims against the URP Defendants, or for that matter, any Defendants named in Plaintiffs' RICO cause of action. Plaintiffs' RICO claims against the URP Defendants should be dismissed with prejudice.

    E.  <u>Mr. McKenzie's Motion to Dismiss Should Be Granted</u>.

Mr. McKenzie's motion to dismiss should be granted because: (1) Plaintiffs fail to state a claim against him under section 1983; (2) Plaintiffs fail to state a claim against him in his official capacity under section 1983; (3) he is entitled to qualified immunity from Plaintiffs' section 1983 claim against him in his individual capacity; (4) Plaintiffs fail to state claims against him under sections 1985 and 1986; and (5) Plaintiffs fail to state claims against him under RICO.

    1.  <u>Plaintiffs Fail to State Claims Against Mr. McKenzie Under Section 1983</u>.

Plaintiffs fail to state a section 1983 claim against Mr. McKenzie because they do not plausibly allege that he violated any of their federally protected rights. Plaintiffs' only allegations against Mr. McKenzie involve his verification of signatures on candidate petitions and making two statements about the integrity of that signature-verification process.[177] Those allegations rely on the same premise underlying Plaintiffs' complaint—that the Either or Both Provision is unconstitutional. As the court has repeatedly indicated, that position was soundly rejected by the Tenth Circuit in *URS*. Thus, Plaintiffs fail to plausibly allege that Mr. McKenzie violated any of their federally protected rights. Without such an allegation, Plaintiffs fail to state a claim against Mr. McKenzie under section 1983. Therefore, that claim should be dismissed with prejudice.

---

[177] ECF No. 1 at ¶¶ 12, 112, 145.

2.  <u>Plaintiffs Fail to State a Claim Against Mr. McKenzie in His Official Capacity
Under Section 1983</u>.

Plaintiffs' official-capacity claim against Mr. McKenzie under section 1983 fails. In the

context of a section 1983 action, the United States Supreme Court has stated:

> Official-capacity suits . . . "generally represent only another way of
> pleading an action against an entity of which an officer is an agent."
> As long as the government entity receives notice and an opportunity
> to respond, an official-capacity suit is, in all respects other than
> name, to be treated as a suit against the entity. It is not a suit against
> the official personally, for the real party in interest is the entity. Thus,
> . . . a plaintiff seeking to recover on a damages judgment in an
> official-capacity suit must look to the government entity itself.[178]

Plaintiffs' official-capacity claim under section 1983 is essentially a claim against Davis

County, not Mr. McKenzie. That claim fails because Plaintiffs have not identified any policy or

custom implemented by Davis County that is linked to their alleged injuries and was

implemented by a person with policy-making authority.

> A municipality may not be held liable under § 1983 solely because
> its employees inflicted injury on the plaintiff. Rather, to establish
> municipal liability, a plaintiff must show 1) the existence of a
> municipal policy or custom, and 2) that there is a direct causal link
> between the policy or custom and the injury alleged.[179]

---

[178] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y. City Dep't of Soc.
Servs.*, 436 U.S. 658, 690, n.55 (1978) (other citation and emphasis omitted); *see also Porro v.
Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official
capacities under § 1983, we've recognized, is essentially another way of pleading an action
against the county or municipality they represent.").

[179] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993); *see also Monell*, 436 U.S.
at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its
employees or agents. Instead, it is when execution of a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly be said to represent official
policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Plaintiffs' complaint does not contain allegations about any type of Davis County policy or

custom, let alone one that was implemented by someone with the authority to make policy

decisions and is linked to their alleged injuries. Therefore, even if the court construes Plaintiffs'

official-capacity claim against Mr. McKenzie under section 1983 as a claim against Davis

County, that claim fails and should be dismissed with prejudice.

3.  Mr. McKenzie Is Entitled to Qualified Immunity from Plaintiffs' Section 1983
    Claims Against Him in His Individual Capacity.

Mr. McKenzie is entitled to qualified immunity from Plaintiffs' individual-capacity

claims against him under section 1983. Under the standard for such immunity discussed above,

Plaintiffs fail to carry their two-part burden. First, as shown above, Plaintiffs fail to plausibly

allege that Mr. McKenzie violated any of Plaintiffs' federally protected rights. Second, Plaintiffs

have not identified any legal precedent putting Mr. McKenzie on notice that his conduct violated

any of those rights. Therefore, Mr. McKenzie is entitled to qualified immunity from Plaintiffs'

individual-capacity claim under section 1983, and that claim should be dismissed with prejudice.

4.  Plaintiffs Fail to State Claims Against Mr. McKenzie Under Sections 1985 and
    1986.

Plaintiffs' claims against Mr. McKenzie under sections 1985 and 1986 fail. As for their

section 1985 claim against Mr. McKenzie, that claim fails for the same reasons the court

discussed above with respect to Plaintiffs' section 1985 claims against the State Defendants.

Specifically, Plaintiffs fail to allege either a class-based or racially discriminatory animus,

Plaintiffs fail to plausibly allege a conspiracy to violate their federally protected rights, and Mr.

McKenzie is entitled to qualified immunity from Plaintiffs' individual-capacity claim under

section 1985. For those reasons, Plaintiffs' section 1985 claim against Mr. McKenzie should be dismissed with prejudice.

With respect to Plaintiffs' section 1986 claim against Mr. McKenzie, that claim fails because Plaintiffs have not stated a viable section 1985 claim.[180] Accordingly, Plaintiffs' section 1986 claim against Mr. McKenzie should be dismissed with prejudice.

     5.   <u>Plaintiffs Fail to State Claims Against Mr. McKenzie Under RICO.</u>

Plaintiffs' RICO claims against Mr. McKenzie fail for several of the same reasons the court discussed above when addressing the State Defendants' motion to dismiss, Chief Justice Durrant's motion to dismiss, and the URP Defendants' motion to dismiss. Specifically, Plaintiffs have not plausibly alleged racketeering activity, a pattern of racketeering activity, or that the aim of the alleged RICO enterprise was to obtain money or property. Therefore, Plaintiffs fail to state a RICO claim against Mr. McKenzie. Additionally, without an underlying RICO claim against Mr. McKenzie, Plaintiffs cannot state a RICO conspiracy claim against him.[181] Therefore, Plaintiffs' RICO claims against Mr. McKenzie should be dismissed with prejudice.

## II.  **Plaintiffs' Motion for Preliminary Injunction Should Be Denied.**

Plaintiffs' motion for preliminary injunction should be denied because they fail to carry their heavy burden on the two most important factors required for issuance of such an injunction: substantial likelihood of success on the merits and irreparable harm. Plaintiffs fail to establish the first critical factor of substantial likelihood of success on the merits of their claims. Indeed, the

---

[180] *Santistevan*, 732 F.2d at 118; *see also Reardon*, 770 F.2d at 907.

[181] *Tal*, 453 F.3d at 1270.

court has recommended above that Defendants' motions to dismiss be granted because Plaintiffs fail to state any viable claims.

Although Plaintiffs' failure to establish that element is determinative of their motion,[182] the court nevertheless considers the second critical factor of irreparable harm. Plaintiffs fail to establish irreparable harm because of their delay in bringing this lawsuit. Showing irreparable harm "is not an easy burden to fulfill."[183] "As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."[184]

> [U]ndue delay can . . . weigh heavily against a party seeking preliminary relief. After all, such relief is generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. It follows that delay in seeking enforcement of those rights tends to indicate at least a reduced need for such drastic, speedy action.[185]

---

[182] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22-24 (2008) (recognizing that the failure to establish one of the four preliminary injunction elements obviates the need to address the other elements); *Highlands Ranch Neighborhood Coal. v. Cater*, No. 16-CV-01089-RM, 2016 WL 8737775, at *6 (D. Colo. Dec. 7, 2016) (denying the plaintiff's motion for a preliminary injunction for failure to establish one of the four required elements and concluding that the court need not decide whether the plaintiff met its burden on the other three elements); *Johnson v. Miller*, No. CIV-09-263-C, 2009 WL 2591681, at *2 (W.D. Okla. Aug. 20, 2009) (denying the plaintiff's motion for a preliminary injunction for failure to show a substantial likelihood of success on the merits of his claims and not addressing the remaining three elements).

[183] *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) (citation modified).

[184] *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) (citation modified).

[185] *Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1270 (D. Utah 2023) (citation modified).

"As the Tenth Circuit has put it, delay 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'"[186]

According to Plaintiffs' own allegations, the conduct that formed the basis for Plaintiffs' complaint began sometime in 2015 when Governor Cox (who was then Lieutenant Governor of Utah) explained the State of Utah's interpretation of the Either or Both Provision.[187] Two other key events highlighted in Plaintiffs' complaint are Lt. Governor Henderson's certification of Governor Cox to the Republican primary election ballot on May 1, 2024,[188] and Ms. Halvorsen's sending of the Notice of Intent on August 21, 2024.[189] Despite the timing of those events, Plaintiffs did not file their complaint and their motion for preliminary injunction until October 14, 2025. Even if the court assumes that the latest of those dates—the date of Ms. Halvorsen's Notice of Intent—is when Plaintiffs first became aware of their claims, they waited nearly 14 months to bring this lawsuit and seek immediate injunctive relief. That significant delay demonstrates an absence of irreparable harm.[190] Because Plaintiffs fail to carry their heavy

---

[186] *Id.* (quoting *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984)).

[187] ECF No. 1 at ¶ 55.

[188] *Id.* at ¶ 98.

[189] *Id.* at ¶ 146; ECF No. 5-10.

[190] Other courts in this district have found a lack of irreparable harm when preliminary injunctive relief was sought after similar delays. *Lone Star Promotions, LLC v. Abbey Lane Quilts, LLC*, No. 1:18CV73DAK, 2018 WL 5808802, at *6 (D. Utah Nov. 6, 2018) (concluding that movant failed to show irreparable harm when motion for preliminary injunction was filed 18 months after dispute arose); *Nature's Life, Inc. v. Renew Life Formulas, Inc.*, No. 2:05CV162, 2006 WL 62829, at *7 (D. Utah Jan. 11, 2006) (concluding that movant failed to establish irreparable harm based on movant's nine-month delay in seeking injunctive relief).

burden of establishing the two most critical factors, they are not entitled to a preliminary injunction. Therefore, their motion for a preliminary injunction should be denied.

### RECOMMENDATION

For the reasons stated above, the court HEREBY RECOMMENDS:

1.  The motions to dismiss filed by the State Defendants,[191] the Legislative Defendants,[192] Chief Justice Durrant,[193] the URP Defendants,[194] and Mr. McKenzie[195] be GRANTED.

2.  Plaintiffs' motion for a preliminary injunction[196] be DENIED.

3.  This case be DISMISSED WITH PREJUDICE.

### NOTICE TO PARTIES

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[197] The parties must file any objections to this Report and Recommendation within 14 days after being served with a copy of it.[198] Failure to object may constitute waiver of objections upon subsequent review.

---

[191] ECF No. 85.

[192] ECF No. 83.

[193] ECF No. 84.

[194] ECF No. 87.

[195] ECF No. 88.

[196] ECF No. 7.

[197] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

[198] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

DATED this 12th day of January 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge