Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

FILED
2026 JAN 16 AM 11:45
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX, et. al, <br><br> Defendants | **PLAINTIFFS' OBJECTION TO [120] THE REPORT AND RECOMMENDATION** <br><br> **[ORAL ARGUMENT REQUESTED]** <br><br> Case No. 2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

*Note*: This Motion is publicly posted at utahcorruption.com and other community sites to ensure transparency and public awareness.

## I.     EXECUTIVE SUMMARY

1.      This case is not an abstract facial challenge to Utah's election code. It is about a concrete practice: State officials ran "**second-chance primaries**" for candidates the State's **primary convention**[1] had already disqualified, using State machinery to nullify the Utah Republican Party's convention-only nomination choice—a choice that exists solely because Utah

---

[1] Utah Code 20A-1-102(57) "Primary convention" means the political party conventions held during the year of the regular general election.

law authorizes political parties to select their nominees through a primary convention—and its disqualification decisions.

2.      The Report and Recommendation ("R&R") recommends dismissing these claims but does so only by committing multiple **procedural and substantive errors** that make adoption of its reasoning **indefensible on appeal**. **Procedurally**, the R&R: (a) reframes an as-applied challenge by individual delegates and voters into a facial challenge by the Party; (b) weighs and rejects well-pleaded factual Complaint about disqualification and burden severity; (c) applies immunity doctrines without any factual development; (d) draws inferences in Defendants' favor; and (e) dismisses Guarantee Clause claims without analyzing whether Plaintiffs' structural representation claim presents a manageable judicial standard.

3.      **Substantively**, the R&R: (a) conflates facial and as-applied standards; (b) disregards controlling Supreme Court precedent (*Jones, Tashjian, Eu*) on party nomination rights and this Court's own *Herbert*/URP decisions recognizing parties' First Amendment right to control their nomination and disqualification processes; (c) refuses to grapple with Plaintiffs' core argument that the State delegated primary convention can nominate to the general ballot and that State-mandated "second-chance primaries" for disqualified candidates obliterate party autonomy; (d) misapplies the *Anderson–Burdick* framework by labeling a systematic override of primary convention winners a "minimal" burden; and (e) misapplies *Rucho* by treating Guarantee Clause claims as categorically nonjusticiable when Plaintiffs' claim—that State officials destroyed the representative nomination structure by overriding voter-elected delegates—presents a manageable standard.

4.      The conclusion is straightforward: accepting the Complaint's factual statements as true and applying the controlling First and Fourteenth Amendment cases the R&R ignores, the

claims cannot be dismissed at the Rule 12(b)(6) stage. The Court MUST therefore reject the R&R's recommendation and conduct a proper de novo analysis of Plaintiffs' as-applied challenge to the State's forced second-chance primaries.

## II.    STANDARD OF REVIEW

5.      When a party objects to a magistrate judge's report and recommendation, the district judge **must** review the record de novo as to objected portions. Fed. R. Civ. P. 72(b). The judge is not bound by the magistrate's recommendation and must independently review the legal conclusions. Plaintiffs object to virtually all findings, requiring full de novo review of the Magistrate's dismissal recommendation.

## III.    SECTION-BY-SECTION OBJECTIONS

### A.  Objection to the R&R's Case Framing (R&R at 1-2, PageID 4429-4430)

6.      **Why Plaintiffs Object**: The R&R characterizes this case as a facial challenge to the Either-or-Both Provision, stating: "Plaintiffs' complaint primarily takes issue with a specific provision of Utah's election code." This framing is procedurally and legally incorrect.

7.      **PROCEDURAL ERROR**: The Complaint does not challenge the statute facially but brings as-applied constitutional injury by individual plaintiffs (delegates, party members, voters, non-voters) with distinct injuries. Complaint ¶¶ 1-9. The Complaint specifically provides factual statements that when the URP chose convention-only as its nomination method, the State overrode that choice by forcing disqualified candidates back onto ballots through signature-gathering, giving disqualified candidates a "second chance primary." Rule 12(b)(6) requires analyzing claims as pleaded, not recharacterizing them.

8.      **SUBSTANTIVE ERROR**: A facial challenge asks: "Is the statute constitutional in all its applications?" A statute is facially unconstitutional only if it cannot be applied

constitutionally in any circumstance. An as-applied challenge asks: "When the statute was applied in this specific manner to these specific parties, did that application violate the Constitution?"

9.      In *URP v. Cox*, 892 F.3d 1066 (10th Cir. 2018), the Tenth Circuit addressed whether the Either-or-Both Provision, on its face, violated the First Amendment right of the Utah Republican Party (the institution) to conduct its own nomination process. The Tenth Circuit upheld the statute because it concluded the statute permits political parties to choose which nomination method(s) to allow. The statute allows the party to permit its member to seek its nomination through either convention, signature-gathering, or both—yet the State forces the party to permit both.

10.     This case presents an entirely different legal question: When the URP chose the convention-only process, thereby disqualifying candidates who were eliminated over multiple ballots at the primary convention, did the State violate the First Amendment associational rights of individual party members and delegates by overriding that disqualification and compelling a "second-chance primary" for those disqualified candidates through signature gathering? (Comp. ¶ ¶ 83 - 87, 89, 90, 100, 219-227, 261-264) *URP v. Cox's* facial validity analysis does not resolve this as-applied question.

**B.  Objection to the R&R's Reliance on *URP v. Cox* Reliance (R&R at 2-7, PageID 4430-4435)**

11.     **Why Plaintiffs Object**: The R&R relies entirely on *URP v. Cox* and treats it as dispositive of all claims. This reliance is improper because *URP v. Cox* involved different plaintiffs, different claims, and a different legal question than what is presented here.

12.     **PROCEDURAL ERROR #1: Different Plaintiffs.** *URP v. Cox* was brought by the Utah Republican Party as an institution, asserting the party's First Amendment rights. This case is brought by:

a.      Individual delegates (Halvorsen) whose convention votes were nullified.

b.      Individual party members (Halvorsen, Huber, Inman) whose caucus votes and participation were effectively meaningless.

c.      Individual unaffiliated voter (Wickizer) whose associational right to support and vote for the party's primary convention nominees in the general election was violated.

d.      Individual non-voting citizens (Newby) suffering injury from a fraudulent electoral process and possessing the constitutional right not to be compelled to associate with candidates installed through that process.

13.     Rule 12(b)(6) requires analyzing each plaintiff's standing and claims individually. The R&R treats all plaintiffs as if they were the political party institution and dismisses based on the party's loss in *URP v. Cox*. This violates the fundamental requirement to analyze individual plaintiffs' distinct constitutional injuries.

14.     **PROCEDURAL ERROR #2: Different Claims.** *URP v. Cox* addressed whether the statute, on its face, violated the party's institutional First Amendment right to conduct its own nomination process. This case establishes claims by individual plaintiffs that:

a.      Their votes at convention were nullified by State override of the party's disqualification.

b.      Their participation in the nomination process was rendered meaningless by executive manipulation.

c.    Their votes in the general election votes were diluted by the forced

inclusion of disqualified candidates.

d.    Their freedom of expressive association—and the right not to associate—

was violated by compelled linkage to candidates they did not elect.

15.    **SUBSTANTIVE ERROR: URP v. Cox Is Not This Case.** *URP v. Cox* was a

facial and limited as-applied challenge to the constitutionality of SB54's text; it did not address,

much less approve, the way State officials are now administering the entire Utah election code to

create "second-chance primaries." That litigation asked whether SB54, on its face, could

constitutionally require a party to allow candidates the option of using either convention or

signature-gathering to seek the party's nomination; it did not argue that the primary convention is

a **state-delegated primary** or that Utah law still allows candidates to be nominated at

convention and proceed directly to the general ballot under Utah Code 20A-9-407(6). By

contrast, the Complaint here challenges the as-applied **constitutionality of the State's**

**administration** of the entire election code—specifically, the practice of overriding convention

disqualifications to create a signature-gathering "second-chance primary" for candidates who

already lost in the State-delegated convention primary.

16.    This distinction matters. Under Utah Code 20A-9-407(6), when a candidate

receives the required supermajority at the convention, that candidate goes straight to the general

election ballot without a direct primary, saving taxpayer funds and eliminating the need for

state-issued primary ballots. That structure confirms that the convention is not merely an internal

party straw poll; it is a **state-delegated primary mechanism** the Legislature chose and codified

as one of the State's official paths to the general ballot. *URP v. Cox* never argued this point and

never considered whether State officials could lawfully defeat that statutory design by

re-qualifying convention-disqualified candidates through a signature-gathering "second chance," after the State-delegated primary convention has already been held.

17.    Thus, reliance on *URP v. Cox* to dispose of Plaintiffs' claims is substantively erroneous. That decision upheld SB54's facial validity as a permissive framework; it did not decide whether State officials may, as applied, administer the code in a way that nullifies Utah Code 20A-9-407(6), converts the convention from a state-delegated primary into a revocable advisory exercise, and compels parties and voters to endure second-chance primaries for candidates the State's own convention primary process has already rejected.

### C.  Objection to Treatment of Factual Statements (R&R at 4-9, PageID 4432-4437)

18.    **Why Plaintiffs Object**: The R&R cites factual statements from the Complaint but fails to accept them as true and later minimizes their constitutional significance.

19.    **PROCEDURAL ERROR #1: Weighs Facts Instead of Accepting Statements.** The R&R states: "the State Defendants have not severely burdened Plaintiffs' rights." R&R at 15, PageID 4442. This is a factual determination—assessing whether the burden on Plaintiffs' associational rights was "severe"—that cannot properly be made at the Rule 12(b)(6) motion-to-dismiss stage.

20.    Rule 12(b)(6) requires accepting well-pleaded factual statements as true. Here, the Complaint's Factual Statement provides that in three statewide races: (1) Cox (32.46%) was disqualified at convention while Lyman (67.54%) was nominated, and Curtis (30.26%) was disqualified while Staggs (69.74%) was nominated; (2) in the Attorney General race, Mylar (59.76%) and Terry (40.24%) were nominated to a final ballot while Brown (16.70%) was disqualified; yet (3) the State re-qualified Cox, Curtis, and Brown through signature-gathering,

placed them on "second-chance" primaries, and they then defeated the convention-selected nominees. (Compl. ¶¶ 87–90 & Ex. 46).

21.     At the Rule 12(b)(6) stage, the Court must accept these facts as true and ask: "Do these facts state a plausible claim for severe burden on Plaintiffs' First Amendment rights?" The answer is clearly yes—when nominees with 60%+ delegate support are systematically defeated by previously disqualified candidates who the State has re-qualified, the party's internal nomination procedures are overridden, and its nomination authority is completely negated.

22.     Whether the burden actually is severe is a question for summary judgment or trial, not for motion to dismiss. The R&R's assessment of burden severity violates Rule 12(b)(6).

23.     **PROCEDURAL ERROR #2: Improperly Labels Statements as "Conclusory."** Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts must disregard legal conclusions but accept factual statements as true. Statements such as "Curtis received 30.26% of the delegates," "Staggs received 69.74%," "Curtis defeated Staggs in the second-chance primary," and "this pattern occurred in three statewide races" are classic factual statements, not conclusions. The legal conclusion is that these facts show a violation of party autonomy and Plaintiffs' First and Fourteenth Amendment rights. The R&R improperly treats the factual statements themselves as conclusory, contrary to *Iqbal*.

24.     **SUBSTANTIVE ERROR: Failure to Analyze Constitutional Significance**. Even accepting the facts as true, the R&R never considers their constitutional significance under controlling precedent. In *California Democratic Party v. Jones*, 530 U.S. 571 (2000), the Court held it violates the First Amendment for a state to force a party to have its nominees "determined by" those with whom it has refused to associate. Here, in all three statewide races, the URP's State's delegated primary convention rejected Cox, Curtis, and Brown (32.46%, 30.26%, and

16.70% delegate support) in favor of Lyman, Staggs, and Mylar/Terry, yet the State re-qualified the rejected candidates through signature-gathering, placed them on "second-chance" primaries, and allowed them to defeat the convention nominees. That is functionally *Jones*: the State displaced the party's internal nominating decision and compelled it to accept nominees chosen by a process it rejected. The R&R never cites or applies *Jones*.

**D. Objection to the R&R's Application of Legal Standards (R&R at 9-11, PageID 4437-4439)**

25.    **Why Plaintiffs Object**: The R&R recites the correct Rule 12(b)(6) standard but fails to apply it.

26.    **PROCEDURAL ERROR #1: Recites but Violates the Standard**. Although the R&R acknowledges it must accept well-pleaded facts as true and view them in the light most favorable to Plaintiffs, it instead weighs whether the burden is "severe," draws inferences for Defendants, and resolves factual disputes about burden severity and the nature and significance of the State's override—all of which are improper at the motion-to-dismiss stage.

27.    **PROCEDURAL ERROR #2: Applies Wrong Level of Constitutional Scrutiny.** Under *Anderson/Burdick*, the level of scrutiny turns on the severity of the burden: severe burdens trigger strict scrutiny; lesser burdens receive only rational-basis review.

28.    Proper Rule 12(b)(6) analysis here is straightforward: accepting the statements as true, in three statewide races the URP convention overwhelmingly supported Lyman, Staggs, and Mylar/Terry, while Cox, Curtis, and Brown each received less than one-third of the delegate vote, were disqualified, and then were re-qualified by the State through signature-gathering and "second-chance" primaries, where they defeated the convention nominees. (Compl. ¶¶87–90 & Ex. 46.) That systemic override of the party's disqualification and nomination decisions—a

9

severe burden on associational rights—requiring strict scrutiny. Under strict scrutiny, overriding those disqualifications is not narrowly tailored to any compelling interest, because the convention process already serves all legitimate state interests—candidate vetting, ballot access, and meaningful participation—without displacing party autonomy.

29.    The R&R instead weighs whether the burden is "severe," labels it "minimal," and applies rational-basis review, thereby applying the wrong level of scrutiny by resolving factual questions rather than accepting Plaintiffs' statements as true.

30.    **SUBSTANTIVE ERROR: Ignores Necessity Requirement.** Under *Eu v. San Francisco Democratic Central Committee*, 489 U.S. 214 (1989), a State may not regulate a party's internal affairs "without showing that such regulation is necessary to ensure an election that is orderly and fair." *Id.* at 229. The R&R invokes "important regulatory interests in managing elections in a controlled manner, increasing voter participation, and increasing access to the ballot" (R&R at 14, PageID 4442) but never asks whether overriding party disqualifications is necessary to achieve them. It is not: the convention process—a state-delegated primary under Utah Code 20A-407—already provides orderly procedure, broad participation through caucuses and conventions, and ballot access for nominees with sufficient delegate support. Moreover, **the fraudulent signatures used to requalify disqualified candidates** (Compl. ¶ 170, Ex. 0079) undermine any claim that signature-gathering serves a legitimate necessity. Overriding the party's disqualification decisions advances none of these interests, and the R&R's failure to conduct a necessity analysis conflict with *Eu*.

E.  **Objection to the R&R's Analysis of First Amendment Claims Against State Defendants (R&R at 12-16, PageID 4440-4444)**

31.    **Why Plaintiffs Object**: The R&R analyzes only the political party's institutional First Amendment rights (as in *URP v. Cox*) and ignores individual Plaintiffs' associational and electoral rights.

32.    **PROCEDURAL ERROR #1: Ignores Individual Injuries.** The Complaint pleads distinct injuries for four classes of plaintiffs (Compl. ¶¶219–260): (1) delegates (Halvorsen), whose convention votes for Lyman, Staggs, and Mylar were nullified by State override; (2) party members (Halvorsen, Huber, Inman), whose caucus/convention participation was rendered meaningless by State-forced second-chance primaries; (3) an unaffiliated voter (Wickizer), whose right to vote for the party's chosen convention nominee in the general election was diluted; and (4) a non-voting citizen (Newby), whose expressive right not to associate was injured when electoral integrity was undermined. Rule 12(b)(6) requires analyzing each plaintiff's standing and claim; the R&R instead treats them all as if they were the Party itself and looks only at institutional rights.

33.    **PROCEDURAL ERROR #2: Resolves Burden Severity at the Pleading Stage.** The R&R's conclusion that "the State Defendants have not severely burdened Plaintiffs' rights" (R&R at 15, PageID 4442) is a factual determination, not appropriate on a motion to dismiss. The only proper question is whether the pleaded facts, if true, plausibly cause a severe burden—which they plainly do.

34.    **SUBSTANTIVE ERROR #1 – Ignores Jones.** *California Democratic Party v. Jones*, 530 U.S. 571 (2000), holds that a State violates the First Amendment when it "forces political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the party." Here, the URP convention rejected Cox, Curtis, and Brown (32.46%, 30.26%, and 16.70% delegate support) and selected

11

Lyman, Staggs, and Mylar/Terry instead, but the State re-qualified the rejected candidates through signature-gathering, placed them on second-chance primaries, and allowed them to become the nominees. That is exactly what *Jones* forbids: compelling a party to accept as its nominee's candidates it rejected. The R&R never cites or applies Jones.

35.    **SUBSTANTIVE ERROR #2 – Ignores Tashjian.** *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), recognizes that the freedom to associate "presupposes the freedom to identify the people who constitute the association." *Id*. at 224. The URP identified its nominees through the State delegated caucus–convention process, including disqualification through multiple-ballot voting. By forcing the URP to associate with disqualified candidates it explicitly rejected, the State violated *Tashjian*. The R&R does not address this precedent.

36.    **SUBSTANTIVE ERROR #3 – Ignores Eu.** *Eu v. San Francisco Democratic Central Committee*, 489 U.S. 214 (1989), holds that a State cannot regulate a party's internal affairs without showing that such regulation is necessary to ensure an orderly and fair election. *Id*. at 229. Overriding the URP's disqualification of Cox, Curtis, and Brown is not necessary; the caucus–convention system already ensures orderly, fair nominations and is a delegated in-direct primary of the State. The R&R offers no necessity analysis at all.

37.    **SUBSTANTIVE ERROR #4 – Ignores Herbert.** In *Utah Republican Party v. Herbert*, 144 F. Supp. 3d 1268 (D. Utah 2014), this Court held that forcing the URP to accept "unwanted participants in its nomination process" violated the Party's associational rights. *Id*. at 1270–71. Whether the unwanted participant is an unaffiliated voter (*Herbert*) or a disqualified candidate given a State-imposed second-chance ballot (*this case*), the injury is the same: the Party loses control over its nominees and is forced to associate with those it rejected. The R&R does not mention *Herbert* at all.

12

38.    **SUBSTANTIVE ERROR #5 – Refuses to Engage Disqualification-Override.** Plaintiffs' central argument is that disqualification is part of the nomination method, not separate from it. The URP's convention is the State delegated primary convention method that includes caucus selection of delegates, multiple-ballot voting, disqualification of eliminated candidates, and nomination of those receiving sufficient delegate support. When the State allows disqualified candidates to re-qualify via signatures, it is not merely adding an alternative path; it is negating the disqualification component and effectively substituting a different nomination method. The R&R never grapples with this argument and instead treats disqualification and method as if they were divisible.

39.    **SUBSTANTIVE ERROR #6 – Ignores Utah Code § 20A-9-401(2).** Utah law expressly provides that "[t]his part may not be construed to govern or regulate the internal procedures of a registered political party." Utah Code § 20A-9-401(2). Disqualification at the State's primary convention is a core internal procedure governed by party bylaws and conducted by party central committees. By certifying disqualified candidates to alternative ballots and allowing them to overturn primary convention results, the State directly regulates that internal procedure, in plain tension with § 20A-9-401(2). The R&R ignores this statutory limitation.

F.    **Objection to the R&R's Qualified Immunity Analysis (R&R at 18-19, PageID 4446-4447)**

40.    **Why Plaintiffs Object**: Whether State Defendants were acting in a truly legislative capacity is a disputed factual question that cannot be resolved in a Rule 12(b)(6) motion, particularly where Defendants have not even answered the Complaint. At this stage, the Court must accept Plaintiffs' well-pleaded Statements as true and draw all reasonable inferences in Plaintiffs' favor, not erect a blanket immunity that functions as a shield for unchecked

13

government overreach. The R&R's recommendation thus does not reflect an independent judicial review of contested facts, but instead prematurely insulates State conduct from scrutiny in a posture that categorically forbids such fact-finding.

41.    **PROCEDURAL ERROR – Factual Dispute Improperly Resolved at Rule 12(b)(6).** The nature of the "meeting" and related conduct—whether legislative, administrative, or political—is a disputed factual issue that cannot be resolved on a motion to dismiss. Under Rule 12(b)(6), the Court must accept Plaintiffs' well-pleaded Complaint as true and draw all reasonable inferences in their favor, not in favor of Defendants. At this stage, those inferences include that the "meeting" involved a conspiracy to control Utah's elections by preserving the "second-chance primary" through signature-gathering to install preferred candidates, conduct which constitutes participation in an enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). By instead declaring that "the Governor and Lt. Governor were engaging in a legislative function," the R&R impermissibly resolves a factual dispute against Plaintiffs and misapplies the Rule 12(b)(6) standard. Furthermore, the Governor and Lt. Governor are constitutional executive officers, not members of the Legislature, underscoring that characterizing their conduct as inherently "legislative" is itself a factual (and legal) contention that cannot be assumed true at the pleading stage.

42.    **SUBSTANTIVE ERROR – Misapplies Legislative Immunity**. Legislative immunity protects officials only when they act "in the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). It does not extend to criminal, fraudulent, or corrupt acts taken under color of law. The conduct challenged here includes creating and distributing counterfeit ballots, using social media and email to misrepresent disqualified candidates as valid nominees, intimidating and threatening those who try to expose these

violations, certifying disqualified candidates to primary ballots, overriding party disqualification decisions, and administering elections in violation of party autonomy. These are acts taken under color of law for corrupt and partisan purposes, not "legislative" acts within the meaning of *Tenney.*

43.    **Fraud and Intimidation Under Color of Law Are Not Immune.** Federal law specifically prohibits election fraud, intimidation, and vote suppression by officials acting under color of law, including 18 U.S.C. §§ 241 and 242. Legislative immunity cannot shield officials who use state authority to perpetrate ballot fraud, manipulate outcomes, or threaten citizens. The fact that they hold high office does not immunize them from civil liability under RICO or § 1983 for participation in a corrupt enterprise that subverts elections.

44.    **R&R's Overbroad Approach.** The R&R's reasoning would allow state officials to commit election fraud and intimidation with impunity simply by invoking some connection to "legislative activity," effectively gutting both the limits of legislative immunity and statutory protections against election corruption. The Court should reject that expansion and hold that fraud, ballot tampering, intimidation, and related conduct under color of law fall entirely outside the scope of legitimate legislative immunity.

### G.  Objection to Dismissal with Prejudice (R&R at 11, PageID 4439)

45.    **Why Plaintiffs Object:** The R&R recommends dismissing all claims with prejudice without conducting the required futility analysis.

46.    **PROCEDURAL ERROR #1: No Futility Analysis.** Dismissal with prejudice is proper only if amendment would be futile. The R&R never addresses futility. Here, the core factual arguments (party choice of convention-only, second-chance primaries for disqualified candidates, defeat of convention winners, and loss of party autonomy) are fully pleaded in the

Complaint. Amendment is not necessary because the Complaint already provides plausible claims that satisfy Rule 8; the R&R's recommendation to dismiss is an effort to shield sitting officials from accountability, not a response to any pleading deficiency.

47.    **PROCEDURAL ERROR #2 – Disfavored at 12(b)(6).** The Tenth Circuit disfavors dismissal with prejudice on an initial Rule 12(b)(6) motion, particularly where, as here, the Complaint clearly sets forth cognizable claims supported by specific factual and well documented statements.

48.    **SUBSTANTIVE ERROR – Purely Legal Basis.** The R&R's dismissal rests on a legal conclusion—that *URP v. Cox* forecloses the claims—not on any pleading failure. If that legal conclusion is wrong (as Plaintiffs contend), dismissal with prejudice is doubly improper: the Complaint states valid claims under controlling First and Fourteenth Amendment precedent, and no amendment is required to cure a legal error by the R&R.

**H.  Objection to Dismissal of Guarantee Clause Claims (R&R at 17, PageID 4445)**

49.    **Why Plaintiffs Object**: The R&R dismisses Plaintiffs' Guarantee Clause claims in a single conclusory paragraph, stating they are nonjusticiable political questions under *Rucho v. Common Cause* and *Pacific States Telephone & Telegraph Co. v. Oregon*. This dismissal rests on both procedural and substantive errors.

50.    **PROCEDURAL ERROR—No Analysis of Justiciability Factors**. The R&R cites *Rucho* but conducts no analysis of whether this case presents a manageable judicial standard or involves the type of political question *Rucho* addressed (partisan gerrymandering). The R&R treats all Guarantee Clause claims as categorically nonjusticiable without examining whether Plaintiffs' specific claim—that State officials destroyed the representative nomination

structure by overriding voter-elected delegates' disqualification decisions—is distinguishable from gerrymandering and presents a manageable standard.

51.    **SUBSTANTIVE ERROR—Misapplies *Rucho* and Ignores Representative Government Core.** The Guarantee Clause protects representative government: government where people elect delegates who represent them in key decisions. Utah's primary convention embodies this structure—voters directly elect delegates at caucuses to vet candidates and nominate on their behalf, then voters ratify that choice in the general election. This is core republican government: representation through elected intermediaries.

52.    When State officials override the delegates' nomination and disqualification decisions and force "second-chance primaries" for rejected candidates, they destroy the representative structure the Guarantee Clause protects. *Rucho* held that partisan gerrymandering claims are nonjusticiable because courts lack manageable standards to measure partisan fairness. It did not hold—and could not hold—that States may nullify voter-elected delegates' constitutional authority to nominate without violating representative government.

53.    The claim here is justiciable: Did the State's conduct deprive voters of their chosen representatives' nomination authority by overriding delegate disqualifications and imposing second-chance primaries? That presents a clear, manageable legal standard—whether the State interfered with the representative nomination process voters established through their elected delegates—a process that exists solely because Utah law authorizes it. The R&R's blanket dismissal of this structural claim without analysis is legal error.

## IV.    CONCLUSION

54.    Defendants hold some of the highest offices in Utah's government, and confronting their conduct is not easy. But the Constitution does not bend to political rank, and

judicial duty does not yield to political pressure. The R&R violates Rule 12(b)(6) by disregarding well-pleaded factual statements, drawing inferences against Plaintiffs, resolving immunity and merits questions without a factual record, and it ignores controlling Supreme Court precedent on party autonomy and associational rights. Even if it might seem easier to adopt the recommendation rather than rule against sitting state officials, the Court cannot do so consistently with its oath or in good conscience.

55.    Where state officials use their authority to override a party's lawful disqualification decisions—a process that exists solely because Utah law authorizes parties to select their nominees through a primary convention—and to run "second-chance primaries" that nullify protected associational choices and cause Constitutional injury, the Constitution requires judicial correction—and **judicial courage**. Plaintiffs therefore ask the Court to reject the Report and Recommendation, deny the motions to dismiss, and allow these claims to proceed to be resolved on a full and fair record, and **request oral argument on these objections and a prompt scheduling conference to govern further proceedings.**

## V.    Representations to the Court (Rule 11)

WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing PLAINTIFFS' OBJECTION TO [120] THE REPORT AND RECOMMENDATION contains 4,549 words, complies with DUCivR7-1(a)(4) and DUCiv 72-2, is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated: January 16, 2026

/s/ Tracie Halvorsen                                    /s/ NANCY INMAN

18

TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se


/s/ STEVEN HUBER

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ DANIEL NEWBY

DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020
801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER

WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se

**Certificate of Service**

We hereby certify that on this 16th day of January 2026, we electronically filed the

PLAINTIFFS' OBJECTION TO [120] THE REPORT AND RECOMMENDATION with the

Clerk of the Court under the filing and electronic notification procedures outlined under DUCivR

5-1, which will send notification of such filings to all registered participants in this case.

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov

*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Alan R. Houston
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Victoria S. Ashby
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov

*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

Christine R. Gilbert
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park city, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

20

*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Cliff Parkinson
2750 Rasmussen Rd.
Suite H-107
Park City,. Utah 84098
cliff@pbp.law
*Attorney for Axson, Coleman, and Null*

Executed on this 16th day of January 2026.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ NANCY INMAN
NANCY INMAN
138 East 12300 South
C275
Draper, Utah 84020
916-396-4395
Nancyjinman@gmail.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ DANIEL NEWBY
DANIEL NEWBY
138 East 12300 South
C275
Draper, Utah 84020
801-949-3360
danieltrouble@protonmail.com
Plaintiff Pro Se

/s/ WAYNE WICKIZER
WAYNE WICKIZER
138 East 12300 South
C275
Draper, Utah 84020
385-239-8326
justice@utahwtp.com
Plaintiff Pro Se