Jeffrey B. Teichert (Utah Bar No. 7000)
FREEMAN LOVELL, PLLC
9980 South 300 West, Suite 200
Sandy, Utah 84070
Office: (385) 355-4826
Email: jeff.teichert@freemanlovell.com
*Attorney for Plaintiffs Wickizer, Newby and Inman*

---

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **TRACIE HALVORSEN, et al.,**<br><br>　　　　　**Plaintiffs,**<br><br>**v.**<br><br>**SPENCER COX as an individual and official capacity, et al.,**<br><br>　　　　　**Defendants.** | **OPPOSITION OF PLAINTIFFS WICKIZER NEWBY AND INMAN TO UTAH REPUBLICAN PARTY DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS**<br><br>Case No.: 2:25-cv-909-HCN<br><br>Judge: Howard C. Neilsen |

Plaintiffs Nancy Inman, Wayne Wickizer, and Daniel Newby ("Silent Plaintiffs") oppose Defendants Chris Null, Robert Axson and Kim Colemans' (the "URP Defendants'") Motion for Attorney Fees.

### DEFENDANTS' PURPORTED GROUNDS FOR RELIEF

Silent Plaintiffs understand their mistake in joining the other Plaintiffs in this lawsuit and regret doing so. But they reject URP Defendants' assertions that Silent Plaintiffs' claims in this matter are "entirely meritless . . . personal grievances" which were intended to harass public servants. (Defendants' Motion for Attorney Fees Under 42 U.S.C. § 1988 and For Sanctions ("Def's Mot.") at 1.) URP Defendants argue that Plaintiffs' case was meritless based on the assertion that the key contention of the Complaint was rejected in *Utah Republican Party v. Cox*,

373 P.3d 1286 (Utah 2016), and *Utah Republican Party v. Cox,* 892 F.3d 1066 (10th Cir. 2018). URP Defendants confidently assert that these claims are meritless and have been settled for all time, notwithstanding the Chief Judge Tymkovich's powerful dissent arguing that the applicable provision of "Utah's election law violates the First Amendment" because it "severely burden[s] the Party's associational rights . . . without compelling justifications[.]" *Utah Republican Party v. Cox*, 892 F.3d 1066, 1095 (10th Cir. 2018) (Tymkovich, CJ, *dissenting*). URP Defendants necessarily imply that Chief Judge Tymkovich's dissent is "entirely meritless" and in bad faith.

"[C]onstitutional cases" where there are "spirited dissents challenging their basic underpinnings" have diminished precedential value. *Payne v. Tennessee*, 501 U.S. 808, 810, 111 S. Ct. 2597, 2601, 115 L. Ed. 2d 720 (1991). As the Seventh Circuit held that:

> [W]hen an award of fees is available only upon the finding that a particular pleading was frivolous or unreasonable, as is required by Rule 11, the fact that judges who have ruled on the merits of that pleading disagree provides significant evidence that the pleading was not frivolous or unreasonable.

*Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985) (quoted in *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021)).

URP Defendants attempt to lump Silent Plaintiffs in with Plaintiffs Huber and Halverson, stating that "[u]nfortunately, this is not the first time Plaintiffs have burdened the courts with frivolous litigation. Plaintiff Huber, assisted by his daughter, Plaintiff Tracie Halvorsen, is currently pursuing two frivolous suits in the District of Utah." (Def's Mot. at 1-2.) URP Defendants further state that Plaintiff Halvorsen recently posted a new "Notice of Intent" to file another lawsuit, followed by a list of 20 people or entities Plaintiffs Halverson and Huber have previously sued. (Def's Mot. at 2-3,13,18.) URP Defendants further allege that Ms. Halverson is upset at being prohibited from the unlicensed practice of law and is flouting the prohibition. (Def's Mot. at 2-3,13,17.) URP Plaintiffs also pointed to a statement where Plaintiff Halverson gleefully boasted about running up attorney fees on the Defendants by making the attorneys read 20 pounds of documents. (Def's Mot. at 4 n.8.) Silent Plaintiffs are not mentioned in any of these assertions

2

about other litigation and they have nothing to do with any of them. (Wickizer Dec. ¶ 8; Newby Dec. ¶ 8; Inman Dec. ¶ 10).

Silent Plaintiffs entered this litigation at the urging of their friend, Tracie Halverson, because they shared her opinion that the signature path to get on the Republican Party primary ballot was unjust and un-republican. (Wickizer Dec. ¶¶ 6–7; Newby Dec. ¶¶ 6–7; Inman Dec. ¶¶ 5, 7). Tracie seemed knowledgeable about the legal issues and Silent Plaintiffs trusted in her knowledge and confident predictions that they would prevail in court. (Wickizer Dec. ¶ 6; Newby Dec. ¶ 6; Inman Dec. ¶ 7.) Silent Plaintiffs did none of the legal research and did not meaningfully participate in litigating the case. (Wickizer Dec. ¶ 11; Newby Dec. ¶ 12; Inman Dec. ¶ 10.) They felt their role in the case was simply to lend their names to show their disapproval of the signature method. (Wickizer Dec. ¶ 11; Inman Dec. ¶ 10.) The case would have been filed and litigated even if the Silent Plaintiffs had not elected to lend their names to the case.

Following early dismissal of the claims concocted by Tracie, Silent Plaintiffs lost confidence in the merits of the litigation and retained undersigned counsel to perform an independent evaluation. They soon realized that joining this legal action was a mistake. The case was flawed from its inception, including relying on a strategy that required the Tenth Circuit to overrule or distinguish existing case precedent, which was an improbable outcome. Critically, these Plaintiffs—two of whom are disabled and all of whom subsist on limited incomes—were never informed that they could possibly be held liable for the Defendants' attorney fees. (Wickizer Dec. ¶¶ 4, 9; Newby Dec. ¶¶ 4, 9; Inman Dec. ¶¶ 6, 8.) Had they known their participation risked a financial liability they could never hope to satisfy, they never would have joined the suit. (Wickizer Dec. ¶ 10; Newby Dec. ¶ 10; Inman Dec. ¶ 9.) While Silent Plaintiffs maintain that the current signature method is unjust and poor policy, and they oppose SB 54, they now recognize that the political process, rather than re-litigation of existing precedent, is the appropriate venue for any advocacy and affords the best chance for their concerns to be heard by the public.

## APPLICABLE LAW

URP Defendants correctly explain that, under 42 U.S.C. § 1988, attorney fees may only be awarded to prevailing defendants where the plaintiffs' claims were, "based on an indisputably meritless legal theory[.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). "The plaintiff's action must be meritless in the sense that it is groundless or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) "[T]he term 'meritless' is to be understood as meaning groundless or without foundation[.]" *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978). "An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Hughes*, 449 U.S. at 15. The Supreme Court held that, "attorney's fees should rarely be awarded against [pro se] plaintiffs" even if the complaint "when liberally construed, cannot survive a motion to dismiss[.]" *Id.* at 179.

## ARGUMENT

I.      **The Court Should Deny Attorney Fees Because these Pro Se Plaintiffs Cannot Be Expected to Untangle the "Incredible Complexity" of Standing, Ripeness, and Associational Rights**

The United States Court of Appeals for the Tenth Circuit explained that "the district court should consider the pro se plaintiff's ability to recognize the objective merit of his or her claim." *Houston v. Norton*, 215 F.3d 1172, 1175 (10th Cir. 2000). Thus, "pro se plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim." *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987). Here, Silent Plaintiffs relied on Tracie Halverson's presumed expertise because they were misled into believing she was qualified as a former paralegal and assumed she understood the complex arguments involved. (Wickizer Dec. ¶ 11; Newby Dec. ¶¶ 6, 12; Inman Dec. ¶ 7.)

Dismissal of this case was based on *Utah Republican Party v. Cox,* 373 P.3d 1286 (Utah 2016), and *Utah Republican Party v. Cox*, 892 F.3d 1066 (10th Cir. 2018). These opinions

embraced nuanced legal arguments about a political party's freedom of association under the First Amendment, balanced against the state's interest in providing legitimacy for the electoral process. *Utah Republican Party*, 892 F.3d at 1076-87; *Utah Republican Party*, 2016 UT 17, ¶ 5.

Along with complex balancing tests, these cases invoke strict scrutiny to evaluate the validity of electoral regulations and systems that burden a political party's associational rights. *Clingman v. Beaver,* 544 U.S. 581, 586, 598 (2005). The cases also include significant analysis of the ripeness doctrine as limiting Article III of the Constitution. *Utah Republican Party,* 892 F.3d at 1092-93; *Utah Republican Party*, 2016 UT 17, ¶¶ 8-12. Furthermore, these cases present a conflict between the constitutional right to associate under Republican Party bylaws requiring candidates to go through the convention process to qualify for the primary, and state statutes that allow candidates to qualify by collecting signatures. *Utah Republican Party*, 892 F.3d at 1072-73. The only explicit mention of the Silent Plaintiffs in URP Defendant's Motion was a cursory two-sentence assertion that Silent Plaintiffs lacked standing, which the Supreme Court acknowledged, "has become an area of incredible complexity" and a "complicated specialty of federal jurisdiction." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 66 n.13 (1976). If the United States Supreme Court acknowledges that standing is incredibly complex, even for lawyers, the Silent Plaintiffs do not have the training or experience to evaluate the merits of a standing argument.

## II. The Court Should Deny Attorney Fees Because Silent Plaintiffs' Claims Were Not Indisputably Meritless

Although Silent Plaintiffs were initially led to believe Ms. Halvorsen had a reasonably strong case, they now acknowledge that they were misled and do not contest the dismissal of the case. While the Silent Plaintiffs continue to believe the signature method to be placed on the ballot is unjust and un-republican, they now believe the proper forum to advocate their views on the signature requirement is in the political process and not in court. But conceding that dismissal was appropriate does not suggest the court should award attorney fees.

Attorney fees are awarded to a defendant "not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Christiansburg*, 434 U.S. at 421. "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2 (1976). "Rule 11 is violated 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents.'" *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017). In fact, for a defendant's fee award to be appropriate, Plaintiffs claim must be based on an indisputably meritless legal theory.

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. ("A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."). A frivolous suit is one "based on an <u>indisputably meritless legal theory</u>, or whose factual contentions are clearly baseless.

*Thorpe v. Ancell,* 367 F. App'x 914, 919 (10th Cir. 2010) (cleaned up) (emphasis added). Chief Judge Tymkovich's well-reasoned and powerful dissent in *Utah Republican Party v. Cox*, 892 F.3d 1066 (10th Cir. 2018), was certainly not meritless, let alone "indisputably meritless." The Chief Judge wrote that:

> Even though the Party may not have a right to place its endorsement on the ballot, Utah's condition on printing that endorsement—change your party rules to better accommodate our preferred kinds of nominees or else lose your spot on the ballot— is not a constitutional one. And given the marked electoral disadvantage for the party to go its own way, this condition may even be coercive. The fact that the Party has the choice of being an unregistered political party, then, does not eliminate the law's serious restriction of its First Amendment freedoms.

*Id.* at 1257 (Tymkovich, CJ, *dissenting*). The Chief Judge demonstrated that the electoral system imposed by the state was designed to produce more politically moderate nominees and shape the party's message, *Id.* at 1115; see also Complaint ¶¶ 59, 177, 181, 187-88, which was a serious imposition of state power at the expense of First Amendment Freedoms. So, the Silent Plaintiffs could have argued that SB54 was not necessarily unconstitutional on its face but may be

unconstitutional as applied if it is implemented in some cases for a result-oriented purpose to favor particular candidates or specific entrenched interests. The Chief Judge adopted that conclusion in his dissent, writing that the state sometimes uses the signature system to favor more moderate nominees and otherwise shape the party's message—even though the Republican Party rules mandate the traditional party convention system, and state law requires that the elections laws "may not be construed to govern or regulate the internal procedures of a registered political party." Utah Code § 20A-9-401(2).

According to the Chief Judge, the state objective of "'managing elections in a controlled manner'—is almost too nondescript an interest to analyze." *Id.* at 1259 (Tymkovich, CJ, *dissenting*). The state's interest is too vague to carry much weight. Chief Judge Tymkovich further reasoned that the state could not enact legislation burdening the freedom of association without "clearly spelled out, compelling interests" to justify the burden. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1115–16 (10th Cir. 2018) (Tymkovich, CJ, *dissenting*). Chief Judge Tymkovich reasoned in his dissent that Republicans were burdened in their freedom of association by being forced to accept candidates with the proper number of signatures on their primary ballots. "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes,* 414 U.S. 51, 57 (1973). The "State, or a court, may not constitutionally substitute its own judgment for that of the Party." *Democratic Party of United States v. Wisconsin ex rel. LaFollette,* 450 U.S., at 123–124, (footnote omitted). *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 224 (1986).

The Chief Judge likewise reasoned that the majority opinion did not offer any compelling reason why the signature method was necessary. The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote. *Tashjiant*, 479 U.S. at 217. While the Silent Plaintiffs concede that URP Defendants had a better argument on the Motion to Dismiss because of governing precedent, their reasoning and the Chief Judge's dissent, was not meritless, let alone "indisputably meritless."

7

Lawsuits involving money and power politics should only be deterred by threats of sanctions in the most frivolous cases; because such sanctions would have a chilling effect on the bringing of other such cases as a check on entrenched political power and prevent the investigation and revelation of favoritism and corruption.

> Suits of this kind should not be kept out of court by threats of sanctions except in the clearest case of frivolousness. What lies below the surface in real estate litigation of this type against the City is the suspicion of widespread cronyism, favoritism and corruption. Contributions of real estate people to political campaigns are of major importance in New York City and State. Political connections are worth many millions of dollars in city contracts and other favors. There is no continuing method by which the criminal law, political processes or even the press can police this dangerously explosive combination of politics, money and power. *See, e.g., Key Officials Call Scandal Undetectable,* N.Y. Times, May 12, 1986, at B1, col. 1; *Bronx Development Official Testifies Before Grand Jury, id.,* May 10, 1986, at 31, col. 5; *U.S. Indictment Says a City Aide Got Real-Estate Holding as Bribe, id.,* May 8, 1986, at A1, col. 2; *City Ends Contract for Queens Tower, id.,* May 14, 1986, at B2, col. 3; *Eastway I* at 246.

*Eastway Const. Corp. v. City of New York*, 637 F. Supp. 558, 583 (E.D.N.Y. 1986), order modified and remanded, 821 F.2d 121 (2d Cir. 1987).

James Madison warned that certain factional interests would "grow up of necessity in civilized nations, and divide them into different classes" including a "landed interest, a manufacturing interest, a mercantile interest, a moneyed interest, with many lesser interests" and argued that a representative republic would make it "more difficult for unworthy candidates to practice with success the vicious arts by which elections are too often carried[.]" Federalist 10 (James Madison). The "vicious arts" that carry elections are the schemes and mechanisms that allow specific factions lacking broad appeal to use money and power to gain and perpetuate their own power. The Chief Judge warned about that kind of corruption of the republican form in our time where factional interests may capture a disproportionate influence through electoral and governing systems that are not truly republican.

The Silent Plaintiffs concede that the Chief Judge's argument did not carry the day in *Republican Party*, 892 F.3d 1066. But that was not because it did not deserve to be heard and

considered or that it was "indisputably meritless." Such considerations must always be at the forefront in debates over constitutional law—not in efforts to punish the citizens who raise such arguments about how political power is bestowed.

**III.    The Court Should Deny Attorney Fees Because Silent Plaintiffs Stopped Litigating When it Became Clear That They Were Unlikely to Prevail**

The Supreme Court held that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (emphasis added). Here, the Silent Plaintiffs began to seriously question their belief in Tracie's arguments at the time the case was dismissed, and they learned that governing precedent was against their position. They addressed this concern by retaining undersigned counsel to analyze this case and, ultimately, help them extricate themselves from this matter and avoid further attorney fees being expended on all sides. (Wickizer Dec. ¶ 12; Newby Dec. ¶ 13; Inman Dec. ¶¶ 12–13.) Silent Plaintiffs instructed undersigned counsel to explore settlement in the interest of ending their participation in this matter. On the day this Opposition was submitted, Silent Plaintiffs withdrew their Notice of Appeal and will not join or support any other party in continuing this case on appeal. (Wickizer Dec. ¶ 13; Newby Dec. ¶ 14; Inman Dec. ¶ 14.)

**IV.    The Court Should Deny Attorney Fees Because the Silent Plaintiffs Had Standing to Sue Over Defining Their Association and Anti-Wealth Discrimination**

URP Defendants' Motion to Dismiss did not even include the word "standing" and did not make a standing argument against any Plaintiff except Ms. Halverson. Regardless, the Supreme Court has held that the First Amendment protects the right of individual party members "to identify the people who constitute the association." *Tashjiant*, 479 U.S. at 214–15 (quoting *Democratic Party of United States v. Wisconsin ex rel. LaFollette,* 450 U.S. 107, 122). The Supreme Court has held that rigid rules impairing an individual from changing party affiliation "substantially abridged her ability to associate effectively with the party of her choice." *Kusper v. Pontikes,* 414 U.S. 51,

58 (1973). Thus, an individual voter whose vote is diluted by a state law mandating a larger pool of voters in candidate selection has a legitimate constitutional interest in the matter. (Complaint ¶ 8.) The rights of voters and of candidates are one in the same and both have enforceable rights. "[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (*Bullock v. Carter,* 405 U.S. 134, 143 (1972)). "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes,* 414 U.S. 51, 57 (1973).

The Silent Plaintiffs' challenge was grounded in a sincere concern that Utah's signature-path requirements created an unconstitutional "pay-to-play" system. They argued that the high cost of signature gathering, sometimes totaling hundreds of thousands of dollars (See Complaint ¶¶ 172-74), functionally conditions ballot access on financial wealth, a concept the Supreme Court has historically viewed with skepticism. *See Lubin v. Panish*, 415 U.S. 709, 717-18, 721-22 (1974).

From the perspective of a *pro se* litigant, this system effectively diluted the power of the convention-delegate vote by allowing well-funded candidates to bypass the party's traditional, close-up, non-monetary vetting process. While the Tenth Circuit in *Utah Republican Party v. Cox* ultimately balanced these interests in favor of the State, the Plaintiffs' attempt to protect the "integrity of the association" from wealth-based interference was not "frivolous." It was a colorable, albeit unsuccessful, application of First Amendment and Equal Protection principles to a unique and evolving statutory framework.

## CONCLUSION

The Silent Plaintiffs joined this action in good faith, driven by a public-spirited mindset and sincere concerns regarding the fairness of Utah's electoral system. While they now recognize that their legal challenge faced significant hurdles under existing precedent and was poorly set up, their philosophical position was supported by a powerful and well-reasoned dissent from the Chief Judge of the Tenth Circuit—a fact that, by itself, provides significant evidence that their claims were serious—not frivolous or groundless.

10

Furthermore, as *pro se* litigants subsisting on limited incomes, Silent Plaintiffs should not be punished for failing to untangle the "incredible complexity" of federal standing and associational rights, particularly when they took immediate steps to extricate themselves and stop further litigation upon receiving independent legal analysis. Awarding attorney fees in this instance would not only be inequitable but also create a dangerous chilling effect on citizens who seek to raise colorable constitutional arguments in the appropriate judicial forum.

Accordingly, Plaintiffs Wickizer, Newby, and Inman respectfully request that this Court deny the URP Defendants' Motion for Attorney Fees and Sanctions.

DATED this 15th day of May 2026.

FREEMAN LOVELL, PLLC

_____
Jeffrey B. Teichert
*Attorney for Plaintiffs Wickizer, Newby and Inman*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May 2026, I caused a true and correct copy of the foregoing **OPPOSITION OF PLAINTIFFS WICKZIER NEWBY AND INMAN TO UTAH REPUBLICAN PARTY DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS** to be served upon all counsel of record via the Court's CM/ECF system, which will send notification of such filing to the following:

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Blake.hamilton@dentons.com
*Attorney for Brian McKenzie*

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

Alan R. Houston
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Christine R. Gilbert
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Victoria S. Ashby
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park City, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

I further certify that the following parties were sent this document via email:

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South, C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

DATED this 15th day of May 2026.

FREEMAN LOVELL, PLLC

Jeffrey B. Teichert
*Attorney for Plaintiffs Wickizer, Newby and Inman*

13