Jeffrey B. Teichert (Utah Bar No. 7000)
FREEMAN LOVELL, PLLC
9980 South 300 West, Suite 200
Sandy, Utah 84070
Office: (385) 355-4826
Email: jeff.teichert@freemanlovell.com
*Attorney for Plaintiffs Wickizer, Newby and Inman*

---

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **TRACIE HALVORSEN, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SPENCER COX as an individual and official capacity, et al.,**<br><br>**Defendants.** | **OPPOSITION OF PLAINTIFFS WICKIZER NEWBY AND INMAN TO UTAH STATE AND LEGISLATIVE DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS**<br><br>Case No.: 2:25-cv-909-HCN<br><br>Judge: Howard C. Neilsen |

Plaintiffs Nancy Inman, Wayne Wickizer, and Daniel Newby ("Silent Plaintiffs") oppose Defendants Spencer Cox, Deidre Henderson, the State of Utah, Curtis Bramble, Daniel McCay, Mike Schultz, and J. Stuart Adams (collectively, "State Defendants'") Motion for Attorney Fees. Silent Plaintiffs were originally recruited to this case by Traci Halverson upon the belief that Tracie knew what she was doing and could handle the legal issues in the case. (Declaration of Daniel Newby ("Newby") ¶ 8; Declaration of Wayne Wickizer ("Wickizer") ¶ 6; Declaration of Nancy Inman ("Inman") ¶ 7.)  However, when a Motion to Dismiss was granted early in the case based on established precedent, Silent Plaintiffs began rapidly losing confidence in the case and asking questions. Silent Plaintiffs then hired undersigned counsel to evaluate their position in the case and work to find a way to extricate Silent Plaintiffs from the case. (Inman ¶¶ 12-13; Wickizer ¶ 12;

Newby ¶ 13.) All Silent Plaintiffs have formally withdrawn their appeals on the same date as the filing of this Opposition to the State Defendant's Motion for Attorney fees in order to avoid driving up further attorney fees on either side. (Inman ¶ 14; Wickizer ¶ 13; Newby ¶ 14.)

**RESPONSE TO DEFENDANTS' PURPORTED GROUNDS FOR RELIEF**

State Defendants begin their request with the assertion that "It doesn't take a lawyer to know Plaintiffs' claims were frivolous." But even if that assertion was true, it is not the standard for awarding attorney fees. State Defendants imply that attorney fees are favored because "*Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources[.]" (Motion at 1 (citing *Olsen v. Aebersold,* 149 F. App'x 750, 752 (10th Cir. 2005)). The same case State Defendants cite for this observation articulated the governing legal standard for a fee award, stating that "Attorney fees are not available against a pro se litigant unless the action is 'meritless in the sense that it is groundless or without foundation.'" *Id.* at 753 (quoting H*ughes v. Rowe,* 449 U.S. 5, 14 (1980)). State Defendants also cite *Thorpe v. Ancell,* 367 F. App'x 914, 919 (10th Cir. 2010) for the idea that the purpose of a fee award is to deter future frivolous filings. However, Thorpe's central holding is that a fee award is improper unless Plaintiffs' claim must is based on an "indisputably meritless legal theory."

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. ("A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."). A frivolous suit is one "based on an <u>indisputably meritless legal theory</u>, or whose factual contentions are clearly baseless.

*Thorpe,* 367 F. App'x  at 919 (cleaned up) (emphasis added).

**LEGAL STANDARD**

State Defendants correctly acknowledge that a "successful plaintiff always obtains attorney fees, but a prevailing defendant may recover attorney fees 'only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). Under 42 U.S.C. § 1988, attorney fees may only be awarded to prevailing

2

defendants where the plaintiffs' claims were, "based on an indisputably meritless legal theory[.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). "The plaintiff's action must be meritless in the sense that it is groundless or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) "[T]he term 'meritless' is to be understood as meaning groundless or without foundation[.]" *Christiansburg*, 434 U.S. at 421 "An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Hughes*, 449 U.S. at 15. The Supreme Court held that, "attorney's fees should rarely be awarded against [pro se] plaintiffs" even if the complaint "when liberally construed, cannot survive a motion to dismiss[.]" *Id.* at 179.

State Defendants also cite *Houston v. Norton*, 215 F.3d 1172, 1175 (10th Cir. 2000) suggesting that the Court has discretion to impose attorney fees as long as provides a clear explanation of the reasons. Again, this explanation misses the point of the Houston holding which stated that, when considering a fee award "the district court should consider the pro se plaintiff's ability to recognize the objective merit of his or her claim." Thus, "pro se plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim." *Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987). Here, Silent Plaintiffs relied on Tracie Halverson's presumed expertise because they were misled into believing she was a qualified paralegal and assumed she understood the complex arguments involved. (Inman ¶ 7; Wickizer ¶¶ 6-7; Newby ¶ 5.)

**ARGUMENT**

## I.      Plaintiffs' Claims Were Not Indisputably Meritless

Although Silent Plaintiffs were initially led to believe Ms. Halvorsen had a reasonably strong case, (Inman ¶ 7; Wickizer ¶¶ 6-7; Newby ¶ 5), they now acknowledge that they were misled and do not contest the dismissal of the case. While the Silent Plaintiffs continue to believe the signature method to be placed on the ballot is unwise and un-republican, they now believe the proper forum to advocate their views on this the signature requirement is in the political process and not in court. But conceding that dismissal was appropriate does not suggest that their case was

3

frivolous or that the court should award attorney fees. State Defendants cite *Thorpe*, 367 F. App'x at 919 for the proposition that a frivolous suit is one based on an indisputably meritless legal theory, or whose factual contentions are clearly baseless. (Motion at 3.) Thus, the only frivolous suit giving rise to an award of attorney fees is one which is literally beyond dispute to the point that no reasonable mind could disagree.

State defendants also cite *Houston,* 215 F.3d at 1174 for the proposition that attorney fees are proper where the plaintiff continues to litigate after it is apparent the claim is frivolous, unreasonable, or groundless. (Motion at 3.) While Plaintiffs' claims were never frivolous, there came a point when they no longer believed they had a realistic opportunity to prevail—after the Motion to Dismiss was granted. (Inman ¶¶ 12-14; Wickizer ¶¶ 12-13 Newby ¶¶ 12-13.)

State Defendants claim that *Utah Republican Party v. Cox*, 373 P.3d 1286 (Utah 2016), and *Utah Republican Party v. Cox*, 892 F.3d 1066 (10th Cir. 2018) control the issues here and, thus, any other position on the issues and indisputably meritless. (Mot. at 4.) Because the Court found those decisions to be controlling, State Defendants leap to arguing that because Silent Plaintiffs did not succeed on those positions, they must have been frivolous. But that is not the law. Attorney fees are awarded to a defendant "not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, (1976)). "Rule 11 is violated 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents.'" *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017). In fact, for a defendant's fee award to be appropriate, Plaintiffs claim must be based on an indisputably meritless legal theory.

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. ("A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought

to harass or embarrass the defendant."). A frivolous suit is one "based on an indisputably meritless legal theory, or whose factual contentions are clearly baseless.

*Thorpe v. Ancell,* 367 F. App'x 914, 919 (10th Cir. 2010) (cleaned up) (emphasis added).

Chief Judge Tymkovich's well-reasoned and powerful dissent in *Utah Republican Party v. Cox*, 892 F.3d 1066 (10th Cir. 2018), was certainly not meritless, let alone "indisputably meritless." The Chief Judge wrote that:

> Even though the Party may not have a right to place its endorsement on the ballot, Utah's condition on printing that endorsement—'change your party rules to better accommodate our preferred kinds of nominees or else lose your spot on the ballot'—is not a constitutional one. And given the marked electoral disadvantage for the party to go its own way, this condition may even be coercive. The fact that the Party has the choice of being an unregistered political party, then, does not eliminate the law's serious restriction of its First Amendment freedoms.

*Id.* at 1257 (Tymkovich, CJ, *dissenting*). The Chief Judge demonstrated that the electoral system imposed by the state was designed to produce more politically moderate nominees and shape the party's message, *Id.* at 1115; see also Complaint ¶¶ 59, 177, 181, 187-88, which was a serious imposition of state power at the expense of First Amendment Freedoms. So, the Silent Plaintiffs could have argued that SB54 was not necessarily unconstitutional on its face but may be unconstitutional as applied if it is implemented, in some cases, for a result-oriented purpose to favor specific candidates or specific entrenched interests. The Chief Judge adopted that conclusion in his dissent, writing that the state sometimes uses the signature system to favor more moderate nominees and shape the party's message—even though the Republican Party rules mandate the traditional party convention system, and state law requires that the elections laws "may not be construed to govern or regulate the internal procedures of a registered political party." Utah Code § 20A-9-401(2). If the signature method is implemented with the objective of favoring particular candidates or policies, it is unconstitutional as applied.

Defendants confidently assert that Plaintiffs' claims are meritless and have been settled for all time, notwithstanding the Chief Judge Tymkovich's powerful dissent arguing that the applicable provision of "Utah's election law violates the First Amendment" because it "severely

burden[s] the Party's associational rights . . . without compelling justifications[.]" *Utah Republican Party v. Cox*, 892 F.3d 1066, 1095 (10th Cir. 2018) (Tymkovich, CJ, *dissenting*). URP Defendants necessarily imply that Chief Judge Tymkovich's dissent is "entirely meritless" and in bad faith.

"[C]onstitutional cases" where there are "spirited dissents challenging their basic underpinnings" have diminished precedential value. *Payne v. Tennessee*, 501 U.S. 808, 810, 111 S. Ct. 2597, 2601, 115 L. Ed. 2d 720 (1991). As the Seventh Circuit held that:

> [W]hen an award of fees is available only upon the finding that a particular pleading was frivolous or unreasonable, as is required by Rule 11, the fact that judges who have ruled on the merits of that pleading disagree provides significant evidence that the pleading was not frivolous or unreasonable.

*Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985) (quoted in *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021)).

According to the Chief Judge, the state's more general objective of "'managing elections in a controlled manner'—is almost too nondescript an interest to analyze." *Id.* at 1259 (Tymkovich, CJ, *dissenting*). The state's general interest in keeping order is too vague to carry much weight. Chief Judge Tymkovich further reasoned that the state could not enact legislation burdening the freedom of association without "clearly spelled out, compelling interests" to justify the burden. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1115–16 (10th Cir. 2018) (Tymkovich, CJ, *dissenting*). Chief Judge Tymkovich reasoned in his dissent that Republicans were burdened in their freedom of association by being forced to accept those with the proper number of signatures on their primary ballots. "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes,* 414 U.S. 51, 57 (1973). The "State, or a court, may not constitutionally substitute its own judgment for that of the Party." *Democratic Party of United States v. Wisconsin ex rel. LaFollette,* 450 U.S., at 123–124, (footnote omitted). *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 224, 107 S. Ct. 544, 554, 93 L. Ed. 2d 514 (1986).

6

State Defendants cite Thorpe, 367 F. App'x at 924 in support of the idea that this is not a case where Silent Plaintiffs are being punished for subtle factual or legal deficiencies in their claims. (Motion at 5.) But that is precisely what they are suggesting. Freedom of association under the First Amendment requires a delicate balancing analysis weighing the burden on the First Amendment right against the state interest in regulating elections. State Defendants' effort to turn a balancing analysis into a bright-line test where reasonable minds cannot disagree is misconceived and fails to account for the Chief Judge's application of the same legal principles to reach a different result than the majority.

The Chief Judge likewise reasoned that the majority opinion did not offer any compelling reason why the signature method was necessary. The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986). While the Silent Plaintiffs concede that URP Defendants had a better argument on the Motion to Dismiss because of governing precedent, their reasoning and the Chief Judge's dissent, was not meritless, let alone "indisputably meritless."

Lawsuits involving money and power politics should only be deterred by threats of sanctions in the most frivolous cases; because such sanctions would have a chilling effect on the bringing of other such cases and prevent the investigation and revelation of favoritism and corruption.

> Suits of this kind should not be kept out of court by threats of sanctions except in the clearest case of frivolousness. What lies below the surface in real estate litigation of this type against the City is the suspicion of widespread cronyism, favoritism and corruption. Contributions of real estate people to political campaigns are of major importance in New York City and State. Political connections are worth many millions of dollars in city contracts and other favors. There is no continuing method by which the criminal law, political processes or even the press can police this dangerously explosive combination of politics, money and power. *See, e.g., Key Officials Call Scandal Undetectable,* N.Y. Times, May 12, 1986, at B1, col. 1; *Bronx Development Official Testifies Before Grand Jury, id.,* May 10, 1986, at 31, col. 5; *U.S. Indictment Says a City Aide Got Real-Estate Holding as*

*Bribe, id.,* May 8, 1986, at A1, col. 2; *City Ends Contract for Queens Tower, id.,* May 14, 1986, at B2, col. 3; *Eastway I* at 246.

*Eastway Const. Corp. v. City of New York*, 637 F. Supp. 558, 583 (E.D.N.Y. 1986), order modified and remanded, 821 F.2d 121 (2d Cir. 1987).

James Madison warned that certain faction and interests would "grow up of necessity in civilized nations, and divide them into different classes" including a "landed interest, a manufacturing interest, a mercantile interest, a moneyed interest, with many lesser interests" and argued that a representative republic would make it "more difficult for unworthy candidates to practice with success the vicious arts by which elections are too often carried[.]" Federalist 10 (James Madison). The "vicious arts" that carry elections are the schemes and mechanism that allow specific factions without broad appeal to use money and power to gain and perpetuate their own power. The Chief Judge warned about that kind of corruption of the republican form in our time where factional interests may capture a disproportionate influence through electoral and governing systems that are not truly republican.

The Silent Plaintiffs concede that the Chief Judge's argument did not carry the day in *Republican Party*, 892 F.3d 1066. But that was not because it did not deserve to be heard and considered or that it was indisputably meritless. Such considerations must always be at the forefront in debates over constitutional law—not in efforts to punish citizens who raise such arguments.

## II. The Court Should Deny Attorney Fees Because Silent Plaintiffs Stopped Litigating When it Became Clear to Them That They Were Unlikely to Prevail

The Supreme Court held that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (emphasis added). Here, the Silent Plaintiffs began to seriously question their belief in Tracie's arguments at the time the case was dismissed, and they learned that governing precedent was against their position. They addressed this concern by retaining undersigned counsel to analyze this case and, ultimately, help them extricate themselves from this matter and avoid further

8

attorney fees from being expended on all sides. (Nancy Inman Declaration ("Inman") ¶ 12; Wayne Wickizer Declaration ("Wickizer") ¶ 12; Daniel Newby Declaration ("Newby") ¶ 13 ). Silent Plaintiffs instructed undersigned counsel to explore settlement in the interest of entering their participation in this matter. (Inman ¶¶ 12–13; Wickizer ¶ 12; Newby ¶ 13.) On the day this Opposition was submitted, Silent Plaintiffs withdrew their Notice of Appeal and will not join or support any other party in continuing this case on appeal. (Inman ¶ 14; Wickizer ¶ 13; Newby ¶ 14.)

### III.   The Court Should Deny Attorney Fees Because the Silent Plaintiffs Did Not Bring the Lawsuit to Harass and Embarrass Defendants

URP Defendants attempt to lump Silent Plaintiffs in with Plaintiffs Huber and Halverson, Silent Plaintiffs entered this litigation at the urging of their friend, Tracie Halverson, because they shared her opinion that the signature path to get on the Republican Party primary ballot was unjust and un-republican. Tracie seemed knowledgeable about the legal issues and Silent Plaintiffs trusted in her knowledge and confident predictions that they would prevail in court. (Inman ¶ 7; Wickizer ¶¶ 6–7; Newby ¶ 6.) Silent Plaintiffs did none of the legal research and did not meaningfully participate in litigating the case. They felt their role in the case was simply to lend their names to show their disapproval of the signature method. (Inman ¶ 10; Wickizer ¶ 11; Newby ¶ 12.) The case would have been filed and litigated just as it was, even if the Silent Plaintiffs had not elected to lend their names to the case.

Following early dismissal of the claims concocted by Tracie, Silent Plaintiffs lost confidence in the merits of the litigation and retained undersigned counsel to perform an independent evaluation. They soon realized that joining this legal action was a mistake. The case was flawed from its inception, including relying on a strategy that required the Tenth Circuit to overrule or distinguish existing case precedent, which was an improbable outcome. Critically, these Plaintiffs—two of whom are disabled and all of whom subsist on limited incomes—were never informed that they could possibly be held liable for the Defendants' attorney fees. (Inman ¶¶ 6, 8; Wickizer ¶¶ 4, 9; Newby ¶¶ 4, 9.) Had they known their participation risked a financial

liability they could never hope to satisfy, they never would have joined the suit. (Inman ¶ 9; Wickizer ¶ 10; Newby ¶ 10.) While Silent Plaintiffs maintain that the current signature method is unfair and poor policy, and they oppose SB 54, they now recognize that the political process, rather than re-litigation of existing precedent, is the appropriate venue for any advocacy and affords the best chance for their concerns to be heard by the public.

"The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes,* 414 U.S. 51, 57 (1973). The Silent Plaintiffs' legal challenge was grounded in a sincere concern that Utah's signature-path requirements created an unconstitutional 'pay-to-play' system and had nothing to do with an effort to harass anyone. (Inman ¶¶ 10-11; Wickizer ¶¶ 6-8; Newby ¶¶ 5-8.) Silent Plaintiffs argued that the high cost of signature gathering, sometimes totaling hundreds of thousands of dollars, (See Complaint ¶¶ 172-74), functionally conditions ballot access on financial wealth, a concept the Supreme Court has historically viewed with skepticism. *See Lubin v. Panish*, 415 U.S. 709, 717-18, 721-22 (1974).

From the perspective of a *pro se* litigant, this system effectively diluted the power of the convention-delegate vote by allowing well-funded candidates to bypass the party's traditional, close-up, non-monetary vetting process. While the Tenth Circuit in *Utah Republican Party v. Cox* ultimately balanced these interests in favor of the State, the Plaintiffs' attempt to protect the 'integrity of the association' from wealth-based interference was not 'frivolous.' It was a colorable, albeit unsuccessful, application of First Amendment and Equal Protection principles to a unique and evolving statutory framework.

State Defendants pointed to a statement where Plaintiff Halverson gleefully boasted about running up attorney fees on the Defendants by making the attorneys read 20 pounds of documents. (Motion at 8.) Silent Plaintiffs are not mentioned in any of these assertions about other litigation and they had nothing to do with any of them. (Inman ¶¶ 10-11; Wickizer ¶ 8; Newby ¶ 7.) State Defendants also point to a lack of routine professional courtesies, a plethora of baseless motions, and Plaintiff Halvorsen's social media posts speaking out against some of the Defendants in this

case. (Motion at 8-9.) Again, to whatever degree these assertions are true, they apply to Plaintiff Halverson and not the Silent Plaintiffs who joined the lawsuit to support changes in the law.

DATED this 15th day of May 2026.

FREEMAN LOVELL, PLLC

Jeffrey B. Teichert
*Attorney for Plaintiffs Wickizer, Newby and Inman*

11

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May 2026, I caused a true and correct copy of the foregoing **OPPOSITION OF PLAINTIFFS WICKZIER NEWBY AND INMAN TO UTAH STATE AND LEGISLATIVE DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS** to be served upon all counsel of record via the Court's CM/ECF system, which will send notification of such filing to the following:

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

12

Alan R. Houston
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Christine R. Gilbert
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

Victoria S. Ashby
Office of Legislative Research and General Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz, and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park City, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

I further certify that the following parties were sent this document via email:

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South, C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

13

DATED this 15th day of May 2026.

FREEMAN LOVELL, PLLC

Jeffrey B. Teichert
*Attorney for Plaintiffs Wickizer, Newby and Inman*