FILED
2026 MAY 27 PM 4:31
CLERK
U.S. DISTRICT COURT

Tracie Halvorsen
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff accessing the court

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER COX, et. al, <br><br> Defendants | **NOTICE OF CONSTITUTIONAL QUESTION REGARDING 42 U.S.C. § 1988 AS APPLIED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 5.1 AND 28 U.S.C. § 2403** <br><br> **[ORAL ARGUMENT REQUESTED]** <br><br> Case No. 2:25-cv-00909-HCN-JCB <br><br> Judge Howard C. Nielson, Jr. |

### I.   NOTICE OF CONSTITUTIONAL QUESTION

Pursuant to Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403(a), Plaintiffs

Tracie Halvorsen and Steven Huber hereby give notice that the pending fee motions in this

proceeding draw into question the constitutionality of an Act of Congress — specifically, 42

U.S.C. § 1988(b) — as applied in this case.

This Notice triggers the Court's certification duty under Rule 5.1(b) and 28 U.S.C. §

2403(a). Plaintiffs respectfully request that the Court certify the constitutional question to the

Attorney General of the United States before taking any further action that would impose fee liability under § 1988(b).

Article III of the Constitution promises a federal judiciary that is independent of political power—a place where "the judicial Power of the United States" is exercised by neutral judges, not by the same actors who benefit from the challenged conduct. In Utah today, that promise collides with a simple reality: **ordinary citizens have no meaningful way to correct systemic misapplication of election laws** when the officials who profit from those violations also control the forum where those violations are reviewed. Section 1988 was enacted to strengthen enforcement of civil-rights laws, not to provide state power with a new weapon against citizens.

The pending fee motions prove the constitutional problem. Defendants are not merely seeking reimbursement. They are sending a message: **if you challenge the State— including the political party officers who function as part of that apparatus —you will be punished.[1]** That message has already worked. Elderly, disabled, and financially vulnerable co-plaintiffs have been frightened out of federal court by the threat of fee liability alone. That is the exact chilling effect *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), was designed to prevent — and it has already happened here, on this docket, to real people.

In light of the Executive Branch's stated commitment to ending the weaponization of government against the American people, this Notice asks the United States — and this Court — to confront the way Utah actors are using 42 U.S.C. § 1988(b) to violate, rather than protect, constitutional rights.

## II.    STATUTE WHOSE CONSTITUTIONALITY IS DRAWN INTO QUESTION

---

[1] Utah Code § 76-8-101 Offenses Against the Administration of Government – Corrupt Practices – Definitions. (1) "Party Official" means an individual holding any post in a political party whether by election, appointment, or otherwise.

The statute at issue is 42 U.S.C. § 1988(b), which provides in relevant part:

"In any action or proceeding to enforce a provision of section[] 1983, 1985, and 1986 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."

Congress did not enact § 1988(b) so that governments could bankrupt those who sue them. Congress enacted § 1988 to **encourage** enforcement of civil-rights laws and make it possible for ordinary people to hold officials accountable. The Supreme Court protected that purpose in *Christiansburg*, 434 U.S. at 421–22, by holding that prevailing defendants may recover fees only in narrow circumstances — where the plaintiff's claims were frivolous, unreasonable, or without foundation.

That protection has been rendered meaningless as applied here. Defendants have used the mere threat of § 1988 fee liability to scare good-faith civil-rights plaintiffs out of court. If § 1988 can be applied after a silent dismissal to financially threaten citizens who brought non-frivolous constitutional claims, then *Christiansburg* no longer functions as a safeguard. It becomes a fiction. The word "frivolous" simply becomes another way of saying: you lost, so now you must pay.

Plaintiffs **do not** challenge § 1988(b) on its face. Plaintiffs challenge its constitutionality **as applied in this case**, where Utah state actors and their lawyers are using § 1988 in the opposite way Congress intended:

- to impose crushing fee liability on civil-rights plaintiffs whose claims were not frivolous, unreasonable, or without foundation;

- in a proceeding steered to a magistrate judge with institutional ties to the same state system and University environment that benefit from the challenged election regime;

- after a bare docket-text dismissal with no hearing and no written constitutional analysis;

- while an appeal from that dismissal is pending in the Tenth Circuit; and

- in a way that has already driven elderly and disabled co-plaintiffs out of court out of fear that the State will destroy them financially.

This combination sends a clear message to Utah citizens: **if you challenge the State, the State will use the courts, its lawyers, and a federal civil-rights statute to punish you for trying.**

### III.    THE CONSTITUTIONAL QUESTIONS PRESENTED

The as-applied use of § 1988(b) in this proceeding presents the following constitutional questions:

**First:** Does the as-applied imposition of attorney fees under 42 U.S.C. § 1988(b) against civil-rights plaintiffs who brought non-frivolous, good-faith constitutional claims violate the First Amendment right to petition the government for redress of grievances, where the threat of fees has already chilled and deterred multiple co-plaintiffs from continuing in federal court?

**Second:** Does the as-applied imposition of attorney fees under § 1988(b) against citizens challenging state election misconduct **violate the Fourteenth Amendment** guarantee of equal access to courts, where:

- the case was referred, without Plaintiffs' consent, to a magistrate judge institutionally employed within the Utah court system and the University of Utah — entities closely linked to the very State officials being sued;

- the magistrate's Report and Recommendation was adopted by a one-line, docket-text dismissal with no written constitutional analysis; and

4

- the record does not reveal whether the district judge actually conducted the de novo review Rule 72(b)(3) requires — effectively reserving meaningful civil-rights enforcement for people wealthy enough to risk a process that may never receive independent Article III review?

**Third**: Does the as-applied imposition of § 1988(b) fee liability violate the **Due Process Clause of the Fifth and Fourteenth Amendments** where:

- final judgment was entered by docket text following a magistrate recommendation from an institutionally conflicted judge;

- no hearing was held, no oral argument occurred, and no written opinion engaged Plaintiffs' constitutional objections; and

- the record is silent as to whether the de novo review mandated by Rule 72(b)(3) was ever performed — so that financial punishment is founded on an outcome that appears predetermined or adopted by form, rather than produced by genuine, neutral adjudication?

**Fourth:** Does applying § 1988(b) in this posture effectively nullify *Christiansburg's* constitutional safeguard — by allowing state actors to create the very chilling effect *Christiansburg* forbids, deterring good-faith civil-rights plaintiffs from petitioning the courts through fear of financial destruction — and thereby violate the structural protections of Article III itself?

In simple terms: **Can the government re-write the rules so that if you challenge state election misconduct, state-linked judges quietly throw out your case, and then the same government uses a civil-rights fee statute to crush you financially for even trying — sending the message to every other citizen that challenging the State is too dangerous to attempt?**

## IV.    FACTUAL BASIS FOR THE CONSTITUTIONAL CHALLENGE

**A.  The claims exposed real election-law abuses and matched harms Tenth Circuit judges predicted**

Plaintiffs' complaint confirmed that Utah officials misapplied the State's signature-gathering election regime to ensure that preferred candidates received a second chance at the Republican Party nomination even when party delegates and voters rejected them, diluting the associational rights of party members and the voting rights of ordinary citizens, while party officers refused even to let the governing body hear Plaintiff Halvorsen's objections before trying to have her removed instead. Plaintiffs supported these claims with a 92-page complaint, 92 attached exhibits, and a record so substantial it literally weighed more than twenty pounds, underscoring that these are serious constitutional violations backed by proof rather than bare accusations.

In earlier SB54 litigation, the Utah Supreme Court declined to decide certain issues on ripeness grounds and explicitly told future injured parties to seek relief "in an appropriate forum" once real-world harms materialized. At the federal level, then-Chief Judge Tymkovich explained in his separate opinion that SB54 would change the types of nominees the party produces, create divisiveness within the party, and reduce candidates' loyalty to party policies—calling the regime a "Reformation" of the Utah Republican Party rather than a minor tweak. By the 2024 election cycle, **the record demonstrated that the precise harms Chief Judge Tymkovich foretold had come to pass.**

A civil-rights suit that follows the path state and federal courts themselves prescribed, and then documents the very harms those courts predicted once the law was applied, is not

frivolous — it is a case the Defendants simply needed to make disappear as quickly as possible. It is precisely the kind of as-applied challenge § 1983 and § 1988 exist to support.

**B.  Instead of neutral review, Plaintiffs were pushed into a captured process**

What happened in the district court is what turns § 1988 into a weapon in Utah:

- **Multiple federal judges recused** themselves before the case was finally assigned, underscoring the political sensitivity and importance of the issues.

- The case was effectively controlled by a magistrate judge whose institutional position is tied into the same Utah state system and University environment that benefit from the challenged election regime.

- Plaintiffs never consented to proceed before a magistrate judge for all purposes.

- There was no evidentiary hearing, no oral argument, and no opportunity to develop the factual record through discovery.

- The case was dismissed by docket text, through a boilerplate judgment that did not include any written opinion addressing Plaintiffs' detailed factual allegations or constitutional authorities.

In adopting the magistrate judge's recommendation, the district court's docket-text order stated that, although the court might resolve the issues differently "if they were presented as a matter of first impression," it viewed Plaintiffs' claims as "plainly controlled" by earlier SB54 decisions and concluded that "**Plaintiffs' objections are not well taken,**" before dismissing the case for failure to state a claim and denying preliminary injunctive relief.

From a citizen's perspective, this does not look like independent judicial power checking government abuses. It looks like the State of Utah controlling the law, the elections, and the forum where those laws and elections are supposedly reviewed.

7

**C.  After a silent final judgment, Utah actors moved to weaponize § 1988 while the case is on appeal**

On February 17, 2026, the district court entered a final judgment dismissing Plaintiffs' claims and closing the case. That judgment:

- does not find Plaintiffs' claims frivolous, unreasonable, or without foundation;

- does not mention 42 U.S.C. § 1988(b); and

- does not reserve any fee issue for later decision.

Plaintiffs have appealed that dismissal to the Tenth Circuit. Despite that, only after judgment did state and party defendants file coordinated motions for attorney fees under § 1988, asking the district court to brand the entire case frivolous and impose massive fee awards on Plaintiffs in the closed trial-court docket. Respectfully, the existing dismissal order already reflects a mistaken view of Plaintiffs' claims and the governing precedents; the Court should not compound that error by now converting a silent merits judgment into a retroactive sanctions judgment under § 1988(b).

Those fee motions are candid about their purpose: to "deter" Plaintiffs from continuing their efforts and to ensure that people who bring such challenges "face consequences." In other words, Utah actors are trying to use § 1988 not as Congress intended—to support civil-rights enforcement—but as a hammer to punish citizens for exercising the very rights § 1983 and § 1988 were enacted to protect.

**D.  The fee threat has already driven vulnerable citizens out of court**

Three co-plaintiffs—a combat-disabled 89-year-old veteran with Stage-4 kidney disease, a widowed veteran in poor health, and a 69-year-old woman on disability income—submitted sworn declarations stating that, had they known they could be personally liable for the State's

legal fees and face financial ruin, they would never have joined this case. Now they have now withdrawn from the appeal for that reason alone.

None of these declarants say they think the case was fake or frivolous. They say they are afraid of what the State will do to them. That is exactly the chilling effect the Supreme Court warned about in *Christiansburg* when it limited fee awards to prevailing civil-rights defendants. The whole purpose of Christiansburg was to keep ordinary people from being scared out of the courthouse.

The Defendants have now done the very thing *Christiansburg* forbade — and they have done it openly. Through a coordinated fee campaign on this docket, they have:

- terrified elderly and disabled co-plaintiffs into abandoning their constitutional claims;

- caused those co-plaintiffs to withdraw from the appeal even though they still believe the State broke the law; and

- signaled to every other Utah citizen that bringing a civil-rights case against the State is a financial death sentence.

In practical effect, the Defendants have **overturned *Christiansburg* by terror.** The standard the Supreme Court designed to protect civil-rights plaintiffs has been replaced, in this courtroom, with a State-driven rule: the price of suing the government is your home, your savings, and your peace of mind. Congress did not write § 1988 so that state officials could threaten elderly and disabled citizens into silence — but that is exactly what has happened here, on this docket, to these people.

If § 1988 can be applied after this showing, then the *Christiansburg* limitation provides no meaningful protection at all. It would mean that state actors may threaten ordinary citizens

with financial ruin, drive them out of federal court, and then ask the Court to reward that intimidation with a fee award. The Constitution does not permit a civil-rights statute to be used that way.

### E.  Why this matters beyond this case

If Utah officials can:

1.  Misapply their own election laws to favor preferred candidates;

2.  Channel challenges into a court process that is structurally tied to those same officials; and

3.  Use § 1988(b) after a silent dismissal to bankrupt the challengers while an appeal is pending,

then there is, in practice, **no constitutional path** for ordinary Utah citizens to correct the system. That is not what Congress intended when it enacted the civil-rights statutes. That is not what Article III promises. That is not what *Christiansburg* allows. **And it is directly at odds with current national efforts to end the "weaponization" of government power and restore the rule of law.**

### V.    THE COURT'S OBLIGATION

This Court is not a bystander. *Christiansburg* and Article III are binding. On this record, the Court should recognize the chilling effect that has already occurred and refuse to ratify it by granting fees. The next step is not to compound past errors; it is to certify the constitutional question under Rule 5.1 and decline to impose any fee liability under § 1988(b) while the United States considers whether to intervene.

Plaintiffs respectfully ask the Court to do what its constitutional role requires:

- **Recognize what has actually happened.** Sworn declarations on this docket show that elderly and disabled co-plaintiffs have already been frightened out of federal court — not because their claims were fabricated, but because the threat of § 1988 fees has been used as a financial weapon. That is the chilling effect *Christiansburg* was designed to prevent, happening in real time, in real lives, in this case.

- **Refuse to ratify a result that *Christiansburg* forbids**. Awarding fees on this record would not apply *Christiansburg*; it would erase it. This Court should not allow its docket to be used as the instrument by which a Supreme Court rule designed to protect citizens is, in practical effect, repealed by state officials wielding fee motions.

## VI.    NOTICE TO THE ATTORNEY GENERAL AND REQUEST FOR CERTIFICATION

Pursuant to the mandatory requirements of Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(a), Plaintiffs are serving this Notice, together with the paper that raises the constitutional question, on the Acting Attorney General of the United States by certified mail, return receipt requested, at:

Acting Attorney General Todd Blanche
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

Rule 5.1 exists so that the United States may be heard when the constitutionality of an Act of Congress is drawn into question. Plaintiffs have now squarely raised an as-applied constitutional challenge to § 1988(b). The Court should therefore certify the question to the Attorney General before using § 1988(b) to impose fee liability in this case.

11

Plaintiffs respectfully request that this Court:

- Acknowledge this Notice pursuant to Rule 5.1 and 28 U.S.C. § 2403(a);

- Certify immediately to the Attorney General of the United States that the constitutionality of 42 U.S.C. § 1988(b), as applied in this proceeding, has been drawn into question;

- Permit the United States an opportunity to intervene or otherwise respond to the constitutional question; and

- Refrain from entering any final ruling on the pending fee motions until sixty (60) days after certification, to give the United States an opportunity to decide whether to intervene.

## VII.   RELIEF REQUESTED

After the Rule 5.1 process has run its course, and after the United States has had a fair opportunity to respond, Plaintiffs respectfully request that this Court:

- deny all pending motions for attorney fees; and

- hold that, on this record, applying 42 U.S.C. § 1988(b) to impose fee liability on these Plaintiffs — in this captured, post-judgment posture, in the shadow of a pending appeal, and after Defendants' own conduct has already produced precisely the chilling effect *Christiansburg* was designed to prevent — violates the First Amendment, the Fourteenth Amendment, and the Due Process Clause of the Fifth and Fourteenth Amendments.

The Court should not allow § 1988 to be turned upside down. A statute enacted to protect civil-rights enforcement cannot be used to punish citizens for attempting civil-rights enforcement. A rule designed to prevent frivolous litigation cannot be used to frighten good-faith

12

plaintiffs into silence. And a courthouse established under Article III cannot become the place where government actors punish citizens for petitioning the government.

The fee motions should be denied. The constitutional question should be certified. And the United States should be given the opportunity Rule 5.1 guarantees to address whether § 1988(b) can be used this way.

Submitted on May 27, 2026, by:

/s/ Tracie Halvorsen                              /s/ STEVEN HUBER

TRACIE HALVORSEN                          STEVEN HUBER
138 East 12300 South, C275                  138 East 12300 South, C275
Draper, Utah 84020                              Draper, Utah 84020
801-688-3594                                      801-688-3594
traciehalvorsen@outlook.com                traciehalvorsen@outlook.com
Plaintiff Pro Se                                   Plaintiff Pro Se

**Certificate of Compliance**

**REPRESENATIONS TO THE COURT (Rule 11)**

WE HEREBY CERTIFY that on the 27th day of May 2026, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing  NOTICE OF CONSTITUTIONAL QUESTION REGARDING 42 U.S.C. § 1988 AS APPLIED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 5.1 AND 28 U.S.C. § 2403 contains 2,999 words, complies with DUCivR7-1(a)(4), is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

**Certificate of Service**

We hereby certify that on this 27th day of May 2026, we electronically filed the NOTICE OF CONSTITUTIONAL QUESTION REGARDING 42 U.S.C. § 1988 AS APPLIED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 5.1 AND 28 U.S.C. § 2403 with the Clerk of the Court under the filing and electronic notification procedures outlined under DUCivR 5-1, which will send notification of such filings to all registered participants in this case.

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox, Henderson, Bramble, McCay, Durrant, Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111

15

Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

Alan R. Houston
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

Christine R. Gilbert
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

Victoria S. Ashby
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park city, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

Cliff Parkinson
2750 Rasmussen Rd.
Suite H-107
Park City,. Utah 84098
cliff@pbp.law
*Attorney for Axson, Coleman, and Null*

Jeffrey B. Teichert
FREEMON LOVELL, PLLC
9980 South 300 West, Suite 200
Sandy, Utah 84070
Jeff.teichert@freemanlovell.com
*Attorneys for Plaintiffs Wickizer, Newby, and
Inman*

Mail service – Rule 5.1 / § 2403 Notice

United States Attorney
Office of the United States Attorney for the
District of Utah
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111

Acting Attorney General Todd Blanche
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-001

The United States Attorney for the District of Utah and the Acting Attorney General were

served on this same date by first-class mail, postage prepaid, and by certified mail, return receipt

requested, as required by Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403.

Executed on this 27th  day of May 2026.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se