D. Loren Washburn (10993)
Brennan H. Moss (10267)
Clifford B. Parkinson (13327)
**PARKINSON BENSON POTTER**
2750 Rasmussen Road, Ste. H-107
Park City, Utah 84098
Telephone: (415) 534-7970
Email:  loren@pbp.law
        brennan@pbp.law
        cliff@pbp.law

*Attorneys for Defendants Kim Coleman,*
*Robert Axson, and Chris Null*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRACEY HALVORSEN, et al<br><br>Plaintiffs,<br><br>v.<br><br>SPENCER COX, et al.,<br><br>Defendants. | **URP DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE RESPONSE OF PLAINTIFFS WICKIZER, NEWBY, AND INMAN TO UTAH REPUBLICAN PARTY DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS (ECF 179)**<br><br>Case No. 2:25-cv-00909-HCN-JCB<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Jared C. Bennett |

Come now Defendants Chris Null, Robert Axson and Kim Coleman (the "**URP Defendants**") through undersigned counsel and file this Reply in support of their Motion to Strike Response Of Plaintiffs Wickizer, Newby, And Inman (the "**Plaintiffs**") To Utah Republican Party Defendants' Motion For Attorney Fees And Sanctions (ECF 179) (the "**Second Response")**.

**ARGUMENT**

The question raised in URP Defendants' Motion to Strike (ECF 181) was whether the Plaintiffs ought to be granted leave, retroactively, to file their Second Response (ECF 179) in opposition to URP Defendants' Motion for Attorney's Fees (ECF 146) even though Plaintiffs had already filed a response.[1] In the Motion to Strike, URP Defendants pointed out that Plaintiffs had filed a First Response in March (ECF 158), that Plaintiffs' counsel had actual knowledge[2] that Plaintiffs had already filed the First Response, and that counsel knowingly filed a second response without meeting and conferring with URP Defendants' counsel or seeking leave of the Court.

A. **Plaintiffs Fail Entirely to Address the Procedural Reasons Why Their Second Response Should Be Struck**

District of Utah Local Rule 7-1(a)(4)(D) allows a single response, filed within 14 days of being served with a motion; the Rule does not provide for multiple responses. In their Opposition to the Motion to Strike (ECF 192) Plaintiffs did not cite this rule or any other source of law that would allow them to file a second response. Rather than engage with the fact that their Second Response was filed in knowing and deliberate violation of Utah Civil Rule 7-1(a)(4)(D), or provide any argument why they did not obtain leave of the Court before filing a Second Response, Plaintiffs' Opposition to the Motion to Strike is almost totally comprised of

---

[1] URP Defendants also pointed out that the Second Response was two months late. In filing their Opposition to the Motion to Strike Plaintiffs asked URP Defendants to stipulate to an extension of time. Since the primary issue URP Defendants had is the multiple responses, and not the untimeliness, URP Defendants stipulated not to object to the Second Response on timeliness grounds.

[2] *See* ECF 181-1 at p. 1 wherein URP Defendants' counsel emailed Plaintiffs' counsel on March 26, 2026, explaining "someone (your clients or Ms. Halvorsen on their behalf) filed a response to our fee motion and we filed a reply, so its fully briefed."

substantive arguments why fees should not be granted. Plaintiffs' Response to the Motion to Strike includes a one-page introduction in which Plaintiffs desperately attempt to distance themselves from Plaintiff Halvorsen, but cites no law why their desire to distance themselves from Plaintiff Halvorsen entitles them to file multiple responses to the Motion for Fees. The remaining eight pages of the Opposition makes virtually identical arguments to those Plaintiff Halvorsen made about why fees should not be granted.

### B. Plaintiffs' Merits Arguments Regarding Why Fees Should Not be Granted Fail

As mentioned above, Plaintiffs have inappropriately used their Opposition to the Motion to Strike as a vehicle to supplement their multiple responses to the Motion for Fees. While URP Defendants recognize that Plaintiffs' Response is not the proper venue to argue the merits of the underlying Motion for Fees, URP Defendants nevertheless respond to them here.

### 1. *Plaintiffs' Continued Reliance on Judge Tymkovich's Dissent Ignores the Law And Does Not Preclude Finding Their Complaint Is Indisputably Meritless.*

Plaintiffs' argument that their claims are not indisputably meritless relies entirely on Judge Tymkovich's dissent in *Utah Republican Party v. Cox*, and is the same argument Plaintiffs made in their Second Opposition (ECF 179 at 5-9) and in their First Opposition (158 at 9-10). This argument fails for two reasons. First, the argument that basing a lawsuit on the theory in the dissent while ignoring the majority opinion is not a frivolous approach to litigation is itself indisputably meritless. Plaintiffs have never cited a single case in which a lawsuit was deemed not frivolous because it was inspired by the philosophy expressed in a dissent to the controlling case. Second, the claims Plaintiffs filed against the URP Defendants are indisputably meritless because Plaintiffs did not and cannot allege any of the elements of their claims against the URP

Defendants.

Plaintiffs now describe their lawsuit this way: "The RICO and civil rights claims were simply offered in support of the 'key contention' that the signature method of qualifying for the primary ballot 'contravenes Utah law and is unconstitutional.'"[3] But the Utah Supreme Court has repeatedly held that the signature method for qualifying is required by Utah law,[4] as this Court[5] and the Tenth Circuit[6] have recognized. So, the claim that the signature gathering method "contravenes Utah law" is indisputably meritless.

The claim SB54's provisions allowing candidates to qualify for primary elections by gathering signatures is unconstitutional is also indisputably meritless. The Tenth Circuit, answered this very question: "[u]nder SB54, a candidate who is unwilling or unable to gain placement on the primary ballot through the caucus and convention may still qualify for the primary by gathering a set number of signatures by petition from eligible primary voters."[7] And the Tenth Circuit not only said SB54 was constitutional, it described the SB 54 regime as the "very essence" of our Constitutional system:

> SB54 . . . strikes an appropriate balance between protecting the interests of the state in managing elections and allowing the URP and all other political associations and individuals across Utah to express their preferences and values in a democratic fashion and to form associations as protected by the First Amendment to the Constitution. Not only does this balance not offend our

---

[3] ECF 192 at p.5 The absurd notion that the causes of action that were filed were simply offered in support of some philosophical "key contention" in the lawsuit and that the actual claims Plaintiffs filed are not what matters will be addressed below.

[4] *Utah Republican Party v. Cox*, 2016 UT 17, ¶¶ 4-5, 12, 373 P.3d 1286; *Lyman v. Cox*, 2024 UT 35, ¶¶ 7-11, 556 P.3d 49, cert. denied, 145 S. Ct. 1057 (2025), reh'g denied, 145 S. Ct. 1323 (2025).

[5] *Utah Republican Party v. Cox*, 178 F. Supp. 3d 1150, 1166–67 (D. Utah 2016).

[6] *Utah Republican Party v. Cox*, 892 F.3d 1066, 1075 (10th Cir. 2018).

[7] *Id.*, at 1085.

Constitution, it is at its very essence. Accordingly, we AFFIRM.[8]

This Tenth Circuit opinion has not been overruled. So, Plaintiffs' claim that the "signature method of qualifying for the primary ballot" is unconstitutional is indisputably meritless.

Plaintiffs' description of the key contention of their lawsuit makes clear that their lawsuit lacks any merit whatsoever and was filed in defiance of clear, binding precedent. Moreover, Plaintiffs knew about the controlling precedent at the time they filed their Complaint, since they cited the *Cox* case in their Motion for Preliminary Injunction[9], filed the same day as their Complaint.

Plaintiffs have long argued that the controlling law can be ignored and that their lawsuit is not indisputably meritless because Judge Tymkovich filed a dissent, and they like his dissent better than they like the opinion of the court. But Plaintiffs have never cited any law that suggests that an otherwise indisputably meritless lawsuit becomes meritorious because a *dissen*t supports the theory animating the plaintiffs' suit. Moreover, Plaintiffs did not merely challenge the law, they accused the defendants, including the URP Defendants, of committing crimes and violating their civil rights because the defendants followed the law as announced by the Utah Supreme Court and the Tenth Circuit. Judge Tymkovich's dissent does not make Plaintiffs claims not frivolous.

### 2. *Plaintiffs' Actual Claims Are Still Undisputably Meritless.*

The Second reason Plaintiffs merits arguments are baseless is that Plaintiffs did not allege facts sufficient to make out any of the elements of their claims against the URP Defendants.

---

[8] *Id.*, at 1094–95.
[9] ECF 7 at p. 3, ¶4.

Plaintiffs argue that URP Defendants must prove that their "key contention" is meritless[10], not the specific claims they filed. (ECF 192 at 6). Lawsuits are not comprised of "key contentions," they are made up of claims. Each of those claims has elements. Here Plaintiffs filed a RICO claim against the URP Defendants. They also filed a Section 1983 claim against the URP Defendants.[11] Each of these claims has a set of elements that Plaintiffs must have plausibly alleged against each defendant for their claims to have merit. If Plaintiffs could not possibly prevail based on the facts they allege and the law, then their claims are indisputably meritless. To be sure, a lawsuit may have some indisputably meritless claims and some claims that are not frivolous. In such a case a prevailing defendant would only be entitled to fees on the frivolous claims[12] but that is not this case: all defendants' claims are frivolous.

### a.  *Plaintiffs RICO Claim Is Meritless and Frivolous.*

Plaintiffs seem to acknowledge that their RICO claims are indisputably meritless[13], and they are. RICO liability requires that each defendant has engaged in a pattern of racketeering activity by committing two or more RICO predicate crimes[14], which must be alleged with

---

[10] As noted above their "key contention" is indisputably meritless because it contradicts controlling precedent, but even if it weren't, it is Plaintiff's claims that are at issue.

[11] Plaintiffs also filed claims under Section 1985 and 1986 against the URP Defendants but those claims are even more futile than their 1983 claim for the reasons identified by the Court in the Report and Recommendations, (ECF 120 at 19-22) and Plaintiffs do not contend that their Section 1985 and 1986 claims were not frivolous.

[12] See *Fox v. Vice*, 563 U.S. 826, 834 (2011) (finding that a prevailing defendant is entitled to fees and costs incurred to defendant against frivolous claims, but not against non-frivolous claims).

[13] Plaintiffs say they hired their current counsel to "disavow the RICO claims" suggesting they acknowledge those claims have absolutely no merit. ECF 192 at 5.

[14] *See Salinas v. United States*, 522 U.S. 52, 62, (1997); *United States v. Sanders*, 929 F.2d 1466, 1473 (10th Cir. 1991); *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022)

particularity.[15] The Complaint does not allege that any of the URP Defendants had anything to do with any fraudulent mailing and alleges only one (nonfraudulent) email sent by Mr. Axson as a supposed wire fraud predicate. At best Plaintiffs alleged that one of the URP Defendants, Mr. Axson, committed one racketeering act.[16] Since two RICO predicates are required, Plaintiffs did not allege facts to meet the pattern of racketeering activity element against the URP Defendants.

Further the RICO predicates Plaintiffs alleged, mail fraud and wire fraud, require that the scheme and artifice to defraud include the intent to deprive another of money or property.[17] In the Report and Recommendations (ECF 120) adopted by the district court in its entirety (ECF 132) the Court found that Plaintiffs had not alleged any scheme to deprive anyone of money or property[18], and Plaintiffs did not object to that finding.[19]

Plaintiffs also failed to allege any facts to suggest that any of the URP Appellees had any part in directing the affairs of the alleged RICO enterprise,[20] or had any relationship with the other members of the RICO enterprise.[21] So Plaintiffs failed to allege facts to support the claim that they were part of a RICO enterprise. In short, Plaintiffs failed to allege facts to support even a single element of their RICO claims against the URP Defendants.

---

[15] *Clinton v. Sec. Benefit Life Ins. Co*., 63 F.4th 1264, 1277 (10th Cir. 2023).

[16] The Court found in the Report and Recommendation, in a section Plaintiffs did not object to, that none of the alleged acts of wire fraud or mail fraud involved fraudulent activity and that the RICO predicates identified in the Complaint all lacked merit. ECF 120 at 23-25. However, as to the URP Defendants Plaintiffs did not even try to allege two or more predicate acts, so even if their mail fraud and wire fraud claims were not totally frivolous, their RICO claims against the URP Defendants would be.

[17] *Kousisis v. United States*, 605 U.S. 114, 121-22 (2025)

[18] ECF 120 at 40-42.

[19] *See generally* ECF 124.

[20] *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

[21] *Boyle v. United States*, 556 U.S. 938, 946 (2009) (To allege a RICO enterprise plaintiffs must allege at least "relationships among those associated with the enterprise.")

### b. *Plaintiffs' 1983 Claims are Meritless and Frivolous.*

Plaintiffs Section 1983 claims against the URP Defendants are also indisputably meritless. The elements of a Section 1983 claim are that the defendant (1) personally participated[22] in the (2) the violation of a right secured by the Constitution and laws of the United States,[23] and (3) that the alleged deprivation was committed by a person acting under color of state law.[24] Again, Plaintiffs failed to allege even a single element of their Section 1983 claims against the UPR Defendants. The Complaint alleges only one thing Defendants Null and Coleman did: call the police and actively assist them to remove Plaintiff Halvorsen from the September 7, 2024 meeting. The Complaint alleges that Mr. Axson certified the results of the 2024 Utah Republican Party nominating convention, including that Phil Lyman received more than 60% of the votes and was the party's sole nominee under the URP's Rules, and sent an email to URP SCC members in response to Plaintiff Halvorsen's Notice of Intent.

The Complaint does not allege that any of the URP Defendants personally participated in deciding which candidates qualified to be listed on the primary or general election ballots or in any way aided or ratified the certification of signature gathering candidates on any ballot. So even if Plaintiffs "key contention" were correct, which it is not, Plaintiffs have failed to allege that any of the URP Defendants personally participated in the deprivation of their rights by not excluding the candidates they wanted left off the ballots.

---

[22] *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established")
[23] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[24] *West v. Atkins*, 487 U.S. 42, 48 (1988)

Second, as the Report and Recommendation explained,[25] Plaintiffs have not identified any right of any Plaintiff secured by the Constitution or federal law that the URP Defendants violated. The only actions Plaintiffs allege as Section 1983 violations in the Complaint are Mr. Axson's response to the Notice of Intent and the URP Defendants' efforts to remove Ms. Halvorsen from the September 7, 2024 meeting. Plaintiffs have not identified any federally protected right of anyone that was violated by those actions. That these three Plaintiffs' rights were not violated is beyond peradventure; their rights were not infringed by Ms. Halvorsen being removed from a private URP meeting or by characterizing her Notice of Intent as meritless.

Finally, Plaintiffs claim that URP Defendants were "state actors" because "the state mandates a statutory system for the selection of party nominees."[26] Again, the Court has already ruled on this matter[27] and the Plaintiffs did not object to that ruling, meaning they have waived the current argument they are making. But their claim of state action also fails on the merits. The Complaint does not allege that Mr. Null or Ms. Coleman had any role whatsoever in the statutory system for the selection of party nominees, so that argument fails as to them. And, Plaintiffs base their Section 1983 claims on Mr. Axson's response to the Notice of Intent, and the URP Defendants' role in removing Plaintiff Halvorsen from the URP SCC meeting. These actions took place months after the candidate selection process was completed and had nothing to do with selecting candidates. Responding to the notice of Intent and removing Plaintiff Halvorsen from the URP SCC meeting were matters of URP internal governance and are not "fairly

---

[25] ECF 120 at 35-39. Plaintiffs did not object to this finding in the R&R.
[26] ECF 192 at 9.
[27] ECF 120 at 39.

attributable to the state."[28] Once again, Plaintiffs did not successfully allege even a single element of their Section 1983 claims against the URP Defendants.

## CONCLUSION

Plaintiffs do not identify any rule or law that would allow them to file multiple responses to URP Defendants' Motion for Fees. Instead, they have used their response to URP Defendants' Motion to Strike to once again argue the merits. Their efforts failed as Plaintiffs cannot mask the unavoidable fact that the Complaint did not successfully allege facts to support even a single element of the claims they filed against the URP Defendants. Plaintiffs' reliance on their "key contention" theory is also baseless because there is no law to suggest that claims that contradict controlling caselaw are not indisputably meritless if they are inspired by a "powerful dissent."

Most troublingly, Plaintiffs are now trying to distance themselves from an adverse decision now that it appears they may personally bear consequences for their actions. Yet they ignored, and continue to ignore, the real-life consequences suffered by the URP Defendants, and real costs accrued by them, as a result of the Plaintiffs' actions that they now seek to distance themselves from.

The Court should Strike Plaintiffs' Second Response, decide the Motion for Fees based on the First Response, and award URP Defendants' their attorney's fees.

DATED the 4th day of June, 2026.

**PARKINSON BENSON POTTER**

*/s/ D. Loren Washburn*
D. Loren Washburn
Brennan H. Moss
Clifford B. Parkinson
*Attorneys for URP Defendants*

---

[28] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995).

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, the foregoing, **URP DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE RESPONSE OF PLAINTIFFS WICKIZER, NEWBY, AND INMAN TO UTAH REPUBLICAN PARTY DEFENDANTS' MOTION FOR ATTORNEY FEES AND SANCTIONS (ECF 179)** was filed using the Court's electronic filing system, which gave notice to all counsel of record and to the pro se plaintiffs.

*/s/ D. Loren Washburn*
D. Loren Washburn