Tracie Halvorsen
Petitioner Pro Se
138 E 12300 S
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com

FILED
2026 JUN 16 PM 6:16
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| TRACIE HALVORSEN, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>SPENCER COX, et. al,<br><br>Defendants | **PLAINTIFFS HALVORSEN AND HUBER'S REPLY TO [194] IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD**<br><br>**[ORAL ARGUMENT REQUESTED]**<br><br>Case No. 2:25-cv-00909-HCN-JCB<br><br>Judge Howard C. Nielson, Jr. |

## I.    INTRODUCTION

Defendants' Opposition (ECF No. 194) **does not contest a single substantive fact in the Motion to Supplement.** It does not deny that Mr. Wolf — whose appearance is on file in this case — told the Utah Supreme Court in 2016 that the as-applied challenge was not ripe. It does not deny that the Utah Supreme Court agreed and expressly directed future injured parties to bring their claims in "an appropriate forum." *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 11. It does not deny that three co-plaintiffs — elderly, disabled, on fixed incomes — have sworn under oath that the fee threat drove them from this Court. Defendants concede that they have no substantive answer for the contradiction between their 2016 representations to the Utah Supreme

Court and their representations to this Court for this case — and elect, instead, to argue only that the Court should refuse to look. ECF No. 194 at 1-2.

The contradiction Defendants refuse to address has been hiding in plain sight. The 2016 Utah Supreme Court opinion has been public since 2016. The State's brief — authored by Mr. Wolf, whose appearance is on file in this case — has been public since 2016. Plaintiffs' Objection to the Report and Recommendation raised the as-applied / "appropriate forum" framework in January 2026. ECF No. 124 ¶¶ 6-10. None of this is new to the Court, and none of it is new to Defendants. Federal courts have inherent authority to manage their own records to prevent manifest injustice, and that authority expressly includes the power to supplement the record with judicially noticeable materials — including public court filings from related proceedings — at any stage of the proceedings. *Bias v. Advantage Int'l, Inc.*, 905 F.2d 1558, 1563 (D.C. Cir. 1990); *Pueblo of Sandia v. United States*, 50 F.3d 856, 861 n.4 (10th Cir. 1995) (courts may take judicial notice of public records, including prior court filings, at any time). Federal Rule of Evidence 201(c)(2) makes that notice mandatory when a party supplies the necessary information — which Plaintiffs have done. What Plaintiffs seek is a simple thing: to place these controlling documents front and center, in one docket, in plain English, so that this Court, the Tenth Circuit on any appeal, the Department of Justice on its Rule 5.1 review, and the public — not just in Utah but across the nation — can see the full record in one place and judge it for themselves.

The documents sit side by side with the dismissal order Defendants secured by representing to this Court that Plaintiffs' as-applied challenge was foreclosed by prior litigation. That representation was not merely incomplete — it was the inverse of what the State itself had told the Utah Supreme Court in 2016. The 2016 ruling on which Defendants now rely expressly

preserved as-applied challenges by injured parties in "an appropriate forum." *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 11. The State asked for that ruling. The State got that ruling. The State has had that ruling in its files for nearly a decade. And the State — through the Utah Attorney General's Office, the same office that filed the 2016 brief and whose appearance in this case includes Mr. Wolf, the author of that brief — then came into this Court and argued the opposite, telling this Court that the very forum the Utah Supreme Court directed Plaintiffs to was the wrong one. The case was dismissed on that representation.

This was not a subtle distinction buried in obscure authority. The case should never have been dismissed on a position the State's own prior briefing forecloses, and the fee motions compound that error by punishing Plaintiffs for accepting a state supreme court's express invitation.

That is the purpose of an open docket in an Article III court. The system the Framers designed depends on it. When the State's representations to one court contradict the State's representations to another court, and when the same State officials are insulated from accountability proceeding after proceeding, the constitutional answer is not for the federal judiciary to look away. The constitutional answer is for the record to be visible, complete, and adjudicated on its actual contents. That is what Plaintiffs have asked for. That is what Defendants are asking the Court to refuse.

Defendants' answer to all of this is not to deny the contradiction. It is to argue that the Court should refuse to look at it. The Court should decline that invitation. The exhibits are short, public, judicially noticeable, and directly responsive to arguments Defendants themselves injected into the fee briefing. Refusing to consider them would not serve the Local Rules — it would defeat them. And the silence on the other side of the docket — from the Utah Republican

3

Party, which appeared aggressively to file ECF No. 184 and ECF No. 195 but has filed nothing on this Motion, and from the author of the 2016 brief, who has filed no declaration, no correction, and no competing reading of his own words — is itself an admission. When a party's counsel is confronted with his own sworn prior representations to a higher court and chooses silence, that silence is not neutrality. It is admission by absence.

## II.    DEFENDANTS' GROUNDS FOR DENIAL FAIL ON THEIR OWN TERMS

Defendants advance three grounds for denial. Each collapses under inspection — and each, when examined, reinforces rather than undermines the Motion to Supplement.

### A.    Defendants Know What "Ripe" Means.

Defendants tell this Court that their fee motion is "ripe for decision." ECF No. 194 at 1. They use the word with confidence. They understand exactly what it means: an issue is ripe when it is properly before the court, with a concrete dispute on a developed record, suitable for adjudication. The State's own counsel knows the doctrine well — because the State's own counsel, in 2016, told the Utah Supreme Court that this very dispute was *not* ripe and directed future injured parties to bring as-applied challenges in "an appropriate forum." *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 11. Plaintiffs followed that direction. Plaintiffs filed in the very forum the Utah Supreme Court designated. And the State — through the Utah Attorney General's Office, the same office that authored the 2016 brief — turned around and told this Court that case was "foreclosed," and that this case must be dismissed.

The State cannot have it both ways. Either ripeness has meaning — in which case the 2016 ruling preserved this as-applied challenge for exactly the moment Plaintiffs brought it — or ripeness is whatever the State finds convenient on any given day.

### B. "Publicly Available" Cuts Both Ways.

Defendants argue that because the 2016 brief and opinion were "publicly available" in 2016, Plaintiffs forfeit any right to bring them to the Court's attention now. ECF No. 194 at 2. That argument proves far too much.

If these documents were so plainly public, so plainly available, and so plainly known to everyone, then they were equally available to Defendants when Defendants moved to dismiss this case on a representation that the 2016 ruling foreclosed Plaintiffs' as-applied challenge. They were equally available to Defendants when Defendants filed their Motion for Attorney Fees (ECF No. 152) demanding that Plaintiffs be punished for bringing a claim the State had told the Utah Supreme Court should be brought when such injuries occurred. Defendants cannot simultaneously argue (i) that the materials are too public for Plaintiffs to introduce now, and (ii) that the materials are not so public that Defendants had any duty to acknowledge them when they secured dismissal on the opposite position.

### C. Plaintiffs Raise No New Arguments.

Plaintiffs raised the as-applied / "appropriate forum" framework from the outset of this litigation. Plaintiffs' Objection to the Report and Recommendation (ECF No. 124) expressly distinguished the 2018 Tenth Circuit facial decision from the as-applied question this case presents, and argued that the Complaint pleaded "as-applied constitutional injury by individual plaintiffs (delegates, party members, voters, non-voters) with distinct injuries." ECF No. 124 ¶¶ 6-10. The Court overruled those objections and adopted the R&R. Plaintiffs preserved this argument at every stage thereafter.

Exhibits A and B do not raise a new argument. They corroborate an argument Plaintiffs have made from the beginning, with documents that come directly from the State and from the

5

Utah Supreme Court itself. The 2016 brief and opinion confirm, in the State's own words and the Utah Supreme Court's own words, what Plaintiffs have said all along: that the as-applied challenge was preserved, that "an appropriate forum" was contemplated, and that Plaintiffs filed in precisely that forum. Supplementing the record with corroborating evidence of a properly-preserved argument is not raising a new argument. It is doing exactly what the Local Rules contemplate when newly-relevant evidence comes to light during a fee dispute.

### D.  The Court's Role.

Defendants' three grounds share a common posture: they ask this Court to refuse to look. The premise of every one of them is that the contradiction between the State's 2016 representations and the State's representations in this case is something the Court should not see, should not weigh, and should not adjudicate. Plaintiffs respectfully disagree. It is precisely the Court's role to examine the record placed before it, to compare a party's representations against that party's own prior sworn filings in other courts, and to rule accordingly. *New Hampshire v. Maine,* 532 U.S. 742, 749-51 (2001) (judicial estoppel exists to prevent parties from taking inconsistent positions in successive litigation); Fed. R. Evid. 201(c)(2) (judicial notice is mandatory when supplied with the necessary information). When a litigant tells one court one thing and another court the opposite, the second court's job is not to look away. The second court's job is to look closely.

### E.  THE AS-APPLIED CONSTITUTIONAL CHALLENGE IS NOT UNTIMELY — IT AROSE FROM EVENTS THAT OCCURRED AFTER BRIEFING CLOSED

Defendants argue the as-applied challenge to 42 U.S.C. § 1988(b) is waived because it was not raised in the original opposition. ECF No. 194 at 6-7. This misunderstands when the challenge ripened. The constitutionality of applying § 1988 to these Plaintiffs, in this proceeding,

6

was not apparent from the State's initial fee motion alone. It became fully apparent only when —

after briefing closed — three co-plaintiffs filed sworn declarations that constitute new factual

developments demonstrating with documented proof that the fee motions are already producing

the exact chilling effect *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), was

designed to prevent.

The declarations of Daniel Newby, Wayne Wickizer, and Nancy Inman — a combat-

disabled 89-year-old veteran with Stage-4 kidney disease, a widowed veteran in poor health, and

a 69-year-old woman on disability income — swear under oath that they would never have

joined this lawsuit had they known it could result in financial destruction. These declarations did

not exist when the original opposition was filed. They are exactly the kind of post-briefing

development that warrants supplementation. They are not argument — they are sworn fact.

Moreover, the as-applied constitutional challenge is not optional briefing — it is

mandatory notice. Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403 require that when a

party draws a federal statute's constitutionality into question, the court must certify that challenge

to the Attorney General of the United States, and no final judgment may enter until sixty (60)

days after such certification. Rule 5.1(d) expressly provides that failure to file such notice earlier

does not forfeit the claim. Plaintiffs filed the required notice. The Court is now required by

federal statute to act on it. No local briefing rule — and certainly no assertion of waiver by the

party seeking fees — overrides 28 U.S.C. § 2403.

Defendants' own argument here creates a paradox. They contend that the

unconstitutionality argument was "available" during the original opposition window. ECF No.

194 at 6. But if the application of § 1988 was already unconstitutional before the sworn

declarations were filed, that is a reason to grant the Motion to Supplement — not deny it. And if

7

the unconstitutionality became fully apparent only after the declarations established the concrete chilling effect, then the argument was not available earlier, and there is nothing to waive. Either way, Defendants' waiver argument fails.

Finally, Defendants argue that Plaintiffs "cannot submit their own opposition, then later submit another brief to make further arguments based on the Wickizer Plaintiffs' opposition." ECF No. 194 at 7. Plaintiffs are not doing that. The Wickizer Plaintiffs' declarations are sworn statements by co-plaintiffs in this very case, describing concrete, real-world harm caused by the pendency of the fee motions in this very case. A sworn declaration is not an opposition brief. The First Amendment injury caused by a fee threat does not belong only to the person who files the pleading about it. *Christiansburg* made clear that awarding fees against good-faith civil rights plaintiffs frustrates Congress's intent by chilling constitutional litigation. 434 U.S. at 422. Newby, Wickizer, and Inman do not argue *Christiansburg* — they live it.

### III.    CONCLUSION: THE ONLY QUESTION IS WHAT THIS COURT WILL DO

The record is no longer in dispute. The State's own attorney told the Utah Supreme Court in 2016 that the as-applied challenge was not ripe — that injured parties should bring their claims in "an appropriate forum" when the injuries materialized. *Utah Republican Party v. Cox*, 2016 UT 17, ¶ 11. The Utah Supreme Court agreed. The State won on that position. The State then came into this Court — with the same attorney of record — and argued the opposite. The case was dismissed on that contradiction. And now the State seeks attorney's fees from the citizens it misled into the wrong courtroom.

Three co-plaintiffs — an 89-year-old combat-disabled veteran with Stage-4 kidney disease, a widowed veteran in poor health, and a 69-year-old woman on disability income — have sworn under oath that the fee threat has already driven them out of this courthouse. They

are not abstractions. They are the people *Christiansburg* was written to protect. They came to this Court because the Utah Supreme Court told them to. They are leaving because the State has made the cost of staying too high to bear.

This Court must now choose.

The choice is not complicated. It does not require novel legal reasoning. It does not require the Court to depart from precedent, strain a statute, or reach an unsettled constitutional question. It requires only what Article III has always required: that a federal court look at the record placed before it, compare a party's representations against that party's own prior sworn filings in another court, and refuse to reward the contradiction.

*New Hampshire v. Maine,* 532 U.S. 742, 749-51 (2001), exists for exactly this moment. Judicial estoppel is not a discretionary courtesy — it is the judiciary's answer to the question of what happens when a party tells one court one thing and another court the opposite. The answer has always been the same: the second court does not look away. The second court looks closely.

The Department of Justice is watching this record. The Tenth Circuit will see this record on appeal. The public — in Utah and across the nation — can read this docket. The question this case now presents to this Court is not whether the contradiction exists. Defendants have not denied it. The question is whether this Court will allow that contradiction to stand unremarked, unrebutted, and rewarded.

The exhibits are two documents. They are short. They are public. They are judicially noticeable. They were written by the State's own counsel. They say, in plain English, the opposite of what the State has told this Court. There is no procedural principle — no local rule, no briefing deadline, no waiver doctrine — that requires a federal court to decide a case on a

9

record it knows to be incomplete when the missing documents come from the opposing party's own files and directly contradict that party's representations.

The citizens who came to this Court were not wrong to come. They were not frivolous. They were not harassing anyone. They were following instructions — instructions issued by a state supreme court, authored in part by the State's own attorney, that said: when the injury happens, go to the appropriate forum. The injury happened. They went. What greeted them was not adjudication. It was a docket-text dismissal, followed by coordinated fee motions, followed by a procedural argument that the Court should refuse to look at the documents that expose the full sequence.

The Constitution was not written to protect the government from its citizens. It was written to protect citizens from their government. That is not a rhetorical point — it is the foundational design choice the Framers made after living under a sovereign that used the forms of law to punish those who challenged it. Article III exists for the same reason: not to provide a forum where the State's lawyers outmaneuver pro se veterans on procedural timing, but to provide a check — an independent, life-tenured check — on exactly the kind of governmental overreach this record documents. The protections *Christiansburg* extended to ordinary citizens raising sincere constitutional claims do not apply themselves. The right to petition does not enforce itself. The Constitution does not maintain itself. These things happen only when a court does its job — when a judge looks at a record, sees a state using the machinery of procedure as a weapon against the very people that machinery was designed to serve, and refuses to allow it. That is not an extraordinary ask. That is the job. That is why this Court exists.

This Court has that power. The record is here. The documents are here. The sworn declarations are here. The contradiction is here, in plain sight, in the State's own words, signed by the State's own attorney.

The Motion to Supplement should be granted. The fee motions should be denied. The constitutional question should be certified to the Attorney General of the United States as the law requires.

The courthouse belongs to the people — including these Plaintiffs. This Court should say so.

Dated: June 15, 2026

/s/ Tracie Halvorsen

TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se


/s/ STEVEN HUBER

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

**REPRESENATIONS TO THE COURT (Rule 11)**

WE HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing PLAINTIFFS HALVORSEN AND HUBER'S REPLY TO [194] IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD  contains 2,984 words, complies with DUCivR7-1(a)(4), is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of our knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated: June 15, 2026

/s/ Tracie Halvorsen

TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se



/s/ STEVEN HUBER

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

**Certificate of Service**

We hereby certify that on this 15th day of June 2026, we electronically filed the

PLAINTIFFS HALVORSEN AND HUBER'S REPLY TO [194] IN SUPPORT OF MOTION TO

SUPPLEMENT THE RECORD with the Clerk of the Court under the filing and electronic

notification procedures outlined under DUCivR 5-1, which will send notification of such filings

to all registered participants in this case.

Jason Dupree
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 977-8940
jndupree@agutah.gov
*Attorney for the State of Utah, Cox,*
*Henderson, Bramble, McCay, Durrant,*
*Schultz, and Adams*

Scott *Cheney*
*Office of the Utah Attorney General*
*PO Box 140856*
*Salt Lake City, Utah 84114-0856*
*(385) 977-4858*
scheney@agutah.gov
*Attorney for the State of Utah, Cox,*
*Henderson, Bramble, McCay, Durrant,*
*Schultz, and Adams*

David Wolf
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 441-5084
dnwolf@agutah.gov
*Attorney for the State of Utah, Cox,*
*Henderson, Bramble, McCay, Durrant,*
*Schultz, and Adams*

Anikka Hoidal
Office of the Utah Attorney General
PO Box 140856
Salt Lake City, Utah 84114-0856
(385) 272-3951
ahoidal@agutah.gov
*Attorney for the State of Utah, Cox,*
*Henderson, Bramble, McCay, Durrant,*
*Schultz, and Adams*

Stacy R. Haacke
Office of General Counsel
Administrative Office of the Courts
PO Box 140241
Salt Lake City, Utah 84114-0241
(801) 214-5805
stacyh@utcourts.gov
*Attorney for Chief Justice Matthew Durrant*

John R. Richardson
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Johnny.richardson@dentons.com
*Attorney for Brian McKenzie*

R. Blake Hamilton
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Blake.hamilton@detons.com
*Attorney for Brian McKenzie*

Janise K. Macanas
111 S. Main Street, Suite 2400
Salt Lake City, Utah 84111
Janise.macanas@dentons.com
*Attorney for Brian McKenzie*

13

Alan R. Houston
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
ahouston@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

Victoria S. Ashby
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
vashby@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

Cliff Parkinson
2750 Rasmussen Rd.
Suite H-107
Park City,. Utah 84098
cliff@pbp.law
*Attorney for Axson, Coleman, and Null*

Christine R. Gilbert
Office of Legislative Research and General
Counsel
Utah State Capitol Complex
House Building, Suite W210
Salt Lake City, Utah 84114-5210
cgilbert@le.utah.gov
*Attorney Bramble, McCay, Durrant, Schultz,
and Adams*

D. Loren Washburn
2750 Rasmussen Rd., Suite H-107
Park city, Utah 84098
loren@pbp.law
*Attorney for Axson, Coleman, and Null.*

Jeffrey B. Teichert
FREEMON LOVELL, PLLC
9980 South 300 West, Suite 200
Sandy, Utah 84070
Jeff.teichert@freemanlovell.com
*Attorneys for Plaintiffs Wickizer, Newby, and
Inman*

Executed on this 15th  day of Jume 2026.

/s/ Tracie Halvorsen
TRACIE HALVORSEN
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

/s/ STEVEN HUBER
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se